IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

CSX TRANSPORTATION, INC.,

      Plaintiff,

v.                                                                Civil Action No. 5:05-CV-202

ROBERT V. GILKISON;
PEIRCE, RAIMOND & COULTER,
P.C., a Pennsylvania Professional Corporation a/k/a
ROBERT PEIRCE & ASSOCIATES, P.C., a Pennsylvania
Professional Corporation; and JOHN DOES

      Defendant.

**PLAINTIFF, CSX TRANSPORTATION, INC.'S EMERGENCY MOTION TO PRESERVE EVIDENCE AND INCORPORATED MEMORANDUM OF LAW**

      Comes now Plaintiff, CSX Transportation, Inc., hereinafter "CSXT" by and though counsel, pursuant to Rules 16 and 26 of the Federal Rules of Civil Procedure and this Court's inherent authority, and moves this Court to enter an Order prohibiting Defendants Peirce Raimond & Coulter, hereinafter, "Peirce Firm" and Robert Gilkison from modifying, altering, or destroying any document in paper or electronic format that discusses or otherwise relates to asbestosis screenings or litigation conducted by the Defendant Peirce Firm. Specifically, CSXT requests that the Court direct the Defendants to preserve information concerning its asbestosis screening program and claims process in its current form whether, as a printed document or as electronic information. In support of this Motion, CSXT states as follows:

      1. That on or about December 22, 2005, CSXT filed the above-caption civil action against Defendants alleging counts of fraud, misrepresentation, and negligence for

activities growing out of and related to the asbestosis screening exams and process conducted and sponsored by the Defendant Peirce Firm[1];

2. That specifically, this lawsuit arises out of a fraud scheme designed and implemented by the Peirce Firm and its employee, Robert Gilkison, and perpetrated against CSXT wherein on at least one occasion an individual who had been previously diagnosed with asbestosis at a Peirce run and sponsored screening pretended to be a different individual in order to obtain a fraudulent settlement with CSXT under the Federal Employers Liability Act, 45 U.S.C. §51, *et seq.*;

3. That the Peirce Firm frequently utilizes a screening process to determine those employees of CSXT who might present a claim arising from alleged occupational asbestos exposure. During this screening process, chest x-rays are often taken of employees and read by a radiologist retained by the Peirce Firm, Dr. Ray Harron. Information produced at these screenings are used in the litigation and settlement negotiations of claims brought by the Peirce Firm on behalf of railroad workers against CSXT;

4. That on or about May 19, 1999, a former CSXT employee, Daniel Jayne, attended and was examined at one of the aforementioned screenings conducted by the Peirce Firm. During Mr. Jayne's screening, a chest x-ray was taken and later read by Dr. Harron, who noted irregularities consistent with asbestosis. As a result of the information produced at Mr. Jayne's screening, the Peirce Firm filed a lawsuit pursuant to the Federal Employers' Liability Act, 45 U.S.C. §51, *et seq.*, on behalf

---

[1] A courtesy copy of the above-described Complaint was sent to each of the Defendants on December 23, 2005, giving each notice of the pending lawsuit.

of Mr. Jayne and others styled, *Ronald Lee Abbott, et al., v. CSX Transportation, Inc.*, Civil Action Number 00-C-64, filed on March 20, 2000, in Marshall County, West Virginia;

5. That on November 14, 2002, in reliance upon the x-ray, CSXT settled with Mr. Jayne as to his claims for the sum of seven thousand dollars ($7,000.00);

6. That another former CSXT employee, Ricky May, attended a Peirce Firm run and sponsored asbestosis screening either on May 19, 1999, or at some time prior to that wherein he tested negative for asbestosis;

7. That nearly a year after Mr. Jayne's testing, Ricky May became aware of another screening for asbestosis to be conducted by the Peirce Firm on June 13, 2000, in Huntington, West Virginia. After obtaining that information and on advice of Defendant Gilkison, Mr. May asked Mr. Jayne to appear on his behalf at the June 13, 2000 screening, for the purpose of obtaining an x-ray consistent with asbestosis. Mr. Jayne accepted Mr. May's offer, and in fact appeared at the screening held on June 13, 2000 pretending to be Mr. May and sat for a chest x-ray;

8. That during the June 13, 2000 screening, Mr. Jayne with the assistance of Defendant Gilkison, in his capacity as en employee of the Defendant Peirce Firm, represented himself to be Mr. May for the purposes of obtaining a chest x-ray. This x-ray was again read by Dr. Harron, who noted findings of irregularities consistent with asbestosis. As a result of the information produced at this screening the Peirce Firm filed a lawsuit pursuant to the Federal Employers' Liability Act, 45 U.S.C. §51, *et seq.*, on behalf of May and others styled, *Charles*

*Abbott et al., v. CSX Transportation, Inc.*, Civil Action Number 01-C-162M, filed August 1, 2001, in Marshall County, West Virginia;

9. That the Defendant Peirce Firm, as part of a settlement package, presented the x-ray created at the June 13, 2000 screening on behalf of Mr. May. On December 31, 2002, CSXT settled with Mr. May for the sum of eight thousand dollars ($8,000.00).[2]

10. That the full scope and breadth of this scheme is not yet known to the Plaintiff, including the number of times that this same activity may have been performed as well as the involvement of additional employees of the Defendant Peirce Firm. It is known, however, that the Peirce Firm has filed thousand of lawsuits against CSXT as a result of asbestos claims on behalf of employees and former employees;

11. That given the allegations of systemic fraud and the likelihood that information beyond the initial allegations raised in the Complaint will become at issue, a preservation order is necessary to ensure that all of the potential information is available for discovery;

12. That currently CSXT is unaware of the Defendant Peirce Firm's document retention policy or the amount of information possessed by the Defendants that is or could, during the course of discovery, become relevant and accordingly must seek the Court's assistance in securing this information;

13. That prior to the institution of this lawsuit, CSXT attempted both formally, through subpoenas, and informally through written requests, to seek the

---

[2] It is also believed that Mr. May's activities were disclosed by Defendant Gilkison to other employees of the Peirce Firm and that those employees by their acquiescence ratified Mr. May's and Defendant Gilkison's activities.

production of the information described above and its preservation to assist it in the prosecution of its claims against both Daniel Jayne and Ricky May;

14. That specifically on September 9, 2004, counsel for CSXT sent a letter to Robert N. Peirce, Jr. requesting that certain information relative to the Peirce Firm's screenings be provided as part of CSXT's investigation. *See* <u>Letter to Robert N. Peirce, Jr.</u>, attached hereto as *Exhibit A*;

15. That as part of that same letter CSXT requested that the Peirce Firm preserve all documents and "records of all asbestos claims made through your office from 1998 to the present." *See Id.*;

16. That on October 18, 2004, the Peirce Firm responded by indicating that some of the information requested may have been already destroyed due to its document retention policy and that while they would make an effort to preserve relevant documents that they "***cannot guarantee at this time that no information will be destroyed which you might at a later date determine would somehow be relevant.***" *See* <u>Letter to Robert L. Massie</u>, attached hereto as *Exhibit B*. (Emphasis added);

17. That following this informal request CSXT served upon the Peirce Firm subpoenas requesting certain information regarding their asbestosis screening process. The Peirce Firm refused to produce a majority of the information requested and such refusal was the subject of a motion to compel pending in both the Ricky May and Daniel Jayne matters prior to their settlements. *See* <u>Subpoenas</u> attached hereto collectively as *Exhibit C*;

18. That based on CSXT written requests as well as its subpoenas the Defendant Peirce Firm was on notice that information regarding their asbestosis screening programs was at issue and should have preserved such information;

19. That all of the information requested above will be necessary and relevant for CSXT to prosecute this action and without such information, CSXT would be materially harmed in this litigation;

20. That given the Defendant Peirce Firm's prior refusal to preserve all of the information regarding its asbestosis screenings from 1998 to the present, CSXT requests that this Court enter a preservation order out of an abundance of caution to preserve whatever evidence is currently available regarding the screenings sponsored by the Peirce Firm as well as Defendant Gilkison's activities while employed at the Peirce Firm;

21. That it is axiomatic under West Virginia law that a "party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." *Tracy v. Cottrell*, 206 W.Va. 363, 524 S.E.2d 879 (1999). *See also, Bradley v. Sunbeam Corp.*, 2003 U.S.Dist. LEXIS 14451 (N.D. W.Va.2003) (unpublished).

22. That further, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation…If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party

anticipates litigation involving that evidence." *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001).[3]

23. That in addition to the duties imposed under the Federal Rules on a party to preserve evidence, the Court has inherent power to order material evidence preserved and to require that specific procedures be adopted to ensure such preservation. *See The Pueblo of Lagua v. United States*, 60 Fed. Cl. 133, 135, (2004)("[d]ecisional law recognizes yet another inherent power: the ability to order evidence preserved."). *See also*, Manuel for Complex Litigation (4th Edition), §11.442 *noting*, "before discovery starts, and perhaps before the initial conference, the court should consider whether to enter an order requiring the parties to preserve and retain documents, files, data, and records that may be relevant to the litigation.);[4]

24. That in the case at bar, CSXT has alleged broad-based fraud and is seeking relief in which every asbestosis claim made by the Peirce Firm against CSXT could be at issue. Accordingly, the scope of discovery will encompass all of the areas described above and could extended into additional areas of inquiry; and

25. That this Court must act now to direct the Peirce Firm to preserve all of the relevant documents so as to ensure their availability during the discovery process.

---

[3] *See also, Rambus, Inc. v. Infineon Technologies AG, et al.*, 222 F.R.D. 280, 288 (E.D.Va. 2004) *noting*, "[t]herefore, once a party reasonably anticipates litigation, it has a duty to suspend, as to documents that may be relevant to the anticipated litigation, any routine document purging system that might be in effect; failure to do so constitutes spoliation."

[4] In fact, in *HJB, Inc. v. American Home Products Corporation*, 1994 WL 31005 at *1 (N.D.Ill. Feb 1, 1994) (unpublished) the district court recognized that in complex cases, such as the one at bar, that preservation orders are common and are increasingly routine in cases involving electronic evidence such as e-mails and other forms of electronic communications.

**WHEREFORE,** CSXT respectfully moves this Court to enter and Order directed toward the Defendants instructing them to maintain the following information:

- All documents created during or as part of the May 19, 1999, asbestosis screening in Huntington, West Virginia;

- All documents created during or as part of the June 12, 2000, asbestosis screening in Huntington, West Virginia;

- All sign-in sheets or other documents reflecting the attendees at any asbestos screenings conducted by or on behalf of Peirce, Raimond & Coulter, P.C. between January 1998 and the present;

- A list of all screenings worked or attended by Defendant Robert Gilkison and any documents including x-rays generated from those screenings;

- Reports of all x-rays, together with the original x-rays, of any individual who underwent an x-ray between January 1998 and the present;

- All contracts, agreements, communications or other documents of any type reflecting the relationship between Peirce, Raimond & Coulter, P.C. and any person, company or entity who performed, conducted or supervised asbestos screenings, or screenings for other occupational disease or injuries, from 1998 to the present;

- All documents provided by Peirce, Raimond & Coulter, P.C. to any person, company or entity who performed, conducted or supervised asbestos screenings, or screenings for other occupational disease or injuries, from 1998 to the present, for the purpose of establishing, supervising or coordinating the method, program, or protocol by which such screenings would be conducted;

- All documents reflecting any communications, whether written, electronic or oral, between Peirce, Raimond & Coulter, P.C. and any person, company or entity who performed, conducted or supervised asbestos screenings which were performed from January 1998 to the present;

- All documents relating to the employment of Defendant Robert Gilkison including personnel and employment files, contract for employment, and any and all payroll information;

- All documents, including notes, letters, memoranda, etc., reflecting any communications between Peirce, Raimond & Coulter, P.C. and Ricky May, Daniel Jayne, and/or Robert Gilkison relating to any asbestosis screening;

- All records reflecting financial payments to Defendant Robert Gilkison by the Peirce Firm;

- Records including employment files, payroll information, and personnel files of any individual employed by Peirce, Raimond & Coulter, P.C. as an investigator or runner who were involved in any way with the asbestosis screening process between Janaury 1998 and the present;

- Records including employment files, payroll information, and personnel files of any employee of Peirce, Raimond, & Coulter, P.C. who worked at any asbestosis screening between Janaury 1998 and the present;

- Any and all documents relating to employee training, including any all employee handbooks, created or distributed between January 1998 and the present;

- Any and all advertisements or distributions concerning asbestosis screenings between January 1998 and the present;

- Any and all electronic data in any form concerning asbestosis screenings between January 1998 and the present;

- Any and all internal case files, including court files, concerning individual asbestosis plaintiffs;

- Any and all correspondence, e-mails, letters, or other communications between the Peirce Firm and Robert Gilkison concerning the asbestosis screenings including, but not limited to set-up instructions, financial payments or incentives, advertising, and operation instructions;

- All records, including all x-rays of all persons and reports regarding such x-rays, created by any person, company or entity who performed, conducted or supervised asbestos screenings; and

- All records reflecting financial payments to or compensation of any person, company or entity who performed, conducted or supervised asbestos screenings which were performed on May 19, 1999 and June 12, 2000.[5]

Further, CSXT requests that the Court direct the Defendants to stop any document retention policy wherein any information concerning its asbestosis screening program or the claims

---

[5] CSXT does not intend this list to be exhaustive and by inclusion herein CSXT does not intend to release the Defendants of their obligations to maintain other documents concerning their asbestosis screening processes and litigation that are not listed in this motion and currently unknown to CSXT.

{H0176847.4 }                                    9

derived from it could be destroyed during the pendency of this litigation and for any such further relief as the Court sees fit to grant.

CSX TRANSPORTATION, INC.

By _____
Of Counsel

Marc E. Williams, Esquire
J. David Bolen, Esquire
**HUDDLESTON BOLEN LLP**
611 Third Avenue
P.O. Box 2185
Huntington, WV  25722-2185
(304) 529-6181--Telephone
(304) 522-4312--Facsimile

**COUNSEL FOR THE PLAINTIFF
CSX TRANSPORTATION, INC.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

CSX TRANSPORTATION, INC.,

      Plaintiff,

v.                                               Civil Action No. 5:05-CV-202

ROBERT V. GILKISON;
PEIRCE, RAIMOND & COULTER,
P.C., a Pennsylvania Professional Corporation a/k/a
ROBERT PEIRCE & ASSOCIATES, P.C., a Pennsylvania
Professional Corporation; and JOHN DOES

      Defendant.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing *"Plaintiff, CSX Transportation, Inc.'s Emergency Motion to Preserve Evidence and Incorporated Memorandum of Law"* and *"Notice of Motion"* upon the following by depositing true copies thereof to their last known address in the regular manner, via facsimile and United States Mail, postage prepaid from Huntington, West Virginia on the 13th day of January, 2006:

Honorable Frederick P. Stamp, Jr.
P.O. Box 791
Wheeling, WV 26003

Stanley W. Greenfield, Esquire
Greenfield & Kraut
Greenfield Court 1035 Fifth Avenue
Pittsburgh, Pennsylvania 15219

Robert L. Potter, Esquire
Strassburger McKenna Gutnick & Potter
Four Gateway Center, Suite 2200
Pittsburgh, PA 15222

_____

{H0179772.1}