IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CSX TRANSPORTATION, INC.,

    Plaintiff,

v.                              Civil Action No. 5:05CV202
                                        (STAMP)

ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation
and JOHN DOES,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING CSX TRANSPORTATION, INC.'S MOTION
TO DISQUALIFY DEFENSE COUNSEL AVRUM LEVICOFF
AND THE LAW FIRM OF LEVICOFF, SILKO & DEEMER, P.C.**

I.   Background

The motion to disqualify arises out of a case concerning allegations that Robert Gilkison ("Gilkison") and the law firm of Peirce, Raimond & Coulter, P.C. ("the Peirce Firm") knowingly aided a client in pursuing a fraudulent asbestosis claim against CSX Transportation, Inc. ("CSX"). CSX commenced this civil action on December 22, 2005, asserting various causes of action arising out of occupational asbestosis screenings conducted by the Peirce Firm in the course of the firm's practice of representing asbestosis claimants.

Following the filing of a complaint by CSX, the Peirce Firm[1] retained Robert L. Potter and David A. Strassburger of the law firm of Strassburger, McKenna, Gutnick & Potter to represent it in this matter. Both attorneys filed applications in this Court for admission pro hac vice, and listed John E. Gompers as the responsible local attorney. An order was thereafter entered permitting Robert Martin and Jason Winnell of the law firm of Bailey & Wyant, P.L.L.C. to be substituted as the responsible local attorneys in place of Mr. Gompers. Following the appearances of Mr. Potter, Mr. Winnell, Mr. Strassburger, and Mr. Martin, the Peirce Firm retained an additional attorney, Avrum Levicoff, of the law firm of Levicoff, Silko, & Deemer, P.C. ("the Levicoff Firm"), who filed a notice of appearance in this Court on July 20, 2006.

On September 14, 2006, CSX filed a motion to disqualify Mr. Levicoff and the Levicoff Firm because of an alleged conflict of interest caused by that firm's employment of Brian J. Headley, an associate who was formerly employed by CSX's counsel, Huddleston Bolen LLP ("Huddleston") from May 2004 to May 18, 2006.[2] CSX contends that during the course of Mr. Headley's employment with Huddleston, Mr. Headley became privy to confidential information

---

[1]Defendant Robert Gilkison retained separate counsel to represent his interest in this matter. Defense counsel for Mr. Gilkison is not implicated by CSX's motion to disqualify.

[2]Affidavits regarding this motion were filed by Mr. Headley, Mr. Levicoff, and Marc E. Williams, a partner with Huddleston.

regarding CSX and its litigation strategies. On October 2, 2006, the Peirce Firm responded and argues primarily that, during his employment with Huddleston, Mr. Headley did not represent CSX in any substantially related matter and did not actually acquire any confidential information regarding CSX that would require the disqualification of Mr. Levicoff and the Levicoff Firm. CSX filed a reply on October 13, 2006 and asserts that Mr. Headley's prior representation of CSX during his employment with Huddleston creates an appearance of impropriety in this case that compels disqualification of both Avrum Levicoff and the Levicoff Firm.

## II. Applicable Law

Under Local Rule of General Procedure 83.05, all attorneys who practice before this Court must adhere to the Rules of Professional Conduct, as adopted by the Supreme Court of Appeals of West Virginia. See LR Gen P 83.05. Failure to adhere to those rules may require disqualification. See W. Va. R. Prof'l Conduct 1.16(a)(1).

In this case, CSX contends that disqualification of Mr. Levicoff and the Levicoff Firm is compelled by Rules 1.9(a) and 1.10 of the West Virginia Rules of Professional Conduct.

Rule 1.9(a) provides that: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interest[s] are materially adverse to the interests

of the former client unless the former client consents after consultation." The principle underlying Rule 1.9(a) is based upon both an attorney's duty of fidelity to former clients and upon the attorney-client privilege which precludes the disclosure of confidential client communications. <u>State ex rel. McClanahan v. Hamilton</u>, 430 S.E.2d 569 (W. Va. 1993).

Rule 1.10 extends the prohibition of Rule 1.9(a) by imputing the conflicts of an individual attorney to the entire firm with which that attorney is associated: "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when anyone of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2. W. Va. R. Prof'l Conduct 1.10(a). Rule 1.10 further provides that: "when a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter." W. Va. R. Prof'l Conduct 1.10(b).

The plain language of these rules requires that the past and present representations at issue be "substantially related" before an attorney will be disqualified for a conflict of interest. "A current matter is deemed to be substantially related to an earlier

4

matter in which a lawyer acted as counsel if: (1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known." State ex rel. Keenana v. Hatcher, 557 S.E.2d 361 (W. Va. 2001). Resolving the question of substantial relation requires an analysis of the facts, circumstances and legal issues of the past and present representations. State ex rel. McClanahan v. Hamilton, 430 S.E.2d 569, 572-73 (W. Va. 1993).

In determining whether disqualification is required because of a prohibited conflict of interest, "the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety,' it is to resolve all doubts in favor of disqualification." United States v. Clarkson, 567 F.2d 270, 273 n.3 (4th Cir. 1977). Thus, disqualification may be justified regardless of counsel's intent in undertaking representation that leads to an appearance of impropriety. Id. (citing United States v. Clarkson, 567 F.2d 270, 273 n.3 (4th Cir. 1977)).

Once it is established that the subject of counsel's former representation is substantially related to his or her current

representation, counsel's receipt of confidential information from the former representation is presumed for the purposes of disqualification. See State ex rel. McClanahan v. Hamilton, 430 S.E.2d at 573. Further, under Rule 1.10, such knowledge may properly be imputed to counsel's law firm such that disqualification of the entire firm is required. See W. Va. R. Prof'l Conduct 1.10.

## III. Discussion

In interpreting the West Virginia Rules of Professional Conduct, the West Virginia Supreme Court of Appeals has held that: "[b]ased upon the plain language of Rule 1.10(b) it is clear that two criteria must be satisfied in order to disqualify counsel from representation of a client: (1) representation of an adverse client or affiliation with a law firm that represented an adverse client and (2) knowledge of confidential information pertaining to the same or substantially related matter."[3] State ex rel. Cosenza v. Hill, 607 S.E.2d 811, 816 (W. Va. 2004). To satisfy the knowledge requirement, the acquisition of confidential information may be actual or imputed. Id.

---

[3]Although CSX relies on Rule 1.9(a) as well as Rule 1.10(b) to support its motion for disqualification, Rule 1.9(a) is not applicable in this matter. Rule 1.9(a) is a rule of personal disqualification. Because it appears that Mr. Headley is not personally engaged in the representation of CSX in this case, this Court undertakes a disqualification analysis only under Rule 1.10(b), the rule of imputation.

In this case, it is undisputed that Mr. Headley has both been previously affiliated with Huddleston and has previously represented CSX in some capacity. Thus, only the second prong of the Rule 1.10(b) inquiry must be addressed. The second prong of Rule 1.10(b) is comprised of two interrelated components: knowledge and substantial relation. This Court will first address whether each of these components exists in this case, then will turn to the Peirce Firm's contention that even if Rule 1.10(b) is implicated, any potential conflict has been resolved by screening Mr. Headley from involvement in this case.

A.  Substantial Relation

CSX asserts that during Mr. Headley's employment with Huddleston, he worked on forty-three separate matters for CSX, including fourteen cases where the opposing party was represented by the Peirce Firm. Specifically, CSX emphasizes Mr. Headley's involvement as counsel for CSX in Charles A. Black v. CSX Transportation, Inc., an asbestos claim filed in the Circuit Court of Marshall County. Plaintiff Black was one of a number of plaintiffs included in a mass filing by the Peirce Firm styled as Charles Abbott, et al. v. CSX Transportation, Inc., which is the lawsuit wherein the underlying allegedly fraudulent asbestos claim was filed by the Peirce Firm. CSX contends that the Black case and the other cases against CSX in which Mr. Headley participated are substantially related to the case at hand.

7

The Peirce Firm argues that since the claim filed by Black alleged a colon cancer injury rather than the typical lung cancer injury common to the other plaintiffs in <u>Abbott</u>, <u>Black</u> is not substantially related to this case. The Peirce Firm further asserts that this case "abounds with factual and legal issues that have absolutely nothing to do with asbestosis claims" and, as a result, the matters in which Huddleston and Mr. Headley previously represented CSX are unrelated to the current matter.

Although the Peirce Firm is correct that factual parity does not exist between this case and Mr. Headley's prior representations, such parity is not required for a finding of substantial relation. <u>See</u> <u>State ex rel. Keenan v. Hatcher</u>, 557 S.E.2d 361, 367 n.7 (W. Va. 2001). Rather, application of the substantial relationship test "turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney" such that there is a "substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client." <u>Id.</u> at 367-68. In other words, two representations are substantially related "if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." <u>Analytica, Inc. v. NPD Research, Inc.</u>, 708 F.2d 1263, 1266 (7th Cir. 1983).

This Court finds that Mr. Headley and/or Huddleston previously represented CSX in a matter substantially related to the case at hand. Of primary concern is the <u>Black</u> case which involved CSX's defense of the underlying mass asbestosis matter that produced the alleged fraud at issue in this case.[4] Because this case originates from <u>Black</u>, the two actions necessarily overlap in some ways with respect to parties, potential witnesses, and the facts and circumstances from which the alleged physical injuries, or lack thereof, arose. It is therefore likely that some of the information acquired by Mr. Headley and/or Huddleston through their representation of CSX in the <u>Black</u> case, would be relevant to the Peirce Firm's defense of the present matter. Mr. Headley's involvement as counsel in the <u>Black</u> case creates the kind of "substantial risk" that confidential information belonging to CSX could be shared with its adversary in this case. Accordingly, the <u>Black</u> case is substantially related to the matters currently before this Court.

B. <u>Knowledge of Confidential Information</u>

Mr. Headley attests that he does not have a specific recollection of the <u>Black</u> case nor of the other cases that he worked on for CSX during his employment with Huddleston. The

---

[4]Because this Court concludes that Mr. Headley's representation of CSX in the <u>Black</u> case is substantially related to the matter at hand, it is unnecessary to address whether any of the numerous other asbestosis matters in which Mr. Headley and/or Huddleston represented CSX are also substantially related.

9

Peirce Firm argues that the thrust of Mr. Headley's affidavit demonstrates that any work he performed in <u>Black</u> or any other case did not result in his receipt of confidential information from CSX. Despite the Peirce Firm's minimization of Mr. Headley's role in representing CSX during his employment with Huddleston, this Court finds that the knowledge requirement has been satisfied in this case.

Once it is established that the matters of past and present representation are substantially related, "the former client need not demonstrate that he divulged confidential information to the attorney." Syl. pt. 4, <u>State ex rel. McClanahan v. Hamilton</u>, 430 S.E.2d 569 (W. Va. 1993). Rather, "[t]he Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation." <u>Id.</u> at 573.

Here, Mr. Headley represented CSX in the lawsuit that allegedly involved the scheme to defraud CSX that is the subject of this lawsuit. Because Mr. Headley represented CSX in a substantially related matter, this Court must presume for the purposes of applying the Rules of Professional Conduct that CSX shared confidential information with Mr. Headley. This direct knowledge, in and of itself, is sufficient to disqualify Mr.

Headley and the Levicoff Firm.[5]  Although the Peirce Firm contends that Mr. Headley's role in representing CSX was limited, it is not the duty of this Court to inquire into the nature and extent of disclosed confidences.  Id.  "Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained."  Id.  Accordingly, because Mr. Headley has knowledge of confidential information pertaining to a matter substantially related to this case,[6] Rule 1.10(b) compels disqualification of Avrum Levicoff and the Levicoff Firm.  Nonetheless, the Peirce Firm contends that this Court should permit continued representation by Mr. Levicoff and the Levicoff Firm because the firm has screened Mr. Headley from this case.

C.  "Screening" Procedures

The Peirce Firm argues that disqualification in this situation is unnecessary because Mr. Headley is not personally representing

---

[5] Although not necessary for a finding of knowledge in this case, knowledge of confidential information regarding this very same matter can be imputed to Mr. Headley.  See State ex rel. Cosenza v. Hill, 607 S.E.2d 811 (W. Va. 2004).  Because Mr. Headley was an associate with Huddleston for several months towards the beginning of this action, knowledge of confidential information garnered by other members of the firm can be imputed to Mr. Headley for purposes of disqualification.

[6] The CSX places significant emphasis on Mr. Headley's receipt of emails detailing CSX's general litigation strategy.  Because the "playbook" rationale has generally been discredited by courts, this Court has not relied on Mr. Headley's receipt of such materials to support its resolution of this matter.

the defendant and has been effectively screened by the Levicoff Firm from participating in the case.  The practice of "screening" or erecting a "Chinese wall" within a law firm to prevent the sharing of confidential information, however, has not been approved by the United States Court of Appeals for the Fourth Circuit nor by the Supreme Court of Appeals of West Virginia.  Although screening methods have been considered by the American Bar Association, in 2000, the Ethics Commission ultimately rejected an amendment to the Model Rules of Professional Conduct, upon which the West Virginia ethics rules are modeled, that would have allowed screening procedures to avoid the imputation of some conflicts.

As aptly stated by Judge Goodwin in <u>Healthnet, Inc. v. Health Net, Inc.</u>, 289 F. Supp. 2d 755, 761 (S.D. W. Va. 2003), "courts should be reluctant to sacrifice the interests of clients and former clients for the perceived business interests of lawyers, especially when the state supreme court, in promulgating the Rules of Professional Conduct, has failed to adopt contrary rules."  In light of the absence of controlling precedent supporting screening procedures, this Court finds that the Levicoff Firm cannot avoid the imputation that accompanies Rule 1.10(b) by screening Mr. Headley from this case.  Therefore, because a conflict of interest exists pursuant to Rule 1.10(b) and such conflict cannot lawfully be allayed by screening, disqualification is necessary.

IV. Conclusion

This Court is aware that as a general practice motions to disqualify counsel should be approached with caution because of their potential for harassment. Garlow v. Zakaib, 413 S.E.2d 112, 116 (W. Va. 1991). Nonetheless, "as the repository of public trust and confidence in the judicial system, courts are given broad discretion to disqualify counsel when their continued representation of a client threatens the integrity of the legal profession." State ex rel. Cosenza v. Hill, 607 S.E.2d 811, 817 (W. Va. 2004). In light of Mr. Headley's prior representation of CSX in Black and other asbestosis cases and his association with Huddleston during a time both before and after the pendency of this case, Rule 1.10(b) compels disqualification. Accordingly, motion of the plaintiff, CSX Transportation, Inc., to disqualify Avrum Levicoff and the law firm of Levicoff, Silko & Deemer, P.C. is GRANTED.[7]

Because on October 2, 2006, this Court granted a motion for leave to withdraw as counsel by Robert Potter, David Strassburger, and the law firm of Strassburger McKenna Gutnick & Potter, the

---

[7] Finally, the rulings contained in this memorandum opinion and order should not, in any way, be taken as an adverse reflection upon the integrity or character of attorneys Headley or Levicoff, or the other members of the law firm of Levicoff, Silko, and Deemer, P.C. This Court's prior dealings with the Levicoff Firm and its attorneys in cases before this Court have always demonstrated them to be experienced, qualified, and professional trial counsel.

effect of this memorandum opinion and order leaves the Peirce Firm without counsel in this case. It is well-established law that a corporation cannot appear pro se. Microsoft Corp. v. Computer Serv. & Repair, Inc., 312 F. Supp.2d 779, 780 (E.D.N.C. 2004). Accordingly, the Peirce Firm is granted thirty days in which to retain counsel and to file a notice of appearance by such counsel in this Court.[8]

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: November 3, 2006

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE

---

[8]As noted at page 2 of this memorandum opinion and order, Robert Martin and Jason Winnell of the law firm of Bailey & Wyant, P.L.L.C. are listed as the "responsible local attorneys" for attorneys Strassburger and Potter who appeared pro hac vice. Since Mr. Strassburger and Mr. Potter have been given leave to withdraw as counsel (see page 13 herein), it would not appear that attorneys Martin and Winnell need to appear as local counsel, unless, of course, the Peirce firm wishes to retain them and/or their law firm as principal counsel.