IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CSX TRANSPORTATION, INC.,

        Plaintiff,

v.                                                   Civil Action No. 5:05CV202
                                                              (STAMP)
ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation
and JOHN DOES,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT PEIRCE, RAIMOND & COULTER, P.C.'S
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### I.  Background

The plaintiff, CSX Transportation, Inc. ("CSX"), filed a complaint against the defendants, Robert Gilkison and Peirce, Raimond & Coulter, P.C. ("the Peirce Firm"), pursuant to 28 U.S.C. §1332, based on the diversity of citizenship of the parties.  CSX contends that Mr. Gilkison and the Peirce Firm knowingly and negligently aided a client, Ricky May, in pursuing a fraudulent asbestosis claim against CSX.  The Peirce Firm filed a motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) with respect to Counts III, IV and V of the complaint.  CSX responded in opposition and the Peirce Firm replied.  Following review of the parties' memoranda, this Court

finds that the Peirce Firm's motion for partial judgment on the pleadings must be granted.

## II.  <u>Facts</u>

This case arises out of occupational asbestosis screenings conducted by the Peirce Firm in the course of the firm's practice of representing asbestosis claimants.  On June 13, 2000, Danny Jayne, a CSX employee who had previously tested positive for asbestosis, attended a Peirce Firm screening and impersonated Ricky May, a CSX employee who had previously tested negative for asbestosis.  The fraudulently obtained x-ray was then used to support a claim by Mr. May against CSX in a lawsuit filed pursuant to the Federal Employer Liability Act ("FELA").  In December 2000, CSX settled Mr. May's claim for $8,000.00.

In its complaint, CSX asserts one count of fraud, three counts of negligence, and one count for punitive damages against the Peirce Firm because of the firm's allegedly unlawful actions regarding the fraudulent asbestosis claim it filed on behalf of client, Ricky May.  The Peirce Firm now seeks judgment on the pleadings as to Counts III, VI, and V -- the three negligence counts.

In Count III, CSX alleges that the Peirce Firm negligently misrepresented that the medical records of Ricky May were accurate and that CSX relied upon those records to its detriment in negotiating the settlement of Mr. May's claim.  In Count IV, CSX

2

alleges that the Peirce Firm was negligent by failing to have procedures in place to prevent fraudulent asbestosis claims from being asserted.   In Count V, CSX alleges that the Peirce Firm negligently trained the personnel who conducted the screening and x-ray process by failing to instruct such personnel to check for and verify identification of the individuals being screened.

### III.   <u>Legal Standard</u>

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) seeks to dispose of a case on the basis of the underlying substantive merits of the parties' claims as they are revealed in the formal pleadings.   <u>See</u> 5C Wright & Miller, <u>Federal Practice and Procedure</u> Civil 3d § 1367 (2007). When considering a motion for judgment on the pleadings pursuant to Rule 12(c), a court should apply the same standard as when considering a motion to dismiss pursuant to Rule 12(b)(6).   <u>See</u> <u>Burbach Broadcasting Co. of Del. v. Elkins Radio,</u> 278 F.3d 401, 405-06 (4th Cir. 2002).   Thus, the allegations in the complaint must be construed favorably to the plaintiff.   <u>Bruce v. Riddle</u>, 631 F.2d 272, 274 (4th Cir. 1980).   Dismissal is warranted only if a court finds "beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief."   <u>Id.</u>

3

IV.  <u>Discussion</u>

The Peirce Firm argues that it is entitled to judgment on the pleadings as to CSX's negligence claims because the firm owed no duty of care to CSX in the evaluation, investigation, or filing of client Ricky May's asbestos claim.  The Peirce Firm contends that counsel representing a party in civil litigation has no duty under the law of negligence, the breach of which would result in liability to the adverse party.  CSX argues, on the other hand, that the rule relied on by the Peirce Firm amounts only to a litigation privilege.  Accordingly, CSX asserts that the Peirce Firm cannot escape liability for negligence in this case because the negligence allegations concern activities that occurred outside the context of a pending civil matter (i.e. during the screening process prior to the filing of a civil lawsuit).  In the alternative, CSX argues that, even if the Peirce Firm owed it no general duty of care, special circumstances existed such that the Peirce Firm was under a special, if not court-imposed, duty to ensure that the information generated at the firm's screenings and later provided to CSX was correct and genuine.

The question of whether a duty of care exists in connection with a claim of negligence is a question of law.  <u>Aikens v. Debow</u>, 541 S.E.2d 576 (W. Va. 2000).  Because jurisdiction in this case is based on diversity of citizenship, the applicable substantive law

4

that must be applied is West Virginia state law.  <u>See</u> <u>Erie R. Co.</u> <u>v. Tompkins</u>, 304 U.S. 64 (1938).

The Peirce Firm argues that the Supreme Court of Appeals of West Virginia's recent decision in <u>Clark v. Druckman</u>, 624 S.E.2d 864 (W. Va. 2005), is determinative in this case.  <u>Clark</u> involved a claim by a physician against several attorneys who had brought a medical malpractice action against her on behalf of a former patient.  <u>Clark</u>, 624 S.E.2d at 866.  The physician, Dr. Clark, alleged that the plaintiff's attorneys negligently disclosed expert witnesses as to causation and the standard of care.  Specifically, Dr. Clark alleged that the plaintiff's attorneys had never spoken to the identified expert witnesses nor obtained opinions from them regarding her alleged medical malpractice prior to disclosing the names of those witnesses to Dr. Clark and the court.  Following oral argument, the circuit court certified the following question to the Supreme Court of Appeals regarding an attorney's liability for negligence:

> (1) Whether an attorney for a party in a lawsuit owes a duty of care to that party's adversary in the lawsuit such that the adversary may assert a cause of action for negligence against the opposing attorney?

<u>Clark</u>, 624 S.E.2d at 868.  The Supreme Court of Appeals held that the question must be answered in the negative.  The Court stated that it could "find no justification for imposing a duty of care in favor of an opposing party upon counsel." <u>Id.</u> at 869.  Therefore, the Peirce Firm argues that under West Virginia law it cannot be

5

held liable in negligence to CSX for its role in evaluating, investigating, and filing Mr. May's asbestos claim.

CSX contends that the Peirce Firm reads <u>Clark</u> too broadly. CSX asserts that the Court recognized an exception to general negligence liability <u>only</u> as to the actions of attorneys in an <u>ongoing</u> civil lawsuit. In other words, CSX argues that the Peirce Firm is not entitled to judgment on the pleadings because the negligence counts in CSX's complaint focus on alleged acts and omissions of the firm that occurred during the screening process, which was prior to the filing of any civil litigation on behalf of Mr. May.

The issue of at what point in time the "no duty to an adversary" exception is triggered to shield attorneys from liability for negligence was not directly addressed in <u>Clark</u>. The Peirce Firm argues that if the Court had intended to announce a "no duty" rule which begins only with the actual filing of a claim or with formation of an attorney-client relationship, the Court would have so stated. However, because <u>Clark</u> involved negligence claims for actions that occurred only during pending litigation, the issue of when the "no duty" exception is triggered was not before the Supreme Court of Appeals and it was unnecessary for the Court to comment thereon. Nonetheless, this Court finds that <u>Clark</u>, while not directly onpoint, when read in conjunction with the cases from

other jurisdictions that were cited favorably by the Court in Clark,[1] supports the Peirce Firm's position.

In Clark, the Court looked to precedent from various jurisdictions to support its decision that an attorney does not have a duty to an opposing party the breach of which would subject the attorney to liability.  Although the factual posture of Clark made it unnecessary to rule on whether the "no duty" exception takes effect prior to the initiation of suit, a number of jurisdictions have reached the issue.  For instance, in McKenna Long & Aldrige, LLP v. Keller, 598 S.E.2d 892, 894 (Ga. App. 2004), the court held that an attorney owed no duty to investigate before sending a demand letter, prior to the filing of any civil litigation, to an adversary on behalf of a client.  The Court in Clark quoted favorably the following language from McKenna:

> "[N]o cause of action in negligence [can] lie because the overriding public policy guarding free access to the courts and the fact that the attorney's legal duty is to his own client demand[s] a finding that the attorney owe[s] no duty to an adverse party that would give rise to a claim in negligence, whether to investigate fully the client's claim prior to filing suit or to avoid filing a suit which he knew or should have known was frivolous."

---

[1]When state law is unsettled, a federal court must attempt to predict how the state's highest court would rule if confronted with the issue.  See Comm'r of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1967); Mills v. GAF Corp., 20 F.3d 678, 681 (6th Cir. 1994)("[w]here the state supreme court has not spoken, our task is to discern how that court would respond if confronted with the issue.")

Clark, 624 S.E.2d at 869 (emphasis added).  Similarly, the court in
Tappen v. Ager, 599 F.2d 376 (10th Cir. 1979), held that an
attorney cannot be liable in negligence to the adverse party for
inadequately investigating the claims of a client prior to filing
a lawsuit.  The court reasoned that "an adverse party cannot, under
the law, rely on the opposing lawyer to protect him from harm."
Tappen, 599 F.2d at 379.  Rather, because of the adversary nature
of lawsuits, a "lawyer's duty of care is to his client and to the
court" not to the opposing party.  Id.

Courts which have addressed the issue have uniformly found
that an attorney does not owe a legal duty to the opposing party in
evaluating, investigating, or litigating a lawsuit.  See id.; Brody
v. Ruby, 267 N.W.2d 902 (Iowa 1978)(holding that an attorney cannot
be held liable in negligence for failing to investigate the facts
and circumstances surrounding a medical malpractice claim before
filing suit); Friedman v. Dozorc, 312 N.W.2d 585 (Mich. 1981)
(holding that an attorney does not have a legal duty to the adverse
party to conduct an investigation and re-examination of the facts
and law prior to filing suit on behalf of a client); Norton v.
Hines, 49 Cal. App. 3d 917 (1975)(holding that attorneys can be
held liable to the opposing party for malicious prosecution but not
for simple negligence).  The public policy concerns addressed by
the Supreme Court of Appeals of West Virginia in Clark compel the
same conclusion.  The Court recognized that "the creation of a duty

8

in favor of an adversary of the attorney's client would create an unacceptable conflict of interest which would seriously hamper an attorney's effectiveness as counsel for his client." Clark, 624 S.E.2d at 869 (citing Friedman, 312 N.W.2d at 591-92). Further, the "overriding public policy guarding free access to the courts" weighs heavily against placing a duty upon an attorney to a non-client in an adversarial situation. Id. (citing McKenna, 598 S.E.2d at 894).

Accordingly, this Court finds that if directly confronted with the issue of whether the "no duty" exception it announced in Clark applies to the evaluation and investigation of cases prior to the commencement of ligation, the Supreme Court of Appeals of West Virginia would answer in the affirmative. Thus, the Peirce Firm was under no general legal duty to CSX to take particular precautions when screening its clients[2] and evaluating potential claims.

Nonetheless, CSX maintains that the Peirce Firm was under a special duty to ensure that the information it presented to CSX was accurate. CSX argues that such special duty arose because of the

---

[2]All individuals who participate in screenings conducted by the Peirce Firm are first required to execute a "power of attorney" in which the individual appoints the Peirce Firm to represent him/her in "any claim for damages [the individual] may have as a result of exposure to asbestos against the railroad." (Aff. of Robert N. Peirce, Jr.) Thus, an attorney-client relationship arose between the firm and Mr. May before x-rays were taken and before a decision was made to file a claim on behalf of Mr. May.

mediation procedures used by the circuit court to manage asbestos cases. CSX contends that the mediation procedures required CSX to rely on the information provided by the Peirce Firm such that CSX was essentially a third-party beneficiary of the firm's work.

As a general rule, attorneys are not liable for professional negligence to persons other than their clients. See Clark, 624 S.E.2d at 870 (citing Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A., 892 P.2d 230, 235 (Colo. 1995)("an attorney is not liable to a non-client absent a finding of fraud or malicious conduct."). However, in some instances the liability of an attorney to a third-party is recognized where one of the purposes of the representation is to benefit that third-party. See Calvert v. Scharf, 619 S.E.2d 197, 205 (W. Va. 2005).

Contrary to CSX's assertions, nothing in the mediation order entered by the circuit court imposed a special duty of care on the attorneys who were representing asbestos claimants. The mediation order provided that any cases which could not be resolved by mediation would be transferred to the trial docket whereupon full discovery could commence. See Pl.'s Resp., Ex. B, ¶ 11. Thus, CSX was not required to settle each and every claim based only on the information provided by the plaintiff's attorneys. Additionally, as CSX concedes, CSX is clearly not the typical third-party beneficiary of an attorney's work. Indeed, the third-party beneficiary concept is at odds with the adversary nature of

litigation.   See Tappen, 599 F.2d at 379.   "A person whose relationship is adverse to the client cannot be a beneficiary of the attorney's retention." 1 Ronald E. Mullin & Jeffrey M. Smith, Legal Malpractice § 7.8 (2006 ed.).   In the adversarial system, a lawyer's duty of care is to his client and to the court, not to the opposing party.   See Tappan, 599 F.3d at 379.   Thus, this Court finds that no special circumstances existed in this case that would justify imposing a duty of care on the Peirce Firm in favor of CSX, the party-opponent.

Accordingly, the Peirce Firm was under no legal duty to CSX in the evaluation, investigation and filing of Mr. May's asbestos claim, the breach of which would result in liability for negligence.   In the absence of a legal duty, liability for negligence cannot arise.   Therefore, the Peirce Firm's motion for judgment on the pleadings as to Counts III, IV, and V must be granted.

V.   Conclusion

For the above-stated reasons, Peirce, Raimond & Coulter, P.C.'s motion for partial judgment on the pleadings as to Counts III, IV, and V is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

11

DATED:     March 16, 2007


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE