IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CSX TRANSPORTATION, INC.,

    Plaintiff,

v.                                      Civil Action No. 5:05CV202
                                                        (STAMP)
ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation,
ROBERT PEIRCE, JR., LOUIS A. RAIMOND,
MARK T. COULTER and RAY HARRON, M.D.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING RAY HARRON, M.D.'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

I.   Background

As stated in several other opinions in this case, a full recitation of the background facts is unnecessary in this memorandum opinion and order because "[t]he genesis, facts, and procedural history of this case are familiar territory." (Order at 1, Nov. 3, 2008.) The Court believes, therefore, that the following abbreviated summary is sufficient for the purpose of resolving the motion currently pending before it. On December 22, 2005, CSX Transportation, Inc. ("CSX") commenced the above-styled civil action based upon allegations that Robert Gilkison ("Gilkison") and Peirce, Raimond & Coulter, P.C. ("the Peirce Firm") knowingly and negligently aided a client, Ricky May, in pursuing a fraudulent asbestos claim against CSX. The complaint

asserted fraud, negligence,[1] and punitive damages claims against Gilkison and the Peirce Firm.

On June 20, 2007, this Court granted CSX leave to amend its complaint to state additional fraud claims with the requisite particularity.  CSX filed its amended complaint on July 5, 2007, adding claims for civil RICO, civil RICO conspiracy, common law fraud, and civil conspiracy against four new defendants--Robert Peirce, Jr., Louis A. Raimond, Mark Coulter (collectively "the lawyer defendants"), and Ray Harron, M.D. ("Dr. Harron"). Thereafter, the lawyer defendants filed a motion to dismiss Counts I through IV (the newly added counts) of the plaintiff's amended complaint.[2]  Dr. Harron also filed a motion to dismiss each of the counts against him in the amended complaint.[3]

On March 28, 2008, this Court entered a memorandum opinion and order granting the lawyer defendants' motion to dismiss as to Counts I and II and denying their motion to dismiss as to Counts III and IV.  Thereafter, this Court entered a second memorandum opinion and order granting Dr. Harron's motion to dismiss as to Count II and denying his motion to dismiss as to Counts IV and VII.

---

[1]On March 17, 2007, pursuant to a motion by the Peirce Firm, this Court granted partial summary judgment on the pleadings as to the negligence counts.

[2]The Peirce Firm also joined in the motion to dismiss filed by the lawyer defendants.

[3]CSX names Dr. Harron in three counts of its complaint: Count II (civil RICO conspiracy), Count IV (civil conspiracy), and Count VII (punitive damages).

After this Court entered these two opinions and orders, CSX filed two motions for reconsideration, requesting that this Court reconsider its memorandum opinion and order granting in part and denying in part the lawyer defendants' motion to dismiss Counts I through IV of the amended complaint, as well as its memorandum opinion and order granting in part and denying in part Dr. Harron's motion to dismiss the amended complaint.  This Court denied both of CSX's motions for reconsideration.

CSX then filed a motion for leave to file a second amended complaint in which it alleged that Dr. Harron and the lawyer defendants fabricated and prosecuted eleven additional objectively baseless asbestos claims against CSX.  Finding that CSX was dilatory in their request to amend their complaint, that a second amendment to the complaint would only be futile, and that allowing CSX to file a second amended complaint would unduly prejudice the defendants, this Court denied CSX's motion.

Currently before this Court is Dr. Harron's motion to dismiss for lack of subject matter jurisdiction.  Because this Court granted, in part, Dr. Harron's previous motion to dismiss, the only remaining claim against Dr. Harron is a common law civil conspiracy claim.  This common law civil conspiracy claim arises out of an alleged fraudulent asbestosis claim filed against CSX in West Virginia state court on behalf of Mr. Earl Baylor ("Baylor litigation").  Dr. Harron's motion to dismiss has been fully briefed by the parties and is ready for disposition by this Court.

3

For the reasons set forth below, this Court denies Dr. Harron's motion to dismiss for lack of subject matter jurisdiction.

## II.   Applicable Law

The burden of proving subject matter jurisdiction on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is on the plaintiff, the party asserting jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Mims v. Kemp, 516 F.2d 21 (4th Cir. 1975).  A lack of subject matter jurisdiction may be asserted at any time by any interested party either in the form of the answer or in the form of a suggestion to the court prior to final judgment.  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 201-02 (2d ed. 1990).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  See Materson v. Stokes, 166 F.R.D. 368, 371 (E.D. Va. 1996).  Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  See Fed. R. Civ. P. 12(h)(3).

III. <u>Discussion</u>

In his motion to dismiss, Dr. Harron argues that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because this Court lacks diversity jurisdiction. Specifically, Dr. Harron alleges that the amended complaint fails to allege facts supporting an amount in controversy greater than the jurisdictional minimum of $75,000.00. Although it does not request a specific amount, CSX is seeking, as damages for the alleged civil conspiracy, "the amount of money it spent to defend and settle the fabricated asbestosis claims," Am. Compl. ¶ 102, punitive damages in an unspecified amount, and costs and attorneys' fees. Dr. Harron contends that these damages cannot satisfy the amount in controversy requirement. CSX argues, alternatively, that it has pleaded facts in support of compensatory and punitive damages in an amount sufficient to satisfy the jurisdictional amount.

A district court has diversity jurisdiction over any civil action between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). The plaintiff, the party asserting jurisdiction, bears the burden of demonstrating that subject matter jurisdiction exists. See <u>Adams</u>, 697 F.2d at 1219. The general rule governing dismissal for want of jurisdiction in federal cases is that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." <u>St. Paul Mercury Indem. Co. v. Redcap Co.</u>, 303 U.S. 283, 288-80 (1938). It must appear to a legal

5

certainty that the claim is really for less than the jurisdictional amount to justify dismissal.  Id.

In this case, CSX's counsel, Marc E. Williams, avers that prior to the filing of this civil action, CSX incurred legal fees and expenses in the amount of $75,989.21 in the defense of Mr. Baylor's asbestosis claims as part of the Charles Adams, et al. v. CSXT litigation ("Adams litigation"), Civil Action No. 06-C-72, in the Circuit Court of Harrison County, West Virginia. Additionally, Mr. Williams and Samuel L. Tarry, also counsel for CSX, assert that they have incurred $67,878.01[4] in legal fees and expenses in the investigation and prosecution of Mr. Baylor's fraud claim in this civil action, and that as this case proceeds, they will continue to incur additional fees and expenses.  Finally, CSX claims that punitive damages, which it seeks in this case, can be used to satisfy the amount in controversy.  Dr. Harron argues that the legal fees paid to litigate Mr. Baylor's asbestosis claims in the Adams litigation, the legal fees in this action, as well as the punitive damages, cannot be used to satisfy the amount in controversy requirement.

This Court finds that the estimate of attorneys' fees provided by CSX, combined with the possibility of punitive damages, is

---

[4]CSX's response in opposition to Dr. Harron's motion to dismiss states that CSX has incurred $67,877.96 in fees in the investigation and prosecution of the Earl Baylor fraud claim. Nevertheless, the Affidavit of Samuel L. Tarry and the Affidavit of Marc E. Williams state that the collective legal fees incurred to date are $67,878.01.  (Pl.'s Resp. Ex. E.)

sufficient to establish diversity jurisdiction in this case. A civil conspiracy is

> a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. <u>The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.</u>

<u>Dixon v. Am. Indus. Leasing Co.</u>, 253 S.E.2d 150, 152 (W. Va. 1979) (emphasis added). More specifically, in a cause of action for conspiracy to defraud, the plaintiff must prove "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud." <u>Bosak v. McDonough</u>, 549 N.E.2d 643, 646 (Ill. App. 3d 1989). Further, "individuals who have conspired with one another to orchestrate and/or carry out a fraudulent plan or scheme can be held liable for their conduct." <u>Hays v. Bankers Trust Co. of Cal.</u>, 46 F. Supp. 2d 490, 498 (S.D.W. Va. 1999). However, "where the plaintiff is unable to establish the underlying cause of action for fraud, the cause of action for conspiracy to defraud must also fail." 16 Am. Jur. 2d <u>Conspiracy</u> § 63 (1998).

Here, the remaining claim against Dr. Harron is not created by the conspiracy, itself, but by the underlying wrongful acts of the defendants to orchestrate, fabricate, and prosecute objectively baseless and fraudulent asbestosis claims against CSX. <u>Dixon</u>, 253 S.E.2d at 152; <u>Hays</u>, 46 F. Supp. 2d at 498. It is well-established that under West Virginia law, a plaintiff who has been injured by the fraudulent conduct of a defendant is entitled to an award of

attorneys' fees. <u>Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc.</u>, 425 S.E.2d 144 (W. Va. 1992).  This Court has previously held that because attorneys' fees are legally available for a claim of fraud under West Virginia law, that such fees may be included in the jurisdictional requirement calculation.  <u>CSX Transp., Inc. v. May</u>, Civil Action No. 5:04CV83, Docket No. 14.  Persuasive authority exists to support the application of a rule that a clearly established common law basis for awarding attorneys' fees justifies including a reasonable estimate of attorneys' fees in the amount in controversy.  See <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1305 (11th Cir. 2001); <u>Ross v. Inter-Ocean Ins. Co.</u>, 693 F.2d 659, 661 (7th Cir. 1982) (noting that a reasonable estimate of attorneys' fees may be included in the amount in controversy "where a litigant has a right, based on contract, statute, or other legal authority, to an award of attorney fees").  Therefore, this Court finds that because West Virginia law permits recovery of attorneys' fees for fraud claims, the recovery of attorneys' fees in a civil conspiracy case to defraud is also tenable.[5]

This Court also notes that Dr. Harron does not dispute the availability of punitive damages in this case, only that punitive damages do not satisfy the jurisdictional amount in controversy. "In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to

---

[5]This memorandum opinion and order does not comment on the merits of the claim against Dr. Harron, nor does it consider the reasonableness of the legal fees.

civil obligations affecting the rights of others appear . . . the jury may assess exemplary, punitive or vindictive damages." Wells v. Smith, 297 S.E.2d 872, 877 (W. Va. 1982), overruled in part on other grounds by Garnes v. Fleming Landfill, Inc., 413 S.E.2d 897 (W. Va. 1991). These same principles apply to conspiracy claims. 16 Am. Jur. 2d Conspiracy § 71 (1998).

Accordingly, given the above findings, this Court must conclude that the plaintiff has adequately proven that the amount in controversy exceeds the jurisdictional requirement. Counsel for CSX has submitted affidavits showing that CSX has incurred, to date, $67,878.01 in legal fees in the investigation and prosecution of this matter. This amount, taken with the potential for punitive damages, demonstrates sufficiently to this Court that the jurisdictional requirement is satisfied in regard to the Baylor litigation. This Court, therefore, must conclude that CSX has adequately demonstrated that subject matter jurisdiction exists in this case.[6]

## IV. Conclusion

For the reasons stated above, the defendant Ray Harron M.D.'s motion to dismiss for lack of subject matter jurisdiction is DENIED.

IT IS SO ORDERED.

---

[6] Because this Court concludes that the estimate of attorneys' fees provided by CSX, together with punitive damages, is sufficient to establish diversity jurisdiction, it is unnecessary to address Dr. Harron's challenge to the legal fees incurred through the Adams litigation.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   February 19, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE