IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CSX TRANSPORTATION, INC.,

        Plaintiff,

v.                                                                      Civil Action: 5:05-CV-202
                                                                    (Judge Stamp)

ROBERT V. GILKISON, *et al.*,

        Defendants.

**<u>MEMORANDUM, OPINION, and ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL RESPONSES TO ITS FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT, ROBERT PEIRCE, JR.</u>**

On May 1, 2009, came the above named Plaintiff, by J. David Bolen, in person, Defendant Peirce, Raimond & Coulter, P.C. *aka* Robert Peirce & Associates, P.C. and the lawyer defendants, by David Walter P. DeForest, in person, Defendant Dr. Ray A. Harron by Elizabeth Johnson and Jerald Jones, via telephone, and Interested Party, Richard Cassoff, M.D., by Elgine McArdle and David Strassburger for an evidentiary hearing and argument on Plaintiff's Motion to Compel Responses to its First Requests for Production of Documents to Defendant, Robert Peirce, Jr. Testimony was taken from Robert Peirce, Jr. No other evidence was introduced.

I. Introduction

A.    <u>Background</u>.

This case involves allegations of fraud. Defendant, Peirce, Raimond & Coulter, PC is a law firm who represented persons bringing asbestosis claims against Plaintiff. Defendant used health screenings to determine persons with potential claims against Plaintiff. Plaintiff alleges that on one occasion a man named Danny Jayne participated in a screening and was found by

Defendant's radiologist to have symptoms consistent with asbestosis.  It is further alleged that one Ricky May attended a screening and tested negative for asbestosis.  May later arranged for Jayne to attend a second screening in his place to obtain a fraudulent chest x-ray showing asbestosis.  Plaintiff alleges Defendant Gilkison, who was an employee of the law firm, facilitated this fraud, and that Defendant later ratified his actions.  Plaintiff eventually settled a lawsuit with May.  In July, 2007, Plaintiff amended its Complaint to include Dr. Ray A. Harron and the three lawyers individually as defendants.  Plaintiff alleges that Dr. Harron conspired with the lawyer defendants.  Plaintiff alleges that Dr. Harron was hired by the Peirce Firm because of his willingness to read unusually large numbers of x-rays at a time.  Plaintiff alleges that lawyer Peirce possessed medical evidence demonstrating that one Earl Baylor did not have asbestosis prior to their bringing Mr. Baylor's claim against CSX.  The goal, says Plaintiff, was to deliberately orchestrate the asbestosis screenings so as to maximize the likelihood of false positive diagnoses.

Plaintiff has sought discovery to determine the roles of the lawyer defendants in the alleged conspiracy. A dispute arose over certain documents.  Plaintiff served its first requests for production of documents on the lawyer defendants on January 29, 2009.  The discovery was due on March 3, 2009.  The parties agreed that the lawyer defendants would produce non-privileged information from the Baylor file related to the claim against CSX by that date and would follow up with other documents and actual responses and a privilege log within 14 days.  The lawyer defendants failed to produce any correspondence between The Peirce Firm and the lawyer defendants and Baylor, nor did it include any Peirce firm internal documents relating to Mr. Baylor.  Plaintiff believes that certain of the documents withheld are relevant, non-privileged and

responsive to CSX's requests. Plaintiff filed its Motion to Compel on April 16, 2009. Defendant Peirce responded on April 21, 2009. This Court set an evidentiary hearing and argument on the Motion to Compel for May 1, 2009. The hearing was held on that date.

B.  The Motion.

Plaintiff's Motion to Compel Responses to Its First Set of Requests for Production of Documents to Robert Peirce, Jr.[1]

C.  Decision.

Plaintiff's Motion to Compel is GRANTED because the crime-fraud exception or lawyer misconduct or both allow discovery of documents otherwise protected by the attorney-client privilege or the work product doctrine if the documents contain information which would impeach the testimony of the lawyer accused of misconduct, fraud or lack of knowledge.

## II. Facts

1.  On July 5, 2007, Plaintiff amended its Complaint to include Dr. Harron as a Defendant.[2] CSX alleged that Dr. Harron was part of an ongoing conspiracy with his Co-Defendants and has engaged in fraudulent conduct while working as a B-reader and that he either recklessly disregarded or deliberately misrepresented the contend of the x-rays he read for and on behalf of Defendant Peirce, Raimond & Coulter, P.C.

2.  On March 28, 2008, Judge Stamp entered a Memorandum Opinion and Order limiting this case only to claims related to Earl Baylor.[3]

---

[1] Docket No. 463

[2] Docket No. 208

[3] Docket No. 264

4. On July 13, 2008, Judge Stamp entered an Order Staying Discovery pending resolution of any and all motions to dismiss, motions to strike, or other appropriate motions pursuant to Federal Rules of Civil Procedure 12 or 15. Judge Stamp also denied CSX's request to extend the deadline for Phase I discovery.[4]

5. A status and scheduling conference was held before Judge Stamp on December 3, 2008. On December 8, 2008, Judge Stamp entered the Scheduling Order.[5] All discovery was to have been "fully served and completed by April 2, 2009."

6. Plaintiff served Defendant Robert Peirce Jr. with its First Request for Production of Documents on January 29, 2009.[6]

7. Defendant Peirce served his responses on March 17, 2009.[7]

8. Plaintiff filed its Motion to Compel directed at Defendant Peirce on April 16, 2009.

9. A hearing on the Motion to Compel was held on May 1, 2009.

10. At the hearing, the parties were directed to supplement their initial memoranda.

11. Plaintiff filed its Supplemental Memorandum of Law in Support of Its Motion to Compel Responses to Its First Requests for Production of Documents to Robert Peirce, Jr. on May 8, 2009.[8]

12. Defendant Peirce filed his Supplemental Brief in Opposition to Plaintiff CSX

---

[4] Docket No. 224

[5] Docket No. 293

[6] Docket No. 323

[7] Docket No. 388

[8] Docket No. 517

Transportation Inc.'s Motion to Compel on May 8, 2009.[9]

13. Defendant Peirce took the stand and testified that he personally did not have any of the documents in question, but rather they were in possession of his law firm, a defendant in this case. He further testified that the data base at issue contains work product protected by the applicable privilege. He also explained that the questionnaires requested contain advice given to clients and was thus a privileged communication between attorney and client.

### III. Plaintiff's Motion to Compel Responses to Its First Requests for Production of Documents to Defendant Robert Peirce, Jr.

A. <u>Contentions of the Parties</u>

CSX contends the documents at issue are preprinted diagnosis forms and related correspondence as well as documents relating to Earl Baylor's "Asbestos Questionnaire" and negative CT scan. At oral argument, counsel for CSX narrowed the requests. CSX wants to know when the CT scan that Mr. Baylor's physician had performed was sent to the Peirce Firm. CSX argued that it should be able to show a jury a document that shows exactly when the Peirce Firm received the document because the CT scan is central to the case. Counsel made it clear he was not seeking all documents related to the negative CT scan, but only the document that would show when the Peirce Firm received the scan. As for the "Asbestos Questionnaire," counsel for CSX argued that the correspondence was basically form letters with boilerplate language that were sent out to multiple clients and all of the documents were identical. Counsel argued that these types of documents are not covered by the attorney/client privilege. In its brief to the Court, CSX cited <u>In re Wilkerson</u>, 393 B.R. 734, 742 (Bankr. D. Colo. 2008) to support this

---

[9] Docket No. 518

5

contention.  In re Wilkerson held that when an "identical document, with the possible exception of the address and case reference, is supplied to clients other than the [client at issue], it is hardly a confidential communication.  Such form letters are not privileged."  Id.  CSX argues that this same logic applies to the letters that were sent instructing potential clients how to fill out the questionnaires.  CSX argues that the work-product doctrine is inapplicable because the documents do not contain any attorney's impressions, but are rather purely facts that explain how to fill out the questionnaire.

Defendant argued that the concept of work product applies to the computer data base.  However, Defendant informed the Court that he had provided Plaintiff with the information regarding the negative CT scan.  Defense counsel offered to answer in interrogatory format, but Plaintiff's counsel declined.  Therefore, in its brief before this Court, Defendant noted "The CT scan appears to have been logged into the Peirce Firm's data base on or about December 15, 2003 by Tracy Unger.  The Peirce Firm files do not explicitly reference the CT scan sent by Mr. Baylor, but December 15, 2003 is the first reference to receiving information after the November 9, 2003 date of the CT scan."  (Def. Br. P. 7).  Defendant then cites Duplan Corporation v. Moulinage, 509 F.2d 730 (4th Cir.) for the proposition that if something is generated as work product in one case, that privilege is to be respected in other cases as well.  At the hearing, Defendant Peirce testified that he intended all of the communications to be protected from discovery by either the attorney-client privilege or the work product doctrine.

At the hearing, the parties were asked to brief the Court on the issue of waiver of attorney/client privilege where the testimony of a witness can be impeached by a privilege-protected document.  Both parties submitted supplemental briefs on the issue.

6

Plaintiff CSX advised in its brief that it had received Earl Baylor's "Asbestos Questionnaire." However, CSX contends that the handwriting on the document appears to be from two different individuals. CSX maintains that this underscores its need to discover the "Sample Questionnaire" and other related correspondence Peirce sent to Baylor. CSX argues that "a lawyer's unprofessional behavior may vitiate the work product privilege." Moody v. Internal Rev. Serv., 654 F.2d 795, 800 (D.C. Cir. 1981). More pertinent, however, is CSX's citing of In re Impounded Case, 840 F.2d 196, 198 (3d. Cir. 1988) for the proposition that lawyer misconduct may eviscerate both work product protection and the attorney-client privilege. Furthermore, CSX argues that the requested documents are also discoverable under the rule enunciated in In re S. & E. Dist. Asbestos Litig., 730 F. Supp. 582 (S.D.N.Y. 1990). There, the district court held that a memorandum, "which appears on its face to be privileged and which for present purposes we presume not to have been knowingly and voluntarily disclosed to any third party," was nevertheless discoverable because it was necessary to impeach a party's testimony as to lack of knowledge. Id. at 584-85. CSX argues that documentation relating to the Peirce Firm's receipt of Baylor's negative CT scan is necessary to potentially impeach Peirce's claim that he was not aware of the negative CT scan, as well as his claim that the scan was only maintained in the bankruptcy trust file. Lastly, CSX argues that documentation relating to Baylor's Asbestos Questionnaire is necessary to potentially impeach Peirce's claim that he had a good faith evidentiary basis to believe that Baylor was exposed to asbestos as a CSX employee.

In his supplemental brief, Defendant Peirce argued that In re S. & E. Dist. Asbestos Litig. dealt with the issue of admissibility and not protection from disclosure of a previously undisclosed document. Defendant Peirce argued that it was central to the In re S. & E.

7

Dist.Asbestos Litig. ruling that there had already been a waiver of the attorney-client privilege on the document in question. Peirce argues that there has been no such waiver of that privilege in this case.

B.      Discussion

The parties had initially narrowed the dispute to the following categories of documents: 1) all blank preprinted asbestosis diagnosis forms sent by the Peirce Firm to Baylor and related correspondence; 2) correspondence relating to the admittedly non-privileged "Asbestos Questionnaire" generated by the Peirce Firm and completed by Baylor for the purposes of disclosure and settlement; and 3) correspondence or internal Peirce Firm documents relating to Baylor's negative CT scan.

At the hearing, the dispute was narrowed even further. Plaintiff's counsel advised the Court that CSX was not seeking all documents related to the negative CT scan, but only the document that would show when the Peirce Firm received the scan. Defendant responded to this request in his brief before this Court. Therefore, Defendant is ordered to produce the notation in the file that references when the Peirce Firm received the scan.[10]

Plaintiff's supplemental brief indicated that CSX received Earl Baylor's "Asbestosis Questionnaire." Therefore, the documents at issue before this Court in the present motion are the blank preprinted asbestosis diagnosis forms sent by the Peirce Firm to Baylor and related

---

[10] Furthermore, In re S. & E. Dist. Litig., 730 F. Supp. 582, 584-85 (S.D.N.Y. 1990) held that a memorandum, "which appears on its face to be privileged and which for present purposes we presume not to have been knowingly and voluntarily disclosed to any third party," was nevertheless discoverable because it was necessary to impeach a party's testimony as to lack of knowledge. In this case, the documents regarding Baylor's CT scan are necessary to impeach Peirce's claim that he was not aware of the negative CT scan. Also, documentation relating to Baylor's Asbestos Questionnaire are necessary to impeach Peirce's claim that he had a good faith basis to believe Baylor was exposed to asbestosis as a CSX employee.

8

correspondence, as well as correspondence relating to the "Asbestos Questionnaire" generated by the Peirce Firm and completed by Baylor for the purposes of disclosure and settlement. These documents are central to CSX's contention that the defendants in this case have fabricated personal injury claims and evidence.

Rule 26(b)(1) states that parties may seek discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Information subject to discovery "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Courts have consistently held this Rule provides for extremely liberal treatment of what may be obtained in discovery. Pacitti by Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999).

However, even the liberal rules of discovery are not absolute. The attorney-client privilege exists to prevent compelled disclosure of confidential communications between an attorney and a client. This confidential relationship is the backbone of our judiciary. Attorneys and their clients need to know that they are free to communicate openly so as to ensure the most adequate and effective representation. Because Defendant only claimed work product doctrine protection for the files related to the CT scan, and because this issue has been addressed both by Defendant's Opposition to Plaintiff's Motion to Compel and by this Court above, the Court need only address the issue of attorney-client privilege in relation to the remaining documents at issue.

In diversity cases such as this one, the Court applies state law to issues concerning attorney client privilege and federal law to assertions of the work product doctrine. Nicholas v. Bituminous Cas. Co., 235 F.R.D. 325, 329 n. 2 (N.D. W. Va. 2006). See also Bradley v. Sunbeam Corp., 2003 U.S. Dist. LEXIS 14451 *4 (N.D. W. Va. August 4, 2003); Baker v. Gen.

Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 1999) (en banc). Pyramid Controls, Inc. v. Siemens Indus. Automations, 176 F.R.D. 269 (N.D. Ill. 1997).

Traditional attorney-client privileged material is virtually undiscoverable. State ex rel. Brison v. Kaufman, 213 W. Va. 624 (2003). The West Virginia Supreme Court of Appeals has held there are three elements necessary to the assertion of privilege: "(1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential." State ex rel. Med. Assur. of W. Va., Inc. v. Recht, 213 W. Va. 457, 466, 583 S.E.2d 80, 89 (2003). "As the attorney-client privilege and the work product exception may result in the exclusion of evidence which is otherwise relevant and material and are antagonistic to the notion of the fullest disclosure of the facts, courts are obligated to strictly limit the privilege and exception to the purpose for which they exist." State ex. rel. United States Fidelity and Guar. Co. v. Canady, 194 W. Va. 431, 438, 460 S.E.2d 677, 684 (1995). Furthermore, communications made in confidence either by an attorney or a client to one another are protected by the attorney-client privilege. See State ex rel. Medical Assurance of West Virginia, Inc. v. Recht, 213 W. Va. 457 (2003). Communications falling under the attorney-client privilege are protected whether they are made verbally or in writing, including electronic email messages. Id. The person asserting the privilege has the burden of showing it applies. Id.[11]

---

[11] Defendant Peirce testified that he intended all of the communications at issue to be confidential. The Court notes that this is only one element necessary to show the attorney-client privilege is applicable. The Court does not doubt that Defendant Peirce intended the communications to be confidential. However, this is not determinative as to the crime fraud and misconduct exceptions to the rule.

In order for the attorney-client privilege to be applicable "there must be no evidence that the client intentionally waived the privilege." Id. at 442 (citing State ex rel. Doe v. Troisi, 194 W. Va. 28, 36 n. 11, 459 S.E.2d 139, 147 n. 11 (1995)). Putting the advice of an attorney at issue in a claim or defense will result in waiver. Id. Examples where waiver will occur include things like suits based on legal malpractice or asserting reliance on the advice of an attorney. Id. Furthermore, only confidential communications receive protection. Id. A person may not refuse to answer regarding an act within his knowledge simply because he tells his attorney about it. Id.

Of course, like the rules regarding discovery generally, the attorney-client privilege is not absolute. The "crime-fraud" exception to the attorney-client privilege is well settled law in West Virginia. The protections afforded by the attorney-client privilege may be overcome. "The crime fraud exception operated to remove the privilege attaching to communications between a client and his or her counsel that were made in furtherance of a fraudulent or criminal scheme." State of West Virginia ex rel. Allstate Ins. Co. v. Madden, 215 W.Va. 705, 716 (W.Va. 2004); See generally United States v. Zolin, 491 U.S. 554, 109 S. Ct. 2619, 105 L.Ed.2d 469 (1989); State ex rel. Medical Assurance of West Virginia, Inc. v. Recht, 213 W.Va. 457 at 472 (2003) (Davis, J., concurring).

Furthermore, in the absence of any West Virginia law directly on point, the Court looks to the Fourth Circuit and its sister circuits for direction. The Third Circuit addressed a similar issue in In re Impounded Case, 840 F.2d 196 (3d. Cir. 1988). There, the Third Circuit Court of Appeals relied upon Moody v. Internal Revenue Service, 654, F.2d 795 (D.C. Cir. 1981) to hold that lawyer misconduct may eviscerate both work product protection and the attorney-client

11

privilege.

The Moody court focused solely on the work product privilege. The court held that "at least in some circumstances, a lawyer's unprofessional behavior may vitiate the work product privilege." Id. at 800. Defendant would have this Court believe that Moody is inapplicable here. While this may be true, the Moody court laid the foundation for the court in In re Impounded Case to apply the same principles to both the attorney client privilege and the work product doctrine.

In In re Impounded Case federal agents executed a search warrant against a law firm based, in part, on allegations that:

> [I]n some instances, the law firm procured doctor's statements that overstated the treatment given, thus inflating the medical costs attributed to clients' injuries; these inflated cost figures were used by insurance companies arriving at settlement figures [and] the law firm engaged in the practice of fabricating insurance claims and causes of action.

In re Impounded Case, 840 F.2d 196 at 198. The Third Circuit rejected the law firm's contention that many of the seized documents were protected by either the attorney-client privilege or the work product doctrine. Judge Seitz put it best when disposing of the firm's argument that the crime-fraud exception to the attorney-client privilege does not apply to defeat the client's privilege where the pertinent criminality is solely that of the law firm:

> It is not apparent to us what interest is truly served by permitting an attorney to prevent this type of investigation of his own alleged criminal conduct by asserting an innocent client's privilege with respect to documents tending to show criminal activity by the lawyer. On the contrary, the values implicated, particularly the search for the truth, weigh heavily in favor of denying the privilege in these circumstances.

In re Impounded Case, 879 F.2d 1211, 1213-14 (3d. Cir. 1989) (citing Moody and other cases).

Of course, this case is not in the criminal context. In its civil action, CSX has alleged fraud

on the part of the law firm, the lawyer defendants and Dr. Harron. However, this Court believes the same principles laid out so eloquently by Judge Seitz apply here. Simply put, a lawyer or law firm may not engage in fraudulent or criminal activity and then hide behind any privilege to protect the firm's or the individual lawyer's interests. The Court believes that this is exactly what Defendant is attempting to do in this case.

V.  Decision

Plaintiff's Motion to Compel is **GRANTED**. Defendant Peirce is **ORDERED** to produce to Plaintiff all blank preprinted asbestosis diagnosis forms sent by the Peirce Firm to Baylor and related correspondence; all correspondence relating to the non-privileged "Asbestos Questionnaire" generated by the Peirce Firm and completed by Baylor for the purposes of disclosure and settlement; and correspondence or internal Peirce Firm documents relating to Baylor's negative CT scan. The Court will address the issues of reasonable expenses and sanctions at a later day.

Filing of objections does not stay this Order. Any party may, within eleven (11) days after being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West

Virginia.

DATE: May 29, 2009

                                                   */s/ James E. Seibert*
                                                   JAMES E. SEIBERT
                                                   UNITED STATES MAGISTRATE JUDGE