IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT WHEELING

CSX TRANSPORTATION, INC.,

      Plaintiff,

v.                                                    Civil Action No. 5:05-cv-202

ROBERT V. GILKISON, *et al.*,

      Defendants.

## PLAINTIFF, CSX TRANSPORTATION, INC.'S MOTION *IN LIMINE* TO EXCLUDE MEDICAL OR SCIENTIFIC TESTIMONY FROM DONALD BREYER, M.D. BEYOND HIS JANUARY 6, 2006 B READ OF EARL BAYLOR'S JUNE 11, 2003 X-RAY

Comes now Plaintiff, CSX Transportation, Inc. ("CSXT"), by and through its counsel, pursuant to Federal Rule of Civil Procedure 26(a) and Federal Rules of Evidence 403 and 702, and submits this Motion *In Limine* to Exclude Medical or Scientific Testimony from Donald Breyer, M.D. Beyond His January 6, 2006 B Read of Earl Baylor's June 11, 2003 X-Ray.

## INTRODUCTION

Having been disclosed as a fact witness only, Dr. Breyer's testimony should be limited to those matters of which he had first hand knowledge prior to the commencement of this lawsuit – i.e., his perfunctory B read of Mr. Baylor's June 11, 2003 screening x-ray. (*See* Breyer ILO dated January 6, 2006 (PEIRCE-EB 0002) (Exhibit 1).) Any other medical or scientific opinions – including, but not limited to, opinions regarding Mr. Baylor's 2003 CT scan[1] or CT scans in general – should be excluded as undisclosed expert testimony. Such testimony should also be

---

[1] As explained in prior filings, Mr. Baylor's high resolution chest CT was taken on November 19, 2003 at Self Memorial Hospital in his hometown of Greenwood, South Carolina. Dr. Christopher Knox, one of Mr. Baylor's personal physicians, interpreted the CT scan and found "no evidence to suggest interstitial lung disease [ ]" and further reported "no obvious pleural calcification seen to suggest prior asbestos exposure." (Nov. 19, 2003 Report of CT scan (PEIRCE EB 0013) (Exhibit 2).) It is indisputable that Baylor's negative chest CT was in the Peirce Firm's file for over two years before Peirce filed Baylor's claim against CSXT.

{H0505966.1 }

excluded under Rule 403 because it may mislead the jury as to what evidence Dr. Breyer had at the time he originally classified Mr. Baylor's x-ray.

## BACKGROUND

Dr. Breyer is a retired radiologist and B reader who resides in Oakland, California. (*See* Breyer Dep. 33 (May 8, 2009) (Exhibit 3).) He only performs B reads at the request of lawyers in connection with litigation – B reading has never been a part of his clinical practice. (*Id.* at 17-20.) Following Judge Jack's exposure of Dr. Harron as a fraud in July 2005, Peirce hired Dr. Breyer to "reread" thousands of screening x-rays previously read by Harron, including Earl Baylor's June 11, 2003 film. (*See* R. Daley Dep. 75-76 (May 5, 2009) (Exhibit 4).) Breyer does not consider Mr. Baylor or any of Peirce's other clients to be his patients. (*See* Exhibit 3 at 48:20-49:1.) Rather, Peirce sends Breyer x-rays en masse – in Mr. Baylor's case, along with 197 others and a check for $19,800.00 – and Breyer's services are limited to the completion of ILO forms. (*See* Letter from L. Phillips to D. Breyer (Jan. 4, 2006) and Peirce check (PEIRCE EB 0560 – 0561) (collectively Exhibit 5).) Peirce paid Breyer nearly a half million dollars the year he read Baylor's x-ray (2006) and has paid him well over $1 million since 2005. (*See* D. Breyer Peirce Firm 1099 forms (PEIRCE EB 0663-0666) (CONFIDENTIAL-will submit upon request).) **At least as of May 6th of this year, the Peirce Firm is still actively using (and paying) Breyer as a retained litigation expert in numerous matters.** (*See* Letter from S. Bour to D. Breyer (May 6, 2009) (PEIRCE EB 0667) (Exhibit 6).)

Dr. Breyer did not review Mr. Baylor's CT scan in connection with his January 6, 2006 B read of Baylor's screening x-ray. (*See* Exhibit 1.) Rather, it appears the Lawyer Defendants provided the CT to Breyer shortly before his May 4th, 2009 deposition in this case. (*See* Exhibit 3 at 59:3-12.) Nevertheless, and in spite of the fact that Breyer was only disclosed as a potential

fact witness, counsel for the Lawyer Defendants has indicated that he may elicit testimony from Dr. Breyer about CT scans and possibly other expert matters as well. (*See* Email from D. Berardinelli to S. Tarry (July 31, 2009) (Exhibit 7).)

## LEGAL STANDARD

Rule 26(a)(2)(A) requires parties to disclose "the identity of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705," i.e., "testimony based on scientific, technical or other specialized knowledge." Additionally, "if the witness is one retained or specifically employed to provide expert testimony in the case," the disclosure must include a written report in conformity with Rule 26(a)(2)(B). Although so-called "treating physicians" are generally exempt from the requirements of Rule 26(a)(2)(B), a written report is required when the doctor's opinions go beyond the scope of the treatment he or she rendered:

> [W]hen the physician's proposed opinion testimony extends beyond the facts made known to him during the course of the care and treatment of the patient and the witness is specially retained to develop specific opinion testimony, he becomes subject to the provisions of Fed. R. Civ. P. 26(a)(2)(B). The determinative issue is the scope of the proposed testimony.

*Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995).[2] For instance:

> [A] treating physician who bases his opinion on the medical records of another physician, not just on his own examination of the patient, is required to prepare an expert report because such review indicates he is being retained in connection with the litigation.

---

[2] *See also Dung Ngo v. Standard Tools & Equip., Co.*, 197 F.R.D. 263, 267 (D. Md. 2000) ("[I]f the physician's opinion is based on information not learned during the course of treatment, then such testimony usually is beyond the 'fact opinion' classification and must comply with the rules regarding expert disclosures."); *Hall v. Sykes*, 164 F.R.D. 46, 49 (E.D. Va. 1995) ("[I]f a physician, even though he may be a treating physician, is specially retained or employed to render a medical opinion based on factors that were not learned in the course of the treatment of the patient, then such a doctor would be required to present an expert written report."); *Castro-Medina v. P&G Commer. Co.*, 565 F. Supp. 2d 343, 361 (D.P.R. 2008) ("Therefore, for a treating physician not to be bound by the expert witness requirements of Rule 26, the physician's testimony must be closely constrained to the facts of the treatment administered and discussed in his notes taken at the time of his examination.").

*Kirkham v. Societe Air Fr.*, 236 F.R.D. 9, 13 (D.D.C. 2006). When a party fails to provide a written report as required by Rule 26(a)(2)(B), it is well within the trial court's discretion "to limit or prohibit a treating physician's opinion testimony that goes beyond information obtained during the physician's care and treatment of the patient, or if the court determines, the physician was retained specifically to develop opinion testimony." *Smith v. Bankers Life & Cas. Co.*, 2008 U.S. Dist. LEXIS 72110, *14 (S.D. Iowa 2008).[3]

## ARGUMENT

**I.  DR. BREYER SHOULD NOT BE PERMITTED TO OFFER MEDICAL OR SCIENTIFIC OPINIONS BEYOND HIS JANUARY 6, 2006 B READ OF MR. BAYLOR'S SCREENING X-RAY BECAUSE SUCH OPINIONS CONSTITUTE UNDISCLOSED EXPERT TESTIMONY.**

The Lawyer Defendants disclosed Dr. Breyer as a potential "fact witness" and did not provide a written report in conformity with Rule 26(a)(2)(b). (*See* Lawyer Defs.' Expert Witness Disclosure at ¶ 5 (Exhibit 8).) As such, any opinion testimony from Dr. Breyer should be limited to his January 6, 2006 B read of Mr. Baylor's screening x-ray, which indisputably is the only aspect of Baylor's medical condition of which Breyer has firsthand knowledge. Indeed, while the Lawyer Defendants may have given Breyer the CT scan prior to his deposition in this case, that evidence was not known to Breyer when he classified Baylor's x-ray and played no role in any so-called "treatment" he may have rendered.

---

[3] *See also Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993) (affirming exclusion of treating physicians' opinions regarding diagnostic imaging they did not rely upon during the course of the treatment); *Mohney v. USA Hockey, Inc.*, 138 Fed. Appx. 804, 811 (6th Cir. 2005) (holding that "it was reasonable for the district court to find that Dr. Ramnath was rendering an expert opinion that was subject to disclosure requirements and to exclude his affidavit for failing to satisfy those requirements" where his opinions were generated "long after the incident occurred" and were based on a video of the accident rather than firsthand knowledge); *Pethtel v. W. Va. State Police*, 2008 U.S. Dist. LEXIS 12540 (N.D. W. Va. 2008) (Stamp) (excluding expert opinion not set forth in Rule 26(a)(2)(B) written report).

The circumstances of this case are virtually identical to *Patel v. Gayes*, 984 F.2d 214 (7th Cir. 1993), where the Seventh Circuit affirmed the trial court's exclusion of undisclosed expert testimony from purported treating physicians:

> **[A]t least one of the documents upon which the physicians were asked to comment, the electrocardiogram (EKG), was not used by them to treat Mr. Patel.** Therefore, their knowledge, in this instance, was not based on their observations during the course of treating his illness. Moreover, the physicians were questioned about their opinion of the general medical standard of care within the community. As the district court determined, this is "classic" expert testimony. A witness would formulate such an opinion only when preparing for litigation.

*Id.* at 218 (emphasis added); *see also Riddick v. Washington Hosp. Ctr.*, 183 F.R.D. 327, 331 (D.D.C. 1998) ("[I]f it turns out that Dr. Mines was requested to review medical records of another health care provider in order to develop an opinion for the litigation of this matter rather than having reviewed the records on her own in 1994 in order to provide treatment, she will not be permitted to give her opinion as to causation and injury."). As in *Patel*, it appears the Lawyer Defendants are seeking to elicit testimony from Dr. Breyer concerning medical evidence, namely Baylor's CT scan, which played no role in his January, 6 2006 B read of Baylor's screening x-ray. Because such opinions go beyond Breyer's firsthand knowledge as a fact witness and were not disclosed, they should be excluded.

In fact, the case for exclusion is particularly compelling here. While it is unclear whether and to what extent the Lawyer Defendants are compensating Dr. Breyer for his time in this case, the fact remains that Breyer was a retained expert in Baylor's underlying case against CSXT and continues to regularly work for Peirce as a retained expert in hundreds of asbestos cases. In other words, Breyer is the antithesis of an objective medical witness whose only tie to the case is treatment of a patient – as noted above, *Breyer does not even consider Mr. Baylor to be a*

*patient.* As one district court in the Fourth Circuit noted in excluding the undisclosed expert opinions of a purported treating physician:

> **[S]uch a referral [by an attorney] creates the presumption that he was hired to give expert testimony.** . . . Everything about Dr. O'Shanick's involvement in this case gives the impression that he is a specially retained witness consulted in anticipation of litigation whose function is to discuss mild traumatic brain injuries, the fact that the injury can manifest itself without any apparent or visible damage to the brain and that Crawford appears to suffer from such an injury as a result of her fall. However, **Dr. O'Shanick did not express this opinion at the time that he examined Crawford; this and the other factors surrounding his involvement make Dr. O'Shanick a specially retained expert who must comply with the disclosure requirements of Rule 26(a)(2)**.

*Crawford v. United Seating & Mobility, Inc.*, 2005 U.S. Dist. LEXIS 46069, *18 (E.D. Va. 2005) (emphasis added) (citing *Hall v. Sykes*, 164 F.R.D. 46, 48 (E.D. Va. 1995) ("Such a reference by an attorney to a physician for treatment raises the appearance that the physician was specially retained to provide expert opinion. Therefore an expert written report is required.")). While there may be an extremely narrow universe to which Dr. Breyer may testify as a fact witness (his January 6, 2006 B read), given his clear bias and extensive ties to the Peirce Firm, Breyer's opinions should be strictly limited to that topic only.

## II.  ANY NON-FACTUAL TESTIMONY FROM DR. BREYER SHOULD BE EXCLUDED AS MISLEADING AND UNFAIRLY PREJUDICIAL UNDER RULE 403.

Federal Rule of Evidence 403 provides that otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . or misleading the jury." In this case, the veracity of Dr. Breyer's B read of Mr. Baylor's x-ray is a critical issue – in effect, it forms the gravamen of the Lawyer Defendants' defense. However, the truth is, Dr. Breyer rendered this B read under highly suspect, if not downright fraudulent, circumstances – en masse with hundreds of other x-rays and with full knowledge of Dr. Harron's prior findings. If Dr. Breyer is permitted to offer what amounts to expert opinions concerning

CT scans or other concepts beyond the circumstances of his B read, it may create the false impression in the jury that such concepts played a role in his B read, when, in fact, they did not. *See Gell v. Town of Aulander*, 2008 U.S. Dist. LEXIS 93069, *17-18 (E.D.N.C. 2008) ("When a witness offers both factual and expert testimony, there is a risk it will confuse the jury.") (citing *U.S. v. Wilson*, 484 F.3d 267, 278 n.5 (4th Cir. 2007).) Put another way, the Lawyer Defendants should not be allowed to enhance Breyer's credibility by eliciting expert opinions on medical and scientific concepts that have nothing to do with his factual knowledge and involvement in this case. Accordingly, in addition to being barred as undisclosed expert testimony, any such opinions should be excluded as misleading and unfairly prejudicial under Rule 403.

## CONCLUSION

Wherefore, for the foregoing reasons, CSXT respectfully requests that this Court enter an order granting its Motion *In Limine* to Exclude Medical or Scientific Testimony from Donald Breyer, M.D. Beyond His January 6, 2006 B Read of Earl Baylor's June 11, 2003 X-Ray.

**CSX TRANSPORTATION, INC.**

By ___/s/ Marc E. Williams___
      Of Counsel

Marc E. Williams, Esquire
Robert L. Massie, Esquire
J. David Bolen, Esquire
**HUDDLESTON BOLEN LLP**
611 Third Avenue
P.O. Box 2185
Huntington, WV 25722-2185
(304) 529-6181--Telephone
(304) 522-4312—Facsimile

E. Duncan Getchell, Jr., Esquire
Samuel L. Tarry, Jr., Esquire
Mitchell K. Morris, Esquire
**MCGUIREWOODS LLP**
One James Center
901 East Cary Street
Richmond, VA  23219-4030
(804) 775-7873—Telephone
(80) 698-2188—Facsimile

**COUNSEL FOR THE PLAINTIFF**
**CSX TRANSPORTATION, INC.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

CSX TRANSPORTATION, INC.,

    Plaintiff,

v.    Civil Action No. 5:05-CV-202

ROBERT V. GILKISON; PEIRCE,
RAIMOND & COULTER, P.C.,
A Pennsylvania Professional Corporation a/k/a
ROBERT PEIRCE & ASSOCIATES, P.C., a
Pennsylvania Professional Corporation: ROBERT
PEIRCE, JR.; LOUIS A. RAIMOND; MARK T.
COULTER; AND RAY HARRON, M.D.,

    Defendants.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing *"Plaintiff, CSX Transportation, Inc.'s Motion In Limine to Exclude Medical or Scientific Testimony from Donald Breyer, M.D. Beyond His January 6, 2006 B Read of Earl Baylor's June 11, 2003 X-Ray"* upon the following individuals via electronic filing with the Court's CM/ECF system on the 20th day of August 2009:

Daniel R. Schuda, Esquire
**SCHUDA & ASSOCIATES, PLLC**
232 Capitol Street, Suite 200
P.O. Box 3425
Charleston, WV 25335-3425

Stanley W. Greenfield, Esquire
**GREENFIELD & KRAUT**
1040 Fifth Avenue
Pittsburgh, PA 15219

John E. Gompers, Esquire
**GOMPERS, McCARTHY & McCLURE**
60 Fourteenth Street
Wheeling, WV 26003

Walter P. DeForest, Esquire
**DEFOREST KOSCELNIK YOKITIS & KAPLAN**
3000 Koppers Building
Pittsburgh, PA 15219

Ron Barroso, Esquire
5350 S. Staples
Suite 401
Corpus Christi, TX 78411

Jerald E. Jones, Esquire
**WEST & JONES**
360 Washington Avenue
P.O. Box 2348
Clarksburg, West Virginia 26302-2348

Lawrence S. Goldman, Esquire
Elizabeth M. Johnson, Esquire
**LAW OFFICES OF LAWRENCE S. GOLDMAN**
500 Fifth Avenue, 29th Floor
New York, NY 10110

                                                               /s/ Marc E. Williams