IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT WHEELING

| | |
|---|---|
| CSX TRANSPORTATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 5:05-cv-202 |
| | ) |
| ROBERT V. GILKISON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF CSX TRANSPORTATION, INC.'S MOTION *IN LIMINE* TO EXCLUDE RULE 30(B)(6) TESTIMONY OF WILLIAM BULLOCK, PH.D. AND RELATED ARGUMENTS

Comes now Plaintiff, CSX Transportation, Inc. ("CSXT"), by and through its counsel, pursuant to Federal Rules of Evidence 401, 402 and 403 and submits this Motion to *In Limine* to Exclude Rule 30(b)(6) Testimony of William Bullock, Ph.D. and Related Arguments.

### INTRODUCTION

This case is about whether Defendants conspired to defraud CSXT by manufacturing bogus x-ray reads and filing a lawsuit with no good faith evidentiary basis. It is **not** about the potential risk of pneumoconiosis discussed by certain committees of the Association of American Railroads in the 1930s, 40s, 50s and 60s. It is **not** about whether CSXT did or should have screened workers for occupational illnesses. It is **not** about the general industrial hygienic conditions of railroads. Quite to the contrary, even if CSXT were the most callous company in America, which is clearly not the case, that fact still would not make it more or less likely that Defendants committed fraud here. **This case is about *Defendants'* wrongdoing, not the corporate conduct of CSXT and its countless predecessors over the past nine decades.** Nevertheless, the Lawyer Defendants apparently seek to introduce volumes of extraneous evidence concerning the foregoing topics through the Rule 30(b)(6) deposition testimony of

{H0505965.1 }

William Bullock, Ph.D., CSXT's Director of Industrial of Hygiene. This evidence is wholly irrelevant to any issue in **this case**, has no foundation whatsoever in the facts of **this case** and can operate only to unfairly prejudice CSXT and needlessly waste the jury's time. As such, Dr. Bullock's testimony and any related arguments by the Lawyer Defendants should be excluded in their entirety pursuant to Federal Rules of Evidence 401, 402 and 403.

## LEGAL STANDARD

Evidence is admissible only if it is relevant, i.e., has the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Fed R. Evid. 401-402. Moreover, even if relevant:

> [E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. The justifications for excluding otherwise relevant evidence under Rule 403 "range all the way from inducing a decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme." Cmt. to Fed. R. Evid. 403. It is well-settled that "matter[s] under Rule 403 [are] committed to the discretion of the district court" and reviewable for abuse of discretion only. *United States v. Bailey*, 112 F.3d 758, 770 (4th Cir. 1997).

## ARGUMENT

**I.   ON ITS FACE, THE 30(B)(6) DEPOSITION NOTICED BY THE LAWYER DEFENDANTS WAS NOT RELEVANT TO *THIS CASE*.**

The "Areas of Inquiry" listed in the Lawyer Defendants' Rule 30(b)(6) deposition notice provide the best evidence of the complete irrelevance of Dr. Bullock's testimony to any issue in

this case. (*See* Lawyer Defs.' Am. Notice of Dep. (May 6, 2009) (Exhibit 1).) They are as follows:

1. The corporate structure and history of CSXT.

2. The history of CSXT's knowledge of the health dangers of dust and/or asbestos and CSXT's responses (or lack of responses) thereto, including without limitation, the history of CSXT's awareness of the exposure of its workforce to asbestos and the health risks associated with such exposure; CSXT's efforts to take steps to reduce or eliminate exposure of members of its workforce to asbestos or to find substitutes for asbestos; and/or CSXT's creation or receipt of any memoranda or reports warning about the dangers of asbestos and/or recommending screening of CSXT personnel including, for example and without limitation, reports or correspondence prepared by Dr. Isadore Kaplan, Dr. Thomas Mancuso, Dr. Audney K. Sutphin, Dr. Charles Mead, or Mark Badders.

3. The history of CSXT's efforts, or consideration of efforts, to screen its workforce (through x-ray examination or by other means) for exposure to asbestos, dust diseases, hearing loss, or to any other occupational hazard or harmful material.

4. The history of CSXT's efforts to protect members of its workforce from risks associated with exposure to asbestos, including without limitation efforts to warn about the potential hazards of working with asbestos, to educate or train on the safe use or handling of asbestos, and/or to provide respiratory protection.

5. The history of participation by CSXT or by its predecessor or affiliate companies in meetings, considerations, and/or recommendations related to exposure of railway workers to asbestos and associated health risks, including without limitation meetings, considerations, and/or recommendations of the American Railway Association or the Association of American Railways (including sections or subgroups thereof such as, without limitation, the Medical Section and the Committee on Disability and Rehabilitation), the Association of Railway Claims Agents, the General Managers Association of Chicago, or other organizations.

6. CSXT's duties, under applicable statutes or regulations, to report asbestos-related claims to the Occupational Safety and Health Administration ("OSHA"), the Federal Railway Administration, or to any other governmental agency, its compliance with such duties, and any sanctions or penalties incurred by CSXT for failing to comply with such duties.

7. The documents attached as Attachment A to the April 13, 2009 Notice of Video Deposition of Plaintiff CSX Transportation, Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6), which Attachment A is incorporated by reference herein.

With respect to the last item, counsel for the Lawyer Defendants questioned Dr. Bullock regarding, among other things, the minutes of the Medical and Surgical Section of the Association of American Railroads ("AAR") from the years **1932, 1933, 1935, 1939, 1951, 1957, 1958 and 1965**, i.e., as many as **four decades before** Mr. Baylor became an employee of CSXT and its predecessor railroads. (*See* Bullock Dep. 5 (May 13, 2009) (Exhibit 2).) These voluminous documents consist of literally hundreds, if not thousands, of pages. Moreover, they relate to a time period on the railroad known as the "steam era" when steam locomotives, as opposed to diesel, were primarily used. It is indisputable that the potential for exposure to asbestos was materially different (in terms of source, trade, etc.) and dramatically higher during the steam era than during the diesel era when Mr. Baylor worked.

To put it bluntly, the Lawyer Defendants' 30(b)(6) notice appears to be straight from their playbook of discovery tools to be used in occupational illness cases brought *against CSXT*. And if this were a case with any claim at all pending *against CSXT*, some or all of those topics might arguably be relevant. However, this is not an occupational illness case against CSXT, but rather one for fraud and conspiracy *against the Lawyer Defendants and Harron*. CSXT's conduct, except arguably to the extent it relates to the litigation of Baylor's underlying claim (which, notably, defense counsel did not even raise during Dr. Bullock's deposition), simply is not at issue here. And even if it was, virtually all of Dr. Bullock's testimony relates to matters that pre-date Mr. Baylor's employment with CSXT and its predecessors. Accordingly, pursuant to Rules 401 and 402, Dr. Bullock's 30(b)(6) testimony should be excluded in its entirety as irrelevant to any fact at issue in *this case*, as opposed to an occupational illness case brought against CSXT.

## II. DR. BULLOCK'S 30(B)(6) TESTIMONY SHOULD BE EXCLUDED AS UNFAIRLY PREJUDICIAL AND A NEEDLESS WASTE OF TIME.

Even assuming the Lawyer Defendants are able to articulate some theory of relevance for Dr. Bullock's testimony, which is unlikely, it should still be excluded under Rule 403 as unfairly prejudicial and a needless waste of time. The Lawyer Defendants' purpose is transparent – to portray CSXT as an evil corporation who knowingly exposed its employees to asbestos for decades while failing to screen them for occupational diseases. (*See* Lawyer Defs.' Rebuttal Expert Witness Disclosure (April 13, 2009) (Exhibit 3), discussed *infra*.) And of course, this argument rests primarily on steam era documents which pre-date Mr. Baylor's employment and have no probative value with respect to the industrial hygienic conditions when Baylor worked. This is unfair prejudice of the plainest sort, especially in a case where CSXT's conduct is not even at issue.

To be sure, defendants have no right to groundlessly attack those who bring suit against them with collateral, inflammatory and potentially confusing evidence. For instance, in *Simms v. Mut. Benefit Ins. Co.*, 137 Fed. Appx. 594, 597-98 (4th Cir. 2005), an insurance dispute, the Fourth Circuit upheld the trial court's exclusion under Rule 403 of evidence of the plaintiffs' financial condition as "extreme[ly] prejudic[ial]," "immaterial," and likely to "create serious confusion among the jurors" and "result in due delay of trial." And in that case, as demonstrated by the extensive case law cited by the defendant, the evidence arguably was relevant to the affirmative defense of fraud. *Id.* at 598. Here, the Lawyer Defendants' likely arguments concerning CSXT's historical corporate conduct are far less potentially probative than the evidence in *Simms*, while the likelihood of unfair prejudice is even more extreme.

In fact, courts have rejected arguments such as those the Lawyer Defendants likely intend to make based on Dr. Bullock's testimony even when directed against *defendants*. The First Circuit's observations in *Smith v. Kmart Corp.* are illustrative:

> [C]ounsel argued at one point that Kmart and its doctors "don't care at all" . . . There were other instances in which plaintiffs' counsel argued that Kmart "does not care," in the present tense, which has little bearing on the question of Kmart's negligence at the time of the accident. . . . Finally, counsel argued that Kmart did not care because it was not paying the true amount of damages that it caused. **The import of these remarks was to stain the corporate character of Kmart in front of the jury. This is improper argument.**

177 F.3d 19, 26 (1st Cir. 1999) (emphasis added). Perhaps even more instructive for purposes of the present case is *Johnson v. Armstrong Cork Co.*, 645 F. Supp. 764, 767-68 (W.D. La. 1986), which involved products liability claims against manufacturers of asbestos-containing products. There, the court excluded evidence of the defendants' historical knowledge of the dangers of asbestos because, among other reasons, it was likely to incite the jury to punish the defendants, but punitive damages were not available under state law. With regard to unfair prejudice and misleading the jury, the court observed as follows:

> The danger of unfair prejudice is readily apparent. The state-of-the-art evidence which plaintiffs seek to introduce dates back to the 1930s and 40s. This evidence is highly suggestive of the fact that manufacturers knew, or should have known, that friable asbestos products were likely to cause substantial lung injury to those who came in contact with the product. For historical accuracy, the plaintiffs might as well go all the way back to ancient civilization. "The adverse biological effects of asbestos (the word comes from a Greek adjective meaning "inextinguishable") were observed as early as the First Century by the Greek geographer Strabo and by the Roman naturalist Pliny the Elder, both of whom mentioned in passing a sickness of the lungs in slaves whose task was to weave asbestos into cloth."
>
> Thus, for a long period of time (one might even say "forever," if Strabo and Pliny are to be believed), manufacturers of asbestos knew of the danger to which plaintiffs were exposed. Viewed in this light, plaintiff's exposure to the dangers of asbestos appear needless and senseless; the manufacturer's failure to take steps to minimize these dangers appears callous. . . . The admissibility of this state-of-the-art evidence appears, in the words of the advisory committee, to have "an undue

> tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." ***
>
> This court finds that the danger of misleading the jury with state-of-the-art evidence is [also] substantial. It is feared that the introduction of state-of-the-art evidence will mislead the jury into the perception that asbestos manufacturers should be punished. Whether stated overtly, or simply covertly suggested, the message sent to the jury through the introduction of state-of-the-art evidence is that the jurors should "send a message" to asbestos manufacturers.

*Id.* at 167. Continuing, the court noted that the "amount of state-of-the-art evidence which plaintiffs seek to introduce is immense" and "would appear to be nothing but a waste of time" in light of the unavailability of punitive damages. *Id.* at 168.

The evidence the Lawyer Defendants seek to introduce through Dr. Bullock's testimony is largely the same as in *Smith* and the court's exclusionary analysis there applies with even greater force in this case. Not only is CSXT not subject to punitive damages, there are **no** claims against it. There is simply no conceivable justification for the Lawyer Defendants' likely attempts to inflame the jury against CSXT using evidence which is not relevant in the first place. "Evidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) (internal quotations omitted). Such is the case here.

Moreover, even if it were not egregiously prejudicial, the Lawyer Defendants' likely use of Dr. Bullock's testimony would simply waste the jury's time and distract it from the real issue in this case – whether *the Lawyer Defendants and Harron* conspired to defraud CSXT. This "undue delay" and "waste of time" provides an independent, yet equally compelling, grounds for exclusion of the testimony under Rule 403.

## III. THE LAWYER DEFENDANTS' MOST LIKELY ARGUMENT BASED ON DR. BULLOCK'S TESTIMONY IS CONTRARY TO THE FACTS ON RECORD.

Given its patent irrelevance to this case, it is difficult for CSXT to even speculate as to how the Lawyer Defendants will attempt to use Dr. Bullock's testimony (other than to generally inflame the jury). Most likely, they will seek to use it as a vehicle for Michael Ellenbecker's specious "rebuttal" opinion that:

> [T]he screening process employed by the Lawyer Defendants is necessary because of the conscious decision of companies, such as plaintiff, not to establish their own screening processes, despite knowledge of the dangers of asbestos exposure, including warnings by their own physicians of the dangers to their employees, posed by exposure to asbestos.

(Exhibit 3 at 2.) However, this position is without any factual support in the record. In truth, as Peirce succinctly testified at deposition, the Lawyer Defendants' screenings had but one purpose – "**To acquire asbestos cases**." (Peirce Dep. 133:25-134:1 (May 8, 2007) (Exhibit 4).) Raimond likewise emphasized the pecuniary objective of the screenings, explaining that he and Peirce made cash payments to union officials because:

> We hoped we would get designated [as union Designated Legal Counsel]. . . And we thought well, that might help us, particularly with the screening program. At least I thought it might help us with the screening program. Because when we would go before, we do these screenings, we would always contact like local [union] chairmen, and try to solicit their cooperation. And if you had the designation, they probably wouldn't hang up the phone on you, they'd probably at least talk to you.***
>
> I thought it would help. I thought it would help market us, you know, for screenings, occupational cases.

(Raimond Dep. 98:11-99:6 (April 7, 2009) (Exhibit 5).) Indeed, as Raimond explained, the Lawyer Defendants expanded their practice into West Virginia and other locales because "Pittsburgh itself had been pretty much mined out." (*Id.* at 32:10-11.)

Simply put, the Lawyer Defendants did not conduct screenings because CSXT allegedly failed to – they screened to make money. Moreover, there is nothing to suggest that the Lawyer Defendants would have acted differently had CSXT conducted its own screenings. Quite to the contrary, Peirce expressed little faith in railroad physicians, commenting that "there have been B readers hired by the railroad who find that nobody ever has asbestosis." (Exhibit 4 at 201:18-20.) Presumably, then, it would still be necessary for the Lawyer Defendants to perform screenings of their own. Furthermore, Dr. Bullock testified that CSXT has, in fact, conducted medical surveillance programs in the past, (*see* Exhibit 2 at 73:14-24), and there is no evidence that the Lawyer Defendants excluded participants in those programs from their own screenings. In other words, it is clear that the Lawyer Defendants would have acted exactly as they did regardless of what CSXT did. Any contention to the contrary is groundless, and demonstrably false, speculation.

Finally, the Lawyer Defendants have no witness to testify as to what constitutes a medically appropriate occupational health screening. (*See* Ellenbecker Dep. 62:22:63:6 (May 8, 2009) (Exhibit 6) (testifying that what constitutes a "medically appropriate and reliable" screening is "beyond my area of expertise").) Thus, even assuming that CSXT left some sort of screening void, there is no evidence tending to show that the *Lawyer Defendants' own* screening practices were necessary, appropriate or justified. Rule 401 and 403 concerns aside, the Lawyer Defendants simply cannot be permitted to advance arguments that have no factual basis in the record, which appears to be what they intend to do with respect to Dr. Bullock's testimony.

## CONCLUSION

Wherefore, for the foregoing reasons, CSXT respectfully requests that the Court enter an order granting its Motion to *In Limine* to Exclude Rule 30(b)(6) Testimony of William Bullock, Ph.D. and Related Arguments.

                                      **CSX TRANSPORTATION, INC.**

                                    By     /s/ Marc E. Williams
                                             Of Counsel

Marc E. Williams, Esquire
Robert L. Massie, Esquire
J. David Bolen, Esquire
**HUDDLESTON BOLEN LLP**
611 Third Avenue
P.O. Box 2185
Huntington, WV  25722-2185
(304) 529-6181--Telephone
(304) 522-4312—Facsimile

E. Duncan Getchell, Jr., Esquire
Samuel L. Tarry, Jr., Esquire
Mitchell K. Morris, Esquire
**MCGUIREWOODS LLP**
One James Center
901 East Cary Street
Richmond, VA  23219-4030
(804) 775-7873—Telephone
(80) 698-2188—Facsimile

**COUNSEL FOR THE PLAINTIFF
CSX TRANSPORTATION, INC.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

CSX TRANSPORTATION, INC.,

        Plaintiff,

v.                                                                                                Civil Action No. 5:05-CV-202

ROBERT V. GILKISON; PEIRCE,
RAIMOND & COULTER, P.C.,
A Pennsylvania Professional Corporation a/k/a
ROBERT PEIRCE & ASSOCIATES, P.C., a
Pennsylvania Professional Corporation: ROBERT
PEIRCE, JR.; LOUIS A. RAIMOND; MARK T.
COULTER; AND RAY HARRON, M.D.,

        Defendants.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing *"Plaintiff CSX Transportation, Inc.'s Motion In Limine to Exclude Rule 30(B)(6) Testimony of William Bullock, Ph.D. and Related Arguments"* upon the following individuals via electronic filing with the Court's CM/ECF system on the 20th day of August 2009:

Daniel R. Schuda, Esquire
**SCHUDA & ASSOCIATES, PLLC**
232 Capitol Street, Suite 200
P.O. Box 3425
Charleston, WV 25335-3425

Stanley W. Greenfield, Esquire
**GREENFIELD & KRAUT**
1040 Fifth Avenue
Pittsburgh, PA 15219

John E. Gompers, Esquire
**GOMPERS, McCARTHY & McCLURE**
60 Fourteenth Street
Wheeling, WV 26003

Walter P. DeForest, Esquire
**DEFOREST KOSCELNIK
YOKITIS & KAPLAN**
3000 Koppers Building
Pittsburgh, PA 15219

Ron Barroso, Esquire
5350 S. Staples
Suite 401
Corpus Christi, TX 78411

Jerald E. Jones, Esquire
**WEST & JONES**
360 Washington Avenue
P.O. Box 2348
Clarksburg, West Virginia 26302-2348

Lawrence S. Goldman, Esquire
Elizabeth M. Johnson, Esquire
**LAW OFFICES OF LAWRENCE S. GOLDMAN**
500 Fifth Avenue, 29th Floor
New York, NY 10110

                                              /s/ Marc E. Williams