**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT WHEELING**

**CSX TRANSPORTATION, INC.,**

      **Plaintiff,**

**v.**                                                      **Civil Action No. 5:05-CV-202**

**ROBERT V. GILKISON,** *et al*

      **Defendants.**

**<u>JOINT PRE-TRIAL ORDER</u>**

In accordance with Local Rule of Civil Procedure 16.04 and Rule 16 of the Federal Rules of Civil Procedure, the parties, by counsel and by direction of the Court, certify, that the matters and statements hereinafter set out, except as amended by the Court, or by the parties for good cause shown, shall determine the issues of law and the course of the trial of the above-styled case.

**1.**    **<u>PRE-TRIAL DISCLOSURES AND OBJECTIONS AS REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 26(A)(3)</u>**

**A.**    Witnesses each party expects to present and may call if the need arises.

    **Names of witnesses Plaintiff, CSX Transportation, Inc. expects to call at trial**:

        Robert Peirce, Jr.
        Robert Peirce & Associates, P.C.
        2500 Gulf Tower
        707 Grant Street
        Pittsburgh, PA 15219

        Louis Raimond
        1604 Fieldstone Lane
        Sewickley, PA 15143

Ray A. Harron, MD
c/o Elizabeth M. Johnson, Esq.
Law Offices of Lawrence S. Goldman
500 Fifth Avenue, 29th Floor
New York, NY 10110

James Corbitt
1621 Goff Avenue
Clarksburg, WV 26301

Professor Lester Brickman
Benjamin N. Cardozo School of Law
55 Fifth Avenue
New York, NY 10003

Kevin R. Cooper, MD
VCU Medical Center
MCV Campus
P. O. Box 980050
Richmond, VA 23298

David D. Johnson, III
Winter Johnson & Hill PLLC
216 Brooks Street, Suite 201
Charleston, WV 25301

Anil Vachani, MD
University of Pennsylvania School of Medicine
CHOP/Abramson Research Center
3615 Civic Center Boulevard, Room 1016A
Philadelphia, PA 19104

Christopher Knox, MD
Self Regional Healthcare
1325 Spring Street
Greenwood, SC 29646

Earl Baylor
4504 Cokesbury Road
Hodges, SC 29653

Heath Weldon
CSX Transportation, Inc.

**Names of witnesses Plaintiff, CSX Transportation, Inc. may call at trial:**

Mark T. Wade
The Wade Law Office, P.C.
901 Western Avenue, Suite 206
Pittsburgh, PA 15233

Alexander Nepa
The Wade Law Office, P.C.
901 Western Avenue, Suite 206
Pittsburgh, PA 15233

Professor John M. Burkoff
School of Law
University of Pittsburgh
Pittsburgh, PA 15260

Michael J. Ellenbecker, ScD, CIH
Prof., Dept. Of Work Environment
Director, Toxics Use Reduction Institute
University of Massachusetts Lowell
One University Ave.
Lowell, MA 01854

R. Gregory McDermott, Esq.
McDermott & Bonenberger, PLLC
43 Washington Avenue
Wheeling, WV 26003

Kenneth D. Rosenman, MD, FACPM, FACE
Professor of Medicine
Chief, Division of Occupation and Environmental Medicine
Michigan State University
Dept. of Medicine
117 West Fee
East Lansing, MI 48824-1316

Robert F. Daley
Robert Peirce & Associates, P.C.
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Danielle Daley
Robert Peirce & Associates, P.C.
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Lindsey Phillips
Robert Peirce & Associates, P.C.
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Donald Breyer, MD
6861 Gunn Drive
Oakland, CA 94611-1442

Richard Cassoff, MD
Internal Medicine Associates
1155 Merchant Street
Ambridge, PA 15003

Henry K. Smith, DO
1515 Bridge Street
New Cumberland, PA 17070

William Bullock, PhD
CSX Transportation, Inc.

Mark Badders, CIH
CSX Transportation, Inc.

Plaintiff reserve the right to call any of the witnesses listed by the Defendants as part of their Rule 26(a)(3) Disclosures.

Plaintiff reserves the right to call any individual identified as part of its Rule 26(a)(1) Disclosures or any individual listed or identified as part of any discovery response.

**Names of witnesses Defendants, Robert N. Peirce, Jr. and Louis A. Raimond expect to call at trial:**

a.      Robert N. Peirce, Jr.
        c/o Walter DeForest, Esq.
        DeForest Koscelnik Yokitis
        Kaplan & Berardinelli

3000 Koppers Bldg.
Pittsburgh, PA 15219
(412) 227-3100

b.   Louis Raimond
c/o Walter DeForest, Esq.
DeForest Koscelnik Yokitis
Kaplan & Berardinelli
3000 Koppers Bldg.
Pittsburgh, PA 15219
(412) 227-3100

c.   Robert Daley
c/o Walter DeForest, Esq.
DeForest Koscelnik Yokitis
Kaplan & Berardinelli
3000 Koppers Bldg.
Pittsburgh, PA 15219
(412) 227-3100

d.   Danielle Daley
c/o Walter DeForest, Esq.
DeForest Koscelnik Yokitis
Kaplan & Berardinelli
3000 Koppers Bldg.
Pittsburgh, PA 15219
(412) 227-3100

e.   Lindsey Phillips
c/o Walter DeForest, Esq.
DeForest Koscelnik Yokitis
Kaplan & Berardinelli
3000 Koppers Bldg.
Pittsburgh, PA 15219
(412) 227-3100

f.   Professor John Burkoff
c/o Walter DeForest, Esq.
DeForest Koscelnik Yokitis
Kaplan & Berardinelli
3000 Koppers Bldg.
Pittsburgh, PA 15219
(412) 227-3100

g.      Dr. Michael Ellenbecker
        c/o Walter DeForest, Esq.
        DeForest Koscelnik Yokitis
        Kaplan & Berardinelli
        3000 Koppers Bldg.
        Pittsburgh, PA 15219
        (412) 227-3100

h.      Gregory McDermott, Esq.
        c/o Walter DeForest, Esq.
        DeForest Koscelnik Yokitis
        Kaplan & Berardinelli
        3000 Koppers Bldg.
        Pittsburgh, PA 15219
        (412) 227-3100

i.      Dr. Kenneth Rosenman
        c/o Walter DeForest, Esq.
        DeForest Koscelnik Yokitis
        Kaplan & Berardinelli
        3000 Koppers Bldg.
        Pittsburgh, PA 15219
        (412) 227-3100

j.      Dr. Arthur Frank (by video deposition)
        c/o Walter DeForest, Esq.
        DeForest Koscelnik Yokitis
        Kaplan & Berardinelli
        3000 Koppers Bldg.
        Pittsburgh, PA 15219
        (412) 227-3100

k.      Dr. Donald Breyer
        c/o Chris Cannon, Esq.
        Sugarman & Cannon
        44 Montgomery Street, Suite 2080
        San Francisco, CA 94104

l.      Dr. Henry Smith (video deposition)
        c/o Mark K. Emery, Esq.
        Law Offices of Mark K. Emery
        410 North Second Street
        Harrisburg, PA 17102

m.    Representatives of Huddleston Bolen LLP and McGuire Woods LLP (if liability
is found, therefore, requiring a subsequent damages phase pursuant to the parties'
agreement)

**Names of witnesses Defendants, Robert N. Peirce, Jr. and Louis A. Raimond may
call at trial:**

a.    Mark Coulter, Esq.
c/o Walter DeForest, Esq.
DeForest Koscelnik Yokitis
Kaplan & Berardinelli
3000 Koppers Bldg.
Pittsburgh, PA 15219
(412) 227-3100

b.    Dr. Ray Harron
c/o Elizabeth M. Johnson, Esq.
Law Office of Lawrence S. Goldman
500 Fifth Ave., 29th Floor
New York, NY 10110

c.    Dr. Kevin Cooper
Virginia Commonwealth University
Department of Internal Medicine
Division of Pulmonary Disease and Critical Care Medicine
P.O. Box 980050
Richmond, VA 23298

d.    James Corbitt
1621 Goff Avenue
Clarksburg, WV 26301

e.    Jeff Pflugh
c/o Walter DeForest, Esq.
DeForest Koscelnik Yokitis
Kaplan & Berardinelli
3000 Koppers Bldg.
Pittsburgh, PA 15219
(412) 227-3100

f.    Robert Peirce, III
c/o Walter DeForest, Esq.
DeForest Koscelnik Yokitis
Kaplan & Berardinelli
3000 Koppers Bldg.

Pittsburgh, PA 15219
(412) 227-3100

g.    Earl Baylor
c/o Fredrick Jekel
Jekel-Doolittle
P.O. Box 2579
Mt. Pleasant, SC 29465

h.    Tracy Unger
1025 Hastie Road
Pittsburgh, PA 15234

i.    Joseph DeMatteis
207 Freeman NW
Massillon, OH 44646

j.    Clyde W. Terry
4015 Ferguson Road
Indianapolis, IN 46239

k.    Monty L. Terry
9235 Raymongs Street
Indianapolis, IN 46239

l.    James A. Toombs
6808 N. 48th Street
Tampa, FL 33610

m.    William Triner
5711 Heron Park Place
Lithia, FL 33547

n.    Ishmael Harmon
1512 Laurel Avenue
Alcoa, TN 37701

o.    Mitchell Alley
2383 Doublebranch Road
Columbia, TN 38401

p.    David Heuke
7023 Wooded Meadow Road
Louisville, KY 40241

q.      Kenneth Mackey, Sr.
        3524 Williams Drive
        Weirton, WV 26062

r.      Larry L. Burger
        6 Burger Park Rd.
        Ranger, WV 25557

s.      William J. Charles
        210 24th Street, Apt. 411
        Calettsburg, KY 41129

t.      John F. Crowe
        625 Pioneer Drive
        Lebanon Junction, KY 40150

u.      Spurgeon A. Bass
        1333 Melton Road
        Gordon, AL 36343

v.      Douglas J. Adams
        4525 Binghamton Dr.
        Mobile, AL  36619

The Defendants reserve the right to call any individual identified as part of its Rule 26(a)(1) Disclosures or any individual listed or identified as part of any discovery response by and party to this action or any individual identified in the Rule 26(a)(3) disclosures of any party to this action.

The Defendants reserve the right to supplement this disclosure prior to trial consistent with this Court's Scheduling Order and the Federal Rules of Civil Procedure.

**Names of witnesses Defendant, Ray Harron expects to call at trial**:

**A. Names of witnesses Defendant Harron expects to call at trial:**

Ray Harron, MD
c/o Jerald E. Jones, Esq.
West & Jones
360 Washington Avenue
Clarksburg, WV  26301
304-624-5501

Robert Peirce, Jr.
c/o Walter DeForest, Esq.
DeForest Koscelnik Yokitis Kaplan & Berardinelli

3000 Koppers Building
Pittsburgh, PA  15219
412-227-3100

Louis Raimond, Esq.
1604 Fieldstone Lane
Sewickley, PA  15143

Dr. Donald Breyer
6861 Gunn Drive
Oakland, CA  94611

**Names of witnesses Defendant, Ray Harron may call at trial:**

Robert Daley
Robert Peirce & Associates, P.C.
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219

Robert L. Massie, Esq.
Huddleston Bolen LLP
611 Third Avenue
Huntington, WV 25722-2185
(304) 529-6181

Marc E. Williams, Esq.
Huddleston Bolen LLP
611 Third Avenue
Huntington, WV 25722-2185
(304) 529-6181

J. David Bolen, Esq.
Huddleston Bolen LLP
611 Third Avenue
Huntington, WV 25722-2185
(304) 529-6181

Kathy Christopher
c/o Ray Harron, M.D.
901 W. Main St.
Bridgeport, WV  26330

Dr. Harron reserves the right to call any individual identified as part of its Rule 26(a)(1)
Disclosures or any individual listed or identified as part of any discovery response by any

party to this action or any individual identified in the Rule 26(a)(3) disclosures of any party to this action.

Dr. Harron reserves the right to supplement this list prior to trial consistent with the Scheduling Order and the Federal Rules of Civil Procedure.

**B**.     Designation of witnesses whose testimony is expected to be presented by means of deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony.

Plaintiff, CSX Transportation, Inc. expects to present the video deposition of the following witnesses:

1.     Earl Baylor – May 11, 2009
2.     Donald Breyer – May 8, 2009
3.     Christopher Knox – April 22, 2009

Plaintiff, CSX Transportation, Inc. reserves the right to use in its entirety or to utilize portions, by presenting the video or text, of any of the following depositions:

1.     Lester Brickman – May 14, 2009
2.     William Bullock – May 13, 2009
3.     John Burkoff – April 28, 2009
4.     Richard Cassoff – April 24, 2009 and May 29, 2009
5.     Kevin Cooper – May 5, 2009
6.     James Corbitt – November 17, 2006
7.     Robert Daley – May 5, 2009
8.     Danielle Daley – April 6, 2009
9.     Michael Ellenbecker – May 8, 2009
10.     Arthur Frank – April 23, 2009 and September 4, 2009
11.     Ray Harron – March 11, 2009 and May 27, 2009
12.     David Johnson – April 29, 2009
13.     Gregory McDermott - April 30, 2009
14.     Robert Peirce, Jr.  – May 8, 2007 and April 7, 2009
15.     Lindsey Phillips – April 7, 2009
16.     Louis Raimond – April 7, 2009
17.     Kenneth Rosenman – May 1, 2009
18.     Henry Smith – May 4, 2009
19.     Anil Vachani – April 28, 2009
20.     Mark Badders – September 3, 2009

CSXT further reserves the right, to the extent that the Defendants identify portions of any of the above-listed depositions for use at trial, to designate those portions of the deposition that it would request be read to the jury if Defendants seek to introduce only portions of any depositions rather than reading the complete deposition to the jury.

Plaintiff reserves the right to cross-examine witnesses with any previous deposition testimony.

Plaintiff reserves the right to read in any deposition previously taken in this matter consistent with the Federal Rules of Civil Procedure.

**Defendants, Robert N. Peirce, Jr., and Louis A. Raimond, expect to present by deposition and/or a transcript or video of the pertinent parts of the deposition (if the deposition is a video deposition, such is indicated):**

1.      Dr. Henry Smith (video deposition)

2.      Dr. Kevin Cooper

3.      Dr. Donald Breyer (if unable to attend trial)

        a.      Deposition taken by CSX on January 14, 2008 in the case No. 02-C-9500 pending before the West Virginia Mass Litigation Panel for FELA Asbestos Cases
        b.      Video Deposition taken in this action of May 8, 2008

4.      Dr. Arthur Frank (video deposition to be taken on September 4, 2009)

5.      Mark Badders

6.      William Bullock, PhD, as Rule 30(b)(6) representative of Plaintiff (video deposition)

7.      Dr. Christopher Knox (video deposition)

8.      Dr. Ray Harron

        The Peirce Firm reserves the right, to the extent that Plaintiff is able to obtain admission of portions of any deposition, to designate other portions of those depositions, including but not limited to those listed above.

**Defendant Harron expects to present by deposition and a transcript of the pertinent part of the deposition:**

Dr. Donald Breyer (If not available by personal appearance)

Dr. Harron reserves the right, to the extent that Plaintiff is able to obtain admission of portions of any deposition, to designate other portions of that deposition, including but not limited to those listed above.

**C.**      Exhibits each party expects to offer and may offer if the need arises.

   **Plaintiff expects to offer or utilize the following exhibits and/or documents at trial:**

Peirce firm Litigation file for Earl Baylor as produced by the Peirce firm;

Peirce firm Third Party file for Earl Baylor as produced by the Peirce firm;

Peirce firm Flyers for August 4, 1999, May 23, 2002, and June 11, 2003 Screenings;

Asbestos Questionnaire of Earl Baylor;

Printouts of the Peirce firm's litigation and third party database entries regarding Earl Baylor;

Peirce firm pre-printed diagnosis forms regarding Earl Baylor;

X-rays of Earl Baylor dated August 4, 1999, May 23, 2002, and June 11, 2003;

CT images of Earl Baylor dated November 19, 2003;

Report of CT dated November 19, 2003;

Ray Harron ILOs of Earl Baylor X-rays dated August 4, 1999, May 23, 2002, and June 11, 2003;

Donald Breyer ILO of Earl Baylor X-ray dated June 11, 2003;

Richard Cassoff Report of examination of Earl Baylor dated December 15, 2007;

Asbestos bankruptcy trusts' records regarding Earl Baylor claims;

Correspondence between the Peirce firm and Drs. Harron and Breyer;

May 11, 2009 Deposition of Earl Baylor and exhibits attached thereto;

May 8, 2007 Deposition of Robert Peirce, Jr. and exhibits attached thereto;

April 7, 2009 Deposition of Robert Peirce, Jr. and exhibits attached thereto;

April 7, 2009 Deposition of Louis Raimond;

March 11, 2009 Deposition of Ray Harron, MD and exhibits attached thereto;

May 27, 2009 Deposition of Ray Harron, MD and exhibits attached thereto;

May 14, 2009 Deposition of Professor Lester Brickman and exhibits attached thereto;

May 5, 2009 Deposition of Kevin Cooper, MD and exhibits attached thereto;

April 28, 2009 Deposition of Anil Vachani, MD and exhibits attached thereto;

April 30, 2009 Deposition of David Johnson, Esq. and exhibits attached thereto;

May 13, 2009 Deposition of William Bullock, Ph.D.;

September 3, 2009 Deposition of Mark Badders;

April 22, 2009 Deposition of Christopher Knox, MD and exhibits attached thereto;

May 8, 2009 Deposition of Donald Breyer, MD and exhibits attached thereto;

May 5, 2009 Deposition of Robert Daley and exhibits attached thereto;

April 6, 2009 Deposition of Danielle Daley and exhibits attached thereto;

April 24, 2009 Deposition of Richard Cassoff, MD and exhibits attached thereto;

May 29, 2009 Deposition of Richard Cassoff, MD and exhibits attached thereto;

April 7, 2009 Deposition of Lindsey Phillips and exhibits attached thereto;

May 4, 2009 Deposition of Henry Smith, DO and exhibits attached thereto;

November 17, 2006 Deposition of James Corbitt and exhibits attached thereto;

April 28, 2009 Deposition of John Burkoff and exhibits attached thereto;

May 8, 2009 Deposition of Michael Ellenbecker and exhibits attached thereto;

April 23, 2009 Deposition of Arthur Frank and exhibits attached thereto;

September 4, 2009 Deposition of Arthur Frank and exhibits attached thereto;

April 30, 2009 Deposition of Gregory McDermott and exhibits attached thereto;

May 1, 2009 Deposition of Kenneth Rosenman and exhibits attached thereto;

Complaint, *Charles Adams v. CSX Transportation, Inc.*, Civil Action No. 06-C-72, Harrison County, West Virginia;

Letter to Court forwarding payment for non-resident costs, *Charles Adams v. CSX*

*Transportation, Inc.*, Civil Action No. 06-C-72, Harrison County, West Virginia;

Motion to Dismiss for Lack of Venue, *Charles Adams v. CSX Transportation, Inc.*, Civil Action No. 06-C-72, Harrison County, West Virginia;

Final Dismissal Order, *Charles Adams v. CSX Transportation, Inc.*, Civil Action No. 06-C-72, Harrison County, West Virginia;

Final Order Transferring Cases to West Virginia Mass Litigation Panel for FELA Asbestos Litigation, *Charles Adams v. CSX Transportation, Inc.*, Civil Action No. 06-C-72, Harrison County, West Virginia;

Complaint, *Earl Baylor v. CSX Transportation, Inc.*, Civil Action No. 01-C-3955, Kanawha County, West Virginia;

Dismissal Order, *Earl Baylor v. CSX Transportation, Inc.*, Civil Action No. 01-C-3955, Kanawha County, West Virginia;

Complaint, *Jerry Abbott v. CSX Transportation, Inc.*, Civil Action No. 08-C-2120, Kanawha County, West Virginia;

12/26/08 Notice of Dismissal, *Earl Baylor v. CSXT*, Civil Action No. 08-C-2155 in *Jerry Abbott v. CSX Transportation, Inc.*, Civil Action No. 08-C-2120, Kanawha County, West Virginia;

Complaint, *Bellis v. American Standard*, Action No. 05-CI-00032, Greenup, Kentucky;

Dismissal Order, *Bellis v. American Standard*, Action No. 05-CI-00032, Greenup, Kentucky;

12/14/06 Agreed Order, In RE: FELA Asbestos Cases, Civil Action No. 02-C-9500, Kanawha County, West Virginia;

Supreme Court of Appeals of West Virginia, January 2008 Term, No, 33665, In RE: FELA Asbestos Cases, Affirmed Appeal from Civil Action No. 02-C-9500, Kanawha County, West Virginia;

July 17, 2009 Case Management Order, Judge Recht, In RE: FELA Asbestos Cases, Civil Action No. 02-C-9500, Kanawha County, West Virginia;

8/4/09 Peirce firm Plaintiffs' Motion to Modify Case Management Order, attached Notice of Hearing, Proposed Order, and Letter from R. Daley to Judge Recht, In RE: FELA Asbestos Cases, Civil Action No. 02-C-9500, Kanawha County, West Virginia;

State Medical Board Orders concerning Ray Harron's state licensure status;

Transcript of 12/17/08 Proceedings, State of New York, Department of Health, Board for Professional Medical Conduct;

Asbestos bankruptcy trusts' policy notices;

Opinions/Orders dismissing claims supported by Ray Harron's diagnoses;

Invoices from Ray Harron to the Peirce firm;

Print outs of Lists of N&M X-rays reviewed by Ray Harron;

Travel expenses for Richard Cassoff dated 12/14/07 – 12/15/07;

Richard Cassoff diagnosis forms dated 12/15/07;

Spirometry reports dated 12/15/07;

Richard Cassoff diagnosis forms submitted to CSX Transportation, Inc. by the Peirce firm in support of FELA claims;

GA. Code § 31-13-8.2;

GA. Comp. R. & Regs. 290-5-22-.01;

S.C. Code § 44-74-30;

ARRT Content Specifications;

8/21/01 Emergency Cease and Desist Order, Texas Department of Health;

Judgment, USA v. Corbitt, Northern District of Ohio, Eastern Division, Criminal Case No. 5:93CR133

Transcripts of Proceedings, 5/12/93 and 8/12/93, USA v. Corbitt, Northern District of Ohio, Eastern Division, Criminal Case No. 5:93CR133

Correspondence from Ohio Department of Health to James Corbitt;

Ohio Department of Health documents regarding James Corbitt;

10/4/01 Report and Recommendation of Hearing Examiner concerning licensure of James Corbitt, 9/4/01 Hearing before Ohio Director of Health;

July 2, 2009 CMO Motion Hearing transcript, In Re: FELA Asbestos Cases, Civil Action No. 02-C-9500, Kanawha County, West Virginia;

Answer of Robert Peirce & Associates, P.C. and the Lawyer Defendants to Plaintiff's Amended Complaint and/or portions thereof;

Answer of Ray Harron to Plaintiff's Amended Complaint and/or portions thereof;

Defendants' Answers to CSX Transportation, Inc.'s Requests for Admission and/or portions thereof;

Defendants' Answers to CSX Transportation, Inc.'s Interrogatories and/or portions thereof;

Defendants' Responses to CSX Transportation, Inc.'s Request for Production of Documents and/or portions thereof including any and all documents attached thereto.

**Plaintiff may utilize or offer any of the exhibits and/or documents listed below either during its case in chief or as part of rebuttal:**

Verification pages from Defendants for discovery responses filed in *CSXT v. Gilkison, et al.*;

Medical records regarding Earl Baylor produced by Self Regional Healthcare; Raymond Lewis, M.D.; and Christopher Knox, M.D.;

Correspondence between the Peirce firm and Earl Baylor;

Any and all documents concerning Ray Harron requested in discovery served by CSX Transportation, Inc. to the Peirce firm and Lawyer Defendants;

Any and all documents produced by CSX Transportation, Inc.;

Any and all exhibits attached to depositions taken in *CSXT v. Gilkison, et al.*;

Any document produced by Plaintiff, CSX Transportation, Inc. as part of its Rule 26(a)(1) Disclosures;

Any document produced by Defendants as part of their Rule 26(a)( 1) Disclosures;

Plaintiff reserves the right to introduce into evidence any exhibit identified or produced by Defendants in this action.

Plaintiff reserves the right to use any document required for purposes of rebuttal or impeachment.

**Defendants, Robert N. Peirce, Jr. and Louis A. Raimond expect to utilize the following exhibits at trial:**

a.   Earl Baylor x-ray dated August 4, 1999 and corresponding ILO Form of Dr. Harron dated August 31, 1999

b.   Earl Baylor x-ray dated May 23, 2002 and corresponding ILO Form of Dr. Harron dated July 1, 2002

c.   Earl Baylor x-ray dated June 11, 2003 and corresponding ILO Forms of Dr. Harron and Dr. Breyer, respectively, dated July 2, 2003 and January 6, 2006

d.   Earl Baylor x-rays dated February 26, 2002 (read by Dr. Smith) and corresponding ILO Form and written report dated June 24, 2008

e.   ILO Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses

f.   Peirce Firm Practice manager database excerpt from Railroad file

g.   Peirce Firm Practice manager database excerpt from Third Party file

h.   Results of PFT tests performed on Earl Baylor dated March 31, 2003 and November 10, 2003

i.   American Thoracic Society Official Statement dated December 12, 2003 concerning Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos

j.   Bullock Deposition Exhibits re: AAR meetings

    1.   Bullock Dep. Ex. 5:  American Railway Association Medical and Surgical Section Minutes, 1932

    2.   Bullock Dep. Ex. 6: American Railway Association Medical and Surgical Section Minutes, 1933

    3.   Bullock Dep. Ex. 7: Association of American Railroads Medical and Surgical Section Minutes, 1935

    4.   Bullock Dep. Ex. 8: Association of American Railroads Medical and Surgical Section Minutes, 1939

    5.   Bullock Dep. Ex. 9: Association of American Railroads Medical and Surgical Section Minutes, 1951

    6.   Bullock Dep. Ex. 10: Association of American Railroads Medical and Surgical Section Minutes, 1957

       7.     Bullock Dep. Ex. 11: Association of American Railroads Medical and Surgical Section Minutes, 1958

       8.     Bullock Dep. Ex. 12: Association of American Railroads Medical and Surgical Section Minutes, 1965

k.     Bullock Dep. Ex. 4:  News, Seaboard System Railroad, May 1984

l.     Verdict Slip from the trial of <u>Adams v. Conrail</u>

m.     Bullock Paper Presented:  *Asbestos Exposure During Brake Repair*, Alabama Service Association Meeting, Mobile, AL  1987

n.     CSX's Supplemental Answer to the Lawyer Defendants' Second Set of Interrogatories, Interrogatory 1 and clarifying email dated March 16, 2009

o.     Letter from Lindsey Phillips to Dr. Breyer dated January 4, 2006

p.     Documents Bates Numbers AWIBAY0047-50 and accompanying Affidavit produced by the Armstrong World Industries Asbestos PI Settlement Trust

q.     Defendants' Summary Judgment Exhibit 26 consisting of letters from various asbestos trusts regarding substitution of a report from another doctor for a report from Dr. Harron

r.     ILO form for Clyde Terry

s.     ILO form for Monty Terry

t.     ILO form for Joseph DeMatteis

u.     ILO forms for Ishmael Harmon

v.     ILO forms for Mitchell Alley

w.     ILO forms for William Triner

x.     ILO forms for David Heuke

y.     ILO forms for James A. Toombs

z.     ILO forms and PFT results for William J. Charles

aa.     ILO forms and PFT results for Larry L. Burger

bb.     ILO forms and PFT results for John F. Crowe

cc.     ILO forms and PFT results for Spurgeon A. Bass

dd.     ILO forms and PFT results for Douglas J. Adams

ee.     ILO forms for Kenneth Mackey, Sr.

ff.     Letter from Robert Peirce, Jr. to James A. Toombs dated 10/3/00

**Defendants, Robert N. Peirce, Jr. and Louis A. Raimond may utilize the following exhibits at trial:**

a.     Discovery responses of any party to this action, including any and all documents attached thereto or clarifications thereof made by counsel;

b.     Exhibits to the depositions of any deponent in this action;

c.     Demonstrative exhibits;

d.     Robert Peirce Jr. and Louis A. Raimond may also offer summaries of documents produced;

e.     The Defendants reserve the right to introduce into evidence any exhibit identified or produced by any party to this action;

f.     The Defendants reserve the right to introduce any document produced by any party as part of his/its Rule 26(a)(1) Disclosures or identified in his/its Rule 26(a)(3) Disclosures.

**Defendant Harron expects to utilize the following exhibits at trial:**

1.     X-ray of Earl Baylor dated June 11, 2003

2.     ILO form pertaining to Earl Baylor prepared by Dr. Breyer dated January 6, 2006

3.     ILO form pertaining to Earl Baylor prepared by Dr. Harron dated July 2, 2003

4.     CSX' Supplemental Answer to the Lawyer Defendants' Second Set of Interrogatories, Interrogatory 1 and clarifying e-mail of March 16, 2009

**Defendant, Ray Harron may utilize the following exhibits at trial:**

1.     Discovery responses of any party to this action

2.     X-rays of Earl Baylor dated August 4, 1999 and May 23, 2002

3.    ILO form pertaining to Earl Baylor prepared by Dr. Harron dated August

31, 2009

4.    ILO form pertaining to Earl Baylor prepared by Dr. Harron dated March 1,

2002

5.    Kishimoto, <u>A Patient with Asbestos-Induced Lung Cancer Complicated by</u>

<u>Silicosis</u>, 2001 *Industrial Health* 39, p. 189-193

6.    Dodson, <u>An Unusual Case of Mixed-Dust Exposure Involving a</u>

<u>"Noncommercial" Asbestos</u>, *Environmental Health Perspectives*,

February, 2001 (Vol. 109, No. 2), p. 199

7.    Mark, <u>Mixed Pneumoconiosis; Silicosis, Asbestosis, Talcosis, and</u>

<u>Berylliosis</u>, *Chest*, June 1979 (Vol. 75, No. 6), p. 726

8.    Shipley, <u>The ILO Classification of Radiographs of the Pneumoconioses</u>,

*Radiologic Clinics of North America*, November 1992 (vol. 30, No.6),

p.1135

9.    International Labor Office, <u>Guidelines for the Use of ILO International</u>

<u>Classification of Radiographs of Pneumoconioses: revised edition 1980</u>

10.   Chong, <u>Pneumoconiosis: Comparison of Imaging and Pathologic</u>

<u>Findings</u>, *RadioGraphics*, January 2006 (vol. 26, No. 1), p. 59

11.   Krizan, <u>The Scourge of Silicosis – Deadly Dust Can Leave You Gasping</u>

<u>at the Consequences</u>,  Engineering News Record November 6, 2000

12.   Rosenman, <u>Silicosis among Foundry Workers: Implication for the Need to</u>

<u>Revise the OSHA standard</u>, *Am. J. Epidemiology*, November 1996 (vol.

144, No. 9), p. 890

13.   NIOSH Issues Nationwide Alert on Silicosis, NIOSH Update dated
       November 18, 1992

14.   Goodwin, Previously Undetected Silicosis in New Jersey Decedents, *Am.
       J. Industrial Medicine*, 2003 (vol. 44, Issue 3), p. 304

15.   Current Trends Silicosis: Cluster in Sandblasters – Texas, and
       occupational Surveillance fro Silicosis, MMWR Weekly Report of the
       Centers for Disease Control dated June 29, 1990

16.   Hnizdo, Correlation between Radiological and Pathological Diagnosis of
       Silicosis: an Autopsy Population Based Study, , 1993 (vol. 24), p. 427

17.   Kreiss, Risk of Silicosis in a Colorado Mining Community, *Am. J.
       Industrial Medicine*, 1996 (vol. 30), p. 529

18.   Dement, Surveillance of Respiratory Diseases Among Construction and
       Trade Workers at Department of Energy Nuclear Sites, *Am. J. Industrial
       Medicine*, 2003 (vol. 43), p. 559

19.   Edstrom, "Labrador Lung": An Unusual Mixed Dust Pneumoconiosis,
       *Can. Med. Assoc J.*, January 1982 (vol. 126 no. 1), p. 27

20.   Osornio-Vargas, Lung Cell toxicity Experimentally Induced by a Mixed
       Dust from Mexicali, Baja California, Mexico, *Environ Res.*, October 1991
       (vol. 56, No. 1), p. 31

21.   Weill, Radiographic and Physiologic Patterns Among Workers Engaged in
       Manufacture of Asbestos Cement Products: A Preliminary Report, J.
       Occupational Medicine, March 1973 (vol. 15, No. 3), p. 248

22.    Green, <u>Pathologic Responses to Inhaled Silica</u> in Silica and Silica-Induced Lung Diseases, Castronova, ed. (1995)

23.    Vincent Roggli, *Pathology of Asbestos-Associated Diseases*, (Springer 2004)

24.    Prepared Testimony of Dr. Laura Welch before the United States Senate Judiciary Committee dated February 2, 2005

25.    Decision of the US. Department of Labor, Division of Energy Employees Occupational Illness Compensation, Final Adjudication Board, Docket No. 13458-2002 (June 5, 2002)

26.    Decision of the U.S. Department of Labor, Division of Energy Employees Occupational Illness Compensation, Final Adjudication Board, Docket No. 6443-2002 (April 1, 2002)

27.    David Rosner, *Deadly Dust: Silicosis and the Politics of Occupational Disease in Twentieth-Century America* (Princeton Univ. Press 1994)

28.    Mossman, <u>Mechanisms in the Pathogenesis of Asbestosis and Silicosis</u>, *Am. J. Respir. Crit. Med*, 1998 (vol. 157), p. 1666

29.    Weill, <u>Lung Function Consequences of Dust Exposure in Asbestos Cement Manufacturing Plants</u>, *Arch. Environ. Health*, February 1975 (vol. 30, No.2), p. 88

30.    Any and all responses of Plaintiff to discovery served by any defendant, including any and all documents attached thereto;

31.    Any and all exhibits attached to any deposition taken in this matter;

32.     Any document produced by co-defendants as part of their Rule 26(a)(1)

Disclosures or 26(a)(3) Disclosures; and

33.     Any document produced by Plaintiff CSX Transportation, Inc. as part of

its Rule 26(a)(1) Disclosures

Dr. Harron reserves the right to introduce into evidence any exhibit identified or produced by any party to this action;

**D**.     Objections to Rule 26(a)(3) Disclosures:

**By Plaintiff, CSX Transportation, Inc.:**

1.  Plaintiff objects to the Lawyer Defendants' Exhibit I, "American Thoracic Society Statement dated December 12, 2003 concerning Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos pursuant to Rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence.

2.  Plaintiff objects to the Lawyer Defendants' Exhibit J, "Bullock Depositions Exhibits re: AAR meetings" and the subparts listed therein as subparts 1 through 8 pursuant to Rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence. Plaintiff further incorporates those arguments and objections as set forth in its <u>Motion In Limine to Exclude Rule 30(B)(6) Testimony of William Bullock, Ph.D. and Related Arguments</u> previously filed with the Court on or about August 20, 2009 and incorporated herein by reference.

3.  Plaintiff objections to the Lawyer Defendants' Exhibit K, "Bullock Dep. Ex. 4: News, Seaboard System Railroad, May 1984 pursuant to Rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence.

4.  Plaintiff objects to the Lawyer Defendants' Exhibit L, "Verdict Slip from trial of <u>Adams v. Conrail</u> pursuant to Rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence.

5.  Plaintiff objects to the Lawyer Defendants' Exhibit M, "Bullock Paper Presented: *Asbestos Exposure During Brake Repair*, Alabama Service Association Meeting, Mobile, AL 1987 pursuant to Rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence.

6.  Plaintiff objects to the Lawyer Defendants' Exhibit P, "Document Bates Numbers AWIBAY0047-50 and accompanying Affidavit produced by the Armstrong World Financial Industries Asbestos PI Settlement Trust" pursuant to Rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence.

7.  Plaintiff objects to the Lawyer Defendants' Exhibit Q, "Defendants Summary Judgment Exhibit 26 consisting of letters from various asbestos trusts regarding substitution of a report from another doctor for a report from Dr. Harron" pursuant to Rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence.

8.  Plaintiff objects to the Lawyer Defendants' Exhibits R-FF which consist of various ILO forms, Pulmonary Function Test ("PFT") results, and letters regarding various individual pursuant to Rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence. Plaintiff further objects as the ILO forms, PFT results, and letters were not produced to CSXT during the discovery phase of this matter and as such must be excluded under Federal Rule of Civil Procedure 37.

9.  Plaintiff objects to the listing of individuals from Huddleston Bolen LLP and McGuire Woods LLP as potential witnesses during any portion of this matter including any bench trial on damages.

10. Plaintiff objects to those individuals (Joseph DeMatteis, Clyde W. Terry, Monty L. Terry, James A. Toombs, William Triener, Ishamel Harmon, Mitchell Alley, David Heuke, Kenneth Mackey, Larry L. burger, William J. Charles, John F. Crowe, Spurgeon A. Bass, and Douglas Adams) identified as witnesses which the Lawyer Defendants may call at the trial of this matter. These individuals were never disclosed to CSXT in violation of the Rule 26(e) of the Federal Rules of Civil Procedure and as such must be struck from this matter. CSXT further objects pursuant to Rule 401, 402, and 403 of the Federal Rules of Evidence as any testimony offered by the listed individuals would be irrelevant to the current dispute or of such character and nature that the prejudicial effect of allowing such testimony would be substantially outweighed by prejudice to CSXT.

CSXT further objects to any testimony offered by the above-identified individuals as the Peirce Firm failed to disclose such individuals during the discovery phase of this matter in violation of Rule 26(e). By failing to designate and/or disclosures these potential witnesses as required by Federal Rule of Civil Procedure 26 they must be excluded from the trial of this matter pursuant to Federal Rule of Civil Procedure 37(c). Rule 37(c)(1) provides in relevant part, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See also, Bryce v. Trace, Inc.*, 2008 WL 906142, (W.D. Okla., March 31, 2008)(witnesses excluded when disclosures was contained in Rule 26(a)(3) Disclosures only without prior designation in discovery); *Carney v. K-Mart Corporation*, 176 F.R.D. 227, 229 (S.D.W.V. 1997); *Finley v. Marathon Oil Company*, 75 F.3d 1225, 1230 (7th Cir. 1996) noting, "[t]he sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show how its violation of Rule 26(a) was either justified or harmless.

11. Plaintiff objects to those Exhibits which Defendant Harron may offer at trial and as further identified as Exhibits E through CC which consists of various published articles and other publications pursuant to Rules 401, 402, 403, 801, and 802 of the Federal Rules of Evidence.

12. Plaintiff objects to the Defendant Harron's listing of counsel for CSXT including Robert L. Massie, Marc E. Williams, and J. David Bolen, as witnesses which the Defendant Harron may call.

13. Each Defendant has indicated that they may use summaries of any Exhibit listed as part of its Rule 26(a)(3) Disclosures. To the extent that any Defendant intends to use a summary of any listed exhibit, CSXT objects to such summary to the extent that it does not comport with the requirements of the Federal Rules of Evidence and request that the Defendants make available to it copies of the intended summaries and that the Defendants produce at trial the documents upon which such summaries are based.

**By Defendants, Robert N. Peirce, Jr. and Louis A. Raimond:**

Pursuant to L. R. Civ. P 16.04(b)(1), the Lawyer Defendants make the following objections to CSX Transportation's Rule 26(a)(3) disclosures:

1. **In addition to objecting under Federal Rules of Evidence 401, 402, 403, and 404 and on bases set forth in previously filed Motions in Limine, the Lawyer Defendants object to Plaintiff's proposed use of any deposition testimony that would constitute hearsay under Rules 801 and 802 of the Federal Rules of Civil Procedure, including but not limited to:**

   Lester Brickman – May 14, 2009
   William Bullock – May 13, 2009
   Richard Cassoff – April 24, 2009 and May 29, 2009
   Kevin Cooper – May 5, 2009
   Robert Daley – May 5, 2009
   Danielle Daley – April 6, 2009
   David Johnson – April 29, 2009
   Gregory McDermott – April 30, 2009
   Lindsey Phillips – April 7, 2009
   Anil Vachani – April 28, 2009
   Mark Badders – September 3, 2009

2. **The Lawyer Defendants object to the following exhibits and/or documents listed as those that Plaintiff expects to offer or utilize at trial:**

Peirce Firm Litigation file for Earl Baylor as produced by the Peirce Firm:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 10] (Doc. No. 727) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.
In addition, this exhibit is comprised of several pages that should not be admitted in mass form.  If certain documents within the composite exhibit are admissible, they should be analyzed individually.

Peirce Firm Third Party file for Earl Baylor as produced by the Peirce Firm:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that this exhibit is comprised of several pages that should not be admitted in mass form.  If certain documents within the composite exhibit are admissible, they should be analyzed individually.
In addition, the Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Peirce Firm Flyers for August 4, 1999, May 23, 2002, and June 11, 2003 Screenings:
No objection.

Asbestos Questionnaire of Earl Baylor:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 4] (Doc. No. 721) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Printouts of the Peirce firm's litigation and third party database entries regarding Earl Baylor:
If this exhibit is the same as the exhibits listed by the Lawyer Defendants in their 26(a)(3) disclosures at C(1)(f) and C(1)(g), then the Lawyer Defendants have no objection.  However, if these exhibits listed by Plaintiff are different than those listed by the Lawyer Defendants, then the Lawyer Defendants object to this exhibit on the basis that it is vague, ambiguous and unclear as to what this exhibit consists of and on the basis of Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.

Peirce Firm pre-printed diagnosis forms regarding Earl Baylor:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

X-rays of Earl Baylor dated August 4, 1999, May 23, 2002, and June 11, 2003:
No objection.

CT Images of Earl Baylor:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 6] (Doc. No. 723) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Report of CT dated November 19, 2003:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 7] (Doc. No. 724) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Ray Harron ILO's of Earl Baylor X-rays dated August 4, 1999, May 23, 2002, and June 11, 2003:
No objection.

Donald Breyer ILO of Earl Baylor X-ray dated June 11, 2003:
No objection.

Richard Cassoff Report of examination of Earl Baylor dated December 15, 2007:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
In addition, the Lawyer Defendants have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Asbestos bankruptcy trusts' records regarding Earl Baylor claims:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402,
403, 404, 801 and 802 of the Federal Rules of Evidence.
In addition, the Lawyer Defendants have filed a Motion in Limine [No. 5]
(Doc. No. 722) that in part addresses CSX's intended arguments regarding
this Exhibit.  For the reasons stated in that Motion, this Exhibit should be
excluded.

Correspondence between the Peirce firm and Drs. Harron and Breyer:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402,
403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that this
exhibit is comprised of several pages that should not be admitted in mass
form.  If certain documents within the composite exhibit are admissible,
they should be analyzed individually.
In addition, the Lawyer Defendants have filed a Motion in Limine [No.
15] (Doc. No. 732) that in part addresses CSX's intended arguments
regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit
should be excluded.

May 11, 2009 Deposition of Earl Baylor and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402,
403 and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the
deposition of Mr. Baylor on the basis that Plaintiff did not list each
document individually so that each document may be evaluated
individually as admissible for use at trial.

May 8, 2007 Deposition of Robert Peirce, Jr. and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402,
403 and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the
deposition of Mr. Peirce on the basis that Plaintiff did not list each
document individually so that each document may be evaluated
individually as admissible for use at trial.

April 7, 2009 Deposition of Robert Peirce Jr. and exhibits attached
thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402,
403 and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the
deposition of Mr. Peirce on the basis that Plaintiff did not list each
document individually so that each document may be evaluated
individually as admissible for use at trial.

April 7, 2009 Deposition of Louis Raimond:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.

March 11, 2009 Deposition of Ray Harron, MD and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Dr. Harron on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

May 27, 2009 Deposition of Ray Harron, M.D. and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Dr. Harron on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

May 14, 2009 Deposition of Professor Lester Brickman and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Professor Brickman on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.
In addition, the Lawyer Defendants have filed a Motion in Limine [No. 11] (Doc. No. 728) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

May 5, 2009 Deposition of Kevin Cooper, M.D. and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Dr. Cooper on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

April 28, 2009 Deposition of Anil Vachani, M.D. and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Dr. Vachani on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.
In addition, the Lawyer Defendants further object to these exhibits on the basis that they have filed a Motion in Limine [No. 9] (Doc. No. 726) that in part addresses CSX's intended arguments regarding Dr. Vachani.  For the reasons stated in that Motion, this Exhibit should be excluded.

April 30, 2009 Deposition of David Johnson, Esq. and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Mr. Johnson on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.
In addition, the Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 12] (Doc. No. 729) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

May 13, 2009 Deposition of William Bullock, Ph.D.
The Lawyer Defendants object to the use of the deposition testimony of Mr. Bullock on the grounds of hearsay under Rules 801 and 802 of the Federal Rules of Evidence.

September 3, 2009 Deposition of Mark Badders:
The Lawyer Defendants object to the use of the deposition testimony of Mr. Badders on the grounds of hearsay under Rules 801 and 802 of the Federal Rules of Evidence.

April 22, 2009 Deposition of Christopher Knox MD and exhibits attached thereto:
The Lawyer Defendants object to the listing of the exhibits to the deposition of Dr. Knox on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

May 8, 2009 Deposition of Donald Breyer, MD and exhibits attached
thereto:
The Lawyer Defendants object to the listing of the exhibits to the
deposition of Dr. Breyer on the basis that Plaintiff did not list each
document individually so that each document may be evaluated
individually as admissible for use at trial.

May 5, 2009 Deposition of Robert Daley and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402,
403, 404, 801 and 802 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the
deposition of Mr. Daley on the basis that Plaintiff did not list each
document individually so that each document may be evaluated
individually as admissible for use at trial.

April 6, 2009 Deposition of Danielle Daley and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402,
403, 404, 801 and 802 of the Federal Rules of Evidence.

Further, the Lawyer Defendants object to the listing of the exhibits to the
deposition of Ms. Daley on the basis that Plaintiff did not list each
document individually so that each document may be evaluated
individually as admissible for use at trial.

April 24, 2009 Deposition of Richard Cassoff, MD and exhibits attached
thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402,
403, 404, 801 and 802 of the Federal Rules of Evidence.

Further, the Lawyer Defendants object to the listing of the exhibits to the
deposition of Dr. Cassoff on the basis that Plaintiff did not list each
document individually so that each document may be evaluated
individually as admissible for use at trial.
In addition, the Lawyer Defendants object to this exhibit on the basis that
they have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part
addresses CSX's intended arguments regarding this Exhibit. For the
reasons stated in that Motion, this Exhibit should be excluded.

May 29, 2009 Deposition of Richard Cassoff, MD and exhibits attached
thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402,
403, 404, 801 and 802 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the
deposition of Dr. Cassoff on the basis that Plaintiff did not list each
document individually so that each document may be evaluated
individually as admissible for use at trial.

In addition, the Lawyer Defendants object to this exhibit on the basis that they have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

April 7, 2009 Deposition of Lindsey Phillips and exhibits attached thereto: The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Ms. Phillips on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

May 4, 2009 Deposition of Henry Smith, DO and exhibits attached thereto:
No objection, other than those stated on the record or to be made at trial.

November 17, 2006 Deposition of James Corbitt and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Mr. Corbitt on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.
In addition, the Lawyer Defendants object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

April 28, 2009 Deposition of John Burkoff and exhibits attached thereto: The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Professor Burkoff on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

May 8, 2009 Deposition of Michael Ellenbecker and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Dr. Ellenbecker on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

April 23, 2009 Deposition of Arthur Frank and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Dr. Frank on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

September 4, 2009 Deposition of Arthur Frank and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Dr. Frank on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

April 30, 2009 Deposition of Gregory McDermott and exhibits attached thereto:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Mr. McDermott on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

May 1, 2009 Deposition of Kenneth Rosenman and exhibits attached thereto;
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, and 404 of the Federal Rules of Evidence.
Further, the Lawyer Defendants object to the listing of the exhibits to the deposition of Dr. Rosenman on the basis that Plaintiff did not list each document individually so that each document may be evaluated individually as admissible for use at trial.

Complaint, *Charles Adams v. CSX Transportation, Inc.,* Civil Action No. 06-C-72, Harrison County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 10] (Doc. No. 727) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Letter to Court forwarding payment for non-resident costs, *Charles Adams v. CSX Transportation, Inc.*, Civil Action No. 06-C-72, Harrison County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.

Motion to Dismiss for Lack of Venue, *Charles Adams v. CSX Transportation, Inc.,* Civil Action No. 06-C-72, Harrison County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 10] (Doc. No. 727) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Final Dismissal Order, *Charles Adams v. CSX Transportation, Inc.,* Civil Action No. 06-C-72, Harrison County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 10] (Doc. No. 727) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Final Order Transferring Cases to West Virginia Mass Litigation Panel for FELA Asbestos Litigation, *Charles Adams v. CSX Transportation, Inc.,* Civil Action No. 06-C-72, Harrison County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 10] (Doc. No. 727) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Complaint, *Earl Baylor v. CSX Transportation, Inc.,* Civil Action No. 01-C-3955, Harrison County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.
This is a case that neither Mr. Peirce, Mr. Raimond, nor the Peirce Law Firm were involved in.

Dismissal Order, *Earl Baylor v. CSX Transportation, Inc.,* Civil Action No. 01-C-3955, Harrison County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.
This is a case that neither Mr. Peirce, Mr. Raimond, nor the Peirce Law Firm were involved in.

Complaint, *Jerry Abbott v. CSX Transportation, Inc.,* Civil Action No. 08-C-2120, Harrison County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 10] (Doc. No. 727) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

12/26/08 Notice of Dismissal, *Earl Baylor v. CSX Transportation, Inc.,* Civil Action No. 08-C-2155, in *Jerry Abbott v. CSX Transportation, Inc.,* Civil Action No. 08-C-2120, Kanawha County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 10] (Doc. No. 727) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Complaint, *Bellis v. American Standard*, Action No. 05-CI-0032, Greenup, Kentucky:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
In addition, the Lawyer Defendants have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Dismissal Order, *Bellis v. American Standard*, Action No. 05-CI-0032, Greenup, Kentucky:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
In addition, the Lawyer Defendants have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

12/14/06 Agreed Order, *In RE: FELA Asbestos Cases*, Civil Action No. 02-C-9500, Kanawha County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

Supreme Court of Appeals of West Virginia, January 2008 Term, No. 33665, *In RE:  FELA Asbestos Cases,* Affirmed Appeal from Civil Action No. 02-C-9500, Kanawha County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

July 17, 2009 Case Management Order, Judge Recht, *In RE: FELA Asbestos Cases*, Civil Action No. 02-C-9500, Kanawha County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

8/4/09 Peirce firm Plaintiffs' Motion to Modify Case Management Order, attached Notice of Hearing, Proposed Order, and Letter from R. Daley to Judge Recht, *In RE:  FELA Asbestos Cases*, Civil Action No. 02-C-9500, Kanawha County, West Virginia:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

State Medical Board Orders concerning Ray Harron's state licensure status:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
In addition, the Lawyer Defendants have filed a Motion in Limine [No. 14] (Doc. No. 731) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Transcript of 12/17/08 Proceedings, State of New York, Department of Health, Board for Professional Medical Conduct:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
In addition, the Lawyer Defendants have filed a Motion in Limine [No. 14] (Doc. No. 731) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Asbestos bankruptcy trusts' policy notices:
This exhibit is vague and ambiguous; for example, it is unclear as to which asbestos bankruptcy trusts' policy notices the Plaintiff intends to use. Therefore, the Lawyer Defendants object to this exhibit under Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

Opinions/Orders dismissing claims supported by Ray Harron's diagnoses:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
In addition, the Lawyer Defendants have filed Motions in Limine [Nos. 14 and 15] (Doc. Nos. 731 and 732) that in part address CSX's intended arguments regarding this Exhibit.  For the reasons stated in those Motions, this Exhibit should be excluded.

Invoices from Ray Harron to the Peirce Firm:
The Lawyer Defendants object to this exhibit on the grounds of relevance, pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.

Print out of Lists of N&M X-rays reviewed by Ray Harron:
The Lawyer Defendants object to this exhibit on the grounds of relevance, pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
In addition, the Lawyer Defendants have filed a Motion in Limine [No. 15] (Doc. No. 732) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Travel expenses for Richard Cassoff dated 12/14/07 – 12/15/07:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Richard Cassoff diagnosis forms dated December 15, 2007:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Spirometry reports dated 12/15/07:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Richard Cassoff diagnosis forms submitted to CSX Transportation, Inc. by the Peirce firm in support of FELA claims:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 5] (Doc. No. 722) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

GA. Code § 31-13-8.2:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

GA. Comp. R. & Regs. 290-5-22-.01:
The Lawyer Defendants object to this exhibit on the grounds of relevance, pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part addresses CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

S.C. Code § 44-74-30:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed Motions in Limine [Nos.  2 and 5] (Doc. Nos. 719 and 722) that in part address CSX's intended arguments regarding this Exhibit.  For the reasons stated in those Motions, this Exhibit should be excluded.

ARRT Content Specifications:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part

addresses CSX's intended arguments regarding this Exhibit. For the reasons stated in that Motion, this Exhibit should be excluded.

8/21/01 Emergency Cease and Desist Order, Texas Department of Health: The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part addresses CSX's intended arguments regarding this Exhibit. For the reasons stated in that Motion, this Exhibit should be excluded.

Judgment, *USA v. Corbitt*, Northern District of Ohio, Eastern Division, Criminal Case No. 5:93CR133:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part addresses CSX's intended arguments regarding this Exhibit. For the reasons stated in that Motion, this Exhibit should be excluded.

Transcripts of Proceedings, 5/12/93 and 8/12/93, *USA v. Corbitt*, Northern District of Ohio, Eastern Division, Criminal Case No. 5:93CR133:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part addresses CSX's intended arguments regarding this Exhibit. For the reasons stated in that Motion, this Exhibit should be excluded.

Correspondence from Ohio Department of Health to James Corbitt:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part addresses CSX's intended arguments regarding this Exhibit. For the reasons stated in that Motion, this Exhibit should be excluded.

Ohio Department of Health documents regarding James Corbitt:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.
The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part addresses CSX's intended arguments regarding this Exhibit. For the reasons stated in that Motion, this Exhibit should be excluded.

10/14/01 Report and Recommendation of Hearing Examiner concerning licensure of James Corbitt, 9/4/01 Hearing before Ohio Director of Health: The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 2] (Doc. No. 719) that in part addresses CSX's intended arguments regarding this Exhibit. For the reasons stated in that Motion, this Exhibit should be excluded.

July 2, 2009 CMO Motion Hearing transcript, *In Re: FELA Asbestos Cases*, Civil Action No. 02-C-9500, Kanawha County, West Virginia: The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

Answer of Robert Peirce & Associates, P.C. and the Lawyer Defendants to Plaintiff's Amended Complaint and/or portions thereof: The Lawyer Defendants object to this exhibit on the basis that Plaintiff has not specified the portions of the Answer of the Peirce Firm and the Lawyer Defendants to Plaintiff's Amended Complaint that it intends to use at trial. The Lawyer Defendants therefore submit that use of the Answer in mass form is not appropriate and violates Rules 401, 402 and 403.

Answer of Ray Harron to Plaintiff's Amended Complaint and/or portions thereof: The Lawyer Defendants object to this exhibit on the basis that Plaintiff has not specified the portions of the Answer of Ray Harron to Plaintiff's Amended Complaint that it intends to use at trial. The Lawyer Defendants therefore submit that use of the Answer in mass form is not appropriate and violates Rules 401, 402 and 403.

Defendants' Answers to CSX Transportation, Inc.'s Requests for Admission and/or portions thereof: The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 on the basis that Plaintiff has not specified which answer and/or response to discovery it intends to use at trial.

Defendants' Answers to CSX Transportation, Inc.'s Interrogatories and/or portions thereof: The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 on the basis that Plaintiff has not specified which answer and/or response to discovery it intends to use at trial.

Defendants' Responses to CSX Transportation, Inc.'s Request for Production of Documents and/or portions thereof including any and all documents attached thereto:

The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 on the basis that Plaintiff has not specified which answer and/or response to discovery it intends to use at trial.

3.      **The Lawyer Defendants object to the following exhibits and/or documents listed as those that Plaintiff may offer or utilize during its case in chief or as part of rebuttal:**

Verification pages from Defendants for discovery responses filed in *CSXT v. Gilkison, et al.*

No objection, assuming that each verification page will be used in conjunction with an admissible discovery response that the Verification verified.

Medical records regarding Earl Baylor produced by Self Regional Healthcare; Raymond Lewis, M.D.; and Christopher Knox:

The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 801 and 802 of the Federal Rules of Evidence.

Correspondence between the Peirce Firm and Earl Baylor:

The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.

The Lawyer Defendants further object to this exhibit on the basis that they have filed a Motion in Limine [No. 8] (Doc. No. 725) that in part address CSX's intended arguments regarding this Exhibit.  For the reasons stated in that Motion, this Exhibit should be excluded.

Any and all documents concerning Ray Harron requested in discovery served by CSX Transportation, Inc. to the Peirce firm and Lawyer Defendants:

The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403 and 404 of the Federal Rules of Evidence.

The Lawyer Defendants further object to this exhibit on the basis that they have filed Motions in Limine [Nos. 14 and 15] (Doc. Nos. 731 and 732) that in part address CSX's intended arguments regarding this Exhibit.  For the reasons stated in those Motions, this Exhibit should be excluded.

Any and all documents produced by CSX Transportation, Inc.:

The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

Any and all exhibits attached to depositions taken in *CSXT v. Gilkison, et al.*

The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

Any document produced by Plaintiff, CSX Transportation, Inc. as part of its Rule 26(a)(1) Disclosures:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

Any document produced by Defendants as part of their Rule 26(a)(1) Disclosures:
The Lawyer Defendants object to this exhibit pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

Plaintiff reserves the right to introduce into evidence any exhibit identified or produced by Defendants to this action:
The Lawyer Defendants object to Plaintiff's listing of these documents pursuant to Rules 401, 402, 403, 404, 801 and 802 of the Federal Rules of Evidence.

**By Defendant Harron:**

Pursuant to L.R. Civ.P. 16.04(b)(1), Dr. Harron makes the following objections to CSX Transportation's Rule 26(a)(3) disclosures:

1.     Dr. Harron objects to Plaintiff's proposed use of any deposition testimony that would constitute hearsay under Rules 801 and 802 of the Federal Rules of Evidence.

2.     Dr. Harron objects to Plaintiff's proposed use of any correspondence between the Peirce Firm, Dr. Harron and Dr. Breyer that would constitute hearsay under Rules 801 and 802 of the Federal Rules of Evidence.

3.     Dr. Harron objects to Plaintiff's proposed use of the complete list of N&M x-rays read by Dr. Harron that would constitute hearsay under Rules 801 and 802 of the Federal Rules of Evidence.

4.     Dr. Harron objects to Plaintiff's proposed use of the Peirce pleadings and discovery responses, including but not limited to their verification pages, that would constitute hearsay under Rules 801 and 802 of the Federal Rules of Evidence.

5.     Dr. Harron objects on the grounds of relevance, pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence, to the following exhibits and/or documents that Plaintiff proposes to offer or utilize at trial:

(i)      Peirce litigation and trust file with regard to Mr. Baylor;

(ii)     Peirce Firm advertising flyers;

(iii)    Peirce pleadings and discovery responses, including but not limited to, verification pages (this is hearsay and not relevant)

(iv)     Asbestos questionnaire completed by Mr. Baylor;

(v)      Peirce Firm preprinted diagnosis form;

(vi)     Printouts of Peirce Firm databases;

(vii)    CT images of Mr. Baylor from November 2003, and related reports

(viii)   Dr. Cassoff  reports

(ix)     Complete bankruptcy trust records of Mr. Baylor

(x)      Correspondence between the Peirce Firm, Dr. Harron and Dr. Breyer

(xi)     Plaintiff's designated use of the depositions listed in Part B of this Pre Trial Order, including but not limited to Messrs. Brickman and Corbitt and Dr.'s Knox and Cassoff

(xii)    Litigation documents filed in conjunction with Mr. Baylor's claim - pleadings, other filings in W. Va. State court

(xiii)   Billing invoices from Dr. Harron to the Peirce Firm

(xiv)    All expenses and diagnoses of Dr. Cassoff

(xv)     Spirometry reports from December 2007

(xvi)    Codes of Law from the states of Georgia and South Carolina

(xvii)   AART content specifications

(xviii)  Texas Cease and Desist Order, Judgment in United States v. Corbitt, transcripts of the Corbitt proceedings, OH DOH proceedings against Corbitt, and all documents relating to Mr. Corbitt

6.  Dr. Harron objects on the grounds of relevance, pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence, and improper character evidence pursuant to Rule 404(b) to the following exhibits and/or documents that Plaintiff proposes to offer or utilize at trial:

(i)  All state licensure orders regarding Dr. Harron;

(ii)  Transcript of the New York State Board hearing

(iii)  All trust policy notices

(iv)  Orders dismissing cases based upon Dr. Harron's diagnoses

(v)  Complete list of N&M x-rays read by Dr. Harron

## 2.  **CONTESTED ISSUES OF LAW REQUIRING A RULING BEFORE TRIAL**

**By Plaintiff, CSX Transportation, Inc.:**

1.  Plaintiff, CSX Transportation, Inc.'s Motion *In Limine* to Exclude the Opinions and Reports of Doctors James W. Ballard, Roy P. Johnson and Henry K. Smith

2.  Plaintiff CSX Transportation, Inc.'s Motion *In Limine* to Exclude Expert Testimony from Doctor Arthur L. Frank, M.D.

3.  Plaintiff CSX Transportation, Inc.'s Motion *In Limine* to Exclude References to Plaintiff's "Election" Not to Conduct a Physical Examination of Earl Baylor

4.  Plaintiff CSX Transportation, Inc.'s Motion *In Limine* to Exclude Rule 30(b)(6) Testimony of William Bullock, Ph.D. and Related Arguments

5.  Plaintiff, CSX Transportation, Inc.'s Motion *In Limine* to Exclude Medical or Scientific Testimony from Donald Breyer, M.D. Beyond His January 6, 2006 B Read of Earl Baylor's June 11, 2003 X-Ray

6.  Plaintiff, CSX Transportation, Inc.'s Motion for Clarification of June 4th, 2009 Memorandum Opinion and Order Denying the Peirce Defendants' Motion for Protective Order Concerning Harron-Related Documents

**By Defendants, Robert N. Peirce, Jr. and Louis A. Raimond:**

The issues set forth in the following motions pending before the Court:

1.      Motion for Summary Judgement Regarding Counts 3 and 4 (Fraud and Conspiracy Related to Baylor) By Defendants Robert Peirce, Jr. And Louis A. Raimond;

2.      Motion in Limine No. 1 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Limit the Scope of the Trial to Evidence Related to and Facts Concerning the Claim of Earl Baylor;

3.      Motion in Limine No. 2 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Preclude CSX from Submitting Evidence or Arguing to the Jury Regarding James Corbitt's Prior Criminal Conviction and other Collateral Matters Related to Mr. Corbitt;

4.      Motion in Limine No. 3 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Preclude CSX from Submitting Evidence or Arguing to the Jury Regarding Political Contributions Made By the Defendants;

5.      Motion in Limine No. 4 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Preclude CSX from Submitting Evidence Related to Mr. Earl Baylor's Asbestos Questionaire that was never Submitted to CSX;

6.      Motion in Limine No. 5 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Preclude CSX from Submitting Evidence or Arguing to the Jury Regarding Dr. Cassoff or the Asbestos Litigation Trusts;

7.      Motion in Limine No. 6 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Exclude Evidence, Including Expert Testimony, of the November 2003 CT Report;

8.      Motion in Limine No. 7 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond To Exclude CSX from Contending that the November 2003 CT Report was in the Peirce Firm's CSX or Railroad File;

9.      Motion in Limine No. 8 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Preclude CSX from Submitting Evidence on the Details of the Attorney-Client Relationship Between Mr. Baylor and the Peirce Firm;

10.     Motion in Limine No. 9 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Preclude CSX from Submitting Evidence Regarding the Purported Prevalence of Asbestosis in Railroaders;

11.     Motion in Limine No. 10 By Defendants Robert N. Peirce, Jr., and Louis A.Raimond Seeking to Preclude CSX from Submitting Evidence Related to the Dismissal of Mr. Earl Baylor's Lawsuit Against CSX or its Subsequent History;

12.     Motion in Limine No. 11 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Exclude Testimony of Plaintiff CSX's Expert Witness Professor Lester Brickman;

13.     Motion in Limine No. 12 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Exclude Testimony of Plaintiff CSX Expert Witness David D. Johnson, III, Esq.;

14.     Motion in Limine No. 13 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Preclude Mark T. Wade and Alexander Nepa, Sr. From Testifying at Trial;

15.     Motion in Limine No. 14 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Preclude CSX from Submitting Evidence or Arguing to the Jury Regarding Collateral Matters Related to Dr. Ray A. Harron and the Silicosis Litigation;

16.     Motion in Limine No. 15 By Defendants Robert N. Peirce, Jr., and Louis A. Raimond Seeking to Preclude CSX from Submitting Evidence or Arguing to the Jury Regarding Dr. Ray A. Harron's Medical Reports on Persons Other Than Mr. Earl Baylor.


**By Defendant Ray Harron:**

The issues set forth in the following motions pending before the Court:

A.     Defendant Harron's Motion for Summary Judgment

B.     Motion in Limine to Preclude CSX from Introducing Evidence of Dr. Harron's Assertion of His Fifth Amendment Right Against Self-Incrimination in Other Proceedings;

C.     Motion in Limine to Preclude the Testimony of Lester Brickman;

D.     Motion in Limine to Preclude CSX from Introducing Evidence or Arguing to the Jury Regarding State Disciplinary Actions Against Dr. Harron;

E.     Motion in Limine to Preclude Statistical Evidence Relating to the Rate of Asbestosis Among Railroad Employees and to Dr. Harron's Purported Positive Read Rate;

F.     Motion in Limine to Preclude CSX from Introducing Evidence of or Relating to B-Reads of X-Rays Other Than Dr. Harron's B-Reads of Earl Baylor's X-Rays;

G.     Motion in Limine to Preclude CSX from Introducing Evidence or Arguing to the Jury Regarding the Court's Opinion in the Matter In Re Silica Products Litigation, No. MDL 1553, Dated June 30, 2005;

H.     Motion in Limine to Preclude CSX from Introducing Evidence Against Dr. Harron of Alleged Bad Conduct by Co-Defendants Robert Peirce, Jr. and Louis A. Raimond.

**3.     BRIEF STATEMENT OF ELEMENTS BY PLAINTIFF**

CSXT intends to prove through testimony and evidence that Defendants Robert Peirce Jr., and Louis A. Raimond developed and implemented a plan with the assistance of Defendant Harron, whereby the Defendants engaged in a scheme to defraud CSXT through the presentation of a false claim on behalf of Earl Baylor. As indicated below, the Defendants actions satisfy all of the traditional and essential elements of fraud under West Virginia law. *See Horton v. Tyree*, 139 S.E. 737, 738 (W.Va. 1927)((1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.") (internal citations omitted); *Lengyel v. Lint*, 280 S.E.2d 66, Syl. 1 (W.Va. 1981).

CSXT will further prove that it was the Defendants intention from the outset of their asbestosis screening program to develop and implement a fraud like that perpetrated regarding Mr. Baylor's claims against CSXT. Specifically, CSXT will prove that the Defendants Peirce and Raimond ("Lawyer Defendants") initiated their scheme to defraud CSXT by directing an unlicensed x-ray technician, Jim Corbitt, and his mobile screening company, U.S. X-Ray, Inc., to take low quality x-rays of Mr. Baylor and others at a mass screening in the parking lot of a Holiday Inn near Augusta, Georgia in a manner that likely violated state law. On June 11, 2003, Corbitt produced an x-ray of Mr. Baylor that was both underexposed and underinflated so as to show more white marks in the lung fields than would be seen on a higher quality film; i.e., Corbitt developed a film more prone to findings of asbestosis even where none exist.  The Lawyer Defendants opened a full client file for Baylor only after sending his x-ray to West Virginia to be read by Defendant Harron, who has been described as "by far the most prolific litigation doctor" in America.  Indeed, for the Lawyer Defendants alone, Harron generated nearly 6,000 so-called "positive B reads" of CSXT employees at a rate known to be more than 30 times the generally accepted prevalence of asbestosis among railroaders.  As he did in an estimated 65% of all x-rays sent to him by the Lawyer Defendants, Harron found Baylor's to exhibit signs consistent with asbestosis.

On December 15, 2003, the Lawyer Defendants received, unsolicited, the only truly independent medical records they ever possessed on Mr. Baylor prior to filing his lawsuit.   Included in those records was a November 19, 2003 report from Dr. Christopher Knox of a high resolution CT scan indicating that Baylor does not have asbestosis.

Possessing Harron's bogus B read and ignoring the independent negative CT scan results, Peirce next attempted to obtain a written exposure history from Mr. Baylor that could be submitted to CSXT for settlement purposes.   After receiving Baylor's completed "Asbestos Questionnaire," which apparently contained unsatisfactory details of asbestos exposure, Peirce or his employees falsified the signed document by adding references to products Baylor later testified that he never used on the railroad. Indeed, Baylor unequivocally stated that the fourth line under "Claimed Exposures" is "not my handwriting," nor that of anyone he could identify.   He also stated that he completed the Questionnaire at home, mailed it to the Peirce firm and was "100 percent sure" that he never talked to anyone at the Peirce firm about the Questionnaire or its contents.  Simply put, the claimed product exposures on Baylor's Questionnaire are false and were added by someone at the Peirce firm without Baylor's permission in an effort to defraud CSXT.

Shortly after Harron was publicly discredited in the federal silica litigation for his willingness to provide whatever findings his lawyer clients asked of him, Peirce located Dr. Donald Breyer, an equally dubious B reader in California, who was willing to confirm thousands of Harron's B reads.   Peirce retained Breyer by literally promising him payment of "whatever you want." Far from being an "independent" reader as Defendants now seek to portray him, Breyer proved worthy of Peirce's over $1 million investment by rubberstamping Harron's prior findings more than 90% of the time, including in Mr. Baylor's case.  This same type of behavior was exhibited by the retention and use of Dr. Richard Cassoff in terms of rubber stamping previous diagnosis.

Armed with Harron's and Breyer's B reads – which no witness in this case contends are actual diagnoses of asbestosis – of Baylor's black market x-ray, a falsified exposure history, and no input from any medical expert as to whether Baylor might actually have asbestosis in spite of his negative CT scan, Peirce caused Baylor's claim to be filed with numerous others in a consolidated lawsuit against CSXT.

Further, CSXT will prove that the Defendants, Raimond, Harron and Peirce were all part of a civil conspiracy to defraud CSXT. A civil conspiracy is "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dixon v. American Indus. Leasing Co.*, 162 W. Va. 832, 834 (1979).  In order to be held liable as a conspirator, it is only necessary that a defendant "assist with and have knowledge of an underlying wrongful act." *Cooke & Moses, LLC v. QSS-Engineered Sys. Group, LLC*, 2007 U.S. Dist. LEXIS 63650, 845 (N.D. W. Va. 2007) (citing *Kessel v. Leavitt*, 511 S.E.2d 720, 754 (W. Va. 1998).).  Here, the underlying wrongful act was the fabrication and filing of Baylor's fraudulent asbestos claim.

Due to the fraudulent actions of the Defendants, individually and collectively, CSXT has been injured and damaged.

4       **STATEMENT OF ESSENTIAL ELEMENTS WHICH MUST BE PROVED TO ESTABLISH ANY MERITORIOUS DEFENSES WITH LEGAL AUTHORITIES:**

**By Defendants, Robert N. Peirce, Jr. and Louis A. Raimond:**

1.      Plaintiff failed to mitigate its damages because it spent far in excess of the amount it lost by reason of the Baylor claim.

> Hartmond Trucking, Inc. v. Pullen Trucking Co., Inc., 176 W. Va. 575, 346 S.E.2d 551 (1988)

2)      Plaintiff's fraud claim is barred by the Noerr-Pennington doctrine: Whether the Defendants had a reasonable belief that Mr. Baylor's claim might have been successful?

> U.S. Const. Amend. 1; DirecTV, Inc. v. Weikel, 2005 WL 1243378, at *7 (D.N.J. 2005) citing Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 51, 60, 62 (1993); Baltimore Scrap v. David J. Joseph Co., 237 F.3d 394, 398, 399, 401-404 (4th Cir. 2001); see Igen Int'l, Inc. v. Roche Diagnostics, 335 F.3d 303, 310, 312 (4th Cir. 2003); Sosa v. DirecTV, Inc., 437 F.3d 923, 929-931, 934 (9th Cir. 2006); Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., 2000 WL 1508873 (2nd Cir. 2000); Savage v. Council of American-Islamic Relations, Inc., 2008 WL 2951281, at *12 (N.D. Cal. 2008); Smithfield Foods, Inc. v. United Food and Commercial Workers Int'l Union, 593 F. Supp. 2d 840 (E.D. Va. 2008); VIM, Inc. v. Somerset Hotel Assoc., 19 F. Supp. 2d 422, 430 (W.D. Pa. 1998); DirecTV, Inc. v. Rayborn, 2003 WL 23200248, at *6 (W.D. Mich. 2003)

3)      Mr. Raimond withdrew from any alleged conspiracy by taking some definite, decisive, or affirmative action to disavow himself from the alleged conspiracy or to defeat the goal or purpose of the alleged conspiracy.

> Federal Jury Practice and Instructions § 31:11; U.S. v. Nerlinger, 862 F.2d 967, 974 (2d Cir. 1988); see U.S. v. U.S. Gypsum Co., 438 U.S. 422, 463-65 (1978)

**By Defendant Ray Harron:**

a.      Plaintiff knew or should have known of any alleged involvement of Dr. Harron in the alleged Baylor fraud more than two years prior to the date plaintiff filed this action:

> W.Va. Code § 55-2-12 (2007); *Stemple v. Dobson*, 400 S.E.2d 561 (W.Va. 1990); *In Re: Merrill Lynch*, 7 F.Supp.2d 256 (S.D.N.Y. 1997); *McCoy v. Miller*, 578 S.E.2d 355 (W.Va. 2003); *Beall Plumbing & Heating Co. v. First Nat'l. Bank of Keystone*, 847 F.Supp. 1307 (S.D.W.Va. 1994); *Cart v. Marcum*, 423 S.E.2d 644 (W.Va. 1992)

     b.    Plaintiff failed to mitigate its damages because it spent far in excess of the amount it lost by reason of the alleged Baylor fraud.

        *Hartmond Trucking, Inc. v. Pullen Trucking Co., Inc.,* 176 W.Va. 575, 346 S.E.2d 551 (1986)

     c.    Dr. Harron withdrew from any conspiracy in early 2005, more than      two years before plaintiff filed this action, and thus the Statute of Limitations applies. *United States v. Askew,* 958 F.2d 806, 812-13 (8th Cir.1992); *United States v. Gornto,* 792 F.2d 1028, 1033 (11th Cir.1986); *Pope v. Bond,* 641 F.Supp. 489 (D.D.C. 1986); W.Va.Code, 55-2-12.

Dr. Harron withdrew from any conspiracy before the filing of Mr. Baylor's claim and this is not responsible for any damages resulting from that claim. United States v. Hudson, 131 F.3d 137 (4th Cir. 1997); United States v. Gonzalez, 797 F.2d 915 (10th Cir. 1986); United States v. Read, 658 F.2d 1225, 1232 (7th Cir.1981); Law v. National Collegiate Athletic Ass'n, 185 F.R.D. 324 (D.C.Kan. 1999)

**5.**    **STATEMENT OF FACTS AND LAW/LIABILITY**

**Plaintiff:**

Earl Baylor attended a Peirce firm screening on August 4, 1999 in Atlanta, Georgia and was x-rayed by Jim Corbitt/U.S. X-Ray. Mr. Corbitt is an unlicensed, unregulated x-ray technician and former convicted felon. It is also important to note that not only was Mr. Corbitt and unlicensed x-ray technician, but that he was operating, at times, on behalf of the Lawyer Defendants in violation of State law and statute was well known to the Defendant Peirce as he had paid fines incurred by Mr. Corbitt for his illegal practice. As an example, in 2001, the State of Texas fined Corbitt $10,000.00 for conducting illegal screenings and Defendant Peirce paid half the fine because he wanted to "keep the relationship and keep him going so we could use him for the screenings." Corbitt, who worked exclusively for the Lawyer Defendants, from the late 1990s to 2004 grossed almost $2 million from his production of substandard x-rays.

On August 31, 1999, Dr. Ray Harron read Earl Baylor's August 4, 1999 x-ray as negative for asbestosis. Earl Baylor attended a Peirce firm screening on May 23, 2002 in Columbia, South Carolina and was x-rayed by Jim Corbitt/U.S. X-Ray. On July 1, 2002, Dr. Ray Harron read Earl Baylor's May 23, 2002 x-ray and classified the film as unreadable. Earl Baylor attended a Peirce firm screening on June 11, 2003 in Augusta, Georgia and was x-rayed by Jim Corbitt/U.S. X-Ray. On July 2, 2003, Dr. Ray Harron read Earl Baylor's June 11, 2003 x-ray and reported findings "consistent with asbestosis."

During this same general time frame, Earl Baylor's own independent pulmonologist, Lewis Raymond, M.D., ordered a CT scan (CT Chest w/o Contrast) which was taken on November 19, 2003 at Self Regional Healthcare in Greenwood, South Carolina. Dr.

Christopher Knox read the scan and reported his findings the same day it was taken. Dr. Knox reported that there was "no evidence to suggest interstitial lung disease." This CT scan and accompanying medical records were provided to Lawyer Defendants on or about December 15, 2003.

As indicated above, Mr. Baylor also completed a questionnaire developed by the Peirce Firm for use as part of its asbestosis litigation.  After receiving Baylor's completed "Asbestos Questionnaire," Peirce or his employees falsified the signed document by adding references to products Baylor later testified that he never used on the railroad. Indeed, Baylor unequivocally stated that the fourth line under "Claimed Exposures" is "not my handwriting," nor that of anyone he could identify.  Simply put, the claimed product exposures on Baylor's Questionnaire are false and were added by someone at the Peirce firm without Baylor's permission in an effort to defraud CSXT.

Instead of making a reasonable inquiry, Peirce simply authorized his paralegal Danielle Daley to generate a shotgun complaint with approximately 250 plaintiffs on whose claims the statute of limitations was about to expire, including Baylor. It is undisputed that neither Peirce nor Ms. Daley nor anyone else actually reviewed Baylor's file to ensure that his claim was supported by the evidence in the firm's possession.  Instead, Ms. Daley "just solely relied on if the file was open in the system at the time, then it was a positive read."

Per this procedure on February 21, 2006, the Peirce firm filed *Charles Adams v. CSXT*, Case No. 06-C-72, Harrison County, West Virginia.  Earl Baylor's case was included in this lawsuit. CSXT filed a motion to dismiss for lack of venue on June 13, 2006 which was granted with the Final Order of Dismissal entered on September 11, 2006. Peirce appealed the dismissal of the original case and litigated it all the way through 2008 until the Supreme Court of Appeals of West Virginia affirmed dismissal in appeal from the *In re FELA Asbestos Cases*, 665 S.E.2d 687, 688 (W. Va. July 2, 2008). The Peirce firm then filed a case styled as *Jerry Abbott v. CSXT*, Case No. 08-C-2120, Kanawha County, West Virginia on October 29, 2008.  Earl Baylor's case was again included in this lawsuit.

Defendant Harron's participation and agreement in the fraud is essential and clear as well. Defendant Raimond initially tried a number of screening doctors, but began using Harron exclusively once he determined that Harron found signs of asbestosis approximately 55% of the time. As early as 1983, the reported prevalence of chest x-rays suggestive of asbestosis in railroaders was approximately 2% and more recently published studies have demonstrated prevalence estimates as low as 1.2%. Defendant Harron's positive read rate far exceeded the accepted norm.  This rate exceeded the positive rate of Raimond's other doctors by 15 percentage points and was more than 25 times higher than the generally accepted prevalence of asbestosis in railroaders.  It was Defendant Raimond's standard practice to analyze and compare the positive rates of the B readers he hired. From the outset, Defendant Raimond advised Defendant Harron that the screening x-rays he received were purportedly of "railroaders who have been exposed to airborne asbestos particulates." Furthermore, although the ILO system pertains to

pneumoconiosis generally, Defendant Raimond specifically instructed Defendant Harron to look for signs of "asbestos-related lung disease" and went so far as to have Harron modify the standard ILO form so that it contained special boxes pertaining to asbestos. Harron, in turn, agreed to read the x-rays Raimond provided, including Baylor's x-ray, fraudulent or with reckless disregard for their true content. Moreover, Defendant Peirce has admitted that Harron's 2003 B-Read of Mr. Baylor's x-ray formed part of the basis for the filing of the lawsuit.

Defendant Harron's career as a litigation doctor for the Lawyer Defendants and others abruptly ended in June 2005 when the Honorable Janis G. Jack concluded that Defendant Harron was a "willing participant" in a "scheme" to "manufacture [diagnoses] for money."   She determined that Harron's litigation B reading could "only be explained as a product of bias – that is, of Dr. Harron finding evidence of the disease he was currently being paid to find."  She also noted that "this evidence of the unreliability of the B-reads performed for this MDL is matched by evidence of the unreliability of B-reads in asbestos litigation."  Since Judge Jack's opinion, Harron's asbestos-related B reads have been disallowed or excluded by all major bankruptcy trusts and numerous courts, including the federal multidistrict asbestos panel.   Additionally, at least seven state medical licensing agencies have instituted disciplinary proceedings against Harron, with the State of New York concluding that he was "perpetrating fraud on the courts."

Further the Peirce Firm at the direction of the Lawyer Defendants would utilize and retain physicians for purposes of "verifying" Dr. Harron's ILO reads. Such physicians included Dr. Richard Cassoff.   Dr. Cassoff exemplifies the extreme measures the Lawyer Defendants employ to manufacture fraudulent reads and reports for their clients, which is the precise basis of CSXT's claims in this case.   Although Mr. Baylor's personal physician was located just miles from his home, Peirce sent Dr. Cassoff hundreds of miles from Pittsburgh to examine Baylor and possibly hundreds of other clients.   Dr. Cassoff is Peirce's neighbor, personal friend, personal physician and is not licensed to practice medicine in South Carolina. The Lawyer Defendants also strictly controlled the medical records Cassoff reviewed in connection with his examinations.  In particular, they gave Cassoff only positive B reads and would not provide other medical records like Earl Baylor's negative CT scan.  This is so even though Cassoff testified that he used CT scans to help diagnose or eliminate asbestosis in his private practice, stated that "if available" a CT scan "would be pertinent to his diagnosis," and finally, that if he had seen Baylor's negative CT scan, he "probably would not" have diagnosed Baylor with asbestosis.

The Defendants actions both individually and in concert satisfy all of the traditional and essential elements of fraud under West Virginia law. S*ee Horton v. Tyree*, 139 S.E. 737, 738 (W.Va. 1927)((1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.") (internal citations omitted); *Lengyel v. Lint*, 280 S.E.2d 66, Syl. 1 (W.Va. 1981).  The Defendants not only actively participated in the fraud, but suppressed any knowledge of the true medical condition of Early Baylor despite the fact that they

had a duty to report such information and fraud. *See Holt v. King*, 47 S.E. 362, 365 (W.Va. 1903) ("The suppression of the truth is equivalent to the utterance of a falsehood, and both are frauds."); *Teter v. Old Colony Co.*, 441 S.E.2d 728, 734 (W.Va. 1994); *Frazer v. Brewer*, 43 S.E. 110, 111 (W.Va. 1903) ("Fraud is the concealment of the truth just as much as it is the utterance of a falsehood.").  Moreover, an action for fraud may lie where the defendant knew or should have known of the falsity of his representation. *Lengyle v. Lint*, 167 W.Va. 272, 277, 280 S.E.2d 66 (1981). *See also*, *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927).

Further as noted above, the genesis of Baylor's claim was the June 11, 2003 screening and Harron's subsequent B read, both of which occurred while Raimond was still a member of the Peirce Firm and as a direct result of Raimond's decisions.  Indeed, the record is clear that Raimond devised the Peirce firm's screening program, that he intended the screenings to attract potential clients for the purpose of filing asbestos claims against CSXT, that he participated in the hiring of U.S. X-Ray,  that once U.S. X-Ray was hired it was "implied" that they would be used on all subsequent screenings, including the June 11, 2003 screening where Baylor became a client, that Raimond personally hired Harron, and that Raimond made the eventual decision to use Harron to read all x-rays generated at screenings, including Earl Baylor's June 11, 2003 x-ray. Simply put, Raimond knew and intended that all railroaders who became clients of the firm, including Earl Baylor, would have claims filed on their behalf against CSXT using fraudulent evidence generated through the screening program he implemented.  While it is true that Raimond did not file Baylor's claim, he created it. A civil conspiracy is "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dixon v. American Indus. Leasing Co.*, 162 W. Va. 832, 834 (1979).  In order to be held liable as a conspirator, it is only necessary that a defendant "assist with and have knowledge of an underlying wrongful act."  *Cooke & Moses, LLC v. QSS-Engineered Sys. Group, LLC*, 2007 U.S. Dist. LEXIS 63650, 845 (N.D. W. Va. 2007) (citing Kessel v. Leavitt, 511 S.E.2d 720, 754 (W. Va. 1998).).  Here, the underlying wrongful act was the fabrication and filing of Baylor's fraudulent asbestos claim.

The primary purpose of the Defendants in engaging this fraudulent conduct was for the generation of legal fees and profits. Specifically, the Lawyer Defendants' mass screenings – including the June 11, 2003 screening where Earl Baylor became a client of the Peirce firm – fit an "entrepreneurial model" of asbestos claims generation, which is calculated to generate unreliable and fraudulent diagnoses. Moreover, the Lawyer Defendants knew Defendant Harron's positive rate was "off the chart" and hired him specifically "because they were buying a virtually guaranteed percentage of positive x-ray readings." Indeed, Defendant Raimond openly admits that he began using Harron exclusively once he determined that his positive rate was far higher than the other doctors he previously used.  Raimond's decision to use Harron exclusively, as opposed to multiple B readers, suggests an entrepreneurial motive rather than a reasonable inquiry into the facts if Mr. Baylor's, or any other clients', medical condition.

Due to the actions or at times the inaction of the various Defendants, CSXT has been damaged and is entitled to recover such damages in this matter. *Miller v. Miller* 216 W.Va. 720, 613 S.E.2d 87 (2005) "damages recoverable in fraud actions may include pain and suffering, punitive damages, and annoyance and inconvenience." See also, *Hutchens v. Progressive Paloverde Insurance Co.,* 211 F.Supp.2d 788 (S.D.W.Va. 2002).

**Defendants, Robert N. Peirce, Jr. and Louis A. Raimond**

Mr. Baylor attended a Peirce Firm asbestosis screening on August 4, 1999; the x-ray from this screening was read as negative by Dr. Harron on August 31, 1999.  Three years later, on May 23, 2002, Mr. Baylor attended a second Peirce Firm screening; the x-ray from that screening was deemed unreadable by Dr. Harron.  Nearly four years after the initial screening, on June 11, 2003, Mr. Baylor attended another Peirce Firm screening; the x-ray from this screening was read as showing signs of asbestosis at a 1/0 classification (lowest rating) by Dr. Harron on July 2, 2003.

In 2005, certain asbestos bankruptcy trusts began to refuse to accept claims based on Dr. Harron's opinions and CSX and other railroads began to refuse to settle claims based on Dr. Harron's opinions.  Accordingly, the Peirce Firm generally had x-rays previously read by Dr. Harron -- including Mr. Baylor's June 11, 2003 x-ray -- read by a different B reader before filing a lawsuit.

The new doctor, Dr. Breyer, conducted an independent B-read of Mr. Baylor's x-ray.  On January 6, 2006, Dr. Breyer examined Mr. Baylor's x-ray and determined that it did evidence signs of asbestosis at a 1/0 level.  After Dr. Breyer's January 2006 reading of Mr. Baylor's x-ray -- the Peirce Firm filed suit on behalf of Mr. Baylor on February 21, 2006.  Given this history, Mr. Peirce -- who did not even sign the Complaint -- cannot be liable for fraud.

A law firm unaffiliated with the Peirce Firm had a B-reader (Dr. Smith) read a February 26, 2002 x-ray of Mr. Baylor.  Dr. Smith read the x-ray as evidencing signs of asbestosis.  In all, at least three different NIOSH certified B-Readers (Drs. Harron, Breyer, and Smith) have read Mr. Baylor's x-rays as evidencing signs of asbestosis.  CSX's own medical expert, Dr. Kevin Cooper, testified that it would not be inappropriate for a B-reader to read Mr. Baylor's x-ray as showing a 1/0 profusion. CSX, itself, has admitted that it does not dispute the "contention that a B reader could hypothetically undertake to review the 2003 x-ray and believe in good faith that they find 1/0 profusion."  Accordingly, no fraud was committed by the filing of a claim asserting that Mr. Baylor had asbestosis.

In November 2003, Mr. Baylor's personal doctor requested a CT of his chest be performed.  Upon reviewing a November 19, 2003 CT scan of Mr. Baylor's lungs, a radiologist (Dr. Christopher Knox), who had been in practice for roughly a year, opined that he did not see any "obvious pleural calcification . . . to suggest prior asbestosis exposure" or interstitial lung disease.  Dr. Knox is not a NIOSH certified B-reader. At his April 22, 2009 deposition, while generally adhering to his overall reading of the CT scan, Dr. Knox admitted that the CT scan contained evidence of what could be parenchymal scarring (scarring of the lung tissue) and admitted that this scarring could be caused by asbestos

exposure.  (CSX's own expert, Dr. Cooper, confirms these conclusions.)  Dr. Knox admitted that, because of this finding, he would amend the "Interpretation" section of his report to read:  "Small amount of parenchymal scarring versus discoid atelectasis at the right lung base.  Otherwise, unremarkable CT of the chest."  Further, Dr. Knox and CSX's medical experts all have admitted that one can suffer from asbestos related disease even if a CT is negative for disease.

Mr. Baylor's CT report, along with a pulmonary function test consistent with asbestos related disease, was submitted to the Peirce Firm on or about December 2003.  The pulmonary function test and report were scanned into the firm's electronic database by a paralegal as a single document with the pulmonary function test consisting of the first 3 pages of the document and the report the last page.  Neither Defendant Peirce nor Defendant Raimond (nor any other lawyer at the Peirce Firm) was aware of this CT report by Dr. Knox until after CSX filed this lawsuit.  Accordingly, the CT cannot be a basis for claiming that the filing of Mr. Baylor's claim was a fraud by Mr. Peirce.

CSX has alleged a fraud whereby Robert Peirce and Louis Raimond, as individuals, with the intent to defraud CSX, knowingly (or recklessly) submitted a purportedly false asbestosis claim on behalf of Mr. Baylor founded on a false x-ray reading performed by Dr. Harron.  CSX has contended in its pleadings to the Court that an x-ray reading by Dr. Harron that served as the basis for Mr. Baylor's lawsuit is central to and a required part of the alleged fraud:

> … Defendant Harron's actions are inherently fraudulent and part of the larger Baylor scheme to defraud CSXT.  ***In fact, without Harron's participation in the scheme there would have been no fraud.***  It was Defendant Harron's fraudulent conduct in recklessly disregarding or deliberately misrepresenting Mr. Baylor's June 11, 2003 x-ray that allowed the fraudulent claim to be submitted to CSXT and prosecuted by the Peirce Firm.

Plaintiff, CSX Transportation, Inc.'s Memorandum of Law in Opposition to Defendant Ray Harron's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 328) at 6 (emphasis added).

Rather than bringing Mr. Baylor's claim based on Dr. Harron's reading of Mr. Baylor's x-ray, however, the Peirce Firm had a second doctor read the x-ray before it filed suit.  Given, *inter alia*, the undisputed record that Mr. Baylor's claim filed in the state court was not dependent upon Dr. Harron's reading of the x-ray since it was filed only after the positive x-ray reading by Dr. Breyer -- CSX has failed to prove the fraudulent scheme alleged in its Amended Complaint.

The failure of CSX's fraud claim, *a fortiori*, also requires a finding for these Defendants on CSX's conspiracy claim alleging a conspiracy related to the alleged fraud involving Mr. Baylor's asbestosis claim.  E.g., Cavcon Inc. v. Endress & Hauser, Inc., 557 F. Supp. 2d 706, 727 (S.D. W. Va. 2008) (under West Virginia law, without viable intentional tort claim, there cannot be conspiracy to commit the act); Beck v. Prupis, 529 U.S. 494, 501-

504 (2000) (interpreting RICO with extensive analysis that at common law civil conspiracy claim is viable only if there is underlying, independent tort); Ross v. Peck Iron & Metal Co., 264 F.2d 262, 268 (4th Cir. 1959) (no conspiracy claim if no viable cause of action for intentional tort on which conspiracy claim was predicated).

In order to prevail, CSX must prove by a clear and convincing standard that Mr. Peirce acted with requisite fraudulent intent concerning the Peirce Firm's filing of Mr. Baylor's claim, i.e., a knowing and intentional attempt to deceive, as well as the other required elements of its claim including a false representation and reliance.  See White, supra; Kuhn v. Chesapeake & O. Ry. Co., 118 F.2d 400, 405 (4th Cir. 1941) ("Fraud in the popular understanding of the term involves an element of moral turpitude or bad faith."); Miller v. Huntington & Ohio Bridge Co., 15 S.E.2d 687, 695 (W. Va. 1941) (actual fraud is intentional and "consists in deception, intentionally practiced to induce another to part with property . . . "); Federal Jury Practice and Instructions (5th ed. 2007) §161.54 ("It must be established that such person knowingly and intentionally attempted to deceive another.").  CSX cannot meet its burden.

The fact that the Peirce Firm sought a second medical opinion that Mr. Baylor's x-ray evidenced signs of asbestosis, prior to filing suit on behalf of Mr. Baylor, precludes a finding of fraudulent intent on behalf of Mr. Peirce.[1]  Certainly, at a minimum, filing suit only after obtaining this new opinion creates a set of circumstances that "are equally consistent with honest intentions."  White, supra, 938 F.2d at 490 (the existence of "'fraud is not deducible from facts and circumstances which would be equally consistent with honest intentions . . .'") (citation omitted).  In such a situation, as the Fourth Circuit has held, a finding of fraud is precluded.  Id.

Here the alleged fraud against CSX is that the state court complaint filed by the Peirce Firm on behalf of Mr. Baylor asserted a claim that Mr. Baylor has an asbestos related injury.  This is not a situation where someone presents a false deed to property to a purchaser, where the purchaser then relies on the deed to make payment.  This is litigation, where the parties have an opportunity to contest the claims and the system is one of advocacy where one side's contentions are tested by the other and vice versa -- CSX was not forced to rely on the assertion that Mr. Baylor had been injured by CSX or to accept without opposition the opinions of Dr. Harron or Dr. Breyer regarding Mr. Baylor.  Simply, no fraud occurred here.

A party is not required to disregard its expert's opinion simply because that opinion may be disputed by the opponent or others or even if there are conflicts in the medical evidence.  Relying on an expert's opinion which resulted from having taken the extra step of obtaining a second opinion before filing suit does not constitute fraud.  In the litigation setting, an opinion, whether by a defense expert or a plaintiff expert, is not a representation of absoluteness and, therefore, not a basis for liability.  Cf., Scheduled Airlines Traffic Offices, Inc. v. Objective Inc., 180 F.3d 583, 589-90 (4th Cir. 1999) (opinion is not basis

---

[1]   Mr. Raimond had been gone from the Peirce Firm for more than two years when the Complaint was filed. Similarly, Mr. Peirce had very limited involvement with the filing of Mr. Baylor's claim.

for fraud); <u>Presidio Enterprises, Inc. v. Warner Bros. Distributing Corp.</u>, 784 F.2d 674, 678-79 (5th Cir. 1986) (opinions not actionable as fraud); <u>State ex Rel. Suriano v. Gaughan</u>, 480 S.E.2d 548, 563-64 (W. Va. 1996) (opinion cannot be basis for defamation action).

CSX now contends that it was improper for the Peirce Firm to rely on Dr. Breyer's B-read in filing suit because Dr. Breyer is accused of being an "over reader" (<u>i.e.</u>, a B-reader who reads more films as positive than negative). Such contention does not and cannot amount to fraud. Dr. Breyer is not alleged to have been part of the fraudulent scheme set forth in CSX's detailed Amended Complaint despite the fact that discovery produced by the Peirce Firm in September 2006 established that Dr. Breyer had re-read Mr. Baylor's x-ray. Our current personal injury system of justice often boils down to the proverbial "battle of the experts." The fact that an expert may testify more often for plaintiffs than for defendants, or vice versa, may go to the expert's credibility, but it does not render that opinion, or the party's claim, fraudulent. Even if Mr. Baylor does not have asbestosis, there cannot be a finding of fraud because there is no evidence that Mr. Peirce or Mr. Raimond knew that Mr. Baylor did not have asbestosis. To the contrary, Dr. Breyer's opinion was obtained before filing suit and there is disputed medical evidence on the point of whether Mr. Baylor's medical evidence indicates that he has asbestosis. Thus, filing the state court complaint asserting that Mr. Baylor was injured was not a fraudulent assertion or made with fraudulent intent.

CSX's claims are also precluded by the <u>Noerr-Pennington</u> doctrine. In, <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.</u>, 508 U.S. 49 (1993), the Supreme Court held that the <u>Noerr-Pennington</u> doctrine immunizes the filing of a lawsuit, regardless of the purpose of the lawsuit, so long as the litigation is not a "sham." <u>Id.</u> at 51. To be a "sham," a lawsuit must be "objectively baseless." <u>Id.</u> at 60. A lawsuit is "objectively baseless" only if it is "so baseless that no reasonable litigant could realistically expect to secure favorable relief." <u>Id.</u> at 62; <u>see</u> <u>Igen Int'l, Inc. v. Roche Diagnostics</u>, 335 F.3d 303, 312 (4th Cir. 2003) (existence of a defense did not render lawsuit a sham); <u>Baltimore Scrap</u>, 237 F.3d at 399. Thus, if the party filing suit has a reasonable belief that its claims may be successful, the suit is immunized under the <u>Noerr-Pennington</u> doctrine. <u>Direct TV, Inc., v. Weikel</u>, 2005 WL 1243378 at *7 (D.N.J. 2005).

CSX's claims clearly come within the <u>Noerr-Pennington</u> doctrine as CSX seeks to hold Mr. Peirce and Mr. Raimond liable for fraud and civil conspiracy based on the Peirce Firm's filing of a lawsuit on behalf of Mr. Baylor. CSX cannot carry its burden of demonstrating inapplicability of the doctrine based on the sham litigation exception. First, CSX admits that "a B reader could hypothetically undertake to review the 2003 x-ray and believe in good faith that they find 1/0 profusion." Further, CSX's own expert has opined that reading Mr. Baylor's x-ray as showing a 1/0 profusion would not be inappropriate. Second, the undisputed record shows that the Peirce Firm did not file suit on behalf of Mr. Baylor until after it obtained a new medical opinion from a different radiologist, Dr. Breyer. Third, the Peirce Firm traditionally had settled cases or won cases at trial, including a case where Dr. Harron testified as an expert witness, based on similar medical evidence. Fourth, another B-reader, Dr. Smith, has read an x-ray of Mr. Baylor as showing signs of asbestosis – this opinion was for a different law firm asserting claims against other

entities than CSX.  The above, individually and collectively demonstrate that, at the very least, Mr. Baylor's lawsuit was not "so baseless that no reasonable litigant could realistically expect to secure favorable relief."  Professional Real Estate Investors, Inc., supra.  Accordingly, CSX's claims are barred under Noerr-Pennington.

Finally, CSX claims that Mr. Raimond was involved, along with Mr. Peirce and Dr. Harron, in a conspiracy to fraudulently submit the Baylor claim.  Mr. Raimond, however, had retired by the time Mr. Baylor's case was filed.  Even assuming *arguendo* that Mr. Raimond was part of some purported conspiracy regarding asbestos claims prior to his retirement from the Peirce Firm -- which he was not since no such conspiracy existed-- as a matter of law, his retirement from the firm prior to the filing of Mr. Baylor's claim constitutes a withdrawal from any such purported conspiracy.  This withdrawal precludes Mr. Raimond from being liable for any actions related to Mr. Baylor's claim.  Even if a conspiracy existed, which it did not, Mr. Raimond's retirement would be a "definite, decisive, and affirmative action to disavow himself from the [alleged] conspiracy." Federal Jury Practice and Instructions § 31:11; U.S. v. Nerlinger, 862 F.2d 967, 974 (2d Cir. 1988) ("The only question is whether his closing of the account constitutes an 'affirmative action' in light of the rules that mere cessation of conspiratorial activity is not enough, and that withdrawal must be accompanied by a 'communication of the abandonment in a manner reasonably calculated to reach coconspirators.'  Nerlinger's closing of the account does satisfy this standard because it disabled him from further participation and made that disability known to DeAngelis.  That is enough.'") (internal citations omitted); see U.S. v. U.S. Gypsum Co., 438 U.S. 422, 463-65 (1978) (instruction unnecessarily limiting the type of actions that may constitute withdrawal from a conspiracy is reversible error).  Thus, Mr. Raimond cannot be liable here.


**Defendant Harron:**

Dr. Harron was hired by the Peirce Firm in the late 1990's to provide B-reads of x-rays taken of the firm's clients.  X-rays were delivered to Dr. Harron and he would do a B-read and then proceed to send the ILO form plus the x-ray back to the Peirce Firm.  On August 31, 1999, Dr. Harron read an x-ray taken August 4, 1999, he read an x-ray on July 6, 2002, which was taken on May 23, 2002 and he read an x-ray on July 2, 2003, which was taken on June 11, 2003.  For the first film of Mr. Baylor's head, Dr. Harron made a determination that it was not consistent with asbestosis.  The second x-ray reviewed by Dr. Harron was unreadable.  The third read was consistent with asbestosis, but at the lowest positive level, at 1/0.  Dr. Harron transmitted these ILO forms and the underlying x-rays back to the Peirce Firm, as had been his practice.

At some time early in 2005, Dr. Harron spoke to Robert Peirce, whom he understood to be a partner in the Peirce Firm.  He told Mr. Peirce that he would no longer be providing B-reads for law firms and that he would no longer do any such work for the Peirce Firm. Mr. Peirce agreed with him, and shortly thereafter Dr. Harron's professional relationship with the Peirce Firm ended and he read no more X-rays for the firm. Dr. Harron had no specific knowledge of any claims filed by CSX based on his B-reads.

In 2006, Dr. Donald Breyer was hired by the Peirce Firm to provide B-reads. Dr. Breyer read Mr. Baylor's 2003 film. His independent read also found Mr. Baylor's x-ray consistent with asbestosis, and at a 1/0 level. Based on that B-read, the Peirce Firm subsequently filed a lawsuit on Mr. Baylor's behalf against CSX in West Virginia state court.

Dr. Harron had no knowledge of what CSX did with his B-reads after they were filed, except in the rare case when records were requested directly from him in the course of a claim filed for one of the firm's clients. Dr. Harron knew nothing about any claim filed on behalf of Mr. Baylor and he had no agreement with the Peirce Firm as to how his B-reads would be used. Dr. Harron provided good faith and truthful B-reads to the Peirce Firm, and he was never asked to do anything different. After 2005, Dr. Harron had no involvement with the Peirce Firm and he clearly communicated in early 2005 to Mr. Peirce that he would no longer do any work for the firm. By the time Mr. Baylor's claim was filed, based on Dr. Breyer's B-read, Dr. Harron's relationship with the Peirce Firm was terminated.

Dr. Harron's actions do not satisfy the traditional and essential elements of conspiracy under West Virginia law. As the Court has previously addressed the elements of the cause of action against Dr. Harron, CSX must prove "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud." CSX v. Gilkison, 2009 WL 426265 at *3. In order to prove a conspiracy to commit fraud, plaintiff must show every element of fraud. Id., 2009 WL 426265 at *3. Thus, plaintiffs must also demonstrate every element of a common law fraud, namely "(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) and which does, in fact, deceive; (5) to the hurt of the injured party." City National Bank of Fairmont v. Fidelity Mutual Life Ins. Co., 110 F.Supp. 510, 517 (N.D.W.Va. 1953), aff'd, 206 F.2d 531 (4th Cir. 1953), cert. denied, 347 U.S. 903 (1954); see also Quality Bedding Co. v. American Credit Indemnity Co., 150 W.Va. 352, 360, 145 S.E.2d 468, 474 (1965) (elements of fraud are material and false representations knowingly made with the intent to deceive the plaintiff, the plaintiff's actual reliance, and injury resulting from the fraud). It must also demonstrate that Dr. Harron joined the conspiracy with the lawyer-defendants and shared with them a specific plan and intent to defraud CSX. 16 Am.Jur.2d Conspiracy §§ 51, 63 (2008).

One element of a fraud action is that the plaintiff rely on the allegedly fraudulent statement. Quality Bedding, 150 W.Va. at 360, 148 S.E.2d at 474. Nobody in this case – not CSX, and not the lawyer-defendants – relied upon Dr. Harron's B-read in establishing Mr. Baylor's claim. As Mr. Peirce testified, he understood prior to the filing of Mr. Baylor's claim that CSX would not make payment based on Dr. Harron's B-read and thus a second independent B- read was done by Dr. Breyer. Dr. Harron's B-read was never provided to CSX in the Adams litigation. The lawyer-defendants did not intend for CSX to rely on Dr. Harron's findings regarding Mr. Baylor. That intent -- that the party rely upon the fraudulent statement -- is an essential element of a fraud claim under West Virginia law. Quality Bedding Co. v. American Credit Indemnity Co., 150

W.Va. 352, 360, 145 S.E.2d 468, 474 (1965); City National Bank of Fairmont v. Fidelity Mutual Life Ins. Co., 110 F.Supp. at 517-18.

CSX also did not in fact rely on Dr. Harron's B-read since to the extent it relied on any assertions regarding Mr. Baylor's medical condition, those assertions were based on Dr. Breyer's B-read.  .  Further, CSX's conduct in the Adams litigation was not in any way motivated or induced by the factual bases of any asbestos claim.  No matter what the basis was for Mr. Baylor's claim, or the over 200 other claims in the Adams litigation, CSX's conduct would have been exactly the same – it would have quickly moved to dismiss on grounds of improper venue in order to preserve the issue.  CSX's Memorandum of Law in Opposition to Defendant Ray Harron's Motion to Dismiss for Lack of Subject Matter Jurisdiction at 4.  It would have done exactly the same thing had Mr. Baylor's claim not been included in the Adams action. It would have done exactly the same thing if it had its own independent medical opinion that Mr. Baylor had asbestosis.   Its actions were not taken in reliance on Dr. Harron's B-read or any other conduct that was part of the conspiracy alleged in the Amended Complaint.

Under West Virginia law, fraud and conspiracy to commit fraud are not actionable unless plaintiff suffered an injury "as a result of" the fraud.  Cooke & Moses, LLC v. QSS-Engineered Systems Group, LLC, 2007 WL 2463288 at *11 (N.D.W.Va. 2007); CSX v. Gilkison, 2009 WL 426265 at *3 (in action for conspiracy to defraud, plaintiff must show injuries "are result of the fraud"); Dixon v. American Industrial Leasing Co., 162 W.Va. 832, 834, 253 S.E.2d 150, 152 (1979) (civil conspiracy actionable only when causes injury to plaintiff).  Intervening causes can cut off liability for an intentional tort, such as fraud or conspiracy.  See Bertovich v. Advanced Brands & Importing Co., 2006 WL 2382273 at *4, (N.D.W.Va. 2006).

It is undisputed that Mr. Baylor's claim would not have been filed without a second positive B-read.  Peirce Dep. at 21, 69.  Dr. Harron knew nothing about that B-read. CSX presumably takes the position that Dr. Breyer's B-read was fraudulent, as it claims Dr. Harron's to be.  If so, Dr. Breyer's intervening subsequent allegedly wrongful conduct would break any chain of causation between Dr. Harron's conduct and CSX's injury.   Yourtee v. Hubbard, 196 W.Va. 683, 474 S.E.2d 613, 620 (1996) ("willful, malicious, or criminal acts break the chain of causation").

 It is entirely possible for a plaintiff to be the target of a tortious scheme like that alleged against the defendants here and nevertheless not be injured as a result. Bertovich, 2006 WL 2382273 at *4 (proximate cause one element of conspiracy claim, citing Dixon v. American Industrial Leasing, 162 W. Va. 832, 253 S.E.2d 150(1979)). If other actions intervene and are the actual cause of any injury suffered by the plaintiff, no damages resulted from the conspiracy and there is no cause of action.  In Molinary v. Powell Mountain Coal Co., 125 F.3d 231 (4th Cir. 1997), cert. denied, 522 U.S. 1118 (1998), the Fourth Circuit found that the defendants had violated state regulations in their successful application for a permit for surface mining on plaintiff's land.  However, plaintiff could not recover for damages flowing from the improper mining because there was an intervening cause – the government's routine approval of permits to mine even when the

applications did not comply with the regulations.   125 F.3d at 237-38.   Since the improper application did not "induce" the approval and the resulting mining that caused damage to this property, summary judgment for the defendants was granted.   Id. at 238. The proximate cause of plaintiff's injury was the government's malfeasance, not the conduct of the defendants.

6.   **SINGLE LIST OF CONTESTED ISSUES OF FACT AND LAW**

**Plaintiff:**

Fact:   Whether Defendant Robert Peirce, Jr. is liable to CSXT for a committed fraud?

Fact:   Whether Defendant Louis A. Raimond is liable to CSXT for a committed fraud?

Fact:   Whether Defendant Ray Harron, M.D. is liable to CSXT for a committed fraud?

Fact:   Whether the Defendants engaged in a conspiracy to defraud the Plaintiff?

Fact:   Whether Defendant Harron was part of a conspiracy to defraud the Plaintiff?

Fact:   Whether Defendant Raimond was part of a conspiracy to defraud the Plaintiff?

Fact:   Whether Defendant Peirce was part of a conspiracy to defraud the Plaintiff?

Fact:   Whether the Defendant Robert Peirce, Jr. is liable to the Plaintiff for punitive damages?

Fact:   Whether the Defendant Louis A. Raimond is liable to the Plaintiff for punitive damages?

Fact:   Whether the Defendant Ray Harron, M.D. is liable to the Plaintiff for punitive damages?

Fact:   Pursuant to the Parties August 24, 2009 Joint Stipulation, CSXT reserves any issues relative to damages pending a determination as to liability. CSXT, however, seeks any and all damages recoverable at law including its attorneys' fees and costs, as well as, punitive damages.   *Miller v. Miller* 216 W.Va. 720, 613 S.E.2d 87 (2005) "damages recoverable in fraud actions may include pain and suffering, punitive damages, and annoyance and inconvenience." *See also*, *Hutchens v. Progressive Paloverde Insurance Co.*, 211 F.Supp.2d 788 (S.D.W.Va. 2002).

Law:   The issues of law implicit in the above listed issues of fact. Under West Virginia law, the elements of a cause of action for fraud are as follows:(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied

upon it. *See Highmark West Virginia, Inc. v. Jamie*, 655 S.E.2d 509, 515 (W. Va. 2007) (Internal citations omitted).

Law:    Fraudulent concealment involves concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud. As expressed in the Restatement of the Law, Torts 2d 118, Section 550, a party to a transaction is liable to the other for fraudulent concealment if he by concealment or other action intentionally prevents the other from acquiring material information. *See Cordial v. Ernst & Young,* 199 W.Va. 119, 483 S.E.2d 248,264 (1996)(Workman, J concurring).

Law:    An action for fraud may lie where the defendant knew or should have known of the falsity of his representation. *Lengyle v. Lint*, 167 W.Va. 272, 277, 280 S.E.2d 66 (1981). *See also*, *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927).

Law:    Rule 11 of the West Virginia Rules of Civil Procedure requires attorneys to "make a pre-filing reasonable inquiry into the facts and/or law that form the bases of any pleading tendered to the court." *Hinchman v. Gillette*, 217 W.Va. 378, 392, 618 S.E.2d 387 (2005)(Davis, J. concurring). *See also*, *Pritt v. Suzuki Motor Company*, 204 W.Va. 388, 97, 513 S.E.2d 161 (1998).

Law:    A civil conspiracy is "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dixon v. American Indus. Leasing Co.*, 162 W. Va. 832, 834 (1979). In order to be held liable as a conspirator, it is only necessary that a defendant "assist with and have knowledge of an underlying wrongful act." *Cooke & Moses, LLC v. QSS-Engineered Sys. Group, LLC*, 2007 U.S. Dist. LEXIS 63650, 845 (N.D. W. Va. 2007) (citing *Kessel v. Leavitt*, 511 S.E.2d 720, 754 (W. Va. 1998).).

Law:    Under West Virginia law a civil conspiracy merely requires defendants to assist with and have knowledge of an underlying wrongful act in order to be held liable as conspirators." *Cooke & Moses, LLC v. QSS-Engineered Sys. Group, LLC*, 2007 U.S. Dist. LEXIS 63650, *45 (N.D. W. Va. 2007). *See also, Bosak v. McDonough*, 549 N.E.2d 643, 646 (Ill. App. Ct. 1989) (cited with approval in *CSX Transp., Inc. v. Gilkison*, 2009 U.S. Dist. LEXIS 12948, *10 (N.D. W. Va. 2009))("If a conspiracy is shown, an injured plaintiff need only establish that an overt fraudulent act in furtherance of the conspiracy was committed by one of the alleged conspirators.").

**Defendants, Robert N. Peirce, Jr. and Louis A. Raimond**

CONTESTED ISSUES OF FACT

1)    Whether Robert N. Peirce, Jr., committed a fraud when the Peirce Firm filed suit on behalf of Mr. Baylor;

2)      Whether there was a conscious, intentional agreement between Robert N. Peirce, Jr., Louis A. Raimond and Dr. Ray Harron, that the Peirce firm would file an intentionally false asbestos claim on behalf of Mr. Baylor;

      a)      Whether Louis A. Raimond knowingly entered into any alleged conspiracy;

      b)      Whether Robert N. Peirce, Jr. knowingly entered into any alleged conspiracy;

3)      Whether Robert N. Peirce, Jr., intentionally misrepresented any fact to CSX regarding Mr. Baylor's asbestosis claim;

4)      Whether Louis A. Raimond intentionally misrepresented any fact to CSX regarding Mr. Baylor's asbestosis claim;

5)      Whether CSX relied upon any misrepresentation made by Robert N. Peirce, Jr., regarding Mr. Baylor's asbestos claim;

6)      Whether Robert N. Peirce, Jr., reasonably relied on Dr. Breyer's reading of Mr. Baylor's June 11, 2003 x-ray;

7)      Whether Robert N. Peirce, Jr. acted with fraudulent intent;

8)      Whether Louis A. Raimond acted with fraudulent intent.

Pursuant to the parties' stipulation, Robert N. Peirce, Jr., and Louis A. Raimond reserve the right to raise issues of fact regarding damages prior to bench trial of those issues.


CONTESTED ISSUES OF LAW

1)      Whether CSX can prove fraud by clear and convincing evidence.

2)      Whether Plaintiff's fraud claim is barred by the Noerr-Pennington doctrine. U.S. Const. Amend. 1; DirecTV, Inc. v. Weikel, 2005 WL 1243378, at *7 (D.N.J. 2005) citing Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 51, 60, 62 (1993); Baltimore Scrap v. David J. Joseph Co., 237 F.3d 394, 398, 399, 401-404 (4th Cir. 2001); see Igen Int'l, Inc. v. Roche Diagnostics, 335 F.3d 303, 310, 312 (4th Cir. 2003); Sosa v. DirecTV, Inc., 437 F.3d 923, 929-931, 934 (9th Cir. 2006); Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., 2000 WL 1508873 (2nd Cir. 2000); Savage v. Council of American-Islamic Relations, Inc., 2008 WL 2951281, at *12 (N.D. Cal. 2008); Smithfield Foods, Inc. v. United Food and Commercial Workers Int'l Union, 593 F. Supp. 2d 840

(E.D. Va. 2008); <u>VIM, Inc. v. Somerset Hotel Assoc.</u>, 19 F. Supp. 2d 422, 430 (W.D. Pa. 1998); <u>DirecTV, Inc. v. Rayborn</u>, 2003 WL 23200248, at *6 (W.D. Mich. 2003)

3)   Whether Mr. Raimond, withdrew from any alleged conspiracy.  Federal Jury Practice and Instructions § 31:11; <u>U.S. v. Nerlinger</u>, 862 F.2d 967, 974 (2d Cir. 1988); <u>see</u> <u>U.S. v. U.S. Gypsum Co.</u>, 438 U.S. 422, 463-65 (1978)

4)   Whether CSX failed to mitigate any damages it allegedly suffered because it spent far in excess of the amount it lost by reason of the May fraud.  <u>Hartmond Trucking, Inc. v. Pullen Trucking Co., Inc.</u>, 176 W. Va. 575, 346 S.E.2d 551 (1986).

5)   Plaintiff is not entitled to an award of punitive damages and such an award would be violative of the United States and West Virginia Constitutions.  An award of punitive damages for Plaintiff would violate the Due Process clause of the Fourteenth Amendment to the United States Constitution.  The punitive damages sought by Plaintiff are greatly disproportionate to any actual damages and far exceed any civil or criminal sanctions that could be imposed for similar alleged misconduct.  Plaintiff's claims for punitive damages violate the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, because they discriminate against the Peirce Firm on the basis of wealth and because different amounts can be awarded against two or more defendants for the same act where those defendants differ only in material wealth.  Plaintiff's claims for punitive damages violate the Due Process clause of the Fifth and Fourteenth Amendments to the United States Constitution because they seek to punish the Peirce Firm based upon unconstitutionally vague standards.  Plaintiff's claims for punitive damages violate the Fifth Amendment to the United States Constitution because they would expose the Peirce Firm to multiple punishments and fines for the same act.  Plaintiff's claims for punitive damages violate the Due Process clause of the Fifth and Fourteenth Amendments to the United States Constitution in the absence of an order bifurcating that claim from the issue of liability.  Any award of punitive damages in this case would violate the Separation of Powers Doctrine since this Court and the jury would be usurping the exclusive power of the legislature to define crimes and establish punishment.  Any award of punitive damages in this case would be constitutionally defective as an *ex post facto* law prohibited by the West Virginia and United States Constitutions.  The jury, in making any such punitive award, would be effectively criminalizing conduct after it has occurred and without appropriate advance notice to the Peirce Firm that such conduct may subject them to criminal punishment.  Plaintiff's claims for punitive damages violate the Eighth Amendment to the United States Constitution because they are penal in nature, and seek to punish Defendants upon vague standards.  Additional applicable legal authority:  <u>e.g.</u>, <u>Philip Morris USA v. Williams</u>, 549 U.S. 346 (2007); <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408 (2003); <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996); <u>Honda Motor Co. v. Oberg</u>, 512 U.S. 415 (1994).

Pursuant to the parties' stipulation, Robert N. Peirce, Jr., and Louis A. Raimond reserve the right to raise issues of law regarding damages prior to bench trial of those issues.

**Defendant Harron:**

FACT:  Whether Dr. Harron's B-read of Mr. Baylor's 2003 film was false, and intentionally false;

c.        Whether Dr. Harron had the specific intent to make an intentionally false read of Mr. Baylor's x-ray;

d.        Whether Dr. Harron had the specific intent to join with the Peirce Firm in filing an intentionally false claim against CSX on Mr. Baylor's behalf;

e.        Whether the Lawyer-Defendants and Dr. Harron had a shared objective of filing an intentionally false claim on Mr. Baylor's behalf;

f.        Whether Dr. Harron and the Lawyer-Defendants had a shared intent to harm CSX through fraud;

g.        Whether Dr. Harron and the Lawyer-Defendants consciously and intentionally agreed together to defraud CSX by filing an intentionally false claim on Mr. Baylor's behalf;

h.        Whether any conspiracy that might have existed between Dr. Harron and the Lawyer-Defendants was terminated before Mr. Baylor's claim against CSX was filed;

i.        Whether Dr. Harron withdrew from any conspiracy that existed before Mr. Baylor's claim against CSX was filed;

j.        Whether Dr. Harron withdrew from any conspiracy that existed more than two years before CSX's claim was filed;

k.        Whether Dr. Breyer's B-read constituted an independent intervening cause of any harm to CSX;

Law:   Plaintiff is not entitled to an award of punitive damages and such an award would be violative of the United States and West Virginia Constitutions.  An award of punitive damages for Plaintiff would violate the Due Process clause of the Fourteenth Amendment to the United States Constitution.  The punitive damages sought by Plaintiff are greatly disproportionate to any actual damages and far exceed any civil or criminal sanctions that could be imposed for similar alleged misconduct.  Plaintiff's claims for punitive damages violate

the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, because they discriminate against Dr. Harron on the basis of wealth and because different amounts can be awarded against two or more defendants for the same act where those defendants differ only in material wealth. Plaintiff's claims for punitive damages violate the Due Process clause of the Fifth and Fourteenth Amendments to the United States Constitution because they seek to punish Dr. Harron based upon unconstitutionally vague standards. Plaintiff's claims for punitive damages violate the Fifth Amendment to the United States Constitution because they would expose Dr. Harron to multiple punishments and fines for the same act. Plaintiff's claims for punitive damages violate the Due Process clause of the Fifth and Fourteenth Amendments to the United States Constitution in the absence of an order bifurcating that claim from the issue of liability. Any award of punitive damages in this case would violate the Separation of Powers Doctrine since this Court and the jury would be usurping the exclusive power of the legislature to define crimes and establish punishment. Any award of punitive damages in this case would be constitutionally defective as an *ex post facto* law prohibited by the West Virginia and United States Constitutions. The jury, in making any such punitive award, would be effectively criminalizing conduct after it has occurred and without appropriate advance notice to Dr. Harron that such conduct may subject him to criminal punishment. Additional applicable legal authority: *e.g., Philip Morris USA v. Williams,* 549 U.S. 346 (2007); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Honda Motor Co. v. Oberg*, 512 U.S. 415 (1994).

LAW: To prove that Dr. Harron conspired with the lawyer-defendants to commit actual fraud, CSX must prove six (6) elements by clear and convincing evidence:

1. That it was knowingly, willfully and intentionally deceived CSX in connection with the lawsuit filed on behalf of Earl Baylor against CSX;

2. To carry out the deception, there was made a false representation of a material fact;

3. That it was known that this representation to CSX was false;

4. That a false representation was made for the purpose of inducing CSX to agree to a payment to settle Earl Baylor's case;

5. CSX relied on the false representation; and

6. CSX was damaged because it relied upon the representation.

7.      **STIPULATIONS**

The Parties are still discussing Stipulations and will keep the Court apprised.


8.      **SUGGESTIONS FOR THE AVOIDANCE OF UNNECESSARY PROOF AND CUMULATIVE EVIDENCE**

      **Plaintiff:**

None at this time.

      **Defendants, Robert N. Peirce, Jr. and Louis A. Raimond:**

1.      Exclusion of evidence other than that relating to Mr. Baylor's claim against CSX.

2.      Exclusion of Professor Brickman's proposed testimony.

3.      Exclusion of Dr. Vachani's proposed testimony concerning prevalence of asbestosis in railroad workers.

4.      Exclusion of evidence related to Mr. Baylor's CT scan.

5.      Exclusion of evidence related to dismissal of and procedural history of Mr. Baylor's lawsuit against CSX.


      **Defendant Ray Harron:**

Exclusion of evidence other than that relating directly to Mr. Baylor's claim against CSX


9.      **SPECIAL PROCEDURES AND/OR COMPLEX ISSUES**

      **Plaintiff:**

None at this time.

      **Defendants, Robert N. Peirce, Jr. and Louis A. Raimond:**

None at this time.

      **Defendant Ray Harron:**

None at this time.

10.   **DAMAGES**

**Plaintiff:**

Pursuant to the Parties August 24, 2009 Joint Stipulation, CSXT reserves any issues relative to damages pending a determination as to liability. CSXT, however, seeks any and all damages recoverable at law including its attorneys' fees and costs, as well as, punitive damages.  *Miller v. Miller* 216 W.Va. 720, 613 S.E.2d 87 (2005) "damages recoverable in fraud actions may include pain and suffering, punitive damages, and annoyance and inconvenience." *See also*, *Hutchens v. Progressive Paloverde Insurance Co.*, 211 F.Supp.2d 788 (S.D.W.Va. 2002).

**Defendants, Robert N. Peirce, Jr. and Louis A. Raimond:**

Pursuant to the Parties' August 24, 2009 Joint Stipulation, the Lawyer Defendants reserve any issues relative to damages pending a determination as to liability.

**Defendant Harron:**

By stipulation the parties agree to a bench trial of all damages of the Baylor related claim if the jury returns a verdict in favor of CSX.  This process would eliminate the need for discovery by the defendant of the full legal billing if the defendants are found not liable.

11.   **ESTIMATE OF LENGTH OF TRIAL**

**Plaintiff:**

Trial is anticipated to last two (2) weeks.

**Defendants, Robert N. Peirce, Jr. and Louis A. Raimond:**

Trial is anticipated to last seven (7) days.

**Defendant Ray Harron:**

Estimate three days.

12.   **OTHER MATTERS**

**Plaintiff:**

None at this time.

**Defendants, Robert N. Peirce, Jr. and Louis A. Raimond:**

None at this time.

**Defendant Ray Harron:**

None

ENTERED this the_____ day of August, 2009.

_____
**JUDGE FREDERICK P. STAMP**
**UNITED STATES DISTRICT JUDGE**

Respectfully submitted this 26th day of August, 2009 by:

/s/ Marc E. Williams_____
Marc E. Williams, Esquire
Robert L. Massie, Esquire
J. David Bolen, Esquire
**HUDDLESTON BOLEN LLP**
611 Third Avenue Huntington, WV 25722-2185
(304) 529-6181 (T)
(304) 522-4312 (F)

E. Duncan Getchell, Jr., Esquire
Samuel L. Tarry, Jr., Esquire
Mitchell K. Morris, Esquire
**MCGUIREWOODS LLP**
901 East Cary Street,
Richmond, Virginia 23219
(804) 775-1000 (T)
(804) 775-1061 (F)

**COUNSEL FOR PLAINTIFF, CSX TRANSPORTATION, INC.**

/s/ Walter P. DeForest
Walter P. DeForest, Esquire
David Berardinelli, Esquire
**DEFOREST KOSCELNIK YOKITIS & KAPLAN**
3000 Koppers Building
Pittsburgh, PA 15219

/s/ Robert A. Lockhart
Daniel R. Schuda, Esquire
Robert A. Lockhart, Esquire
**SCHUDA & ASSOCIATES, PLLC**
232 Capitol Street, Suite 200, P.O. Box 3425
Charleston, WV 25335-3425

**COUNSEL FOR DEFENDANTS, ROBERT N. PEIRCE, JR. and LOUIS A. RAIMOND**

/s/ Elizabeth M. Johnson
Lawrence S. Goldman, Esquire
Elizabeth M. Johnson, Esquire
**LAW OFFICE OF LAWRENCE S. GOLDMAN**
500 Fifth Avenue, 29th Floor
New York, NY 10110

/s/ Jerry E. Jones
Jerry E. Jones, Esquire
**WEST & JONES**
360 Washington Avenue, P.O. Box 2348
Clarksburg, WV 26302-2348

**COUNSEL FOR DEFENDANT, RAY HARRON**