IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT WHEELING

| | |
|---|---|
| CSX TRANSPORTATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 5:05-cv-202 |
| | ) |
| ROBERT V. GILKISON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF CSX TRANSPORTATION, INC.'S OPPOSITION TO THE LAWYER DEFENDANTS' MOTION IN LIMINE NO. 1 SEEKING TO LIMIT THE SCOPE OF THE TRIAL TO EVIDENCE RELATED TO AND FACTS CONCERNING THE CLAIM OF EARL BAYLOR

Comes now Plaintiff, CSX Transportation, Inc. ("CSXT"), by and through its counsel and submits this Opposition to the Lawyer Defendants' Motion In Limine No. 1 to Limit the Scope of the Trial to Evidence Related to and Facts Concerning the Claim of Earl Baylor.

### INTRODUCTION

The Lawyer Defendants' objective is clear – to preclude CSXT from introducing **any** evidence at trial that might undermine their defense. While perhaps unsurprising, this obstructionist tactic ignores the applicable evidentiary and substantive rules of law, as well as the true circumstances of Earl Baylor's claim against CSXT. Indeed, it is simply inconceivable to CSXT that the Lawyer Defendants have asked this Court to exclude, among other things, evidence from **their own files** concerning Mr. Baylor's medical condition and (non) exposure to asbestos. (*See* Doc. Nos. 721 (Mot. No. 4); 722 (Mot. No. 5); 732 (Mot. No. 6).) CSXT will respond to each of the Lawyer Defendants' motions in turn, but submits this response to correct their mischaracterization of applicable law and to demonstrate the fallacy of the overarching evidentiary limits they propose. The Lawyer Defendants never treated Mr. Baylor or his claim

{H0507809.1 }

on an individualized basis and, as such, the evidence in this case cannot be circumscribed as neatly or narrowly as the Lawyer Defendants contend.

Moreover, the Lawyer Defendants completely ignore the fact that there is still a conspiracy count pending against all three Defendants in this case. (*See* Doc. No. 718 (Mot. No. 1) at 1) ("Mr. Peirce and Mr. Raimond understand the upcoming trial to be a case limited to the claim of Earl Baylor and the questions of whether that claim was fraudulent and, if so, whether these two individual lawyers can be liable for fraud.").) Whether or not the Lawyer Defendants' chose to acknowledge it, this case also involves claims for fraud **and** conspiracy and CSXT must be permitted to introduce the evidence necessary to prove both counts.

## ARGUMENT

### I. THE RULES OF EVIDENCE STRONGLY FAVOR THE ADMISSION OF RELEVANT EVIDENCE, WHICH IS NECESSARILY BROAD IN A FRAUD AND CONSPIRACY CASE.

The standard for admissibility is not "evidence related to and facts concerning the claim of Earl Baylor," it is relevance – whether the evidence has "**any** tendency to make **any** fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). This is an extremely "low barrier" – to be relevant, evidence need only be "worth consideration by the jury" or have "a plus value." *U.S. v. Basham*, 561 F.3d 302, 332 (4th Cir. 2009).

Moreover, Rules 403 and 404(b) are not boundless tools to exclude otherwise admissible evidence. Quite to the contrary, "Rule 403 is a rule of inclusion, generally favoring admissibility." *U.S. v. Udeozor*, 515 F.3d 260, 265 (4th Cir. 2008); *see also U.S. v. Wells*, 163 F.3d 889, 896 (4th Cir. 1998) ("We generally favor admissibility [under Rule 403]."). The "mere fact that the evidence will damage the defendant's case is not enough – the evidence must

be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence." *U.S. v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (emphasis in original). Evidence is unfairly prejudicial only when it creates a "genuine risk that emotions of the jury will be excited to irrational behavior." *Id.* When evidence is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *Id.* As the Fourth Circuit has observed, "Jury trials are not antiseptic events . . . upsetting facts may well emerge. The general policy of the Federal Rules, however, is that all relevant material should be laid before the jury as it engages in the truth-finding process." *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1135 (4th Cir. 1988).

Rule 404(b), likewise, is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *U.S. v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995) (emphasis in original); *see also U.S. v. Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998) (same). "The draftsmen of Rule 404(b) intended it to be construed as one of 'inclusion,' and not 'exclusion.' **They intended to emphasize admissibility of 'other crime' evidence**." *U.S. v. Russell*, 971 F.2d 1098, 1107 (4th Cir. 1992) (emphasis added); *see also Powers*, 59 F.3d at 1464 ("[W]e have construed the exceptions to the inadmissibility of prior bad acts evidence broadly."). Moreover, "the circumstances under which such evidence may be found relevant and admissible under the Rule have been described as '**infinite**.' Some of such circumstances are set forth in the Rule itself, but the cataloguing therein is merely illustrative." *U.S. v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980) (emphasis added); *see also U.S. v. Percy*, 765 F.2d 1199, 1203 (4th Cir. 1985) ("[T]he list of circumstances, set forth in the Rule, under which such evidence may be admitted is illustrative, not exclusionary."). Consistent with the foregoing principles, a survey of

civil cases in the Fourth Circuit where Rule 404(b) has been raised indicates that courts overwhelmingly use it to **admit** so-called "other acts" evidence.[1]

    A.    So-called other acts evidence is almost always admissible to prove state of mind such as fraudulent intent.

In their various motions in limine, the Lawyer Defendants repeatedly contend that CSXT must prove that "Mr. Peirce and Mr. Raimond specifically intended to deceive CSXT." (*See, e.g.*, Doc. No. 721 (Mot. No. 4) at 5.) Assuming this to be true, the Fourth Circuit has consistently held:

> The principle is well-established that prior acts and statements should be admitted where necessary to show state of mind. This is the policy reflected in Fed. R. Evid. 404(b), under which evidence of prior bad acts which would otherwise be inadmissible may be introduced to show intent, motive, knowledge, and the like.

*Mullen*, 853 F.2d at 1134; *see also Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 52 (4th Cir. 1993) ("[W]hen intent to commit a crime is at issue, we have regularly permitted the admission of prior

---

[1] *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 249 (4th Cir. Va. 1999)("[T]he judge's failure to admit evidence regarding Wells' derogatory comments about women is erroneous. . . His statements reveal his state of mind, even if they do not relate to the specific employment decision at issue, and are admissible on that basis."); *Johnson v. Hugo's Skateway*, 949 F.2d 1338, 1347 (4th Cir. 1991) ("Hugo's has attempted to argue against admission under Rule 404(b) by flatly stating that the decree was offered as evidence of Hugo's alleged propensity to discriminate against blacks. As discussed above, however, the record clearly demonstrates that the district court admitted the decree for the limited purpose of serving as probative evidence of intent or motive racially to discriminate by showing that Hugo's, contrary to its consent decree obligations, failed to post signs or instruct employees concerning the skateway's pledge of equal access."); *Mullen*, 853 F.2d at 1134 (4th Cir. 1988) (prior use of racially insensitive terms admissible to prove discriminatory intent); *Wyatt v. Security Inn Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir. Md. 1987) ("Security Inn complains rather disingenuously to this court that the practical effect of placing this information about past discriminatory policies before the jury [pursuant to Rule 404(b)] was to prejudice completely Defendant's position that they did no more than apply to Plaintiffs a nondiscriminatory policy. That is, of course, precisely why the evidence should have been admitted."); *Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 584 F. Supp. 2d 832, 837 (E.D. Va. 2008) (evidence of other labor campaigns admissible to prove extortionate intent with respect to campaign at issue); *Sweeney v. MARC Global, Inc.*, 2008 U.S. Dist. LEXIS 11490, 12 (W.D.N.C. 2008) ("Thus, to the extent that this evidence may be admissible to prove Cooper's motive or intent under Rule 404(b), such evidence will not be stricken."); *EEOC v. Winning Team, Inc.*, 2008 U.S. Dist. LEXIS 103462, *26-27 (W.D.N.C. 2008) ("Even though Russell's claim cannot go forward, the evidence concerning Hendrix's harassment of her is admissible under Rule 404(b) as proof of knowledge of the employer."); *Southstar Funding, LLC v. Sprouse*, 2007 U.S. Dist. LEXIS 22585, *7 (W.D.N.C. 2007) ("The Court would have allowed the other bad acts evidence under Fed. R. Evid. 404(b), given that Sprouse's entire defense was based entirely on a claim of ignorance and/or mistake."); *Fairshter v. Am. Nat'l Red Cross*, 322 F. Supp. 2d 646, 656-57 (E.D. Va. 2004); *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 4 F. Supp. 2d 477, 487 (E.D. Va. 1998) (evidence of "inequitable conduct" during prosecution of other patent "relevant to show plan, motive, intent and pattern and practice" with respect to patent at issue).

acts to prove that element."); *U.S. v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997) (quoting *Huddleston v. U.S.*, 485 U.S. 681, 685 (1988)) ("[E]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."). This rule is consistent with long-standing West Virginia common law:

> Large latitude is always given to the admission of evidence where the charge is fraud. . . Evidence of similar acts and statements done and said, near the same time . . . for the purpose of inducing others . . . is admissible to prove a general scheme or plan by which defendant would be enabled to deceive. . .

*Lowance v. Johnson*, 75 W. Va. 784, 792 (W. Va. 1915). In other words, the Lawyer Defendants' emphasis on intent only **reinforces** the propriety and admissibility of other acts evidence in this case.

B. <u>Fraud and conspiracy may be proven through circumstantial evidence.</u>

The Lawyer Defendants' various motions in limine also ignore the well-settled rule that "[c]ircumstantial evidence is not only sufficient, but in most cases of fraud is the **only** proof that can be adduced." *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (emphasis added); *see also U.S. v. Bales*, 813 F.2d 1289, 1294 (4th Cir. 1987) (noting "long-standing principle that fraudulent intent may be established by circumstantial evidence and by inferences deduced from facts and situations"); *Grossman v. Comm'r*, 182 F.3d 275, 278 (4th 1999) ("Intent to defraud, however, may be proven by circumstantial evidence."). According to the West Virginia Supreme Court of Appeals:

> It has been repeatedly held that fraud does not have to be proved by direct and positive evidence but may be established by circumstantial evidence. . . . Circumstances and transactions may be even stronger than direct proof and furnish satisfactory proof of fraud that will outweigh the answers of defendants and evidence of the witnesses.

*Work v. Rogerson*, 152 W. Va. 169, 181 (W. Va. 1968). Likewise, the Fourth Circuit has long recognized that "a conspiracy is usually proven by circumstantial evidence." *U.S. v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008).

> Circumstantial evidence tending to prove a conspiracy may consist of a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy. Thus, a conspiracy may be inferred from a development and collocation of circumstances.

*Id.* (emphasis added) (internal citations and quotations omitted); *see also Crawford v. U.S.*, 2005 U.S. Dist. LEXIS 39398, *15 (N.D. W. Va. 2005) (Seibert) (same). Thus, while the Lawyer Defendants at times seem to argue that CSXT cannot prevail absent explicit admissions of liability (which they unsurprisingly have declined to provide), the law clearly provides that CSXT may prove both of its claims through circumstantial evidence.

## II. THE LAWYER DEFENDANTS MANUFACTURED AND PROSECUTED MR. BAYLOR'S CLAIM ON A "PROJECT" BASIS AS PART OF THEIR "VOLUME" ASBESTOS PRACTICE.

The Lawyer Defendants repeatedly assert that CSXT is somehow mounting "a broad based attack on the Peirce Firm's asbestosis practice as a whole, not the claim of Mr. Baylor." (Doc. 718 (Mot. No. 1) at 1.) This is untrue – CSXT's sole purpose is to prove its fraud and conspiracy claims using the evidence expressly permitted by law. To the extent these proofs are broader than the Lawyer Defendants would prefer, it is due solely to their own conduct. They never treated Mr. Baylor or his claim on individual basis – instead, they manufactured evidence in bulk via mass "projects" and prosecuted his claim as part of their "volume" asbestos practice. They also relied heavily on their long-standing business relationships with Jim Corbitt, Dr. Harron and Dr. Breyer. In this vein, the following facts are illuminating:

- Mr. Baylor became a client of the Lawyer Defendants at a mass screening attended by tens, if not hundreds, of other railroaders. *(See* Answers of Def. Peirce to Pl.'s First

Interrog., No. 6 (Ex. 1).) The Lawyer Defendants advertised this screening via flyers and mass mailings holding themselves out to be "Union Designated Attorneys." (*See* June 11, 2003 Peirce Screening Flyer (PEIRCE EB 0578) (Ex. 2).) They cannot state with certainty whether any Peirce Firm employees were actually present at this screening. (*See* Ex. 1 at No. 16.)

- The Lawyer Defendants made no individualized decision to use U.S. X-Ray to take Mr. Baylor's screening x-ray or Dr. Harron to classify it. Instead, these decisions were "implied" based on the Lawyer Defendants' decade-long business relationship with U.S. X-Ray and Harron and their overall course of conduct with respect to screenings. (*See* Raimond Dep. 34-35, 54 (April 7, 2009) (Ex. 3).)

- The Lawyer Defendants cannot identify when or how Baylor's screening x-ray was transmitted to or from Harron. Instead, they simply have referenced Harron's testimony where he generally describes unidentified Peirce Firm employees "dropping off" boxes of x-rays at his office. (*See* Letter from D. Berardinelli to S. Tarry (April 15, 2009) (Ex. 4); Harron Dep. 29, 45-46 (March 11, 2009) (Ex. 5).)

- Harron has no independent recollection of reviewing Baylor's x-ray; instead, he testified that it was consistent with his general practice as a litigation B reader. (*See* Ex. 5 at 32, 152-153.)

- Mr. Baylor's negative CT scan from Self Memorial Hospital was entered into the Lawyer Defendants' file as part of a "mass scanning project." (*See* Phillips Dep. 47 (April 7, 2009) (Ex. 6).)

- The Lawyer Defendants made no individualized decision to have Mr. Baylor's x-ray "re-read" by Dr. Breyer as part of Baylor's case against CSXT. Instead, as the paralegal who sent the x-ray to Breyer explained, "**I mean it wasn't – it wouldn't have been hey, let's have Earl Baylor re-read. It was, you know, in conjunction with projects**. If we would have a trust that at the time when he – when they say they wouldn't accept Doctor Harron's, you know, ILO readings, if we had outstanding offers with a specific trust, then the only way to reinstate the offer would be to have a new x-ray reading. So I mean it was more project based." (*Id.* at 51.)

- The Lawyer Defendant sent Baylor's x-ray to Dr. Breyer along with 197 others and a check for $19,800.00. (*See* Letter from L. Phillips to D. Breyer (Jan. 4, 2006) (PEIRCE EB 0560-0561) (Ex. 7).)

- Breyer has no independent recollection of reviewing Baylor's x-ray; he can only testify as to his standard practice when classifying x-rays for the Lawyer Defendants. (*See* Breyer Dep. 53 (May 8, 2009) (Ex. 8).)

- Peirce paid his personal physician Dr. Richard Cassoff over $35,000.00 to travel from Pittsburgh to Columbia, South Carolina to diagnose Mr. Baylor and nearly 200 other clients with asbestosis in a single day. (*See* Cassoff Report (Dec. 15, 2007) (PEIRCE EB

{H0507809.1} 7


0268-0269), Letter from L. Phillips to R. Cassoff (Jan. 4, 2008) and Cassoff traveling expenses (Dec. 14 - 15, 2007) (PEIRCE EB 0915-0917) (attached collectively as Ex. 9).)

- Baylor's claim was originally filed in a lawsuit that included approximately 250 plaintiffs. (*See* Compl., *Charles Adams, et al. v. CSX Transp., Inc.*, Case No. 06-C-72 (Harrison County) (EB 00157-00168) (relevant portions attached as Ex. 10).)

- Baylor's claim was later re-filed in a lawsuit that included approximately 1,200 plaintiffs. (*See* Compl., *Jerry M. Abbott, et al. v. CSX Transp., Inc.*, Case No. 08-C-2155 (Kanawha County) (PEIRCE EB 0163-0164, 0190, 0193, 0264) (relevant portions attached as Ex. 11).) According to Peirce, "We frankly didn't pay any attention to the fact that Earl Baylor was one of those cases." (Peirce Dep. 61 (April 7, 2009) (Ex. 12).)

Simply put, it is the manner in which the Lawyer Defendants manufactured and prosecuted Baylor's claim that defines the scope of evidence that CSXT seeks to use in this case. Because the Lawyer Defendants did virtually nothing as to Earl Baylor individually, and particularly because their use of Corbitt, Harron and Breyer was "implied" from prior dealings, the evidence in this case cannot strictly be limited to "evidence related to and facts concerning Earl Baylor." Rather, CSXT must be permitted to introduce evidence that fully contextualizes how Baylor's claim came into existence and was handled by the Lawyer Defendants, as well as evidence tending to prove the existence of a conspiracy based on their long-standing relationship with Harron.

## CONCLUSION

Wherefore, for the foregoing reasons, CSXT respectfully requests that this Court deny the Lawyer Defendants' Motion In Limine No. 1 to Limit the Scope of the Trial to Evidence Related to and Facts Concerning the Claim of Earl Baylor.

**CSX TRANSPORTATION, INC.**

By   /s/ Marc E. Williams
          Of Counsel

Marc E. Williams, Esquire
Robert L. Massie, Esquire
J. David Bolen, Esquire
**HUDDLESTON BOLEN LLP**
611 Third Avenue
P.O. Box 2185
Huntington, WV  25722-2185
(304) 529-6181--Telephone
(304) 522-4312—Facsimile

E. Duncan Getchell, Jr., Esquire
Samuel L. Tarry, Jr., Esquire
Mitchell K. Morris, Esquire
**MCGUIREWOODS LLP**
One James Center
901 East Cary Street
Richmond, VA  23219-4030
(804) 775-7873—Telephone
(80) 698-2188—Facsimile

**COUNSEL FOR THE PLAINTIFF
CSX TRANSPORTATION, INC.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

CSX TRANSPORTATION, INC.,

      Plaintiff,

v.                                              Civil Action No. 5:05-CV-202

ROBERT V. GILKISON; PEIRCE,
RAIMOND & COULTER, P.C.,
A Pennsylvania Professional Corporation a/k/a
ROBERT PEIRCE & ASSOCIATES, P.C., a
Pennsylvania Professional Corporation: ROBERT
PEIRCE, JR.; LOUIS A. RAIMOND; MARK T.
COULTER; AND RAY HARRON, M.D.,

      Defendants.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing *"Plaintiff CSX Transportation, Inc.'s Opposition to the Lawyer Defendants' Motion in Limine No. 1 Seeking to Limit the Scope of the Trial to Evidence Related to and Facts Concerning the Claim of Earl Baylor"* upon the following individuals via electronic filing with the Court's CM/ECF system, on the 27th day of August 2009:

Daniel R. Schuda, Esquire
**SCHUDA & ASSOCIATES, PLLC**
232 Capitol Street, Suite 200
P.O. Box 3425
Charleston, WV 25335-3425

Walter P. DeForest, Esquire
**DEFOREST KOSCELNIK YOKITIS & KAPLAN**
3000 Koppers Building
Pittsburgh, PA 15219

Stanley W. Greenfield, Esquire
**GREENFIELD & KRAUT**
1040 Fifth Avenue
Pittsburgh, PA 15219

Ron Barroso, Esquire
5350 S. Staples
Suite 401
Corpus Christi, TX 78411

John E. Gompers, Esquire
**GOMPERS, McCARTHY & McCLURE**
60 Fourteenth Street
Wheeling, WV 26003

Jerald E. Jones, Esquire
**WEST & JONES**
360 Washington Avenue
P.O. Box 2348
Clarksburg, West Virginia 26302-2348

Lawrence S. Goldman, Esquire
Elizabeth M. Johnson, Esquire
**LAW OFFICES OF LAWRENCE S. GOLDMAN**
500 Fifth Avenue, 29th Floor
New York, NY 10110

                                                              /s/ Marc E. Williams