IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT WHEELING

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:05-cv-202 |
| | ) | |
| ROBERT V. GILKISON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF, CSX TRANSPORTATION, INC.'S OPPOSITION TO THE LAWYER DEFENDANTS' MOTIONS IN LIMINE NOS. 14 AND 15, AND TO DEFENDANT HARRON'S MOTIONS TO PRECLUDE "THE COURT'S OPINION IN THE MATTER IN RE SILICA PRODUCTS LITIGATION" AND "EVIDENCE OF OR RELATING TO B-READS OF X-RAYS OTHER THAN EARL BAYLOR'S X-RAYS"

Comes now Plaintiff, CSX Transportation, Inc. ("CSXT"), by and through its counsel, pursuant to the Federal Rules of Evidence, and submits this combined Opposition to The Lawyer Defendants' Motions in Limine Nos. 14 and 15, and to Defendant Harron's motions to preclude "The Court's Opinion in the Matter In re Silica Products Litigation" and "Evidence of or Relating to B-Reads of X-rays Other Than Earl Baylor's X-rays."

### INTRODUCTION

The Lawyer Defendants and Defendant Harron have each moved to exclude from evidence references to: (1) Dr. Harron's medical opinions and B reads on persons other than Earl Baylor; and (2) Dr. Harron's involvement in the silica litigation, and more precisely the opinion issued by District Judge Janis Jack in the matter of *In re Silica Products Litigation*, 398 F. Supp. 2d 563 (S.D. Tex. 2005). In short, Defendants do not want the jury to hear that Dr. Harron conveniently returned thousands of "silicosis" findings for lawyers who paid for that diagnosis and "asbestosis" findings for lawyers like Peirce interested in bringing asbestos claims. Defendants' arguments rest largely on Rules 403 and 404 and the inaccurate categorization of

these facts as "character evidence." As discussed below, the facts related to Dr. Harron's standard methodology for B reading, and the observations made by the court in *In re Silica Products Litigation* are highly probative and relevant to prove Harron's motive under Rule 404(b). Additionally, regardless of the truth of the matters asserted by Judge Jack, this evidence establishes that Lawyer Defendants' had notice of potential defects in Harron's B reading practice, which included finding 1/0 asbestosis in Mr. Baylor's case.

## ARGUMENT

### I. EVIDENCE OF DR. HARRON'S UNRELIABLE METHODOLOGY IN PERFORMING B-READS IS RELEVANT AND ADMISSIBLE UNDER FRE 404(B) TO ESTABLISH MOTIVE AND INTENT TO RENDER AN UNRELIABLE B READ OF EARL BAYLOR'S X-RAY.

Defendants continue to advance the fallacious argument that Dr. Harron's inaccurate "silicosis" B readings for other lawyers are somehow distinct in practice from his "asbestosis" B reading of Earl Baylor's x-ray, and thus "irrelevant" to the Baylor case. This assertion disregards both Harron's own testimony about his professional customs and the fact that B readers are trained to review chest x-rays not for either silicosis or asbestosis, but for any and all forms of pneumoconiosis that may appear on a given film.

> One of the rules for B Readers is that you're supposed to look at a film without any preconceived notion of what it is you're looking for. You're supposed to see something that's there and classify it as you see it. Rather than looking for evidence of a specific disease, which would tend to make you disregard other evidence that may be on the film.

(Cooper Dep. 44 (May 5, 2009) (Ex. 1).)

More fundamentally, Dr. Harron claims to have used a <u>standard process</u> every time he reviewed an x-ray. Because he cannot recall reviewing Mr. Baylor's x-rays, Dr. Harron assumes that he would have employed the same B reading methodology he utilized over the course of his

career – which included tens of thousands of B reads for various lawyers, some seeking silicosis claims and others seeking asbestosis claims. He described his standard B reading process thus:

> Kind of like it says to do it in the ILO book, I practically always had at least three view boxes, my office, and I had a three-light view box I could carry with me on the road, in my office at home I had a three-light view box. So I essentially always had a three-light view box. I would put the 0/0 standard up on the left, the blank in the middle where I would put the subject film, and on the right side, I would put the 1/1 standard film and compare them. If in my office I happened to have four-light view boxes, I'd put up another standard on the fourth light so that they would be there, and just put the subject film up in the middle, and practically they always were falling in the normal category, the 1/0 category, which was probably most of them, the 1/1 category. If it looked like it was more than a 1/1 standard, then I'd get in my box, I had them all tagged, you know, so I could pull them out pretty quickly, and try to get the best match I could for the film.

(Harron Dep. 52-53 (March 11, 2009) (Ex. 2).)

The medically untenable results of Dr. Harron's "other B Reads" derived from this same methodology, demonstrates his practice and procedure of giving lawyers the particular interpretations they paid him for. Specifically, his willingness to render thousands of silicosis findings for lawyers trolling for silicosis claims after finding only asbestosis in thousands of the same individuals for lawyers recruiting asbestos cases provides compelling evidence that he did not read Earl Baylor's 2003 x-ray with the intent to render a reliable medical interpretation. As Plaintiff's expert B reader Dr. Kevin Cooper explained at deposition:

> [M]y opinion would be that it's very difficult to interpret someone else's
> different opinion, or someone's opinion who is different from mine, based on one occasion as anything but a difference of opinion. Because I don't know what that person's motivation would be. And that it's much easier to detect an intention to deceive based on a pattern of behavior that's repeated many, many times.

(Ex. 1 at 108-109.)

Evidence of Dr. Harron's standard B reading method (and the inconsistent results it generated) is highly relevant to prove his role in producing a fraudulent claim of asbestosis for Earl Baylor. The standard for admissibility is not "evidence related to and facts concerning the

claim of Earl Baylor," it is relevance – whether the evidence has "<u>any</u> tendency to make <u>any</u> fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). This is an extremely "low barrier" – to be relevant, evidence need only be "worth consideration by the jury" or have "a plus value." *U.S. v. Basham*, 561 F.3d 302, 332 (4th Cir. 2009). And contrary to Defendants' arguments, "Rule 403 is a rule of inclusion, generally favoring admissibility." *U.S. v. Udeozor*, 515 F.3d 260, 265 (4th Cir. 2008); *see also U.S. v. Wells*, 163 F.3d 889, 896 (4th Cir. 1998) ("We generally favor admissibility [under Rule 403]."). The "mere fact that the evidence will damage the defendant's case is not enough – the evidence must be unfairly prejudicial, and the unfair prejudice must substantially outweigh the probative value of the evidence." *U.S. v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (emphasis in original). Evidence is unfairly prejudicial only when it creates a "genuine risk that emotions of the jury will be excited to irrational behavior." *Id.* When evidence is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *Id.*

Harron's malleable B reading practice (i.e., yielding the disease type corresponding to the lawyer's request) is admissible to show his true intention and motive to generate income at the expense of accuracy. Even characterizing Harron's other B reads as "bad acts" does not render them inadmissible under Rule 404 or any other rule of evidence. The Fourth Circuit has consistently held:

> The principle is well-established that prior acts and statements should be admitted where necessary to show state of mind. This is the policy reflected in Fed. R. Evid. 404(b), under which evidence of prior bad acts which would otherwise be inadmissible may be introduced to show intent, motive, knowledge, and the like.

*Mullen v. Princess Anne Volunteer Fire*, 853 F.2d 1130, 1134 (4th Cir 1988); *see also Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 52 (4th Cir. 1993) ("[W]hen intent to commit a crime is at

issue, we have regularly permitted the admission of prior acts to prove that element."); *U.S. v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997) (quoting *Huddleston v. U.S.*, 485 U.S. 681, 685 (1988)) ("[E]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."). This rule is consistent with long-standing West Virginia common law:

> Large latitude is always given to the admission of evidence where the charge is fraud. . . Evidence of similar acts and statements done and said, near the same time . . . for the purpose of inducing others . . . is admissible to prove a general scheme or plan by which defendant would be enabled to deceive. . .

*Lowance v. Johnson*, 75 W. Va. 784, 792 (W. Va. 1915). In sum, the results of Harron's standard B reading practice are not offered to prove his "character", but to prove his motive and state of mind in yielding an unreliable B reading of Earl Baylor's x-ray.

## II. DISTRICT JUDGE JANIS JACK'S PUBLICLY REPORTED FINDINGS OF FACT FROM THE SILICA MDL PROCEEDINGS ARE RELEVANT AND ADMISSIBLE TO PROVE THE LAWYER DEFENDANTS WERE ON NOTICE THAT HARRON'S B READ OF EARL BAYLOR DID NOT CONSITUTE ADEQUATE MEDICAL EVIDENCE FROM WHICH TO BRING A LAWSUIT.

Even assuming Defendant Lawyers' theory of the case – that they had no reason to suspect Dr. Harron was unreliable - Judge Jack's published findings should have provided notice to them otherwise. Thus, it matters not whether the actual substance of Judge Jack's findings are even true; the mere reporting of her opinion created notice to Defendant Lawyers of the serious potential defects in their screening operation. Evidence which is offered not for the truth of the matter asserted, but rather to prove notice is not hearsay and may be admitted. *See* Fed. R. Evid. 801. *See also Shiner v. Moriarty*, 706 A.2d 1228 (Pa.Super. 1998) ("We agree with the trial court that the opinions were relevant to establish the motive and intent of the Moriartys and their attorneys in proceeding in the face of the statements of the various judges denigrating the merits

of their position. <u>Their use in this fashion does not constitute hearsay because their relevance does not depend upon the truth of the various judges' opinions of the merits of the issues considered.</u>") (emphasis added).

A Fourth Circuit decision that rejected admission of judicial decisions as hearsay is distinguishable because the district court improperly admitted a state court order r the truth of the matter asserted. *See Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993) (vacating judgment for error in admitting state court's factual order from previous case between the parties for purpose of showing an "ongoing conspiracy"). Where court orders are offered not for the truth of the matters contained therein, but rather to show notice of defects or problems, they are admissible where probative and relevant. See, e.g., *Johnson v. Colt Industries*, 609 F.Supp. 776, 780-81 (D.C.Kan. 1985) (admitting into evidence the *Bender v. Colt* decision as "highly probative" to show notice of similar accidents).

The exclusionary arguments advanced by Defendants have been previously rejected by the Fourth Circuit Court of Appeals in *Benedi v. McNeil*, 66 F.3d 1378 (4th Cir. 1995); *but see Ellis v. International Playtex*, 745 F.2d 292 (4th Cir. 1984) (finding no abuse of discretion in trial court's exclusion of consumer complaints where record already contained evidence of prior complaints and notice had been demonstrated). In *Benedi*, the defendant drug manufacturer attempted to bar evidence of Drug Experience Reports (essentially claims of adverse reactions) by asserting the same hearsay and Rule 403 arguments Defendants rely upon here – namely that the prior reports involved dissimilar facts; that plaintiff did in fact proffer them to prove the truth of the allegations in the reports, and that notice was not at issue. *See id.* at 1385. The Court of Appeals held that the district court properly admitted the reports to show general notice of potential problems – not specific causation or liability in any of the individual reports. *Id.*

Moreover, the Court dispensed with the 403 arguments by noting that the district court issued a proper limiting instruction to consider the reports only as evidence of notice to defendant, not as evidence that the allegations made in the reports were true. *Id.* at 1386. *See also, Worsham v. A.H. Robins Co.*, 734 F.2d 676 (11th Cir. 1984) (upholding the admission of prior adverse reaction reports to prove notice and defendant's state of mind).

Evidence that a federal judge found Dr. Harron's B reading methods highly unreliable is admissible to show notice, notwithstanding Defendants' claims that silicosis claims are "unrelated" or dissimilar to asbestos claims. The record demonstrates that B reading requires the same process for evaluation of all forms of pneumoconioses. And Harron has testified that he utilized his standard methodology in reviewing Mr. Baylor's films. Finally, even if there existed some distinction between Harron's work in the silicosis litigation and his work for Peirce, federal courts require a lower showing of similarity when the prior reports are offered to show a general notice of defect. *See e.g., Wheeler v. John Deere,* 862 F.2d 1404, (10th Cir. 1988) (observing that the requirement of substantial similarity is "relaxed, however, when the evidence of other accidents is submitted to prove notice or awareness of the potential defect").

### III. EVIDENCE OF JUDGE JANIS JACK'S PUBLISHED FINDINGS OF FACT FROM THE SILICA MDL PROCEEDINGS ARE ADMISSIBLE TO IMPEACH DEFENDANT PEIRCE'S STATEMENTS AS TO DR. HARRON'S RELIABILITY.

Defendant Peirce has testified under oath that he believes Dr. Harron's B Read of Earl Baylor was reliable, and by itself provided sufficient medical evidence to file a claim for Earl Baylor. (*See* Peirce Dep. 21-22 (April 7, 2009) (Ex. 3).) This remains his opinion today in spite of Judge Jack's published findings.

> I'm aware of the silicosis, asbestosis problem that occurred in the case in Corpus Christi. But I'm not aware that -- of any evidence at all that his readings of these

nonmalignant x-rays was in any way flawed or fraud or involved in any misconduct of any kind.

*Id.* According to Peirce, the only reason he obtained a second B read of Mr. Baylor's x-ray was because the railroads had begun "indicating they were no longer accepting" Harorn B reads. *Id.* So before filing Baylor's claim, Peirce obtained a second B read from a doctor who ultimately agreed with Dr. Harron's findings 90% of the time. On the basis of "these two reads" Peirce authorized filing of the lawsuit. *Id.* at 21.

On this testimony, the jury is entitled to question Peirce's credibility and to hear him impeached on his defense of Harron's methods. The jury could reasonably conclude that Peirce's refusal to acknowledge any problems in Harron's B reading standards is motivated not by honest assessment of fact, but financial dependence on Harron as a vital element of the conspiracy to defraud CSX. The probative value of this evidence – which goes directly to the core issues of fact in this case - greatly outweighs any potential prejudice. *See e.g., Lentz, supra*, 524 F.3d at 525.

## CONCLUSION

For the reasons stated above, CSXT respectfully requests that this Court deny the Lawyer Defendants' Motions in Limine Nos. 14 and 15, and Defendant Harron's motions to preclude "The Court's Opinion in the Matter In re Silica Products Litigation" and "Evidence of or Relating to B-Reads of X-rays Other Than Earl Baylor's X-rays."

Respectfully Submitted,

**CSX TRANSPORTATION, INC.**

By    /s/ Marc E. Williams
       Of counsel

Marc E. Williams, Esquire
Robert L. Massie, Esquire
J. David Bolen, Esquire
**HUDDLESTON BOLEN LLP**
611 Third Avenue
P.O. Box 2185
Huntington, WV 25722-2185
(304) 529-6181--Telephone
(304) 522-4312—Facsimile

E. Duncan Getchell, Jr., Esquire
Samuel L. Tarry, Jr., Esquire
Mitchell K. Morris, Esquire
**MCGUIREWOODS LLP**
One James Center
901 East Cary Street
Richmond, VA 23219-4030
(804) 775-7873—Telephone
(80) 698-2188—Facsimile

**COUNSEL FOR THE PLAINTIFF
CSX TRANSPORTATION, INC.**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

CSX TRANSPORTATION, INC.,

    Plaintiff,

v.       Civil Action No. 5:05-CV-202

ROBERT V. GILKISON; PEIRCE,
RAIMOND & COULTER, P.C.,
A Pennsylvania Professional Corporation a/k/a
ROBERT PEIRCE & ASSOCIATES, P.C., a
Pennsylvania Professional Corporation: ROBERT
PEIRCE, JR.; LOUIS A. RAIMOND; MARK T.
COULTER; AND RAY HARRON, M.D.,

    Defendants.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing *"Plaintiff, CSX Transportation, Inc.' Opposition to the Lawyer Defendants' Motions in Limine Nos. 14 and 15, and to Defendant Harron's Motions to Preclude "The Court's Opinion in the Matter IN RE Silica Products Litigation" and "Evidence of or Relating to B-Reads of X-Rays Other Than Earl Baylor's X-Rays""* upon the following individuals via electronic filing with the Court's CM/ECF system, on the 27th day of August 2009:

Daniel R. Schuda, Esquire
**SCHUDA & ASSOCIATES, PLLC**
232 Capitol Street, Suite 200
P.O. Box 3425
Charleston, WV 25335-3425

Stanley W. Greenfield, Esquire
**GREENFIELD & KRAUT**
1040 Fifth Avenue
Pittsburgh, PA 15219

John E. Gompers, Esquire
**GOMPERS, McCARTHY & McCLURE**
60 Fourteenth Street
Wheeling, WV 26003

Walter P. DeForest, Esquire
**DEFOREST KOSCELNIK YOKITIS & KAPLAN**
3000 Koppers Building
Pittsburgh, PA 15219

Ron Barroso, Esquire
5350 S. Staples
Suite 401
Corpus Christi, TX 78411

Jerald E. Jones, Esquire
**WEST & JONES**
360 Washington Avenue
P.O. Box 2348
Clarksburg, West Virginia 26302-2348

Lawrence S. Goldman, Esquire
Elizabeth M. Johnson, Esquire
**LAW OFFICES OF LAWRENCE S. GOLDMAN**
500 Fifth Avenue, 29th Floor
New York, NY 10110

　　　　　　　　　　　　　　　　　　　　　　/s/ Marc E. Williams