IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CSX TRANSPORTATION, INC.,

    Plaintiff,

v.                                                           Civil Action No. 5:05CV202
                                                                        (STAMP)

ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation,
ROBERT PEIRCE, JR., LOUIS A. RAIMOND,
MARK T. COULTER and RAY HARRON, M.D.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT REGARDING
COUNTS 3 AND 4 (FRAUD AND CONSPIRACY RELATED TO BAYLOR)
BY DEFENDANTS ROBERT PEIRCE, JR. AND LOUIS A. RAIMOND,
GRANTING RAY HARRON, M.D.'S MOTION FOR SUMMARY JUDGMENT,
DENYING AS MOOT PLAINTIFF CSX TRANSPORTATION, INC.'S
MOTION TO STRIKE ALL OPINION AND REPORTS BY DOCTORS
JAMES W. BALLARD, ROY P. JOHNSON, AND HENRY K. SMITH
FROM CONSIDERATION ON SUMMARY JUDGMENT
DENYING AS MOOT MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
BASED ON NEWLY DISCOVERED EVIDENCE PRODUCED TODAY BY CSX
AND DENYING AS MOOT DEFENDANT RAY HARRON, M.D.'S MOTION
FOR SUMMARY JUDGMENT BASED ON NEWLY DISCLOSED EVIDENCE[1]**

I. Procedural History

This Court will dispense with a full recitation of the background facts in this opinion. For the purpose of resolving the motions currently pending before it and addressed in this memorandum opinion and order, the Court believes that the following abbreviated summary is sufficient.

---

[1] This memorandum opinion and order sets forth in more detail the pronounced ruling made by this Court in its letter to counsel dated September 1, 2009.

On December 22, 2005, CSX Transportation, Inc. ("CSX") commenced the above-styled civil action based upon allegations that defendants Robert V. Gilkison ("Gilkison") and Peirce, Raimond & Coulter, P.C. ("the Peirce Firm") knowingly and negligently aided a client, Ricky May, in pursuing a fraudulent asbestosis claim against CSX ("May/Jayne fraud"). The complaint asserted fraud, negligence,[2] and punitive damages claims against Gilkison and the Peirce Firm.

On June 20, 2007, this Court granted CSX leave to amend its complaint to state additional fraud claims with the requisite particularity. CSX filed its amended complaint, adding claims for civil RICO (Count 1), civil RICO conspiracy (Count 2), common law fraud (Count 3), and civil conspiracy (Count 4) against four new defendants--Robert Peirce, Jr., Louis A. Raimond, Mark Coulter[3] (collectively "the lawyer defendants") and Ray Harron, M.D. ("Dr. Harron") for allegedly manufacturing a fraudulent asbestosis claim by using unreasonable and unreliable doctors ("Baylor fraud").

Thereafter, the lawyer defendants filed a motion to dismiss Counts 1 through 4 (the newly added counts) of the plaintiff's amended complaint. Dr. Harron also filed a motion to dismiss each

---

[2]On March 16, 2007, pursuant to a motion by the Peirce Firm, this Court granted partial judgment on the pleadings as to the negligence counts.

[3]CSX voluntarily dismissed the claims against defendant Mark Coulter on May 15, 2009.

2

of the counts against him in the amended complaint.[4] Dr. Harron's motion to dismiss, in large part, made the same substantive arguments for dismissal as were made by the lawyer defendants in their motion to dismiss Counts 1 through 4 of the amended complaint.

On March 28, 2008, this Court entered a memorandum opinion and order granting the lawyer defendants' motion to dismiss as to Counts 1 and 2 and denying their motion to dismiss as to Counts 3 and 4. Thereafter, on April 1, 2008, this Court entered a second memorandum opinion and order granting Dr. Harron's motion to dismiss as to Count 2 and denying his motion to dismiss as to Counts 4 and 7.

CSX thereafter filed two motions for reconsideration, requesting that this Court reconsider its memorandum opinion and order granting in part and denying in part the lawyer defendants' motion to dismiss Counts 1 through 4 of the amended complaint, as well as its memorandum opinion and order granting in part and denying in part Dr. Harron's motion to dismiss the amended complaint. This Court denied both of CSX's motions for reconsideration.

CSX then filed a motion for leave to file a second amended complaint in which it alleged that Dr. Harron and the lawyer defendants fabricated and prosecuted eleven additional objectively

---

[4]CSX names Dr. Harron in three counts of its amended complaint: Count 2 (civil RICO conspiracy), Count 4 (civil conspiracy), and Count 7 (punitive damages).

3

baseless asbestosis claims against CSX. Finding that CSX was dilatory in their request to amend their complaint, that a second amendment to the complaint would only be futile, and that allowing CSX to file a second amended complaint would unduly prejudice the defendants, this Court denied CSX's motion.

The May/Jayne fraud and Baylor fraud claims proceeded on separate scheduling orders. A trial regarding the May/Jayne fraud was held on August 11, 2009 through August 14, 2009, after which the jury found the defendants not liable. Currently before this Court are the following fully-briefed motions concerning the Baylor fraud: (1) the lawyer defendants' motion for summary judgment regarding Counts 3 and 4 (fraud and conspiracy related to Baylor); (2) Dr. Harron's motion for summary judgment; (3) CSX's motion to strike all opinions and reports by doctors James W. Ballard, Roy P. Johnson, and Henry K. Smith from consideration on summary judgment; the lawyer defendants' motion to dismiss or for summary judgment based on newly discovered evidence produced today by CSX; and (5) Dr. Harron's motion for summary judgment based on newly disclosed evidence.

## II. Facts

The Baylor fraud arises out of occupational asbestosis screenings conducted by the Peirce Firm in the course of the firm's practice of representing asbestosis claimants. Mr. Baylor attended a Peirce Firm asbestosis screening on August 4, 1999, after which his x-ray from this screening was read as negative by Dr. Harron on

4

August 31, 1999. Approximately three years later, after Mr. Baylor attended a second Peirce Firm screening, Dr. Harron deemed Mr. Baylor's x-ray as unreadable. On June 11, 2003, however, Mr. Baylor attended yet another Peirce Firm asbestosis screening. Dr. Harron read Mr. Baylor's x-ray as showing signs of asbestosis at a 1/0 classification (the lowest rating).

Prior to the Peirce Firm filing any lawsuit on behalf of Mr. Baylor against CSX, a district court in the Southern District of Texas criticized Dr. Harron for his readings of x-rays for signs of silicosis. See In re Silica Prods. Liability Litig., 398 F. Supp. 2d 563 (S.D. Tex. 2005). After this opinion was issued, railroads such as CSX refused to settle claims based on Dr. Harron's opinions on claimants' x-rays. Thus, the Peirce Firm began to have x-rays that were previously read by Dr. Harron read by a different B-reader, and no asbestosis claims were filed until new opinions from different radiologists were obtained concerning whether the x-rays showed signs of asbestosis.

Dr. Donald Breyer independently conducted a B-read of Mr. Baylor's x-ray on January 6, 2006, and determined that the x-ray evidenced signs of asbestosis at a 1/0 level. Only after this reading by Dr. Breyer did the Peirce Firm file suit on behalf of Mr. Baylor. Mr. Baylor's claim was filed as one of over 200 claims brought in a class action against CSX in West Virginia state court.[5] See Adams v. CSX, Civil Action No. 06-C-72.

---

[5]This suit has since been voluntarily discontinued.

CSX then filed suit against Dr. Harron and the lawyer defendants in this Court, alleging that the defendants fraudulently misread Mr. Baylor's x-ray, ignored independent negative CT scan results indicating that Mr. Baylor did not have asbestosis, and falsified his exposure history.

### III. <u>Applicable Law</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. The Court must perform a threshold inquiry to determine whether a trial is needed--whether, in other words, "there are any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.") (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 812 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV.  Discussion

A.  The Lawyer Defendants' Motion for Summary Judgment

   1.  Count 3

The remaining claims against the lawyer defendants are common law fraud (Count 3) and common law conspiracy to commit fraud (Count 4) relating to the filing of Mr. Baylor's asbestosis claim.[6] In support of their motion for summary judgment, the lawyer defendants contend that (1) CSX has failed to prove the fraudulent scheme alleged in the amended complaint; (2) the evidence precludes a finding of fraudulent intent; (3) the claims are barred under the Noerr-Pennington doctrine; and (4) a reasonable B-reader could opine that Mr. Baylor's x-ray evidences signs of asbestosis, precluding a finding of fraud.

CSX responds in opposition to these arguments and additionally argues that (1) the medical evidence proves fraud; (2) the lawyer defendants unlawfully and fraudulently manufactured Mr. Baylor's claim; (3) the jury may conclude that Dr. Breyer was even less reliable than Dr. Harron; and (4) the lawyer defendants filed suit despite independent medical evidence indicating that Mr. Baylor does not have asbestosis.

After a thorough review of the record, this Court holds that summary judgment is appropriate.  Under West Virginia law, the essential elements in an action for fraud are as follows: "(1) that

---

[6]CSX voluntarily dismissed Count 3 against defendant Louis A. Raimond on May 15, 2009.

the act of fraud was committed by the defendant; (2) that it was material and false; (3) that plaintiff relied upon the misrepresentation and was justified in relying upon it; and (4) that plaintiff was damaged because he relied upon it." Martin v. ERA Goodfellow Agency, Inc., 423 S.E.2d 379, 381 (W. Va. 1992).

The undisputed facts show that CSX cannot produce evidence sufficient for a reasonable jury to find that CSX relied upon the defendants' alleged fraudulent act. The amended complaint sets forth in great detail the lawyer defendants' alleged fraudulent scheme, describing how they filed suit on behalf of Mr. Baylor despite allegedly knowing that Dr. Harron falsely read Mr. Baylor's June 11, 2003 x-ray as showing signs of asbestosis. In a later memorandum of law to this Court, CSX wrote

> that Defendant Harron's actions are inherently fraudulent and part of the larger Baylor scheme to defraud CSXT. In fact, without Harron's participation in the scheme there would have been no fraud. It was Defendant Harron's fraudulent conduct in recklessly disregarding or deliberately misrepresenting Mr. Baylor's June 11, 2003 x-ray that allowed the fraudulent claim to be submitted to CSX and prosecuted by the Peirce Firm.

(CSX Br. Mot. Dismiss at 6, Jan. 29, 2009.) Yet, the undisputed facts show that CSX did not rely upon this fraudulent scheme to its detriment. Following the In re Silica Prods. Liability Litig. decision, the lawyer defendants had a second doctor, Dr. Breyer, read Mr. Baylor's x-ray. Only after Dr. Breyer concluded that Mr. Baylor's x-ray read positive for asbestosis did the lawyer defendants then file suit on behalf of Mr. Baylor. Dr. Harron's reading of Mr. Baylor's x-ray was never submitted as evidence in

9

the Adams v. CSX, Civil Action No. 06-C-72, litigation. Thus, the undisputed facts show that Mr. Baylor's claim was not dependent on Dr. Harron's reading of the x-ray and therefore, CSX could not have relied upon this alleged fraudulent scheme necessary to satisfy the second element of fraud under West Virginia common law.

Moreover, in order to defeat this motion for summary judgment, CSX must demonstrate that it can prove by clear and convincing evidence that the lawyer defendants acted with the requisite fraudulent intent. Actual fraud, as at issue in this case, "is intentional, and consists of an intentional deception or misrepresentation . . . ." Gerver v. Benavides, 530 S.E.2d 701, 705 (W. Va. 1999). "[T]he existence of fraud is not deducible from facts and circumstances which would be equally consistent with honest intentions. In sum, a presumption always exists in favor of innocence and honesty in a given transaction and the burden is upon one who alleges fraud to prove it by clear and distinct evidence." Steele v. Steele, 295 F. Supp. 1266, 1269 (S.D. W. Va. 1969).

Here, CSX cannot sustain its burden that the lawyer defendants acted with actual intent to defraud, as there remains no evidence that the lawyer defendants knew that Mr. Baylor did not have asbestosis. Dr. Breyer, who CSX has not named as a fraudulent participant in its amended complaint, opined that Mr. Baylor's x-ray exhibited signs of asbestosis. CSX, itself, admits that "a B reader could hypothetically undertake to review the 2003 x-ray and believe in good faith that they find 1/0 profusion." (Lawyer

10

Defs.' Br. Summ. J. Ex. 1, May 18, 2009.)  Further, CSX's own expert similarly admits in his deposition that it would not be inappropriate for a B-reader to read Mr. Baylor's x-ray as showing a profusion level of 1/0.  (Lawyer Defs.' Br. Summ. J. Ex. 2).

CSX, in attempting to defeat summary judgment, states that prior to filing Mr. Baylor's claim, the lawyer defendants received records from Mr. Baylor's personal physician, Dr. Christopher Knox, which included a high resolution CT scan indicating that Mr. Baylor did not have asbestosis.  Nevertheless, Dr. Knox admits that Mr. Baylor's CT scan contained evidence of scarring of the lung tissue that could be caused by asbestos exposure.  (Lawyer Defs.' Br. Summ. J. Ex. 21).  Again, CSX's expert confirms these conclusions, and further admits that an individual can suffer from asbestos-related disease despite a negative CT scan.  Id.  Accordingly, because CSX cannot present sufficient evidence for a jury to find that the lawyer defendants committed common law fraud by clear and convincing evidence, this Court must grant the lawyer defendants' motion for summary judgment on Count 3 of the amended complaint.[7]

---

[7] Because this Court holds that CSX cannot sustain its burden or proof as to the elements of common law fraud, and that summary judgment is appropriate on this basis alone, this Court finds it unnecessary to address the lawyer defendants' remaining arguments, including whether the Noerr-Pennington doctrine is applicable to the Baylor fraud.

2. Count 4

In light of this Court's holding regarding Count 3, the lawyer defendants are also entitled to summary judgment regarding CSX's common law conspiracy to commit fraud claim. A civil conspiracy is

> a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose not in itself unlawful, by unlawful means. The <u>cause of the action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.</u>

<u>Dixon v. Am. Indus. Leasing Co.</u>, 253 S.E.2d 150, 152 (W. Va. 1979) (emphasis added). In a cause of action for conspiracy to defraud, the plaintiff must prove "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud." <u>Bosak v. McDonough</u>, 549 N.E.2d 643, 646 (Ill.App.3d 1989). "[W]here the plaintiff is unable to establish the underlying cause of action for fraud, the cause of action for conspiracy to defraud must also fail." 16 Am.Jur.2d <u>Conspiracy</u> § 63 (1998). Here, because CSX is unable to establish the underlying cause of action for fraud, summary judgment as to Count 4 against the lawyer defendants is also appropriate.

B. <u>Dr. Harron's Motion for Summary Judgment</u>

The only claim that remains pending against Dr. Harron is Count 4, common law conspiracy to commit fraud relating to the asbestosis claim filed on Mr. Baylor's behalf. In accordance with this Court's findings and rulings above, and for the same reasons, this Court grants Dr. Harron's motion for summary judgment.

C. <u>CSX's Motion to Strike</u>

CSX filed a motion to strike all opinions and reports by doctors James W. Ballard, Roy P. Johnson, and Henry K. Smith from consideration on summary judgment. In this motion, CSX argues that these doctors' opinions and reports should be stricken because they are expert opinions that the defendants failed to disclose, as required. Additionally, CSX contends that the expert opinions are irrelevant to the determination of whether the lawyer defendants had a reasonable factual basis for filing Mr. Baylor's suit. In response, the lawyer defendants argue that these doctors were not required to be disclosed as experts because they are not retained as experts by the defendants in this litigation.

Because this Court did not rely on the evidence contained in the opinions and reports of doctors James W. Ballard, Roy P. Johnson, and Henry K. Smith in reaching its decisions to grant the defendants' motions for summary judgment, CSX's motion to strike is denied as moot.

D. <u>The Lawyer Defendants' Motion to Dismiss or for Summary Judgment Based on Newly Discovered Evidence Produced Today by CSX and Dr. Harron's Motion for Summary Judgment Based on Newly Disclosed Evidence</u>

The lawyer defendants filed a motion to dismiss or for summary judgment based on newly discovered evidence produced by CSX relating to a prior case filed by Mr. Baylor against CSX. Dr. Harron filed a separate motion for summary judgment in which he

13

joins in and incorporates the lawyer defendants' motion to dismiss. In light of this Court's findings, and because this Court does not base its decision on these motions, both the lawyer defendants' and Dr. Harron's motions are denied as moot.

V. Conclusion

For the reasons stated above, the lawyer defendants' motion for summary judgment regarding Counts 3 and 4 (fraud and conspiracy related to Baylor) is GRANTED; Dr. Harron's motion for summary judgment is GRANTED; CSX's motion to strike all opinions and reports by doctors James W. Ballard, Roy P. Johnson, and Henry K. Smith from consideration on summary judgment is DENIED AS MOOT; the lawyer defendants' motion to dismiss or for summary judgment based on newly discovered evidence produced today by CSX is DENIED AS MOOT; and Dr. Harron's motion for summary judgment based on newly disclosed evidence is DENIED AS MOOT. It is further ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter, which shall include this Court's rulings regarding the Baylor fraud, as well as the jury's verdict concerning the May/Jayne fraud.

DATED:      September 15, 2009

                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE