**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 09-2135

---

CSX TRANSPORTATION, INCORPORATED,

      Plaintiff - Appellant,

    v.

ROBERT V. GILKISON; PEIRCE, RAIMOND & COULTER, PC, a/k/a Robert Peirce & Associates, P.C., a Pennsylvania Professional Corporation; JOHN DOES; ROBERT N. PEIRCE, JR.; LOUIS A. RAIMOND; MARK T. COULTER; RAY A. HARRON, Dr.,

      Defendants - Appellees,

    and

RICHARD CASSOFF, M.D.,

      Party-in-Interest,

LUMBERMENS MUTUAL CASUALTY COMPANY,

      Intervenor.

----------------------------------

AMERICAN SOCIETY OF RADIOLOGIC TECHNOLOGISTS; AMERICAN TORT REFORM ASSOCIATION; ASSOCIATION OF AMERICAN RAILROADS; DANIEL E. BANKS; COALITION FOR LITIGATION JUSTICE, INCORPORATED; ALFRED FRANZBLAU; LAWRENCE MARTIN; NATIONAL ASSOCIATION OF MANUFACTURERS; PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA; VIRGINIA SOCIETY OF RADIOLOGIC TECHNOLOGISTS; WASHINGTON LEGAL FOUNDATION; WEST VIRGINIA CHAMBER OF COMMERCE,

      Amici Supporting Appellant.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.   Frederick P. Stamp, Jr., Senior District Judge.  (5:05-cv-00202-FPS-JES)

Argued: October 26, 2010          Decided: December 30, 2010

———————————

Before DUNCAN, AGEE, and DAVIS, Circuit Judges.

———————————

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.   Judge Davis wrote a separate concurring opinion.

———————————

**ARGUED:** Dan Himmelfarb, MAYER BROWN, LLP, Washington, D.C., for Appellant.   Walter P. DeForest, III, DEFOREST KOSCELNIK YOKITIS KAPLAN & BERARDINELLI, Pittsburgh, Pennsylvania, for Appellees. **ON BRIEF:** Evan M. Tager, Michael B. Kimberly, MAYER BROWN, LLP, Washington, D.C.; E. Duncan Getchell, Jr., Samuel L. Tarry, Jr., Mitchell K. Morris, MCGUIREWOODS LLP, Richmond, Virginia; Marc E. Williams, Robert L. Massie, NELSON MULLINS RILEY & SCARBOROUGH LLP, Huntington, West Virginia, for Appellant. Robert A. Lockhart, SCHUDA & ASSOCIATES, PLLC, Charleston, West Virginia, David J. Berardinelli, Matthew S. McHale, DEFOREST KOSCELNIK YOKITIS KAPLAN & BERARDINELLI, Pittsburgh, Pennsylvania, for Appellees Peirce, Raimond & Coulter, PC, Robert N. Peirce, Jr., Louis A. Raimond, and Mark T. Coulter; Lawrence S. Goldman, Elizabeth M. Johnson, LAW OFFICES OF LAWRENCE S. GOLDMAN, New York, New York, Jerald E. Jones, WEST & JONES, Clarksburg, West Virginia, Ron Barroso, Corpus Christi, Texas, for Appellee Ray A. Harron; John E. Gompers, GOMPERS, MCCARTHY & MCCLURE, Wheeling, West Virginia, Stanley W. Greenfield, GREENFIELD & KRAUT, Pittsburgh, Pennsylvania, for Appellee Robert V. Gilkison.   David P. Goch, Heidi K. Abegg, WEBSTER CHAMBERLAIN & BEAN, Washington, D.C., for American Society of Radiologic Technologists and Virginia Society of Radiologic Technologists; Ashley C. Parrish, Candice Chiu, KING & SPALDING LLP, Washington, D.C., for American Society of Radiologic Technologists, Amici Supporting Appellant.   Mark A. Behrens, Cary Silverman, SHOOK, HARDY & BACON, LLP, Washington, D.C.; H. Sherman Joyce, AMERICAN TORT REFORM ASSOCIATION, Washington, D.C.; Ann W. Spragens, Sean McMurrough, PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, Des Plaines, Illinois; Quentin Riegel, NATIONAL ASSOCIATION OF MANUFACTURERS, Washington, D.C.; Daniel Saphire, ASSOCIATION OF AMERICAN

RAILROADS, Washington, D.C., for American Tort Reform Association, Association of American Railroads, Coalition for Litigation Justice, Incorporated, National Association of Manufacturers, and Property Casualty Insurers Association of America, Amici Supporting Appellant. David Craig Landin, Cheryl G. Ragsdale, HUNTON & WILLIAMS LLP, Richmond, Virginia, for Daniel E. Banks, Alfred Franzblau, and Lawrence Martin, Amici Supporting Appellant. Daniel J. Popeo, Richard A. Samp, WASHINGTON LEGAL FOUNDATION, Washington, D.C., for Washington Legal Foundation, Amicus Supporting Appellant. Scott L. Winkelman, Michael L. Martinez, Robert L. Willmore, Jennifer G. Knight, CROWELL & MORING LLP, Washington, D.C., for West Virginia Chamber of Commerce, Amicus Supporting Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

CSX Transportation, Incorporated ("CSX") filed a complaint against Robert V. Gilkison ("Gilkison"), Peirce, Raimond & Coulter, P.C. ("Peirce firm"), Robert N. Peirce, Jr. ("Peirce"), Louis A. Raimond ("Raimond"), Mark T. Coulter ("Coulter"), and Ray Harron, M.D. ("Harron"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., common law fraud, and civil conspiracy, all "aris[ing] from the successful efforts of the defendants to deliberately fabricate and prosecute objectively unreasonable, false and fraudulent asbestosis claims against CSX." (J.A. 143).[1]

The district court granted defendants' motion to dismiss as to the RICO counts and as to all but two fraud counts. On appeal, CSX contends that the district court erred by dismissing those RICO and fraud claims, abused it discretion by denying CSX leave to amend its complaint, erred by granting the defendants' motion for summary judgment on one remaining fraud count, and abused its discretion by excluding certain evidence during trial on another fraud count. For the following reasons, we affirm in part and vacate in part the district court's judgment and remand the case for further proceedings.

---

[1] We refer to the individuals Peirce, Raimond, and Coulter collectively as the "lawyer defendants" in keeping with the use of that convention by the parties and the district court.

I.

In its first amended complaint (hereinafter "complaint"),[2] CSX alleges that the defendants—a law firm, certain attorneys, an investigator, and a medical expert, all employed by the law firm—"embarked upon a calculated and deliberate strategy to participate in and to conduct the affairs of the Peirce firm through a pattern and practice of unlawful conduct, including bribery, fraud, conspiracy, and racketeering," (J.A. 145), by "orchestrat[ing] a scheme to inundate CSX[] and other entities with thousands of asbestosis cases without regard to their merit." (J.A. 142).

In order to perpetrate this alleged scheme, CSX contends "the lawyer defendants gained access to potential clients through unlawful means, [and] retained clients and procured medical diagnoses for them through intentionally unreliable mass screenings." (J.A. 145-46). CSX charges that the screenings were unreliable, in part, because "[t]he lawyer defendants . . . deliberately hired unreliable doctors such as . . . Harron to 'read' the x-rays for signs of asbestosis." (J.A. 148). In the complaint, CSX averred that, Harron "agreed to read unusually high numbers of x-rays with reckless or deliberate disregard for

---

[2] CSX's original complaint was dismissed without prejudice, and CSX was granted leave to amend.

their true content with the full knowledge that the lawyer defendants intended to file personal injury claims based on his diagnoses." (J.A. 163). Ultimately, CSX alleges that defendants used this scheme to "fabricate[] and prosecute[] asbestosis claims with no basis in fact." (J.A. 146).

The complaint specifies nine personal injury suits the Peirce firm filed against CSX on behalf of former CSX employees, which CSX alleges to have been "a deliberate effort by the lawyer defendants to defraud CSX[]." (J.A. 160). Count 1 of the complaint charged the lawyer defendants with violating RICO as to each of the nine suits while Count 2 charged a RICO conspiracy as to those suits. Count 3 charged the lawyer defendants, individually, with common law fraud as to each of the nine suits. Count 4 charged the lawyer defendants and Harron with common law civil conspiracy as to each of the nine suits, and Counts 5 and 6 charged Gilkison and the Peirce firm with conspiracy and fraud as to the so-called "May/Jayne Incident," infra.

The defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts 1 through 4 and Count 6 of the complaint. The district court granted the motion in part and denied the motion in part. As to the RICO counts, the district court found that because "eight of the nine lawsuits that comprise the basis of th[e] claims were filed more than

four years before CSX filed its amended complaint in this case,"
(J.A. 696), and "CSX was on inquiry notice of the injuries
alleged in Counts 1 and 2 when the nine allegedly fraudulent
claims against it were filed and/or settled," (J.A. 698), eight
of the claims were time-barred.  As to the ninth suit, (the
"Baylor suit" on behalf of Earl Baylor), the district court
reasoned that since the other eight RICO claims were time-
barred, and because proving "[a] 'pattern of racketeering
activity' requires a showing of at least two acts of
racketeering activity[,] . . . .  CSX has failed to show the
requisite pattern to sustain its RICO claims." (J.A. 699-700).

     As to the common law fraud and conspiracy counts, the
district court held that "[t]he foregoing [RICO] statute of
limitations analysis similarly applies to [those] [c]ounts."
(J.A. 700).  As a result, the district court concluded that,
"[b]ecause eight of the nine lawsuits . . . were filed more than
two years before the amended complaint was filed in this case,
reliance on those suits is time-barred" under West Virginia law.
(J.A. 700).  The Baylor suit was not time-barred but decided on
summary judgment as discussed below.

     The district court denied the motion to dismiss Count 6,
and the fraud and conspiracy claims arising from the May/Jayne
Incident proceeded to trial.

After the district court's ruling on the Rule 12(b)(6) motion, CSX moved for leave to amend its complaint and proffered a proposed second amended complaint, which "added [eleven] more recent fraudulently filed claims as well as detailed allegations concerning the difficulty of discovering the fraud." (Appellant's Br. 13). The district court denied the motion.

CSX noted a timely appeal as to all its claims, and this Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## II.

### A.

CSX first contends that the district court erred by granting the defendants' motion to dismiss the RICO and common law fraud counts. CSX argues that this Court should adopt the so-called "separate accrual rule" for RICO statute of limitations purposes, under which "a cause of action accrues when new predicate acts occur within the limitations period, even if other acts were committed outside the limitations period." (Appellant's Br. 19) (quotations and alterations omitted). CSX also asserts that the district court erred by concluding that CSX had or should have had notice of its injuries, for both the RICO and fraud counts, near the dates the suits were filed and/or settled. CSX contends that the district

court's "analysis [on this point] depended upon mistaken assumptions about the materials to which CSX[] had access and disregarded features of mass asbestos litigation that severely limited CSX[]'s ability to discover the fraud." (Appellant's Br. 33). Finally, CSX suggests that "a Rule 12(b)(6) motion may be granted only in the unusual case in which all facts necessary to the defense clearly appear on the face of the complaint," and that the case at bar does not meet that standard. (Appellant's Br. 14).

We review the district court's grant of the motion to dismiss the RICO and common law claims de novo. Monroe v. City of Charlottesville, 579 F.3d 380, 385 (4th Cir. 2009). In reviewing the order, "we must take the facts in the light most favorable to the plaintiff." E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).


1. RICO Claims

This Court has recognized that a "dismissal [pursuant to a Rule 12(b)(6) motion] is inappropriate unless, accepting as true the well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiff, 'it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th

Cir. 1996) (quoting <u>Mylan Lab., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 & n.4 (4th Cir. 1993)).   We have noted that asserting an affirmative defense, like a statute of limitations defense, in a motion to dismiss presents a particular "procedural stumbling block" for defendants. <u>Richmond, Fredericksburg & Potomac R.R. v. Forst</u>, 4 F.3d 244, 250 (4th Cir. 1993).   Accordingly,

> a motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred.   But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).   This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[] <u>on the face of the complaint</u>."

<u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007) (quoting <u>Forst</u>, 4 F.3d at 250).   "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." <u>Id.</u> at 466.

The Supreme Court has held, as did the district court below, that the applicable statute of limitations for RICO violations is four years. <u>See</u> <u>Agency Holding Corp. v. Malley-Duff & Assocs., Inc.</u>, 483 U.S. 143, 152 (1987).   There is no contest on this point, as the dispute in this case concerns when the injury accrued, that is, when did the four year statute of limitations begin to run.   <u>See</u> <u>Brooks</u>, 85 F.3d at 181.   This

Court has held that "the statutory period [for a RICO claim] begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 220 (4th Cir. 1987); see also Rotella v. Wood, 528 U.S. 549, 555 (2000) ("[D]iscovery of the injury . . . is what starts the clock.").

Having set out the applicable law, we turn to the complaint to determine whether all the facts necessary to conclude CSX's claims are time-barred appear on its face.  In that regard, we note the complaint was filed July 5, 2007, so the specific inquiry is whether the face of the complaint pleads facts such that it clearly appears CSX was on notice of its claimed injury by July 4, 2003.  We conclude a fair reading of the complaint's allegations does not establish such notice on the face of the complaint and therefore the district court erred in granting the Rule 12(b)(6) motion.

The complaint alleges the following with respect to the timing of the RICO violations:  in December 2003, Peirce was linked to a union president who had pled guilty to federal racketeering charges; in 2007, Harron lost his medical license; the B-reads for the underlying lawsuits ranged from 2000 to 2003; the dates the underlying lawsuits were filed and settled, ranging from 2000 to 2006; several specific alleged acts of mail and wire fraud occurring since 2000; and allegations of civil

RICO conspiracy beginning in "the early to mid 1990s." (J.A. 163). Viewed in the light most favorable to CSX, it is not at all clear from these facts when CSX knew or should have known of the alleged RICO violations, that is, when the fraud commenced.

The district court, however, conflated the filing of the various underlying suits as, in and of themselves, putting CSX on notice of the fraudulent scheme underlying the RICO counts. However, nothing "clearly appears" on the face of the complaint to show that the filing of these suits by the lawyer defendants, as well as the settlements, establish that CSX knew or ought to have known by July 2003 that the alleged fraud was afoot. Additional factual development may or may not prove that premise, but it is not plainly apparent on the face of the complaint.

The case at bar is readily distinguishable from the rare cases in which this Court has held the district court properly dismissed, pursuant to Rule 12(b)(6), a complaint as time-barred. In Brooks, we found that, because it was undisputed that the relevant charge of unlawful warrantless arrest "accrue[s] on the date of . . . arrest," the date of arrest was included in the complaint, and because "[t]here is no question that on the day of his arrest Brooks knew or should have known both of the injury . . . and who was responsible for any injury," dismissal on a Rule 12(b)(6) motion was appropriate. 85

F.3d at 182; see also McMullen v. Lewis, 32 F.2d 481, 484 (4th Cir. 1929) ("Where upon the face of the bill the staleness of the demand is apparent—that is, the claim has remained unasserted for 50 years—the question of its antiquity can always be called to the court's attention . . . . [T]he laches of the complainant in asserting his claim is a bar in equity, if that objection is apparent on the bill itself, there can be no good reason for requiring a plea or answer to bring it to the notice of the court." (quotations omitted)).

In contrast to the foregoing cases in which the complaint clearly identified the start date for the running of the statute of limitations, the case at bar necessitates a fact-intensive inquiry as to when CSX knew or should have known of the existence of the claimed RICO violations. The fact that an underlying asbestos suit was filed or settled, without more, does not establish as a matter of law that the separate gravamen of RICO fraud should have been known by that event alone. The district court thus erred in making the unilateral finding that either the date of the filing or of the settlement of the underlying lawsuits was dispositive on this question. It does not follow from the facts pled on the face of the complaint that CSX knew or should have known that the underlying asbestos lawsuits were fraudulently filed when they were filed. Nor does reading the face of the complaint show that CSX knew or should

have known of the alleged fraudulent screening scheme when the lawsuits were filed or settled.

Accordingly, the case at bar does not qualify as one of the "rare circumstances," in which Rule 12(b)(6) dismissal of the RICO claims as time-barred was appropriate. Thus, "we conclude that the face of the complaint does not allege facts sufficiently clear to conclude that the statute of limitations had run, and the district court therefore erred in dismissing the complaint on that basis." Goodman, 494 F.3d at 466. Instead, we find that in this case "[t]h[is] defense[] [is] more properly reserved for consideration on a motion for summary judgment," Forst, 4 F.3d at 250, and we vacate the district court's judgment in so far as it granted the motion to dismiss Counts 1 and 2 of the complaint.[3]

_____

[3] Because we find that the district court erred by dismissing the RICO counts for the reasons just described, we do not address CSX's argument regarding the separate accrual rule for RICO statute of limitations purposes.

As a separate matter, since the issue may arise on remand, we do note our concern regarding the district court's apparent alternate holding that, "[b]ecause only one alleged act of racketeering activity is not time-barred, CSX has failed to show the requisite pattern to sustain its RICO claims." (J.A. 700). While we have determined that, at the motion to dismiss stage, the district court erred in finding the CSX claims time-barred, some of those claims may yet be determined as time-barred at a later stage of the proceedings. However, even if a claim or claims are found to be time-barred, that fact alone does not make the claim ineligible as a predicate act to establish a RICO pattern.

(Continued)

2. Common Law Fraud Claims

Common law fraud under West Virginia law is the gravamen of Counts 3 and 4 of the complaint. West Virginia's applicable statute of limitations for such common law fraud claims is two years. See Alpine Prop. Owners Assoc., Inc. v. Mountaintop Dev. Co., 365 S.E.2d 57, 66 (W. Va. 1987). Similar to a RICO claim, a West Virginia fraud claim accrues from "the perpetration of the fraud," or if "there has been fraudulent concealment," then "the statute begins to run only from the time when the wrong was discovered, or ought to have been discovered." Plant v. Humphries, 66 S.E. 94, 98 (W. Va. 1909).

Viewed in the light most favorable to CSX, the complaint alleges the same facts as to the West Virginia common law fraud counts as recounted above regarding the RICO counts. For the same reasons discussed above concerning the RICO counts, the pled facts do not reveal when CSX knew or should have known of the alleged fraud. That is, the face of the complaint does not

---

In order to demonstrate the requisite pattern of RICO activity, the statute permits the contemplation of acts within a ten year period. 18 U.S.C. § 1961(5). Thus, even assuming that only one of those acts occurred within the statute of limitations period, that would not defeat the existence of a RICO pattern provided the other predicate act took place within the applicable ten year period. Whether all of the injuries might independently support an award of damages is a separate issue.

plead facts which conclusively show CSX knew or should have known of the alleged fraud by July 4, 2005, two years prior to the filing of the complaint.

Our analysis of the error in the district court's dismissal of CSX's RICO claims likewise applies to its dismissal of the common law fraud claims. Accordingly, because the face of the complaint does not allege sufficient facts to conclusively determine when CSX knew or should have known of the existence of the common law fraud, the district court erred by granting defendants' Rule 12(b)(6) motion to dismiss Counts 3 and 4 of the complaint.

B.

CSX next contends that the district court abused its discretion by denying the motion to file a second amended complaint. In denying leave to amend, the district court found "that CSX was dilatory in filing this motion for leave" and "[m]oreover, this Court finds that CSX's proposed amendment to the complaint would be futile." (J.A. 791). Referring to its earlier decision that the RICO and common law fraud claims were time-barred, the district court stated "CSX is charged with notice of its injury by March 2000 when the first alleged objectively baseless and fraudulent lawsuit was filed against it," and thus the additional claims in the proposed second

amended complaint would likewise be time-barred. (J.A. 792-93). Because the district court found that amendment would be futile, it also observed that "allowing CSX to file a second amended complaint would unduly prejudice the defendants by extending discovery when it is not necessary." (J.A. 795). The district court made no finding that CSX acted with a dilatory motive or that being dilatory alone would cause any prejudice to the defendants.

Because CSX contends that the district court erred in dismissing its RICO and fraud claims as time-barred, CSX correspondingly argues that amendment of the complaint would not have been futile. This is so, CSX argues, because of the seven additional claims in the proposed second amended complaint, "[o]ne . . . was filed in the same lawsuit as the Baylor claim (as to which the district court found no time bar); three were filed after the Baylor claim (and thus necessarily raise no time bar); and three were filed in the same lawsuit as the Peterson and Wiley claims (as to which discovery commenced less than four years before CSX[] filed its RICO claims)." (Appellant's Br. 34-35). Accordingly, CSX avers that the additional claims proffered in the second amended complaint were not time-barred.

This Court reviews a district court's denial of leave to amend for abuse of discretion. United States ex rel. Wilson v. Kellog Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008).

Leave to amend "should freely [be given] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Thus, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962).

The district court's finding that amendment would have been futile followed solely from its earlier holding in granting the motion to dismiss the RICO and fraud counts as time-barred. From that basis the district court reasoned that the additional claims must likewise be time-barred.  However, because we determined above that the district court erred by dismissing CSX's RICO and common law fraud claims in the complaint as time-barred, it axiomatically follows that the district court's finding of futility based on the later, additional claims was erroneous and thereby an abuse of discretion as a matter of law.[4]

---

[4] The record supports the district court's finding that CSX was dilatory in offering its second amended complaint.  CSX had access to the information about the additional eleven asbestos cases it now claims were fraudulent when it filed the complaint, but, for whatever reason, did not include those claims.  However, there is no evidence that CSX's delay was in bad faith and, more importantly, "[d]elay alone, without prejudice, does
(Continued)

See <u>Koon v. United States</u>, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

Likewise, the district court's finding that amendment would be unduly prejudicial to the defendants was based solely on its finding that the additional claims would be futile.  The district court found that the defendants would be prejudiced because amendment would "extend[] discovery when it is not necessary," (J.A. 795), based only on its conclusion that the additional claims were time-barred.  Because the district court erred in its futility determination, and because that determination directly informed the court's unduly prejudicial determination, the court's unduly prejudicial determination must also fail.  Accordingly, the district court's finding that amendment would be unduly prejudicial to the defendants was also an abuse of discretion.

Therefore, we find the district court abused its discretion by denying the motion for leave to amend and the district court's judgment to that effect is hereby vacated.

_____

not support the denial of a motion for leave to amend." <u>Deasy v. Hill</u>, 833 F.2d 38, 41 (4th Cir. 1987).  Without a finding of dilatory motive and prejudice, the district court's finding that CSX acted in a dilatory manner is an insufficient ground upon which to deny the motion to amend.

C.

CSX next argues that the district court erroneously granted summary judgment to the defendants in the Baylor suit.  In its award of summary judgment, the district court found that "[t]he undisputed facts show that CSX cannot produce evidence sufficient for a reasonable jury to find that CSX relied upon the defendants' alleged fraudulent act." (J.A. 2091).  In the district court's view, "there remains no evidence that the lawyer defendants knew that Mr. Baylor did not have asbestosis," because "CSX, itself, admits that 'a B reader could hypothetically undertake to review the 2003 x-ray and believe in good faith that they [sic] find [signs of asbestosis].'" (J.A. 2092).

CSX offers three contentions for reversal of the grant of summary judgment:

> First, the positive x-ray reading resulted from an unreliable screening mechanism designed by the lawyer defendants to generate false positives.  Second, the lawyer defendants failed to conduct a reasonable inquiry before filing suit, and thus failed to uncover medical records in their own files that effectively ruled out asbestosis.  Third, the only evidence that Baylor had been exposed to asbestos while working for CSX[] was a questionnaire that Baylor himself confirmed was fabricated.

(Appellant's Br. 39-40) (emphasis deleted).  If we assume, without deciding, that sufficient evidence was before the district court so as to permit summary judgment on the first two

issues, there clearly were material facts in dispute as to the last issue.

This Court reviews a district court's grant of summary judgment de novo. Shipbuilders Council of Am. v. U.S. Coast Guard, 578 F.3d 234, 243 (4th Cir. 2009).

"Summary judgment is only appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" George & Co. v. Imagination Entm't Ltd., 575 F.3d 383, 392 (4th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). "We construe the evidence in the light most favorable to . . . the party opposing [the] summary judgment motion, and draw all reasonable inferences in its favor." Id.

In order to make a prima facie claim for injuries arising from asbestosis, not only must the plaintiff plead and show that he has asbestosis, but "the threshold for every theory is [also] proof that an injured plaintiff was exposed to asbestos-containing products for which the defendant is responsible." Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1481 (11th Cir. 1985); see also Marlin v. Bill Rich Const., Inc., 482 S.E.2d 620, 635 (W. Va. 1996) ("[I]nhaling asbestos fibers or other dustborne particles does not constitute an injury under [West Virginia's worker compensation statute],

absent the further showing that occupational pneumoconiosis has been contracted after exposure . . . .”).  Thus, to make out a claim of injury from asbestosis, counsel must plead not only that the claimant has the disease, but the additional element of exposure to asbestos while working for the defendant. “[R]ecovery will require the plaintiff to show that he was exposed to defendant’s asbestos-containing product by working with or in close proximity to the product.” Blackston, 764 F.2d at 1481; see also Restatement 2d Torts § 431(a).  It follows that if the evidence could reasonably show that a lawyer filed an asbestos claim knowing the necessary element of occupational exposure did not exist, a reasonable jury could conclude that to be an act of fraud.  Of course, fraud is the gravamen of the claim by CSX against the defendants in the Baylor suit.

Even if we assume, as the lawyer defendants argue and the district court held, that CSX could not show the defendants did not know Baylor did not have asbestosis, that assumption is insufficient to support the grant of summary judgment.  This is because material facts remain in dispute as to whether the lawyer defendants committed fraud in their representation that the necessary element of occupational exposure was met in Baylor’s case.

After Breyer confirmed Harron’s reading of Baylor’s x-ray, the Peirce firm sent Baylor a copy of an “Asbestos

Questionnaire" with directions to complete the questionnaire, although someone at the Peirce firm had already "partially completed" it. (J.A. 92). In the response to a section of the questionnaire entitled "Claimed Exposures," the terms "Asbestos rope, cement, Asbestos valve packing" are written. (J.A. 93).[5] The foregoing writing appears to be in handwriting different from that on the remainder of the questionnaire, and Baylor testified that it was "not [his] writing." (J.A. 1199). He also testified that it was "not [his] wife's writing," (J.A. 1199), and responded "[n]o" when he was asked "whether someone [from the Peirce firm] might have asked you questions and wrote things on this form while . . . you were sitting there?" (J.A. 1204). Moreover, Baylor testified that while employed by CSX he did not work with any asbestos rope or with any cement products. If the jury believed this evidence, it could reasonably conclude the lawyer defendants committed an act of fraud by falsifying the occupational exposure required as a necessary element of the asbestos claim they filed. Obviously, CSX would have "relied" on the representation by filing the Baylor claim that all elements of the cause of action were met as CSX would have had no reason to know of the alleged act of fraud.

---

[5] Additional information is written in that section; however, the rest of the response does not allege any asbestos exposure.

Thus, viewing the evidence in the light most favorable to CSX, a reasonable jury could find that the lawyer defendants at worst fraudulently manufactured the claimed exposures, or at least lacked a good faith basis to file an asbestos injury claim because they knew it lacked the necessary element of occupational exposure. Consequently, a jury could find that the lawyer defendants committed fraud by filing the lawsuit because there was no evidence upon which they could have believed that Baylor was exposed to asbestos-containing products in the course of his employment with CSX. Consequently, a reasonable jury could find CSX relied to its detriment on the defendants' alleged fraud as the basis of the Baylor claim.[6]

Accordingly, because material facts remain in dispute, we reverse the district court's award of summary judgment to the defendants in the Baylor case.[7]

---

[6] Harron contends an independent basis (Breyer's B-read of Baylor's x-ray) exists to sustain the award of summary judgment as to him. We disagree. From the record evidence, a reasonable jury could conclude Harron falsely certified Baylor's x-ray and that Breyer was also involved in a similar scheme particularly if the jury found Breyer's B-read came after receiving Harron's previous diagnosis. Thus, material facts remain in dispute as to Harron which preclude summary judgment upon the current record.

[7] We have reviewed defendants' arguments that alternative grounds exist for the district court's grant of summary judgment and have found all of them to be without merit. This finding includes, but is not limited to, the defendants' argument that CSX's fraud claim is barred by the Noerr-Pennington doctrine. (Continued)

D.

The fraud and conspiracy claim that proceeded to trial arose from CSX's allegation of Gilkison's and, vicariously, the Peirce firm's participation in the so-called May/Jayne Incident. This case involved two prior CSX employees: Danny Jayne ("Jayne") and Ricky May ("May"). Jayne had "attended and was examined at a screening for asbestosis conducted by the Peirce firm," and his x-ray was read by Harron as having irregularities "consistent with asbestosis." (J.A. 166). As a result of this diagnosis, the Peirce firm filed a personal injury suit on Jayne's behalf against CSX in 2000, which was ultimately settled.

CSX alleged that, subsequently, Gilkison "suggested to . . . May that he should get someone who had previously tested positive for asbestosis to sit for his exam," so that he would "be able to file a claim against CSX." (J.A. 167).  May asked Jayne to appear at an asbestosis screening and represent himself

---

As the district court found, "CSX's amended complaint contains sufficient allegations to support the sham exception," (J.A. 703), and the record has sufficient evidence to support that finding.  Moreover, the defendants have not challenged the district court's finding of fact by cross appeal.  The defendants also contend a release by Baylor forecloses a claim by CSX related to him.  However, the district court has not considered this ground and has made no factual findings which would be a necessary condition precedent to appellate review.

to be May, which Jayne did.   The resulting x-ray was later "presented to CSX[] on behalf of . . . May by the Peirce firm as part of a settlement package." (J.A. 170).

At trial, May testified that "the idea" to "ask[] someone else to sit on [his] behalf . . . came from . . . Gilkison." (J.A. 1622).   Jayne testified that May "called [him] and asked [him] to attend a screening and sit in his place and pretend[] that [he was] May so that he could obtain a positive screening," and that May had told him that the suggestion for the scheme originated with Gilkison. (J.A. 1720).   Gilkison denied that he was either the mastermind or a participant in the scheme. Peirce testified that he had no knowledge of the scheme before or during the time it was executed, and after he discovered the fraud, he told May "he is no longer our client and he better get a lawyer to defend himself on the allegations that CSX had made. I wanted nothing to do with him at that point . . . ." (J.A. 1544).

During trial, CSX attempted to introduce evidence that the Peirce firm had continued to represent May after the incident in various personal injury matters against third parties other than CSX (hereinafter "third party claims").   The district court granted the defendants' motion to exclude that evidence, finding that "what actions the Peirce Law Firm did with regard to those other [third party claims] seems to me to be irrelevant in the

first place under 401 and probably confusing to the jury and unfairly prejudicial." (J.A. 1323).   Later, the district court again found that "the third-party issues, which are described as such which really involve claims that May had or may have had against other asbestos manufacturers and possibly other related parties, is not relevant to the claim of CSX against Gilkison and Peirce for their damages for the fraud." (J.A. 1560).

On appeal, CSX argues that the evidence was "manifestly relevant" under Rule 401 because it "directly contradict[ed] Peirce's testimony" and "made it more likely that the fraud was a calculated scheme by Gilkison and the Peirce firm to generate revenue for the firm and assist May." (Appellant's Br. 56-57). CSX contends that the evidence was particularly significant because "the case ultimately came down to whether the jury believed May and Jayne, on the one hand, or Gilkison and Peirce, on the other." (Appellant's Br. 59).

This court reviews the district court's decision to exclude this evidence for an abuse of discretion. United States v. Blake, 571 F.3d 331, 350 (4th Cir. 2009).

"To be relevant, evidence need only to have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996) (quoting Fed. R. Evid. 401).

However, relevant evidence "must be excluded if its probative value is substantially outweighed by the danger of undue prejudice," which occurs when "there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." Id. at 1378 (quotations omitted).

> Because the district court has first-hand knowledge of the trial proceedings, we have consistently held that the district court should be afforded 'wide discretion' in determining whether evidence is unduly prejudicial and that the district court's evidentiary determinations should not be overturned "except under the most extraordinary of circumstances."

Id. at 1377 (quoting United States v. Heyward, 729 F.2d 297, 301 n.2 (4th Cir. 1984)).

We find that the district court did not abuse its discretion by excluding the evidence. First, the evidence was not clearly impeaching, as it was consistent with Peirce's testimony that the Peirce firm ceased representing May on asbestos matters against CSX after Peirce discovered the fraud. Evidence that the Peirce firm continued to represent May in actions against other parties is not contrary to Peirce's testimony. Thus, Peirce's credibility is not called into question by the evidence.

Furthermore, Peirce's testimony was not at all conclusive on the issue of Gilkison's guilt. Because CSX's allegations as to the Peirce firm's liability were premised on a theory of

vicarious liability, and not on any direct actions on the part of the Peirce firm, the evidence is not particularly relevant. Therefore, the district court did not abuse its discretion by finding that the possible confusion to the jury and prejudice to the defendants outweighed any marginal relevance the evidence may have had.

III.

For the foregoing reasons, we affirm the district court's judgment regarding the May/Jayne Incident. We vacate the district court's judgment granting the motion to dismiss as to Counts 1 through 4. We also vacate the district court's judgment denying the motion by CSX to amend its complaint. Finally, we vacate the district court's grant of summary judgment to the defendants on the Baylor claim. Accordingly, this case is remanded to the district court for further proceedings in accordance with this opinion.

AFFIRMED IN PART,<br>VACATED IN PART,<br>AND REMANDED

DAVIS, Circuit Judge, concurring:

I concur fully in the panel opinion and in the disposition of this appeal. I write separately to express some lingering reservations regarding our vacatur of the district court's summary judgment on the Baylor claim.

In West Virginia, as elsewhere, a plaintiff must prove fraud by clear and convincing evidence. See, e.g., Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc., 425 S.E.2d 144, 148 (W.Va. 1992); White v. National Steel Corp., 938 F.2d 474, 490 (4th Cir. 1991). While the uncertainty surrounding the unidentified handwriting on Baylor's Asbestos Questionnaire may present a factual issue, I have grave doubt that any reasonable resolution of that uncertainty is sufficient on this record to show fraud on the part of the lawyer defendants in light of the heightened burden of proof West Virginia law imposes on plaintiffs. It is far from obvious that a reasonable jury could find, by clear and convincing evidence, that the lawyer defendants committed fraud in "representing" that Baylor had been exposed to asbestos.

CSX argues that a fabricated Questionnaire is "compelling evidence" that Baylor's exposure history was falsified and, thus, evidence that the lawyer defendants knowingly misrepresented this fact in support of his claim when they filed suit on Baylor's behalf against CSX. The record shows that the Questionnaire was not completed until 2005, two years after

Baylor's initial screening. J.A. 92-95, 1154, 1157. The Questionnaire alone, created after the lawyer defendants had opened a file for Baylor on the basis of his work and medical history, seems insufficient to show by clear and convincing evidence that the individual lawyer defendants knowingly filed Baylor's claim on the basis of a factual allegation they knew to be false. This is all the more so given the evidence in the record supporting Baylor's exposure history. According to evidence in the record, brake exposures to track men (Baylor's position) were "certainly a possible source of exposure." J.A. 1195. As this court has previously noted, "[f]raud 'is not deducible from facts and circumstances which would be equally consistent with honest intentions.'" White, 938 F.2d at 491 (citing Steele v. Steele, 295 F.Supp. 1266, 1269 (S.D.W.Va. 1969)).

Furthermore, even if one assumes that CSX has projected evidence sufficient to establish, by clear and convincing evidence, a material misrepresentation, it is highly doubtful that CSX can show its reasonable reliance on any such misrepresentation. CSX claims that there "can be no question that . . . CSX[] relied on that misrepresentation by treating the claim like every other one in the mass asbestos docket." Appellant's Br. at 48. However, a successful fraud action requires that a plaintiff not only have "relied upon the

misrepresentation," but to have been "justified in relying upon it." Martin v. ERA Good fellow Agency, Inc., 423 S.E.2d 379, 381 (W. Va. 1992) (emphasis added). Here, Baylor's underlying damages claim was based on allegations in a civil lawsuit against CSX. As the defendant in that suit, CSX had the ability, and its lawyers had a duty, to access, examine, and where appropriate, contest the other side's evidence, including, as here, evidence with respect to the sufficiency of Baylor's asbestosis claim. Instead, CSX's claim here, that it was damaged by its (ostensibly reasonable) reliance on a misrepresentation regarding Baylor's workplace exposure, appears to turn on its head the very adversarial regime that is one of the hallmarks of our system of civil justice. One is left to ponder how a party represented by capable counsel might reasonably rely on the allegations made on behalf of its adversary.

I note, as well, that to the extent CSX rests its claim for fraud on the lawyer defendants' alleged "misrepresentation" of their "good-faith basis" for filing the Baylor claim, this court received no coherent answer at oral argument to its question seeking the source of any such duty under West Virginia law. CSX appears to rely for this proposition on West Virginia Rule of Civil Procedure 11(a). Appellant's Br. 39. However, West Virginia courts have noted that "[t]he purpose of Rule 11 and Rule 37 of the West Virginia Rules of Civil Procedure is to

allow trial courts to sanction parties who do not meet minimum standards of conduct in a variety of circumstances." Davis ex rel. Davis v. Wallace, 565 S.E.2d 386, 389 (2002) (citing Bartles v. Hinkle, 472 S.E.2d 827, 835 (1996)). Accordingly, CSX's claims for fraud on the basis of this rule appear plainly unfounded. As has long been true of the corresponding federal rule, a private cause of action may not be based on this rule of procedure. See, e.g., Port Drum Co. v. Umphrey, 852 F.2d 148, 148-49 (5th Cir. 1988) ("Under [plaintiff's] unique and imaginative theory, injured third parties derive from Rule 11 a private cause of action to enforce an attorney's professional duties . . . . [W]e reject this novel legal argument."). As we have analogously observed, "[c]ourts have consistently refused to use ethical codes to define standards of civil liability for lawyers." Schatz v. Rosenberg, 943 F.2d 485, 492 (4th Cir. 1991), cert. denied sub. nom. Schatz v. Weinberg and Green, 503 U.S. 936 (1992).

Notwithstanding my lingering misgivings, for the reasons described in the panel opinion, I am content to remand the Baylor claim to the district court so that the above issues might have a proper airing.