IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CSX TRANSPORTATION, INC.,

      Plaintiff,

v.                                 Civil Action No. 5:05CV202
                                          (STAMP)

ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation,
ROBERT PEIRCE, JR., LOUIS A. RAIMOND,
MARK T. COULTER and RAY HARRON, M.D.,

      Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING PEIRCE FIRM DEFENDANTS' REQUEST FOR
ORDER PROHIBITING CSX FROM CONTACTING CLIENTS;
DENYING PEIRCE FIRM DEFENDANTS' REQUEST FOR
ORDER REQUIRING CSX TO PRODUCE LIST OF
CLIENTS WHOM CSX HAS CONTACTED;
DENYING PEIRCE FIRM DEFENDANTS' REQUEST FOR
ORDER GIVING PEIRCE FIRM ATTORNEY PERMISSION TO
REPRESENT PEIRCE FIRM CLIENTS DURING DEPOSITIONS;
DENYING AS MOOT CSX'S MOTION FOR EVIDENTIARY HEARING AND
DENYING AS MOOT PEIRCE FIRM DEFENDANTS' MOTION TO STRIKE**

I.  Background[1]

The plaintiff commenced the above-styled civil action by filing a complaint in this Court on December 22, 2005. The plaintiff later filed an amended complaint on July 5, 2007. On May 2, 2008, after this Court granted the defendants' motion to dismiss various portions of the amended complaint, the plaintiff sought

---

[1]For the purpose of resolving the pending client contact issue, this Court believes that the following abbreviated summary of this case is sufficient.

leave to file a second amended complaint.  This Court denied the plaintiff's motion for leave to file a second amended complaint on the grounds that such amendment would be futile and would unduly prejudice the defendants by extending discovery when it is not necessary.  Thereafter, the case continued forward to trial and judgment on the plaintiff's May/Jayne fraud allegations and to summary judgment for the defendants on the plaintiff's remaining claims.

Following the entry of this Court's judgment in favor of the defendants regarding the May/Jayne fraud, the plaintiff appealed to the United States Court of Appeals for the Fourth Circuit.  In its judgment of December 30, 2010, the Fourth Circuit upheld the jury's verdict as to the May/Jayne allegations but vacated the dismissal of Counts One through Four of the amended complaint, reversed the summary judgment as to what became known as the Baylor claims, and held that the plaintiff should have been permitted to file the second amended complaint.  On February 2, 2011, the Fourth Circuit issued a mandate compelling further proceedings consistent with its opinion.

Pursuant to this mandate, this Court held a status and scheduling conference on March 7, 2011.  At that conference, the parties discussed, among other things, the issue of whether CSX Transportation, Inc. ("CSX") should be permitted to contact clients on whose behalf the Peirce Firm has filed asbestos-related claims.

On March 8, 2011, this Court issued an order confirming its pronounced order at the hearing and setting a briefing schedule for the client contact issue.[2]  This Court further directed CSX not to contact any current or previous clients of the Peirce Firm until this issue is fully briefed and decided.

In accordance with the briefing schedule set by this Court, on April 6, 2011, defendants Robert N. Peirce, Jr., Louis A. Raimond, and Mark T. Coulter (the "Peirce Firm defendants") filed a brief seeking to have this Court prevent CSX from contacting clients on whose behalf the Peirce Firm has filed asbestos-related claims and to permit the Peirce Firm to represent these clients during their depositions.  CSX filed a response brief on May 6, 2011, to which the Peirce Firm defendants replied on May 23, 2011.  On May 27, 2011, CSX filed a motion for an evidentiary hearing on the client contact issue.  Subsequently, the Peirce Firm defendants filed both a response in opposition to the motion for an evidentiary hearing,

_____

[2]At the status and scheduling conference, this Court also ordered that discovery in this case be stayed pending the resolution of the defendants' petition for certiorari to the United States Supreme Court.  On October 3, 2011 and October 4, 2011, the parties informed this Court via facsimile letters that the United States Supreme Court denied the defendants' petition for certiorari.  Pursuant to the orders of this Court granting the plaintiff's motion for leave to file a third amended complaint and granting the defendants' motion for permission to file counterclaims, on October 19, 2011, both the third amended complaint and counterclaims were filed.  This Court entered an order lifting the stay on October 24, 2011.  On October 25, 2011, this Court entered an amended scheduling order that set forth new deadlines for the completion of discovery and the filing of dispositive motions, and as well established a new trial date.

as well as a motion to strike the motion for an evidentiary
hearing.  CSX later filed a consolidated response to the motion to
strike and reply in support of its motion for an evidentiary
hearing.  Finally, the Peirce Firm defendants filed a reply brief
in support of the motion to strike.  The client contact issue,
CSX's motion for an evidentiary hearing, and the Peirce Firm
defendants' motion to strike the motion for an evidentiary hearing
are all ripe for review and currently pending before this Court.
For the reasons set forth below, this Court denies the relief
requested by the Peirce Firm defendants in their brief to prevent
CSX from contacting their former clients, denies CSX's motion for
an evidentiary hearing, and denies the Peirce Firm defendants'
motion to strike the motion for an evidentiary hearing.

## II.  Applicable Law

Rule 4.2 of the West Virginia Rules of Professional Conduct
states:

> In representing a client, a lawyer shall not communicate
> about the subject of the representation with a party the
> lawyer knows to be represented by another lawyer in the
> matter, unless the lawyer has the consent of the other
> lawyer or is authorized by law to do so.

W. Va. Rules of Prof'l Conduct R. 4.2 (1989).  The substance of
this rule is identical to Rule 4.2 of the American Bar Association
("ABA") Model Rules of Professional Conduct ("Model Rules").  See
Model Rules of Prof'l Conduct R. 4.2 (1989).  The official comment
to Rule 4.2 provides, in pertinent part:

4

> This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation.  For example the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter . . . .  This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the <u>matter in question</u>.

W. Va. Rules of Prof'l Conduct R. 4.2 cmt. (1989) (emphasis added); <u>see also</u> ABA Comm. of Ethics & Prof'l Responsibility, Formal Op. 95-396, at 1 (1995) ("The bar against contacts with represented persons applies to all communications relating to the subject matter of the representation except those that fall within the narrow category of being 'authorized by law.'").

"The primary purpose of Rule 4.2 is to protect the attorney-client relationship by preventing one party's attorney from making <u>ex parte</u> contact with another party." <u>State ex rel. Charleston Area Med. Ctr. v. Zakaib</u>, 437 S.E.2d 759, 762 (W. Va. 1993).  The prohibition against lawyers communicating directly with an opposing party represented by counsel is based on a variety of rationales. <u>Polycast Tech. Corp. v. Uniroyal, Inc.</u>, 129 F.R.D. 621, 625 (S.D. N.Y. 1990).  First, it prevents attorneys from exploiting lay people who are unfamiliar with the law.  <u>Id.</u>  Second, it preserves the integrity of the attorney-client relationship.  <u>Id.</u>  Third, it helps prevent the inadvertent disclosure of privileged information. <u>Id.</u>  Fourth, it facilitates settlement by involving attorneys in the negotiation process.  <u>Id.</u>  In general, the "anti-contact" rule

is a "barrier against possible abuses by the opposing lawyer that may harm the client's interest or interfere with the lawyer-client relationship."   Roger C. Cramton, <u>State Ethics Rules and Federal Prosecutors: The Controversies Over the Anti-Contact and Subpoena Rules</u>, 53 U. Pitt. L. Rev. 291, 322 (1992).

### III.  <u>Discussion</u>

In their brief regarding the client contact issue, the Peirce Firm defendants present three main arguments: (1) CSX cannot contact any clients whom the Peirce Firm has represented in claims against CSX or third-party manufacturers, whether or not those clients currently have pending third-party claims; (2) the Peirce Firm has a right to know which clients CSX has contacted and has a right to receive CSX's notes from these client interviews; and (3) an attorney from the Peirce Firm may represent Peirce Firm clients if they are deposed by CSX.

In response, CSX argues: (1) because Rule 4.2 only applies to currently represented persons, CSX should be free to contact the Peirce Firm's former clients; (2) CSX should be free to contact individuals who are represented in third-party claims because those claims constitute different matters than the client's claim against CSX and CSX's claims against the Peirce Firm defendants in this case; and (3) the Peirce Firm should be prohibited from representing any of its current or former clients during depositions in this case.

6

In their reply, the Peirce Firm defendants contend that CSX has not established that the Peirce Firm does not have obligations under its attorney-client relationship with clients as to whom formal proceedings against CSX have concluded.  The Peirce Firm defendants further argue that the "matter" at issue for purposes of Rule 4.2 is all asbestos-related claims, except for workers' compensation claims.  The Peirce Firm defendants emphasize that the term "matter" is broadly defined and in this case, includes communication regarding a client's asbestos-related injury and claim and his relationship with the Peirce Firm.  According to the Peirce Firm defendants, these topics are off limits to CSX because they are related to the subject of the representation.  This Court will address each of these arguments in turn.

A.   Categories of Clients

Before delving into a discussion of the parties' arguments, this Court finds it necessary to first clarify the relationship between the Peirce Firm and the various clients at issue in these briefs.  The parties' briefs reference four "categories" of Peirce Firm clients: (1) clients with pending claims against CSX; (2) clients with pending third-party claims;[3] (3) former clients that the Peirce Firm represented in asbestos-related claims against CSX;

_____

[3]The Peirce Firm defendants describe these third-party claims as claims "against somebody other than the railroad.  It would be a manufacturer of asbestos products or the bankruptcy trust of manufacturers of asbestos products."  Hr'g Tr. 13:1-5, May 1, 2009.

and (4) former clients that the Peirce Firm represented in asbestos-related third-party claims.  CSX acknowledges that it cannot contact the first category of clients.  <u>See</u> Status and Scheduling Conference Tr. 22, Mar. 7, 2011.  Thus, this Court limits its focus to current Peirce firm clients with pending third-party claims and former Peirce Firm clients.

B.   <u>Defining the "Subject of the Representation"</u>

It is the Peirce Firm defendants' position that Rule 4.2 prohibits CSX from contacting all clients that the Peirce Firm has represented in claims against CSX or third-party manufacturers, whether or not those clients currently have pending third-party claims.  Citing to ABA Formal Opinion 95-396, the Peirce Firm defendants state that because the "matter to be discussed" is the client's asbestos-related injury and facts related thereto, and because the Peirce Firm represents the clients as to that subject matter, all communications by CSX related to that subject matter are prohibited.  ABA Comm. of Ethics & Prof'l Responsibility, Formal Op. 95-396, at 1 ("This prohibition applies to the conduct of lawyers in both civil and criminal matters, and covers any person known to be represented by a lawyer with respect to the matter to be discussed.").  Regardless of whether or not they are current matter clients or previous matter clients, the Peirce Firm defendants assert that CSX cannot ethically contact them regarding their asbestos-related injury.

8

CSX, however, argues that Rule 4.2 does not prohibit it from communicating with formerly represented persons because the Peirce Firm's representation of those persons has terminated. Specifically, CSX argues that the Peirce Firm's third-party retainer restricts the scope of its representation to claims or lawsuits against defendants or manufacturers of asbestos products that the client identifies in writing.  Thus, when the client's claims against CSX and all previously identified third-parties were resolved, the Peirce Firm's representation of the client ended. CSX further asserts that it should be free to communicate with persons who are represented by the Peirce Firm in third-party claims.  According to CSX, those third-party claims are separate and distinct from the client's claims against CSX and CSX's claims against the Peirce Firm defendants in this case.

After reviewing the briefs, this Court finds that the question of whether CSX can contact present and former Peirce Firm clients hinges upon the definition of the "subject of the representation." W. Va. Rules of Prof'l Conduct R. 4.2.  An analysis of the application of Rule 4.2 in the criminal context provides some insight as to whether it should prevent CSX from contacting certain clients in this case.  In <u>United States v. Moss</u>, the court held that the Florida "no contact" rule did not bar the Federal Bureau of Investigation from communicating with other inmates concerning crimes wholly unrelated to the crimes with which they had been

charged and for which they had secured legal counsel. <u>United States v. Moss</u>, No. 10-60264-CR-COHN, 2011 WL 2669159, at *7 (S.D. Fla. Mar. 21, 2011). The <u>Moss</u> court stated, "[i]f a person is represented by counsel on a particular matter, that representation does not bar communications on other, unrelated matters." <u>Id.</u> In <u>People v. Santiago</u>, the court similarly held that Rule 4.2 did not prohibit prosecutors from communicating with the defendant, who had been arrested for child endangerment, even though the attorney appointed to represent the defendant in a separate child protection case was not present during these interviews. <u>People v. Santiago</u>, 925 N.E.2d 1122, 1129 (Ill. 2010). The <u>Santiago</u> court notes that "because the drafters of Rule 4.2 did not include the words 'subject matter' or 'same or substantially related' matter in the rule, we presume that the omission was deliberate." <u>Id.</u> at 1130.

Many courts have also discussed the application of Rule 4.2 as it pertains to <u>ex parte</u> contact with unrepresented former employees. In <u>Polycast</u>, the court held that attorneys for the opposing party were not barred from having <u>ex parte</u> communications with the former employee of the corporate litigant. <u>Polycast</u>, 129 F.R.D. at 628; <u>see also</u> <u>Breedlove v. Tele-Trip Co., Inc.</u>, No. 91 C 5702, 1992 WL 202147, at *1 (N.D. Ill. Aug. 14, 1992) ("Former employees . . . cannot be construed as parties or agents of a corporate party and, thus, are not within the scope of [Rule 4.2]."); <u>Lang v. County of Maricopa</u>, 826 P.2d 1228, 1233 (Ariz.

1992) (holding that Rule 4.2 does not bar counsel from having <u>ex parte</u> contacts with a former employee of an opposing party where the former employer is represented by counsel unless the acts or omissions of the former employee gave rise to the underlying litigation or the former employee has an ongoing relationship with the former employer in connection with the litigation).   As the <u>Breedlove</u> court stated, Rule 4.2 "is not intended to prevent a party from discovering potentially prejudicial facts; rather, it is intended to protect the attorney-client relationship of counsel with a corporate client."   <u>Breedlove</u>, 1992 WL 202147, at *1.

According to Rule 4.2, "the matter" to which the later part of the rule refers is the matter in which the communicating lawyer is "representing the client."   <u>See</u> <u>Santiago</u>, 925 N.E.2d at 1129 ("[T]he phrases 'the subject of the representation' and 'that matter' refer back to the phrase '[d]uring the course of representing a client.'").   Thus, Rule 4.2 only applies when the person with whom the lawyer seeks to communicate is represented in the same matter as the matter in which the communicating lawyer is representing his client.   In this case the subject of the representation is CSX's allegations of fraud against the Peirce Firm defendants.   The third amended complaint sets forth a claim that the Peirce Firm orchestrated a scheme to inundate CSX and other entities with thousands of asbestos cases without regard to their merit, in violation of the federal Racketeer Influenced and

11

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. Third Am. Compl. ¶ 1-3.  In the third amended complaint, the plaintiff also argues that the Peirce Firm defendants' conduct supports claims for common law fraud and conspiracy. Id. at ¶ 3. These fraud, conspiracy, and RICO claims are separate and distinct matters from the Peirce Firm's representation of a client in a third-party asbestos claim, and they are separate and distinct from a client's Federal Employees Liability Act ("FELA") claim against CSX.  While this Court acknowledges that the clients' claims against CSX and/or third-party manufacturers and this action brought by CSX against the Peirce Firm defendants are similar in the sense that they may involve the subject of a client's asbestos-related injury claim, they are different matters within the meaning of Rule 4.2.  Matter of Mims v. Chichester, 281 A.D.2d 256, 257 (N.Y. App. 2001).

     With regard to those Peirce Firm clients who have pending third-party claims, it is clear that there is a difference between the Peirce Firm's involvement in its clients' asbestos-related cases and the Peirce Firm's involvement in this fraud case.  In the asbestos-related cases, the "matter to be discussed" was the client's asbestos-related injury.  In the current case, the "matter to be discussed" is the alleged fraud.  ABA Comm. of Ethics & Prof'l Responsibility, Formal Op. 95-396, at 1.  Significantly, the Power of Attorney Agreement executed by the Peirce Firm's asbestos

12

clients does not establish an attorney-client relationship that continues indefinitely with regard to all asbestos-related matters in general.    Instead, the Power of Attorney Agreement only authorizes the Peirce Firm to represent the client "in a claim for damages against asbestos manufacturers, suppliers, or any person, firm or corporation liable resulting from my exposure to asbestos products." Defs.' Br. Ex. 1.   Moreover, the Power of Attorney Agreement provides that the Peirce Firm is authorized to file a claim or lawsuit "only against defendants and manufacturers of asbestos products that I identify to my attorneys in writing as products that I was exposed to." Id. Significantly, at the October 24, 2011 status and scheduling conference, counsel for the Peirce Firm defendants was unable to state whether any of the "currently pending matter clients" named in the third amended complaint have current third-party claims or claims awaiting assertion that have been identified in writing pursuant to the Power of Attorney Agreement.   Hr'g Tr. 15:7-25; 16:1-22, Oct. 24, 2011.   For these reasons, the Peirce Firm defendants cannot now argue that the Power of Attorney Agreement covers claims of fraud by CSX against the Peirce Firm defendants.

This Court agrees with the Peirce Firm defendants that the term "matter" in Rule 4.2 is not meant to be case-specific.   "The use of the words 'subject' and 'matter,' rather than 'lawsuit,' indicates that [Rule 4.2] applies to all transactions for which

13

lawyers are hired and cannot be construed to imply that its application is limited to cases where suit is filed." Iowa Supreme Court Attorney Disciplinary Board v. Box, 715 N.W.2d 758, 763 (Iowa 2006). Although Rule 4.2 is broad enough to encompass a variety of transactions, it is not so broad as to prevent communication regarding all subjects that may happen to share the same underlying facts as the "matter."

Turning to former clients of the Peirce Firm, this Court finds that CSX is free to communicate with clients whose relationship with the Peirce Firm has terminated. See Restatement (Third) of the Law Governing Lawyers § 31(2) (2000) ("[A] lawyer's actual authority to represent a client ends when . . . the client discharges the lawyer [or] the representation ends as provided for by contract or because the lawyer has completed the contemplated services."). Rule 4.2, which references a party known to be represented by a lawyer, cannot be construed to bar communications with a person who is no longer represented by counsel because his claims have been resolved. In this case, the Peirce Firm defendants acknowledge that certain "Previous Matter Clients" do not have current claims or claims awaiting assertion. Defs.' Br. at 1. Thus, because there is no ongoing representation of these clients by the Peirce Firm, the Peirce Firm does not maintain an attorney-client relationship with these clients. As explained above, Rule 4.2 is intended to prevent interference with the

14

attorney-client relationship.    If representation has been terminated, however, Rule 4.2 is inapplicable.  ABA Comm. of Ethics & Prof'l Responsibility, Formal Op. 95-396, at 8-9 ("In the event that such a termination has occurred, the communicating lawyer is free to communicate with, and to respond to communications from, the former represented person.  The communicating lawyer's conduct would then be governed by Rule 4.3, Communications with Unrepresented Persons.").  While this Court agrees that the Peirce Firm defendants owe certain duties to their former clients, the Peirce Firm cannot require CSX to obtain its consent prior to contacting former clients whose representation by the Peirce Firm has terminated.

The Peirce Firm defendants also argue that even if a client does not have a presently pending claim, the Peirce Firm continues to have an attorney-client relationship with the client as to asbestos-related claims because additional claims may be brought in the future.  However, this Court finds that speculation as to claims that may be filed in the future is insufficient to justify the application of Rule 4.2.  Even if additional asbestos-related claims are filed, these claims would be separate matters from the matter that CSX seeks to discuss in this case, namely, the alleged fraud of the Peirce Firm.  The Peirce Firm defendants cannot properly claim to represent every former client as to every action that could possibly be filed.

C.   <u>Clients Already Contacted by CSX</u>

In their brief, the Peirce Firm defendants argue that they have a right to know which clients CSX has contacted and to receive CSX's notes from these client interviews.  According to the Peirce Firm defendants, any communication by CSX with currently pending matter clients or previous matter clients is a violation of Rule 4.2.  Because this Court finds that Rule 4.2 does not bar CSX from communicating with certain Peirce Firm clients regarding CSX's allegations against the Peirce Firm defendants in this case, the Peirce Firm defendants' request must be denied.  This Court has not been asked to decide whether these names and notes are discoverable, or whether they constitute privileged work product. Thus, this Court makes no ruling as to the discoverability of these names and notes.

D.   <u>Representation of Peirce Firm Clients at a Deposition</u>

The Peirce Firm defendants also seek an order from this Court permitting an attorney from the Peirce Firm who is not listed as a defendant in this action to represent the firm's clients in any deposition properly noticed and taken by CSX in this litigation. In support of this request, the Peirce Firm defendants argue that no conflict of interest exists between Mr. Peirce and the Peirce Firm clients.  The Peirce Firm defendants further argue that no purported conflict of interest of Mr. Peirce can be imputed to the other attorneys in the Peirce Firm.  Therefore, another attorney

16

you from the Peirce Firm may represent Peirce Firm clients if they are deposed in this case.

In response, CSX contends that the Peirce Firm should be prohibited from representing any of its current or former clients in this case.  Citing to Rule 1.7(b) and Rule 1.10(a) of the West Virginia Rules of Professional Conduct, CSX argues that a clear conflict of interest exists in this case between Mr. Peirce and his former clients and that this conflict is imputed to the entire Peirce Firm.

Rule 1.7(b) of the West Virginia Rules of Professional Conduct states, in pertinent part:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>      (1) the lawyer reasonably believes the representation will not be adversely affected; and
>      (2) the client consents after consultation.

W. Va. Rules of Prof'l Conduct R. 1.7(b).  Rule 1.10(a) provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when anyone of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2." W. Va. Rules of Prof'l Conduct R. 1.10.  In this case, the Peirce Firm defendants' primary goal is to defend against allegations of racketeering, fraud, and conspiracy.  This goal is inconsistent with the desire to protect their clients' interests in the asbestos-related claims.  Thus, at least a risk exists that the

17

Peirce Firm defendants may use the representation of their clients to protect their personal interests, in violation of Rule 1.7(b).

This Court agrees that Mr. Peirce's personal interests as a defendant in this case could conflict with the best interests of his former clients.  Mr. Peirce has a personal interest in defending any allegation of impropriety that occurred during the course of his representation of his former clients, while his former clients have an interest in appropriately testifying regarding all of the details of the pursuit of their asbestos claims.  Therefore, this Court believes that with regard to the subject issue, a conflict of interest exists between Mr. Peirce and the former clients of the Peirce Firm.

It is for these same reasons that Mr. Peirce's former clients cannot be represented in this matter by another member of the Peirce Firm.  Rule 1.10(a) creates a presumption that the conflict of interest between Mr. Peirce and his former clients is imputed to all other attorneys in the Peirce Firm.  This conflict is non-waivable, and therefore, the entire Peirce Firm is disqualified on the basis of the imputed conflict.  <u>See</u> W. Va. Rules of Prof'l Conduct R. 1.10(d) ("A disqualification prescribed by [Rule 1.10] may be waived by the affected client under the conditions stated in Rule 1.7.").

E.   <u>Motion for Evidentiary Hearing and Motion to Strike</u>

Because this opinion resolves the client contact issue raised in the parties' briefs, this Court finds that there is no need for an evidentiary hearing.  Therefore, CSX's motion for an evidentiary hearing and Peirce Firm defendants' motion to strike can be denied as moot.

## IV.   <u>Conclusion</u>

For the reasons set forth above, the Peirce Firm defendants' request for an order prohibiting CSX from contacting clients is DENIED.[4]  However, CSX shall not contact persons who are currently represented by the Peirce Firm in asbestos-related claims against CSX or persons represented by counsel in this case.  Additionally, the Peirce Firm defendants' request for an order requiring CSX to produce a list of clients whom CSX has contacted is DENIED; the Peirce Firm defendants' request for an order giving a Peirce Firm attorney permission to represent Peirce Firm clients during depositions is DENIED; CSX's motion for an evidentiary hearing (ECF No. 836) is DENIED AS MOOT; and the Peirce Firm defendants' motion to strike (ECF No. 838) is DENIED AS MOOT.

IT IS SO ORDERED.

---

[4]This Court assumes that should CSX contact Peirce Firm clients with pending third-party claims or former Peirce Firm clients, it will be clear that the communication relates to the present case and the claims asserted in the third amended complaint.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    November 9, 2011

                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE