**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT WHEELING**

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:05-cv-202 |
| | ) | |
| v. | ) | Assigned to: |
| | ) | The Hon. Frederick P. Stamp |
| ROBERT N. PEIRCE, JR., | ) | |
| LOUIS A. RAIMOND; | ) | |
| MARK T. COULTER; | ) | |
| and RAY HARRON, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MARK T. COULTER'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

Walter P. DeForest (WVSB #7388)
David J. Berardinelli (WVSB #10479)
DEFOREST KOSCELNIK YOKITIS
SKINNER & BERARDINELLI
3000 Koppers Building
Pittsburgh, PA l5219
(412) 227-3100

Attorneys for Defendant
Mark T. Coulter

# Table of Contents

Table of Authorities ................................................................................................ ii

I.  Introduction ....................................................................................................... 1

II.  Legal standard .................................................................................................. 4

III.  Argument ......................................................................................................... 5

   A.   CSX's common law claims (Counts III and IV) must be dismissed because CSX has not pled and cannot plead reliance on any allegedly false representation by Mr. Coulter ............... 5

   B.   Counts I and II should be dismissed because filing of pleadings and related letters cannot be predicate acts of mail or wire fraud that can support RICO claims ........................................ 7

   C.   Counts I through IV should be dismissed because CSX fails to plead its claims with particularity under Rule 9(b) and has failed to state a claim under Rule 12(b)(6) .................. 10

      1. CSX's extensive use of "group pleading" requires dismissal ........................................... 10

      2. Counts I and II should be dismissed because CSX fails to properly plead that Mr. Coulter committed at least two predicate acts that proximately caused injury ................................. 12

   D.   CSX's civil RICO counts must be dismissed because of the lack of a properly pled proximate causal nexus ........................................................................................................ 13

   E.   According to the Complaint, 99.8% of the claims filed by the Peirce Firm have not been alleged as fraudulent, precluding a finding of a pattern of racketeering activity based on the 0.2% of remaining claims ........................................................................................................ 18

      1. CSX's allegations fail to establish relatedness ................................................................ 20

      2. CSX's allegations fail to establish continuity ................................................................. 21

   F.   The civil RICO counts must be dismissed as void for vagueness ...................................... 24

**Table of Authorities**

<u>Cases</u>

*Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)..............................................20, 23, 24

*Allen v. Devine*, 726 F. Supp. 2d 240, 250 (E.D.N.Y. 2010) ..............................................20

*Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th
    Cir. 1998)..............................................................................................................20, 24

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)..............................................14

*Apace Commc'ns v. Burke*, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007) ..............................................11

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)..........................................................4, 10, 11, 22

*Auburn Med. Ctr., Inc. v. Andrus*, 9 F. Supp. 2d 1291, 1298-99 (M.D. Ala. 1998)......................9

*Auto Collection Inc. v. Pinkow*, 33 Misc. 3d 1206(A), 2011 WL 4821628, at *5 (N.Y. Sup. Ct.
    Oct. 7, 2011) ..............................................................................................................9

*Beck v. Prupis*, 529 U.S. 494, 505 (2000) ..............................................................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)..............................................4

*Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988) .............................................. passim

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 2144 (2008) .................14

*Capasso v. CIGNA Insur. Co.*, 765 F. Supp. 839, 843 n. 2 (S.D.N.Y. 1991)................................8

*Chisolm v. Transouth Fin.*, 95 F.3d 331, 338 (4th Cir. 1996) .............................................. passim

*D'Addario v. Geller*, 264 F. Supp. 2d 367, 396 (E.D. Va. 2003)....................................................5

*Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000)........................................9

*Dungan v. Academy at Ivy Ridge*, 2008 WL 2827713, at *3 (N.D.N.Y. Jul. 21, 2008) *aff'd* 344
    Fed. App'x. 645 (2d Cir. 2009) ..............................................................................14

*Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 376-77 (D.D.C. 2008)............................................20

*Eng v. Cooley*, 552 F.3d 1062, 1069-70 (9th Cir. 2009) ..............................................25

*FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954)..............................................24

*Feinstein v. Resolution Tr. Corp.*, 942 F.2d 34, 46 (1st Cir. 1991) .......................................10, 20

*Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008), *aff'd*, 328 F. App'x 873 (4th Cir. 2009) ...........................................................................................................................3

*Firestone v. Galbreath*, 747 F.Supp 1556, 1581 (S.D. Ohio 1990) *aff'd in part*, 976 F.2d 279 (6th Cir. 1992) ...........................................................................................................................25

*Fleet Credit Corp. v. Sion*, 893 F.2d 441, 447 (1st Cir. 1990) ...............................................21, 22

*Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) ......................10, 15, 22, 23

*Forty-Eight Insulations, Inc. v. Black*, 63 B.R. 415 (N.D. Ill. 1986) ...............................................9

*Foster v. Wintergreen Real Estate Co.*, 363 F. App'x. 269, 274 (4th Cir. 2010) ........................24

*G&G TIC, LLC v. Alabama Controls, Inc.*, 2008 WL 4457876, at * 4 (M.D. Ga. Sept. 29, 2008), *aff'd* 324 Fed. App'x. 795 (11th Cir. 2009) .............................................................................14

*GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 550-51 (4th Cir. 2001) ...........22

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 236 (1989) .................................................19, 20, 25

*Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) ......................................................11

*Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010) ...................................13, 14, 16, 17

*HMK Corp. v. Walsey*, 828 F.2d 1071, 1074, 1077 (4th Cir. 1987) ...............................19, 20, 24

*I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267-68 (8th Cir. 1984) ....................................8

*Int'l Data Bank v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987) .........................................19, 20, 24

*Ippolito v. State of Florida*, 824 F. Supp. 1562, 1575 (M.D. Fla. 1993) ........................................8

*Kenty v. Bank One, Columbus, N.A.*, No. C2-90-709, 1992 WL 170605, at *9 (S.D. Ohio Apr. 23, 1992) ...........................................................................................................................25

*Limestone Dev. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) ....................................4

*Manax v. McNamara*, 660 F. Supp. 657, 660-61 (W.D. Tex. 1987) ..............................................8

*McDonald v. Schencker*, 18 F.3d 491, 493 (7th Cir. 1994) ...........................................................8

*Meier v. Musburger*, 588 F. Supp. 2d 883, 900 (N.D. Ill 2008) ..................................................19

*Menasco v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) .................................................. passim

*Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992)............................15, 18

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) .........................................11

*Morin v. Trupin*, 711 F. Supp. 97, 105 (S.D.N.Y. 1989)...........................................................9

*Myers v. Finkle*, 758 F. Supp. 1102, 1113 (E.D. Va. 1990) *aff'd in relevant part, rev'd in part*, 950 F.2d 165 (4th Cir. 1991) ...............................................................................................23

*Norstar Bank v. Pepitone*, 742 F. Supp 1209, 1213 (E.D.N.Y. 1990) ........................................25

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997)............12

*Parr v. U.S.*, 363 U.S. 370, 391(1960) ...................................................................................14

*Paul S. Mullin & Assoc., Inc. v. Bassett*, 632 F. Supp. 532, 540 (D. Del. 1986) ..........................9

*Roney v. Gencorp*, 431 F. Supp. 2d 622, 638 (S.D.W.Va. 2006)...................................................3

*Rotella v. Wood*, 528 U.S. 549, 556 (2000)................................................................................18

*Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985).......................................................5, 18, 25

*Spiegel v. Continental Illinois Nat'l Bank*, 609 F. Supp. 1083, 1089 (N.D. Ill. 1985), *aff'd*, 790 F.2d 638 (7th Cir. 1986) ....................................................................................................9

*Stafford v. Radford Comm. Hosp.*, 908 F. Supp. 1369, 1375 (W.D. Va. 1995), *aff'd* 120 F.3d 262 (4th Cir. 1997) .................................................................................................................7

*Terra Firma Co. v. Morgan*, 674 S.E.2d 190, 195 (W. Va. 2008) ............................................5, 6

*U.S. Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) .....................1, 21

*U.S. v. Brickey*, 296 F.Supp. 742, 747-49 (E.D. Ark. 1969) ......................................................14

*U.S. v. Harriss*, 347 U.S. 612, 617 (1954).................................................................................24

*U.S. v. Hewes*, 729 F.2d 1302, 1322 (11th Cir. 1984) ...............................................................14

*U.S. v. Staszcuk*, 502 F.2d 875, 880-881 (7th Cir. 1974) ...........................................................14

*U.S. v. Tarnopol*, 561 F.2d 466, 471-73 (3d Cir. 1977) *abrogated on other grounds,* 502 U.S. 46 (1991)..............................................................................................................................14

*Vicom, Inc. v. Harbridge Merch. Serv., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)...........................11

*von Bulow by Auersperg v. von Bulow*, 657 F. Supp. 1134, 1144-45 (S.D.N.Y. 1987).................8

*Walsh v. Mitchell*, 427 F. App'x. 282 (4th Cir. 2011).....................................................24

*Wilson v. Toussie*, 260 F. Supp. 2d 530, 537 (E.D.N.Y. 2003).......................................11

*Woodrow v. Vericrest Fin.*, 2009 WL 4348594, at *3 (D. Md. Nov. 30, 2009)...........................7

## Statutes

18 U.S.C. § 1341 .......................................................................................8, 14

18 U.S.C. § 1343 .............................................................................................8

18 U.S.C. § 1961(1)..........................................................................................8

18 U.S.C. § 1961(5) ........................................................................................19

18 U.S.C. § 1962 .........................................................................................1, 13

18 U.S.C. § 1962(a) .......................................................................................19

18 U.S.C. § 1962(c) .......................................................................................15

18 U.S.C. § 1964(c) ...........................................................................13, 14, 16, 19

## Other Authorities

Fed. R. Civ. P. 9.....................................................................................1, 3, 10, 11

Fed. R. Civ. P. 12(b)(6) .............................................................................1, 11, 23

## I.  Introduction

The Third Amended Complaint (doc. no. 853) ("Complaint") sues Mr. Coulter and two other lawyers as individuals and a doctor for alleged racketeering and common law fraud related to civil litigation in which CSX was the defendant. The Peirce Firm is not a defendant. Specifically, CSX founds its claims against Mr. Coulter on eleven purportedly fraudulent asbestosis claims filed by the Peirce Firm. Compl. ¶¶147, 152, 156, 165, 172. Yet, CSX fails to properly plead sufficient allegations supporting how Mr. Coulter individually participated in the alleged racketeering and fraud, and also fails to plead the requisite causal nexus between the eleven claims and CSX's claimed injury. Instead of individualized, specific pleading about Mr. Coulter, CSX resorts to improper group pleading—almost exclusively referring to the defendants as the "lawyer Defendants"—in contravention of Rules 9 and 12(b)(6).

The seven FELA court complaints listed in the Complaint contained more than 5,300 asbestos-related claims. *See id.* ¶89. CSX alleges that only eleven claims for asbestosis were fraudulent. *Id.* ¶¶147, 152, 156, 165, 172. Based on these eleven asbestosis claims, which leaves unchallenged **99.8%** of the total claims filed, CSX alleges that **each individual** defendant should be **personally** liable for fraud and conducting the firm's affairs through "a pattern of racketeering activity," 18 U.S.C. § 1962, and seeks attorneys' fees, treble damages and punitive damages. On this motion, the central issue is whether Mr. Coulter, as an individual, may be forced into extensive discovery and subjected to the risk of ruinous damages under a federal statute that was, in the Fourth Circuit's words, "primarily designed to provide society with a powerful response to the dangers of organized crime," based on allegations that only a tiny fraction of the asbestosis claims—about 0.2%—brought against CSX were fraudulent. *U.S. Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010). Also critical is whether Mr. Coulter may be

subjected to such despite the total absence of proper **specific** factual allegations that Mr. Coulter, as an individual, **personally** knew that any of the eleven claims was fraudulent.

CSX's Complaint should be dismissed for five main reasons. First, based on the face of the Complaint, there is no causal nexus between the filing of the eleven allegedly fraudulent asbestosis claims at issue and any alleged injury to CSX. The lack of such a nexus precludes CSX's RICO claims and prohibits a showing of detrimental reliance which is a necessary element of CSX's common law fraud claims. The eleven suits at issue were part of larger lawsuits with hundreds, if not thousands, of plaintiffs. Compl. ¶¶90-91, 93-94, 105-06, 112-13, 125-26, 129-30, 134-35. CSX did not settle **any** of these eleven allegedly fraudulent claims for asbestosis.[1] *Id.* ¶147. Nor did CSX substantively defend **any** of the eleven claims at issue. Ten of the eleven claims were dismissed on procedural motions attacking the larger FELA actions, which motions obviously would have occurred regardless of whether the eleven allegedly fraudulent claims had been included in the larger lawsuits. *Id.* ¶¶128, 132, 137, 142. There is no allegation otherwise. The remaining case was settled as a cancer case, not an asbestosis case. Thus, CSX has failed to and cannot plead the requisite causal nexus for its RICO claims or reliance for its fraud claims.

Second, in addition to its inability to plead RICO causation and detrimental reliance, CSX has failed to plead any proper RICO predicate acts. As numerous courts have held, filing a lawsuit or sending an innocuous, routine litigation-related letter cannot, as a matter of law, serve as a

---

[1] The claims of Miledge Hill, James Peterson, A. Lewis Schabow, Aubrey Shelton, Donald Wiley, Earl Baylor, Archie Wilkins, Nelson Andrews, Hubert Harrison, and Herman Lincoln were not settled by CSX and were dismissed as part of procedural motions applicable to the larger FELA cases as a whole, not specific arguments about these individuals. Compl. ¶147. The case of Morris Collier was settled for $25,000, not based on asbestosis, but because of bladder cancer. Compl. Ex. KKK. Moreover, three of the seven FELA complaints and five of the eleven allegedly fraudulent claims (Wilkins, Baylor, Andrews, Harrison and Lincoln) were filed after Judge Jack's June 30, 2005 opinion that is highlighted by CSX in the Complaint. Compl. ¶¶62, 125, 129, 134, 147. Based on its own allegations, after this opinion, CSX could not have reasonably relied on a claim involving a B-read from Dr. Harron.

predicate act for civil RICO. Yet, such conduct is all CSX pleads as its purported RICO predicates. Compl. ¶¶158-60. Moreover, CSX's attempt to rely on a routine communications with court and counsel (none of which are allegedly fraudulent in themselves) cannot suffice since CSX has not properly alleged *a causal nexus between its injuries and the purported predicate acts related to those communications*, which causal nexus is necessary to state a RICO claim.

Third, even if litigation activity were a sufficient predicate act for civil RICO and a causal nexus existed, Counts I through IV still must be dismissed because CSX has failed to plead with the specificity needed to state RICO and fraud claims. Instead of alleging purported fraudulent conduct by Mr. Coulter, CSX has engaged in improper blanket allegations, repeatedly and improperly attributing purported conduct to the "lawyer Defendants" collectively. This group pleading is both improper under Rule 9 and legally inadequate under RICO and the common law. Additionally, given its improper use of group pleading, the complaint fails to properly allege that Mr. Coulter *personally* committed the minimum two predicate acts required by RICO.[2] Such individualized pleading of the commission of at least two predicate acts by *each* defendant is not only required by Rule 9 but, as a matter of law, is a prerequisite to stating a RICO claim.[3]

Fourth, Counts I and II should be dismissed because the Complaint fails to make proper allegations of a *pattern* of racketeering activity—i.e., sufficient acts of racketeering activity within a ten-year period that were *related* and amounted to or posed a threat of *continued* criminal activity. CSX's attempt to take more than 5,300 claims brought by the Peirce Firm over

---

[2]  CSX has failed to do so despite having deposed the lawyer defendants and taken voluminous discovery.
[3]  Because CSX cannot adequately allege a substantive RICO violation, CSX necessarily cannot allege a conspiracy to commit such a violation and dismissal of Count II must follow dismissal of Count I. *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008), *aff'd*, 328 F. App'x 873 (4th Cir. 2009). The same result applies to CSX's common law fraud and conspiracy counts. Count V, punitive damages, must also be dismissed because a claim for punitive damages is not a separate cause of action under West Virginia law. *See Roney v. Gencorp*, 431 F. Supp. 2d 622, 638 (S.D.W.Va. 2006).

an eight-year period, 99.8% of which are unchallenged by CSX as fraudulent, and allege that this constitutes a pattern of racketeering activity would result in a drastic, improper expansion of civil RICO liability well beyond the scope approved by the Supreme Court and the Fourth Circuit.

Fifth, Counts I and II should be dismissed because civil RICO's pattern requirement, as applied to this case and Mr. Coulter, is unconstitutionally vague in light of the chilling effect that follows from imposing liability on constitutionally protected activities like seeking redress of injuries via a civil lawsuit. CSX's civil RICO action offends this fundamental constitutional principle and should be dismissed for this reason as well.

CSX's allegations here amount to an improper attempt to leverage what is, at most, a (meritless) action for abuse of process into sweeping, unsupported claims under civil RICO and common law fraud. Even allowing such a suit to progress into discovery would be a victory for CSX because of its improper "in terrorem" effect: "RICO cases, like antitrust cases, are 'big' cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim." *Limestone Dev. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

## II.  Legal standard

"To survive a motion to dismiss, a complaint must contain sufficient ***factual*** matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Merely regurgitating the applicable legal standard or statutory language is insufficient. *Id.* A pleading may not simply offer "labels and conclusions." *Twombly*, 550 U.S. at 555.[4]

To establish a RICO violation, a plaintiff must show, with respect to ***each*** individual defendant, "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

---

[4]  The Supreme Court's decisions in *Twombly* and *Iqbal,* which altered the landscape for what pleading requirements are necessary to survive a motion to dismiss, were handed down after completion of the motion to dismiss briefing directed at CSX's original Amended Complaint filed in July 2007.

*Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). "Plaintiff must additionally show that (5) he was injured in his business or property (6) by reason of the RICO violations. ***The injury and causation components are viewed as standing requirements***." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 396 (E.D. Va. 2003) (emphasis added).

Similarly, to state a fraud claim, a plaintiff must plead, *inter alia*, that the complained of representation by the defendant was false and material and that the plaintiff reasonably relied upon the defendant's representation and suffered injury/damages due to its reliance. *E.g.*, *Terra Firma Co. v. Morgan*, 674 S.E.2d 190, 195 (W. Va. 2008) (stating elements of fraud).

### III.  Argument

**A.  CSX's common law claims (Counts III and IV) must be dismissed because CSX has not pled and cannot plead reliance on any allegedly false representation by Mr. Coulter**

CSX's common law claims against Mr. Coulter are founded on eleven purportedly fraudulent asbestosis claims filed by the Peirce Firm (out of over 5,300 total claims in the relevant FELA complaints). Compl. ¶¶144-47, 174. These eleven claims are found in seven different FELA complaints filed between 2003 and 2008.[5] ***Ten of the eleven claims at issue were never settled by CSX***. Compl. ¶147. These ten claims were dismissed on procedural grounds based on motions that applied to the respective FELA complaints *in toto* (which contained hundreds if not thousands of claims), several of which dismissals were consented to by the Peirce Firm. Compl. ¶¶128, 132, 137, 142, 147; Ex. HHH. These allegedly fraudulent asbestosis claims were not separately litigated. Rather, they were addressed in CSX's blanket motions in state court that would have been filed regardless of whether the eleven allegedly fraudulent claims were part of the suits. *Id.* The remaining claim (of Morris Collier) was settled as a cancer case, not an asbestosis case. Compl. Ex. KKK. CSX has not properly pled, and cannot properly plead, that it

---

[5]  Mr. Coulter left the Peirce Firm in May 2005. *See* Doc. Nos. 529, 530.

expended monies in defense of the eleven allegedly fraudulent asbestosis claims that it would not have otherwise spent in litigating the overarching motions against the larger FELA complaints. Thus, Counts III and IV must be dismissed for failure to establish the requisite reliance.

To establish a common law claim for fraud (or conspiracy based on fraud), CSX must properly plead that it reasonably relied on a fraudulent misrepresentation by Mr. Coulter. *E.g.*, *Terra Firma*, 674 S.E.2d at 195. CSX has not and cannot do so. As to ten of the eleven claims at issue, the claims were dismissed on grounds attacking the larger FELA complaints as a whole. Again, on the face of the Complaint, the procedural issues applicable to the larger cases—not any allegedly fraudulent representation related to these eleven individual claimants, let alone one made by Mr. Coulter—is what caused CSX to spend legal resources and file the motions that resulted in dismissal. Thus, CSX has not pled and cannot plead detrimental reliance.

As to the eleventh claim at issue, Morris Collier's, CSX, likewise, has not pled and cannot plead the requisite detrimental reliance. CSX's entire case is premised on the alleged filing of fraudulent **asbestosis** cases. Compl. ¶144. But, CSX settled a cancer case with Mr. Collier for $25,000. *See* Compl. Ex. KKK. Again, as a matter of law and based on CSX's own allegations, there is no reliance on any allegedly fraudulent asbestosis claim.[6]

Simply, in incurring its litigation expenses in litigating venue motions applicable to the FELA complaints as a whole (Compl. ¶¶128, 132) and overarching motions to dismiss (Compl. ¶¶141, 142) and in settling Mr. Collier's cancer case (Compl. Ex. KKK), CSX did not rely on any of the eleven allegedly fraudulent asbestosis claims. Similarly, based on its own allegations, CSX could not have reasonably relied on any allegedly fraudulent claim supported by a Dr. Harron B-read

---

[6] Even if Mr. Collier had not had a cancer claim that was settled, Mr. Collier's claim and CSX's settlement of it still would have no impact on CSX's common law claims predicated on the other ten allegedly fraudulent asbestosis claims, none of which were settled and for which CSX has not pled and cannot plead detrimental reliance. Accordingly, CSX's claims in Counts III and IV predicated on these ten claims must be dismissed independent of any claim by CSX related to Mr. Collier's claim.

after Judge Jack's opinion; yet, five of the claims at issue were filed after this opinion. Having failed to properly plead reliance, CSX has not stated and cannot state a claim for fraud and Counts III and IV should be dismissed. *Stafford v. Radford Comm. Hosp.*, 908 F. Supp. 1369, 1375 (W.D. Va. 1995) (fraud claim dismissed since damages were not the result of reliance on fraudulent representation), *aff'd* 120 F.3d 262 (4th Cir. 1997) (table); *Woodrow v. Vericrest Fin.*, 2009 WL 4348594, at *3 (D. Md. Nov. 30, 2009) (dismissing fraud claim because reliance on misrepresentation not pled with specificity); *see also Chisolm v. Transouth Fin.*, 95 F.3d 331, 338 (4th Cir. 1996) (dismissal of RICO claim for failure to allege reliance).

## B. Counts I and II should be dismissed because filing of pleadings and related letters cannot be predicate acts of mail or wire fraud that can support RICO claims

While the Complaint is chock-full of extraneous, salacious allegations unrelated to the eleven allegedly fraudulent asbestosis claims at issue, when required to plead its purported RICO predicate acts, CSX's Complaint is limited and relates only to court filings and related letters. *See* Compl. ¶¶158-60. As a matter of law, these mailings cannot support CSX's RICO claims.

The alleged use of the mails/wires that CSX pleads as RICO predicates fall into two categories: first, the claimed filing and service of ten pleadings, including a petition for certiorari filed with the U.S. Supreme Court, seven FELA complaints, and two motions; and second, the sending of seven routine, innocuous litigation-related letters, six letters sent either to the court or to CSX's counsel involving routine matters like sending a courtesy copy of a document and one letter related to expert opinions exchanged between a lawyer who is not a defendant here and Dr. Harron. Mr. Coulter is merely alleged to have been the counsel who filed four of the FELA complaints. The key allegation is Paragraph 160, which states:

> Each of the acts described or referred to in Paragraphs 90 [filing of *R. Abbott* complaint], 94 [filing of *C. Abbott* complaint], 105 [filing of *Amos* complaint], 112 [filing of *Abel* complaint], 119 [filing of motion to refer cases to mediation], 125 [filing of *C. Adams* complaint], 128-129 [filing of petition for certiorari with the U.S. Supreme Court, filing of

*H. Adams* complaint], 134 [filing of *J. Abbott* complaint], 139 [filing of motion to vacate/dismiss] and 159(a-g) [routine litigation-related letters] constitutes a violation of 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud) and is therefore a predicate act of racketeering activity under 18 U.S.C. § 1961(1).

These purported predicate acts, **which are the only ones CSX has alleged**, relate solely to routine litigation activity. None is fraudulent on its face. Only one directly relates to one of the clients on whose behalf an allegedly fraudulent asbestosis claim was filed and it (i) primarily concerns a cancer diagnosis for Mr. Collier, (ii) was not addressed to any of the lawyer Defendants or CSX and (iii) Mr. Collier's case was settled as a cancer case. Compl. ¶159(a) and Ex. KKK. As its use of these innocuous litigation-related activities shows, CSX's Complaint is tantamount to nothing more than a trumped-up abuse of process claim.

Courts from numerous jurisdictions have repeatedly rejected attempts to construct a civil RICO case based on predicate acts concerning litigation activity that substantively are nothing more than a case for abuse of process or a similar common law tort. That is all CSX has pled here. Compl. ¶160. As the Eighth Circuit noted: "Judges and lawyers often complain that the courts are inundated with a flood of litigation, but the fact remains that litigation is as American as apple pie. If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary." *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267-68 (8th Cir. 1984). In granting a motion to dismiss a civil RICO case, one federal district court summarized the overwhelming weight of authority as follows:

> Several district courts have specifically found that claims for malicious prosecution do not constitute predicate acts for purposes of sustaining a RICO action. *See, e.g.*, *Ippolito v. State of Florida*, 824 F. Supp. 1562, 1575 (M.D. Fla. 1993); *Capasso v. CIGNA Insur. Co.*, 765 F. Supp. 839, 843 n. 2 (S.D.N.Y. 1991); *Manax v. McNamara*, 660 F. Supp. 657, 660-61 (W.D. Tex. 1987); *von Bulow by Auersperg v. von Bulow*, 657 F. Supp. 1134, 1144-45 (S.D.N.Y. 1987). Numerous other courts have found that the actions underlying claims for malicious prosecution, or analogous actions in the litigation context, will not support a RICO action. *See McDonald v. Schencker*, 18 F.3d 491, 493 (7th Cir. 1994) (attorney's filing of a sur-reply brief for purposes of garnering additional fees does not constitute mail fraud for purposes of

stating a RICO claim) . . . *Morin v. Trupin*, 711 F. Supp. 97, 105 (S.D.N.Y. 1989) (legitimate acts of attorneys on behalf of their clients can not form the basis of a RICO claim); *Forty-Eight Insulations, Inc. v. Black*, 63 B.R. 415 (N.D. Ill. 1986) (expressing concern that allowing misstatements in bankruptcy petition to give rise to mail fraud for RICO purposes would result in infringement of party's First Amendment right to petition the government through the courts); *Paul S. Mullin & Assoc., Inc. v. Bassett*, 632 F. Supp. 532, 540 (D. Del. 1986) (lawyer's act of posting letter on behalf of client does not amount to mail fraud for purposes of RICO action) . . . *Spiegel v. Continental Illinois Nat'l Bank*, 609 F. Supp. 1083, 1089 (N.D. Ill. 1985) (communication between attorneys on behalf of clients cannot serve as predicate acts for RICO because it would "chill an attorney's efforts and duty to represent his or her client in the course of the pending litigation"), *aff'd*, 790 F.2d 638 (7th Cir. 1986).

*Auburn Med. Ctr., Inc. v. Andrus*, 9 F. Supp. 2d 1291, 1298-99 (M.D. Ala. 1998) (footnote, some citations omitted); *see also Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000) ("Attempts to characterize abuse of process or malicious prosecution claims as mail and wire fraud violations for RICO purposes have been scrutinized by the courts, and have been rejected where the only allegedly fraudulent conduct relates to the filing of documents in litigation."); *Auto Collection Inc. v. Pinkow*, 33 Misc. 3d 1206(A), 2011 WL 4821628, at *5 (N.Y. Sup. Ct. Oct. 7, 2011) ("Defendants' motion to dismiss the RICO cause of action must be granted as the plaintiffs' allegations of mail fraud, wire fraud, and tampering with a witness or victim are, in fact, merely artfully pleaded claims for malicious prosecution and cannot form the basis of a RICO claim."). As this overwhelming authority dictates, because CSX's alleged predicates all relate to routine litigation activity, they cannot, as a matter of law, serve as RICO predicates.

Examination of some of the predicate acts alleged by CSX shows how fundamentally flawed the Complaint is and why it cannot survive. CSX alleges as predicate acts the filing and service of complaints that do not contain any of the eleven allegedly fraudulent asbestosis claims at issue (¶¶90, 94: the *R. Abbott* and *C. Abbott* complaints, filed in 2000 and 2001, respectively); the filing of a petition for certiorari to the U.S. Supreme Court concerning the dismissal of a complaint for improper venue, which is not specific to any of the eleven allegedly fraudulent

claims (*see* ¶128); the filing and service of complaints by an attorney who is not a defendant in this action (*see* ¶¶129, 134); and the sending and receiving of routine correspondence by that same attorney (*see* ¶159(c)-(e)). None of this correspondence relates specifically to any of the eleven claimants at issue. The content of the correspondence and filings is routine and innocuous, which makes attempting to use such materials as RICO predicate acts all the more unsupportable, particularly in light of the Fourth Circuit's expressed policy of narrowly interpreting civil RICO. *E.g.*, *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988); *Feinstein v. Resolution Tr. Corp.*, 942 F.2d 34, 46 (1st Cir. 1991) (longevity of a RICO scheme must be measured "by reference to the particular defendant's fraudulent activity, rather than by otherwise innocuous or routine mailings that may continue for a long period of time thereafter.").

Such routine litigation correspondence and pleadings are exactly the type of "mailing" that courts have found insufficient to serve as RICO predicates. *See supra* pp. 8-9. Thus, as a matter of law, CSX's RICO claims should be dismissed for lack of actionable predicate acts.

**C.  Counts I through IV should be dismissed because CSX fails to plead its claims with particularity under Rule 9(b) and has failed to state a claim under Rule 12(b)(6)**

*1. CSX's extensive use of "group pleading" requires dismissal*

CSX has sued Mr. Coulter ***individually*** for alleged RICO violations and fraud. CSX has not sued the Peirce Firm. Yet, the Complaint utterly fails to apprise Mr. Coulter of what he individually did that is allegedly fraudulent, including any allegedly fraudulent representations that he made. Instead, CSX improperly employs a "collective pleading" concept repeatedly grouping the Defendants together and referring to them as the "lawyer Defendants." This form of group pleading is improper and requires dismissal.

In addition to satisfying *Iqbal's* pleading requirements, a plaintiff alleging fraud and RICO claims must also comply with the heightened pleading standard of Rule 9(b). *Menasco v.*

*Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). "In civil RICO actions, the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency." *Wilson v. Toussie*, 260 F. Supp. 2d 530, 537 (E.D.N.Y. 2003) (internal quotation marks omitted). Complying with Rule 9(b) is especially critical when an alleged scheme involves numerous defendants, and courts routinely find that a complaint—like the Complaint here—that "lumps together" multiple defendants does not satisfy Rule 9(b).[7]

By attributing fraudulent conduct to the lawyer Defendants collectively, CSX's Complaint fails to plead fraud with particularity and to state the basic elements of either RICO or common law fraud, including a fraudulent misrepresentation by Mr. Coulter. ***The 39-page Complaint makes one hundred and fourteen (114) references to the "lawyer Defendants."*** Contrary to this extensive group pleading, excluding references that only identify the parties, the Complaint has only five specific allegations concerning Mr. Coulter and they concern ***only*** his having filed FELA complaints. Compl. ¶¶90, 94, 105, 112, and 170. None of these references constitute, as a matter of law, properly pled predicate acts of mail or wire fraud, as discussed herein. Not a single one of these allegations refers to the eleven claimants at issue. As this shows, the allegedly fraudulent conduct in the Complaint is attributed almost entirely to the lawyer Defendants collectively, not to Mr. Coulter as an individual. Rule 9(b) and *Iqbal* prohibit such group pleading and CSX's failure to allege fraudulent conduct by Mr. Coulter requires dismissal of all its claims under Rule 12(b)(6).

The gross impropriety of CSX's group pleading is demonstrated by this telling example. CSX alleges various acts by the lawyer Defendants between 2005 and 2009, but Mr. Raimond had retired from the practice of law in December 2003 and Mr. Coulter left the Peirce Firm in May

---

[7] *See, e.g., Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009); *Apace Commc'ns v. Burke*, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Vicom, Inc. v. Harbridge Merch. Serv., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994).

2005—facts of record that CSX is well aware of from having deposed Mr. Raimond and Mr. Coulter. *See* Doc. Nos. 529, 530. Yet, the Complaint repeatedly claims that the lawyer Defendants collectively took certain actions long after Mr. Raimond had retired and after Mr. Coulter left the firm. CSX has not and cannot properly state claims against the individuals, so it has opted to improperly lump them together in an attempt to plead causes of action that are unsupported. With CSX having taken ample discovery before filing the Complaint, the Complaint should be dismissed with prejudice.

### 2. Counts I and II should be dismissed because CSX fails to properly plead that Mr. Coulter committed at least two predicate acts that proximately caused injury

As a result of its improper group pleading, CSX's Complaint also fails to allege the most fundamental elements of a RICO violation—that *each* named individual committed at least two predicate acts that proximately caused an injury to Plaintiff. When bringing a substantive RICO claim against multiple defendants, a plaintiff must, at a minimum, allege that *each* defendant *individually* committed two or more predicate acts. *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997). CSX has failed to do so and instead has attempted to rely on collective pleading regarding the "lawyer Defendants."[8]

The only alleged predicate acts committed by Mr. Coulter are the filing of the complaints in the *Ronald Abbott, Charles Abbott, Amos,* and *Abel* lawsuits. Compl. ¶160. First, CSX fails to plead how these purported mailings proximately caused its injuries since it has not and cannot allege that it defended any of the claims on an individual basis, *see infra pp.* 13-18. Second, CSX fails to properly allege any injury flowing from either the *Ronald Abbott* or *Charles Abbott* litigation as none of the eleven claims at issue were in these actions. *See* Compl. ¶¶147 and 165.

---

[8] *See, e.g.*, ¶119 ("[T]he lawyer Defendants caused to be filed a Motion to Refer Cases to Mediation in *Amos, Abel*, and several other lawsuits"). However, the cover letter and motion (filed on June 23, 2005) were signed by an attorney who is not a defendant in this action (Compl. Ex. RR) and Mr. Coulter was no longer with the Peirce Firm at that time.

Third, litigation filings such as the complaints, as a matter of law, cannot be used as RICO predicates. *See supra* p. 7-10. The Complaint alleges no other mailings or acts by Mr. Coulter that could support mail or wire fraud predicates. Thus, CSX has failed to state a civil RICO claim against Mr. Coulter.

**D.  CSX's civil RICO counts must be dismissed because of the lack of a properly pled proximate causal nexus**

As discussed above, CSX did not defend any of the eleven allegedly fraudulent asbestosis claims on the merits. Ten were dismissed as part of larger procedural motions applicable to the FELA complaints as a whole and Mr. Collier was party to a cancer-related settlement. Given that CSX did not expend monies in defense of the eleven allegedly fraudulent asbestosis claims that it would not have otherwise spent, the Complaint must be dismissed because CSX's pleading cannot establish the causal nexus required by RICO, *i.e.* that the alleged fraud (the filing of the eleven allegedly fraudulent asbestosis claims) proximately caused the claimed injury (here, the expenditure of defense funds). Similarly, CSX highlights several mailings in its Complaint that it contends form the basis of its purported predicate acts of mail and wire fraud. Compl. ¶¶158-60. Yet, CSX has not properly pled the requisite causal link between any of these innocuous mailings and its alleged injury. Accordingly, Counts I and II should be dismissed.

To recover under 18 U.S.C. § 1964(c), a plaintiff must prove that (1) he suffered injury to his business or property and (2) his injury was ***by reason of*** the § 1962 violation. *See* 18 U.S.C. § 1964(c); *Chisolm*, 95 F.3d at 336; *Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988). In the RICO context, when a claim is based on mail or wire fraud, this means that there must be a ***direct causal nexus*** between the claimed injury and the alleged predicate acts. *Id.* As the Supreme Court held in *Hemi Group*, "the compensable injury flowing from a RICO

13

violation . . . necessarily is the harm caused by [the] predicate acts." 130 S. Ct. 983, 989 (2010 (internal quotation omitted). Simply, the claimed fraud must proximately cause the injuries.

While in the criminal context, a conviction can be had for mail fraud that did not actually defraud a victim, that is not the case in the context of civil RICO based on mail fraud since the predicate acts must cause an injury, i.e., the plaintiff must have actually been defrauded as a result of the alleged scheme. 18 U.S.C. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 2144 (2008); *Hemi Group*, 130 S. Ct. at 989; *see also Beck v. Prupis*, 529 U.S. 494, 505 (2000) (an injury caused by an overt act that is not an act of racketeering cannot support a RICO conspiracy claim). Thus, the crucial question is whether the predicate acts proximately caused the plaintiff's injury. *E.g. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).[9] In that vein, courts have held that, in cases like the instant one that involve first-party reliance, RICO's causation requirement is similar to the detrimental reliance required for fraud. *E.g.*, *Dungan v. Academy at Ivy Ridge*, 2008 WL 2827713, at *3 (N.D.N.Y. Jul. 21, 2008) *aff'd* 344 Fed. App'x. 645 (2d Cir. 2009); *G&G TIC, LLC v. Alabama Controls, Inc.*, 2008 WL 4457876, at * 4 (M.D. Ga. Sept. 29, 2008), *aff'd* 324 Fed. App'x. 795 (11th Cir. 2009); *see also Bridge*, 128 S. Ct. at 2144 ("In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation."); *Chisolm*, 95 F.3d at 337-38.

---

[9]  While the underlying predicate mailing need not itself be fraudulent, it must (i) be "incident to an essential part of the scheme," and (ii) the predicate act also must bear a causal relationship to the plaintiff's claimed injury. *Bridge*, 128 S. Ct. at 2138, 2144; *Brandenburg*, 859 F.2d at 1187; *see* 18 U.S.C. § 1341. ***Remote, collateral mailings made as part of the ordinary course of business are insufficient.*** *U.S. v. Staszcuk*, 502 F.2d 875, 880-881 (7th Cir. 1974) (reversing conviction because mailings were "too remote from defendant's scheme"); *U.S. v. Tarnopol*, 561 F.2d 466, 471-73 (3d Cir. 1977) (routine mailings could not support mail fraud conviction) *abrogated on other grounds,* 502 U.S. 46 (1991); *U.S. v. Hewes*, 729 F.2d 1302, 1322 (11th Cir. 1984) ("We refuse to expand Section 1341 to criminalize any use of the mails by parties to a fraudulent scheme."); *U.S. v. Brickey*, 296 F.Supp. 742, 747-49 (E.D. Ark. 1969) (mailings too remote to support conviction); *see also Parr v. U.S.*, 363 U.S. 370, 391(1960) (overturning mail fraud conviction).

RICO's causation limitation is critical when mail and wire fraud are the basis of a civil RICO action. This is because plaintiffs frequently rely on these predicates to try and turn "garden-variety fraud actions properly brought under state law" into RICO actions. *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1022 (7th Cir. 1992). This is consistent with the Fourth Circuit's expressed policy of "not lightly permit[ting] ordinary business contract or fraud disputes to be transformed into federal RICO claims" and not allowing every case that alleges "multiple individual instances of fraud" to be transformed into "a cause of action under RICO.'" *Flip Mortg. Corp.*, 841 F.2d at 538. Thus, in order to assess if CSX has properly pled its RICO claims, its Complaint must be analyzed to ascertain its alleged injuries and whether these injuries were, as a matter of law, proximately caused by the claimed fraud at issue (the filing of the eleven allegedly fraudulent asbestosis claims) and the related alleged predicate acts. Under Fourth Circuit law, the determination whether RICO causation has been pled "is properly one for the court, taking into consideration such factors as the foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection." *Chisolm*, 95 F.3d at 338 (quoting *Brandenburg*, 859 F.2d at 1187 ("a civil RICO complaint is vulnerable to a motion to dismiss if it fails to allege . . . an adequate causal nexus between that injury and the predicate acts of racketeering activity alleged.")).

In Paragraph 165 of the Complaint, CSX pleads its purported RICO injury: "Specifically, the lawyer Defendants' violations of § 1962(c) caused CSXT to expend substantial money and resources to process, defend and/or settle the deliberately fabricated claims ***outlined in Paragraph 147*** that should never have been filed in the first place." (emphasis added). Based on its own pleading, CSX's claimed RICO injuries are limited to those set forth in Paragraph 165—those stemming from the eleven allegedly fraudulent asbestosis claims (out of over 5,300 claims

in the relevant FELA complaints) listed in Paragraph 147.[10] Even assuming *arguendo* that these eleven claims were fraudulent, CSX's Complaint, on its face, reveals that the alleged fraud did not, as a matter of law, proximately cause any injury to CSX.

Ten of the eleven claims at issue were never settled by CSX. Compl. ¶147. None of these claims was defended by CSX on an individual basis. *Id.* ¶¶128, 132, 137, 142, 147. Rather, each was dismissed on procedural grounds as part of motions attacking the larger FELA complaints as a whole (which contained hundreds if not thousands of claims). *Id.* Thus, CSX has not pled and cannot plead that any allegedly fraudulent claim caused an injury for purposes of RICO. No expenditure of money was "by reason of" the fraudulent claims. *See* 18 U.S.C. §§ 1964(c). Rather, the procedural issues applicable to the larger cases—not any fraud related to these individual claimants—is what caused CSX to spend legal resources and file the motions that resulted in dismissal. Simply, there is no causal nexus between CSX's alleged injuries and these allegedly fraudulent asbestosis claims, let alone the direct causal nexus required to state a RICO claim, and Counts I and II must be dismissed. *See Hemi Group*, 130 S. Ct. at 989; *Chisolm*, 95 F.3d at 338; *Brandenburg*, 859 F.2d at 1187-89.[11]

As to the eleventh claim at issue, Morris Collier's, CSX, likewise, has not pled and cannot plead the requisite causal nexus. CSX's entire case is premised on the alleged filing of fraudulent **asbestosis** cases. Compl. ¶144. But, CSX settled a cancer case with Mr. Collier for $25,000. *See* Compl. Ex. KKK. Again, as a matter of law and based on CSX's own allegations, there is no causal nexus between CSX's alleged injuries and any allegedly fraudulent asbestosis claim.

Similarly, CSX, as a matter of law, has failed to properly plead that any alleged injury was caused by the purported predicate acts of mail fraud that are set forth in Complaint Paragraphs

---

[10]  The eleven asbestosis claims at issue are the only ones CSX has specifically alleged to be fraudulent.

[11]  Additionally, Judge Jack's opinion precludes CSX from establishing RICO causation related to the five claims filed after the opinion. *See supra* fnt. 1 and pp. 6-7.

158-60, which are based only on court filings and related letters. As to the filings, they (i) are insufficient as a matter of law to support RICO predicates (*see supra.* pp. 7-10) and (ii) the fact that they allegedly contained eleven fraudulent asbestosis claims out of over 5,300 claims did not cause CSX to expend any additional monies since it did not defend any of these claims individually. Thus, CSX's allegations fail to satisfy RICO's causal nexus requirement in addition to failing to plead proper predicate acts as to Mr. Coulter who filed these actions.[12]

The seven miscellaneous litigation-related mailings listed in Paragraphs 159(a)-(g) of the Complaint also cannot support CSX's RICO claims. First, in addition to being improper predicates per se (*see supra* pp. 7-10), none of the mailings in paragraphs 159(b)-(g) addresses any of the eleven claimants at issue. Therefore, these mailings could not have caused an injury related to the eleven claimants. Obviously, the expenditure of "substantial money and resources to process, defend and/or settle the deliberately fabricated claims" (Compl. ¶165) was not proximately caused by the sending of random, innocuous letters to counsel or the court. *See Hemi Group, LLC*, 130 S. Ct. at 991 ("the compensable injury flowing from a RICO violation . . . 'necessarily is the harm caused by [the] predicate acts.'"). Second, the innocuous mailings are clearly **collateral** to any alleged fraud related to the eleven claimants and, therefore, not incident to an essential part of the alleged scheme (*see* authority cited in footnote 9). Thus, they cannot serve as mail fraud predicates. Third, the letter between Dr. Harron and a Peirce Firm lawyer who is not a defendant (¶159(a)) was not addressed or sent to CSX and primarily addresses Mr. Collier's bladder cancer, which was the injury (not asbestosis) on the basis of which CSX settled with him. *See* Compl. Ex. KKK, NNN.

---

[12] Paragraphs 119, 128 and 139 of the Complaint all concern the filing of motions in the FELA actions. None of these Paragraphs contains a factual allegation about an alleged mailing. Thus, on the face of the Complaint, the filings in these Paragraphs cannot be the basis of mail or wire fraud predicate acts.

Simply, no fraud related to the eleven allegedly fraudulent asbestosis cases even arguably was effectuated by any of the communications highlighted by CSX—the asbestosis claims of ten of the claimants were dismissed on procedural grounds applicable to the larger FELA complaints and Mr. Collier's case was settled as a cancer case.[13] Accordingly, CSX has failed to state valid RICO claims because its purported predicate acts did not proximately cause its injury. *Chisolm*, 95 F.3d at 338; *Brandenburg*, 859 F.2d at 1189.

Despite having taken extensive discovery and despite its repeated attempts to make out a RICO claim where, at best, only a common law claim exists, CSX has failed to plead the factual predicates necessary to establish such a claim—that properly pled predicate acts proximately caused CSX's purported RICO injury. This lack of causation exemplifies CSX's improper attempt to force the Defendants' conduct into a RICO framework when it does not fit. RICO's specific requirements were designed to thwart such attempts to turn "garden-variety fraud actions" into RICO actions and they preclude CSX's claims here. *Spitz*, 976 F.2d at 1022.

**E.** **According to the Complaint, 99.8% of the claims filed by the Peirce Firm have not been alleged as fraudulent, precluding a finding of a pattern of racketeering activity based on the 0.2% of remaining claims**

It would be legal error to allow a RICO case to proceed where 99.8% of the activity of an alleged racketeering enterprise has not been alleged to be fraudulent. Counts I and II should be dismissed because CSX has not adequately pled, and cannot adequately plead, that the Defendants engaged in a pattern of racketeering activity.

A proper allegation of a pattern of racketeering is the "heart of any RICO complaint." *Rotella v. Wood*, 528 U.S. 549, 556 (2000). "The target of RICO is thus not sporadic activity." *Sedima*, 473 U.S. at 496 n.14. "[T]he heightened civil and criminal penalties of RICO are reserved for

---

[13] If the letter regarding Mr. Collier is somehow deemed to be a legitimate predicate act, CSX's claims still fail because they have not properly alleged a second predicate act as required to state a RICO claim.

schemes whose scope and persistence set them above the routine . . . Congress chose the 'pattern requirement' of § 1962(a) as the mechanism by which 'ordinary claims of fraud best left to "the state common law of fraud"' are distinguished from those activities of such a 'criminal dimension and degree' as to warrant the extraordinary remedies of RICO." *HMK Corp. v. Walsey*, 828 F.2d 1071, 1074, 1077 (4th Cir. 1987) (citing *Int'l Data Bank v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987)).

In *H.J. Inc. v. Nw. Bell Tel. Co.*, the Supreme Court explained that criminal conduct forms a pattern if it consists of at least two predicate acts that are related and continuous. 492 U.S. 229, 236 (1989). Predicate acts are ***related*** when they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics ***and are not isolated events***." *Id.* at 237 (emphasis added). As the Fourth Circuit has observed:

> The "pattern" requirement is more than incidental to the operation of the RICO statute. In providing a remedy of treble damages for injury "by reason of a violation of" RICO's substantive provisions, 18 U.S.C. § 1964(c), Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences . . . The pattern requirement in § 1961(5) thus acts to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted.

*Menasco*, 886 F.2d at 683 (citations omitted).

In addition to establishing relatedness, the ***continuity*** requirement is intended to pose a significant hurdle for the RICO plaintiff to ensure that RICO will not be "misused as a vehicle for federalizing state court fraud claims." *Meier v. Musburger*, 588 F. Supp. 2d 883, 900 (N.D. Ill 2008). Continuity can be either a closed or open-ended concept, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241-42.

19

Many courts, including the Fourth Circuit, subject the pattern element to more intense scrutiny when it is based on mail fraud in order to "prevent ordinary business disputes from becoming viable RICO claims," *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 376-77 (D.D.C. 2008), since "it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (citations omitted); *see also Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998); *Feinstein*, 942 F.2d at 46 (innocuous mailings could not add to the pattern because they were incidental to the fraudulent scheme); *Allen v. Devine*, 726 F. Supp. 2d 240, 250 (E.D.N.Y. 2010) (mail fraud carries less weight in showing a pattern). This increased scrutiny is "designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." *Al-Abood*, 217 F.3d at 238. Initially, the determination whether a plaintiff has pled allegations that could support a "pattern" is a question of law. *Zepkin*, 812 F.2d at 149 (dismissal for failure to allege pattern); *Menasco*, 886 F.2d at 681 (12(b)(6) dismissal for failure to allege a pattern); *HMK Corp.*, 828 F.2d at 1071 (as a matter of law, plaintiff failed to allege a pattern).

### 1. *CSX's allegations fail to establish relatedness*

CSX's Complaint fails to establish the requisite relatedness. The Complaint alleges—at best—that the Defendants engaged in sporadic and isolated allegedly fraudulent activity. The Supreme Court has held that isolated activity does not satisfy the pattern requirement. *See H.J., Inc.*, 492 U.S. at 237. CSX cites to seven different FELA lawsuits containing more than 5,300 personal injury claims that were filed in West Virginia courts. Yet, CSX alleges that only eleven of the more than 5,300 personal injury claims were fraudulent. Compl. ¶¶147, 152, 156, 165, 172, 174. This amounts to 0.2% of the cases filed by the Peirce Firm against CSX over the six-year period from 2002 to 2008. Assuming, *arguendo*, that CSX could prove that each of the

eleven personal injury claims was fraudulent, CSX would still be asking this Court to hold that eleven fraudulent claims out of more than 5,300 claims filed in seven different FELA complaints between 2002 and 2008 constitute a RICO pattern as opposed to mere sporadic, isolated conduct. Such a holding would render the pattern requirement meaningless and render the Supreme Court's admonition against the use of sporadic activity to plead RICO violations a nullity.

Moreover, other than the filing of the complaints in which the eleven claims were stated along with thousands of others that are not alleged to be fraudulent, CSX alleges only ***one*** purported predicate act that directly relates to any of the eleven claims at issue—a letter between Dr. Harron and a lawyer ***who is not a defendant in this action***. And, even that letter primarily related to Mr. Collier's cancer case which was settled. Compl. ¶158-60; Ex. KKK. As a general rule, "too few [predicate] acts would suggest that the defendants were engaged in only 'sporadic activity.'" *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 447 (1st Cir. 1990). CSX's pleading demonstrates that is certainly the case here. As a matter of law, CSX has not alleged a pattern of racketeering activity, let alone a pattern by each individual defendant.

### 2. CSX's allegations fail to establish continuity

CSX's Complaint also fails to plead the requisite continuity to establish a pattern. Plaintiff has failed to allege open-ended continuity. Open-ended continuity requires a plaintiff to show a threat of continued criminal activity beyond the period in which the predicate acts were committed. *U.S. Airline Pilots Ass'n*, 615 F.3d at 317. This can be demonstrated if the predicate acts themselves include a specific threat of repetition extending indefinitely into the future or if the predicate acts are part of a defendant's regular way of doing business.

Here, the Complaint is devoid of proper factual allegations that would plausibly suggest this open-ended continuity particularly since only 0.2% of the claims filed by the Peirce Firm are alleged to be fraudulent. CSX merely alleges that the "predicate acts were continuous in that they

occurred on a regular basis." Compl. ¶162. That is both conclusory and legally insufficient. *Iqbal*, *supra* p. 4. Moreover, at the time the Complaint was filed, the Peirce Firm did not have any pending non-malignant asbestosis claims against CSX in West Virginia and the last FELA complaint was filed over three years ago. Compl. ¶134. Therefore, CSX has failed to plead open-ended continuity.

CSX also fails to allege closed-ended continuity. RICO is not aimed at the isolated offender, and the pattern requirement acts to ensure that isolated offenders are not subject to RICO's extraordinary remedies. *Menasco*, 886 F.2d at 683. The Fourth Circuit recognizes that RICO and its penalties were intended to address "extended, widespread, or particularly dangerous" racketeering activities. *Flip Mortg. Corp.*, 841 F.2d at 538. The Fourth Circuit considers multiple factors in determining the existence of closed-end continuity including: the length of time over which the predicate acts took place, the number and variety of predicate acts, the number of participants, the number of victims, and the presence of multiple schemes. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 550-51 (4th Cir. 2001).

Application of these factors precludes a finding of closed-ended continuity here. The low number of purported fraudulent claims (0.2%) and limited alleged predicate acts alone are sufficient to preclude a finding that Defendants' conduct amounts to a pattern. CSX alleges the filing of nine pleadings and the mailing of seven litigation related letters as its purported predicate acts, only one of which is directly related to the eleven clients at issue. *See* Compl. ¶¶158-60; *compare Fleet Credit Corp.*, 893 F.2d at 446-47 (holding that 95 instances of mail fraud constituted a pattern). Again, few and innocuous alleged predicate acts suggest that Defendants' alleged conduct amounts to mere allegations of sporadic activity. *Id.* at 447.

Moreover, CSX has, at best, alleged a single scheme with a single victim and with few participants. Numerous courts, including the Fourth Circuit, have rejected RICO claims based on a single scheme, a single victim, and few participants. *E.g.*, *Flip Mortg. Corp.*, 841 F.2d at 538. In fact, the pattern requirement is so rigorous that the Fourth Circuit has rejected RICO claims even when multiple schemes are present—which is not the case here. *Al-Abood*, 217 F.3d at 238.

In *Al-Abood*, the plaintiff alleged that the defendant carried out three fraudulent schemes by convincing plaintiff to invest in real estate, a charitable trust and a brokerage account. *Id.* at 230. In an attempt to state an actionable RICO claim, the plaintiff alleged that, through the use of routine communications, the defendant committed mail and wire fraud in connection with these schemes, which spanned several years. The Fourth Circuit found that these "commonplace predicate acts" could not satisfy the pattern requirement. *Id.* at 238. The Fourth Circuit upheld dismissal of the RICO claim, as a matter of law, because it was "not sufficiently outside the heartland of fraud cases to warrant RICO treatment." *Id.*

Here, CSX alleges only that the Defendants engaged in a single scheme resulting in the filing of eleven purportedly baseless asbestosis claims out of over 5,300 total claims in order to defraud a single victim, CSX. As the court in *Menasco* aptly held in granting a Rule 12(b)(6) motion and dismissing a single-scheme, single-victim RICO case: "If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary commercial fraud from being transformed into a federal RICO claim." 886 F.2d at 685. That conclusion is equally applicable here, particularly given that only 0.2% of the claims filed by the Peirce Firm are alleged to have been fraudulent and given CSX's failure to properly plead facts related to each individual defendant.[14]

---

[14] The fact that CSX alleges the purported scheme lasted nine years (Compl. ¶162) does not save its claim. The Supreme Court's fact-specific approach mandates that the court consider the duration in the context of each case. *See, e.g.*, *Myers v. Finkle*, 758 F. Supp. 1102, 1113 (E.D. Va. 1990)  (granting defendant's motion to dismiss because fifteen allegedly fraudulent acts over a four-year period lacked

This conclusion is strengthened by the fact that Plaintiff attempts to base the pattern requirement exclusively on allegations of mail and wire fraud. As discussed above, *supra* pp. 15, 20, the Fourth Circuit frowns on RICO claims premised solely on mail and wire fraud predicates, particularly when the mailings themselves are innocuous—which is the case here— and has not hesitated to affirm dismissals of RICO cases based on motions to dismiss. *E.g.*, *Zepkin*, 812 F.2d at 149; *Menasco*, 886 F.2d at 681; *Anderson*, 155 F.3d at 505-06; *Foster v. Wintergreen Real Estate Co.*, 363 F. App'x. 269, 274 (4th Cir. 2010); *Walsh v. Mitchell*, 427 F. App'x. 282 (4th Cir. 2011) (per curiam); *see also HMK Corp.*, 828 F.2d at 1071 (as a matter of law, plaintiff failed to allege a pattern); *Al-Abood*, 217 F.3d at 238 (judgment as a matter of law).

At best, CSX's Complaint attempts to allege closed-ended continuity; yet, it fails to plead sufficient facts to meet the pattern element. Insufficient predicate acts, a single alleged scheme, a single alleged victim, and reliance on mail and wire fraud as the sole basis for establishing a pattern show that, as a matter of law, CSX's allegations cannot meet RICO's rigorous pattern requirement either in general or as to each individual defendant.

## F.  The civil RICO counts must be dismissed as void for vagueness

Counts I and II must also be dismissed because RICO's pattern requirement is impermissibly vague under the constitution as applied to Mr. Coulter's alleged conduct. The "void for vagueness doctrine" holds that when a criminal statute "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," that statute is constitutionally void. *U.S. v. Harriss*, 347 U.S. 612, 617 (1954).[15] While the Supreme Court attempted to provide guidance regarding the application of RICO's pattern requirement in

---

continuity and did not establish a pattern) *aff'd in relevant part, rev'd in part*, 950 F.2d 165 (4th Cir. 1991).

[15] While this is a civil case, because RICO has both criminal and civil components, the stringent criminal standard is applied for purposes of the "void for vagueness" analysis. *FCC v. Am. Broad. Co.*, 347 U.S. 284, 296 (1954).

*Sedima* and *H.J. Inc.*, neither case involved a vagueness challenge. Justice Scalia, in his concurring opinion to *H.J. Inc.*, criticized the vagueness of RICO's pattern requirement and the failure of the Court to sufficiently clarify it. Justice Scalia ended his criticism by stating: "[T]hat the highest Court in the land has been unable to derive from this statute anything more than today's meager guidance bodes ill for the day when [a constitutional] challenge is presented." *Id.*, 492 U.S. at 256. Mr. Coulter brings such a challenge.[16]

CSX has tried to contort routine ministerial tasks such as sending letters to the Court or filing complaints into purported acts that they claim satisfy RICO's pattern requirement. Compl. ¶158-60. Mr. Coulter did not, and a reasonable person would not, have fair notice that by engaging in ministerial acts on behalf of clients, such as filing a large FELA action, he could open himself to a civil RICO claim, and the treble damages and attorneys fees that accompany such a claim. Thus, under well-established legal principles, the RICO claims against Mr. Coulter must be dismissed on vagueness grounds—particularly since CSX's allegations implicate significant First Amendment concerns.[17]

Dated:  November 25, 2011

s/ David J. Berardinelli
Walter P. DeForest (WVSB #7388)
David J. Berardinelli (WVSB #10479)
DEFOREST KOSCELNIK YOKITIS SKINNER & BERARDINELLI
3000 Koppers Building
Pittsburgh, PA l5219 - (412) 227-3100
*Attorneys for Defendant Mark T. Coulter*

---

[16] At least two cases have found that the RICO pattern requirement was void for vagueness as applied. *Firestone v. Galbreath*, 747 F.Supp 1556, 1581 (S.D. Ohio 1990) (potential heirs brought suit against an estate and the professionals responsible for that estate), *aff'd in part*, 976 F.2d 279 (6th Cir. 1992) (declining to address vagueness challenge); *Kenty v. Bank One, Columbus, N.A.*, No. C2-90-709, 1992 WL 170605, at *9 (S.D. Ohio Apr. 23, 1992) (class action of loan recipients against lending bank for a variety of alleged frauds and abuses); *but see, e.g., Norstar Bank v. Pepitone*, 742 F. Supp 1209, 1213 (E.D.N.Y. 1990) (RICO pattern requirement constitutional) (citing cases).
[17] An attorney's communications on behalf of clients are entitled to First Amendment protection grounded in the rights of the client. *Eng v. Cooley*, 552 F.3d 1062, 1069-70 (9th Cir. 2009).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of November, 2011, true and correct copies of the foregoing document have been served via the Court's ECF electronic filing system upon the following counsel:

Marc E. Williams (WVSB #4062)
Robert L. Massie (WVSB #5743)
Nelson Mullins
949 Third Ave., Suite 200
Huntington, WV  25701
*Counsel for Plaintiff*

Samuel L. Tarry, Jr.
Mitchell K. Morris
McGuire Woods
One James Center
901 East Cary Street
Richmond, VA 23219-4030
*Counsel for Plaintiff*

Ron Barroso
5350 S. Staples, Suite 401
Corpus Christi, TX 78411
*Counsel for Defendant Harron*

Jerald E. Jones
West & Jones
PO Box 2348
Clarksburg, WV 26302-2348
*Counsel for Defendant Harron*

s/ David J. Berardinelli