**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT WHEELING**

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:05-cv-202 |
| | ) | |
| v. | ) | Assigned to: |
| | ) | The Hon. Frederick P. Stamp |
| ROBERT N. PEIRCE, JR., | ) | |
| LOUIS A. RAIMOND; | ) | |
| MARK T. COULTER; | ) | |
| and RAY HARRON, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**REPLY MEMORANDUM OF DEFENDANTS ROBERT N. PEIRCE, JR.,**</u>
<u>**LOUIS RAIMOND, AND MARK COULTER IN SUPPORT OF**</u>
<u>**MOTION TO DISMISS THIRD AMENDED COMPLAINT**</u>

Walter P. DeForest (WVSB #7388)
David J. Berardinelli (WVSB #10479)
DEFOREST KOSCELNIK YOKITIS
SKINNER & BERARDINELLI
3000 Koppers Building
Pittsburgh, PA l5219
(412) 227-3100

Attorneys for Defendants
Robert N. Peirce, Jr.,
Louis A. Raimond,
and Mark T. Coulter

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.  INTRODUCTION .........................................................................................................1

II.    ARGUMENT ...............................................................................................................3

    A.    The Mandate Rule Does Not Bar the Defendants' Motions to Dismiss ............................................3

    B.    The Third Amended Complaint Fails to Allege Reliance and Damages Based on Reliance As Required for Fraud and Fails to Allege the Proximate Causation Required by RICO .............................8

    C.    CSX Improperly Conflates the Requisites for Establishing a Criminal Mail Fraud With the Requisites for Establishing a Civil RICO Claim ...................................................................13

    D.    CSX's Improper Group Pleading Requires Dismissal ...............................................16

    E.    CSX Has Alleged Only Sporadic Activity and, Therefore, Has Failed to Plead the Requisite Pattern Of Racketeering Activity ...............................................................19

# TABLE OF AUTHORITIES

Cases

*Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)............................................11, 13, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................................1, 10, 16, 18

*Bender v. Suburban Hosp. Inc.*, 159 F.3d 186, 192 (4th Cir. 1998)...............................10

*Biggins v. Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir. 1997).....................................6

*Castle v. Crouse*, No. Civ. A. 03-5252, 2004 WL 257389 (E.D. Pa. Feb. 11, 2004)...................12

*Chisolm v. Transouth Fin.*, 95 F.3d 331, 338 (4th Cir. 1996) .......................................9

*CSX v. Gilkison*, 406 F. App'x 723 (4th Cir. 2010) .......................................................7

*Digital Privacy, Inc. v. RSA Sec., Inc.*, 199 F. Supp. 2d 457, 459 n.2 (E.D. Va. 2002)................8

*Digital Privacy, Inc. v. RSA Sec., Inc.*, 56 F. App'x 497 (Fed. Cir. 2003).....................8

*Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) .........................................................7

*Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008) ..............................19

*First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 620 (8th Cir. 2007)..6

*Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) ........................9, 14

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002).........................12, 15

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) .........................................19

*Haley v. Corcoran*, 659 F.Supp.2d 714, 721 (D. Md. 2009)....................................16, 17

*HMK Corp. v. Walsey*, 828 F.2d 1071, 1074, 1077 (4th Cir. 1987)............................19

*Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987) ..............................19

*Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 958-59 (6th Cir. 1997)........................7

*Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999)............................................8, 16

*Menasco, Inc. v. Wasserman*, 886 F.2d 681 (4th Cir. 1989) ....................................19

*Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997)............18

*Persinger v. Peabody Coal Co.*, 976 F. Supp. 1038 (S.D. W. Va. 1997)......................................11

*Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001)......12

*Quern v. Jordan*, 440 U.S. 332, 348 (1979) ........................................................................6

*Raymark v. Stemple*, No. 88-1014, 1990 WL 72588 (D. Kan. May 30, 1990) ............................12

*Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974)........................................................8

*Salinas v. U.S.*, 522 U.S. 52 (1997) ........................................................................18

*Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985) ........................................................19

*Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)........................................6

*Stafford v. Radford Comm. Hosp.*, 120 F.3d 262 (4th Cir. 1997) (table) .......................................9

*Stafford v. Radford Comm. Hosp.*, 908 F. Supp. 1369, 1375 (W.D. Va. 1995) ............................8

*Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076 (S.D.N.Y. 1994)..........................................12, 17

*U.S. v. Alkins*, 925 F.2d 541 (2d Cir. 1991)........................................................................20

*U.S. v. Eisen*, 974 F.2d 246 (2d Cir. 1992)..................................................................12, 15

*U.S. v. Lebovitz*, 669 F.2d 894 (3d Cir. 1982) ........................................................15

*U.S. v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008).....................................................5

*U.S. v. Marbella*, 73 F.3d 1508 (9th Cir. 1996)..................................................................12

*U.S. v. Murr*, 681 F.2d 246 (4th Cir. 1982) ........................................................................15

*U.S. v. Perkal*, 530 F.2d 604 (4th Cir. 1976).....................................................................15

*U.S. v. Pierce*, 409 F.3d 228 (4th Cir. 2005) .....................................................................15

*U.S. v. Pritt*, Nos. 99-4581, 99-4651, 2000 WL 1699833 (4th Cir. Nov. 14, 2000) ...................15

*U.S. v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) .....................................................................14

*U.S. v. Wilson*, 506 F.2d 1252, 1257 (7th Cir. 1974) ..........................................................19

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
510 F.3d 474, 481 (4th Cir. 2007) ........................................................................5, 6

*Warnock v. State Farm*, Civ. No. 5:08-cv-001, 2011 WL 2446580 at *4 (S.D. Miss. June 15, 2011) .......................................................................................................................14

Rules

Federal Rule of Civil Procedure 12 ........................................................................3, 16

Federal Rule of Civil Procedure 9 ....................................................................... passim

Treatises

9 Fletcher Cyc. Corp. § 4255 ................................................................................11

Wright and Miller, 18B Fed. Prac. & Proc. Juris. § 4478.6 (2d ed.) .............................6

## I. INTRODUCTION

Rather than refuting the Defendants' arguments detailing why CSX's action must be dismissed, CSX's Opposition (Doc. 906) actually highlights the failings of CSX's Third Amended Complaint and demonstrates that CSX has tried to concoct civil RICO and fraud claims against three individual lawyers where no legal basis for such claims exists. CSX ignores both plain law and logic that require, for the statement of fraud and civil RICO claims, that there be both an alleged fraud and such alleged fraud must have proximately caused CSX's claimed injuries. As a matter of law, there must be a direct causal link between any alleged fraud and any alleged damages. Absent such a link, CSX cannot state civil RICO or common law fraud claims. As a matter of law, based on the face of the Third Amended Complaint and exhibits, that link is missing here and nothing in CSX's Opposition alters that required conclusion.

CSX's Opposition emphasizes mass filings and purported attempts to block discovery and boldly claims that "***one hundred percent*** of the Defendants' conduct related to the mass suits described in the Third Amended Complaint was racketeering activity in furtherance of their fraudulent scheme" (Doc. 906 at 25) (emphasis in original). In addition to being unfounded, CSX's argument is fundamentally flawed. Unless the mass filings contained allegedly fraudulent claims identified with sufficient particularity under Rule 9(b), and the standards set by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and unless those claims proximately caused CSX's alleged damages, CSX does not have a cause of action for civil RICO or fraud. Filing mass lawsuits utilizing the results of x-ray screenings—which was done by a number of other law firms—and utilizing the rules and procedures of the West Virginia Mass Litigation Panel—which rules and procedures were established by the judiciary, not the Peirce Firm or its lawyers—is not fraud nor the basis for a civil RICO claim. More than complaints about screenings, mass filings and West Virginia's tort system must be alleged and supported by

proper factual pleading for CSX's claims to survive. Thus, CSX's claims must be founded on and can only be premised on the eleven allegedly fraudulent claims listed in Paragraph 147 of the Third Amended Complaint, which are the only allegedly fraudulent claims pled in the complaint.[1] And, CSX can only state valid causes of action if it has pled alleged damages that were proximately caused by those eleven claims. As explained in the Defendants' memoranda in support of their motions to dismiss and as discussed further below, CSX has failed to do so.

Giving credence to the Defendants' demonstration that CSX has failed to adequately plead that it was damaged by any alleged fraud, CSX is reduced to taking the position that the purported "annoyance and inconvenience" it allegedly suffered in expending "internal resources" is sufficient to keep alive its claims for civil RICO (and the treble damages and attorneys' fees that can accompany such a claim) and common law fraud against three individual lawyers. *See* Doc. 906 at 8-9; *see also id.* at 22. This position is insufficient as a matter of law and CSX's attempt to premise this costly litigation and its slanderous attack on Messrs. Peirce, Raimond and Coulter on such a minimal and legally insufficient basis should not be countenanced. Purported "annoyance and inconvenience" to CSX, a corporate entity, cannot support the unfounded civil RICO and fraud claims that CSX has attempted to hang over the heads of Messrs. Peirce, Raimond and Coulter for more than four years.

CSX's own arguments show that its causes of action fail, *inter alia*, because no causal link exists between any alleged fraud and any alleged damages purportedly suffered by CSX. CSX can complain about the purported unfairness of mass filings and the Mass Litigation Panel rules, but such complaints do not give rise to causes of action for civil RICO or common law fraud. The Court should grant the Defendants' motions to dismiss the Third Amended Complaint and

---

[1] Any contention by CSX that other allegedly fraudulent claims exist is precluded by Rule 9 and is directly contrary to the Court's June 20, 2007 decision in this matter (Doc. 201).

put an end to CSX's continued attempts to pursue unfounded and unsupported fraud and civil RICO claims against these three individuals.

## II.      ARGUMENT

### A.  The Mandate Rule Does Not Bar the Defendants' Motions to Dismiss

Seeking to avoid addressing the merits of the Defendants' arguments—even though it has filed a Third Amended Complaint that changes the scope, time period and factual basis for its allegations—CSX argues that all of the Defendants' arguments for dismissal are barred by the mandate rule. Given the differences between the Third Amended Complaint and the Amended Complaint that was before the Fourth Circuit and given the limited nature of the Fourth Circuit's opinion in this matter, the mandate rule simply is not applicable here. CSX's attempt to forestall a substantive decision on the Defendants' arguments in favor of dismissal must be rejected.

The operative complaint in this matter is the Third Amended Complaint, which was not filed until *October 19, 2011*. The Fourth Circuit issued its opinion on *December 30, 2010*, nearly *ten months* before the Third Amended Complaint was filed. Before October 19, 2011, the only complaint which had been filed by CSX and subjected to motions under Rule 12 was the Amended Complaint.[2] There are numerous and substantial differences between the two complaints. For example, of the eleven allegedly fraudulent claims listed in Paragraph 147 of the Third Amended Complaint, only four (Morris Collier, James Petersen, Donald Wiley and Earl Baylor) were listed as part of the nine allegedly fraudulent claims that were highlighted in Paragraph 71 of the Amended Complaint. And, unlike the eleven claims in the Third Amended Complaint (only one of which settled and even that was settled as a cancer case), the nine claims in the Amended Complaint included six that had settled (five of which were asbestosis settlements). The claims in the Amended Complaint stemmed from FELA actions filed as far

---

[2]  CSX filed a motion for leave to file a Second Amended Complaint but that motion was denied, so that complaint was never filed or subjected to Rule 12 motions.

back as 2000 whereas the claims in the Third Amended Complaint concern FELA actions that date back only to 2003 and involve allegations related to litigating FELA complaints that occurred as recently as 2009—long after Mr. Raimond had retired in 2003 and Mr. Coulter had left the Peirce Firm in 2005. Further, the claims of Peterson, Wiley and Baylor were active at the time of the Amended Complaint but, as pled in the Third Amended Complaint, were subsequently dismissed pursuant to overarching motions filed by CSX addressed to the FELA actions as a whole; these individual claims were not separately litigated. Unlike the purported predicate mailings in the Third Amended Complaint (all of which concern simple litigation-related mailings), the alleged predicate mailings in the Amended Complaint concerned, among other things, mailings related to settling cases that were alleged by CSX to be fraudulent.

As the above shows—contrary to CSX's cursory assertion that the "Amended Complaint differed from the Third Amended Complaint (and the proposed Second Amended Complaint) only in that it contained *less* factual detail and identified *fewer* fraudulently filed claims and related predicate acts of mail and wire fraud" (Doc. 906 at 6) (emphasis in original)—the differences in the complaints are real and substantial. Importantly, the differences give rise to the arguments made in the Defendants' motions to dismiss. For example, the facts that none of the eleven claims at issue have settled based on asbestosis and all but one have been dismissed pursuant to overarching motions attacking the FELA actions as a whole give rise to the arguments raised in Sections III.A and III.D of the Defendants' memorandums (Docs. 888, 892, 895). The lack of predicate acts related to settling allegedly fraudulent cases and allegations of only predicate acts related to simple litigation activity give rise to the argument in Section III.B of the Defendants' memorandums. The change in timeframes involved in the Third Amended Complaint compared to the Amended Complaint supports the arguments in Section III.C.1 and

III.C.2, particularly since Mr. Raimond and Mr. Coulter were no longer with the Peirce Firm for much of the time period covered by the Third Amended Complaint's allegations. Lastly, the different purported predicate acts that supposedly give rise to civil RICO liability are the bases for the arguments in Section III.F. Thus, the differences in the Third Amended Complaint, when compared to the Amended Complaint, give rise to the different arguments raised in the Defendants' motions to dismiss. Because they are premised on CSX's new allegations in the Third Amended Complaint, these are arguments that were not available in responding to the Amended Complaint and none of these arguments or anything related to them was before, let alone decided by, the Fourth Circuit. Nor did the Fourth Circuit address, in any manner, the "pattern of racketeering" argument raised in Section III.E of Defendants' Memorandum. The mandate rule, therefore, is inapplicable.

The authority relied on by CSX does not dictate a contrary result and, in fact, is consistent with the conclusion that the mandate rule is inapplicable. ***No case cited by CSX applying the mandate rule concerned a situation where an amended complaint that contained new facts and new timeframes was challenged on remand***. This fact alone is dispositive and demonstrates that the mandate rule does not bar the motions to dismiss.

Additionally, not only do CSX's cases not address a situation, such as the one here, that involves the filing of an amended complaint, but also the rationale behind the mandate rule indicates that it has no applicability to such a situation. As CSX's own authority explains: "The mandate rule is a specific application of ***the law of the case doctrine***." *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (emphasis added). The law of the case doctrine concerns only issues that have been previously litigated and decided by the court. *See U.S. v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) ("The law of the case doctrine posits

that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Additionally, the "law of the case" is not always final and can be altered by the court that entered the order at issue. *See, e.g.*, *First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 620 (8th Cir. 2007).

Because it is a version of the law of the case doctrine, the mandate rule concerns "relitigation of issues expressly or impliedly decided by the appellate court." Doc. 906 at 2 (citing *Volvo Trademark*, 510 F.3d at 481). As this quote indicates, and consistent with the rule's origin in the law of the case doctrine, issues not decided by or before the appellate court do not come within the scope of the mandate rule. *E.g.*, *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988) ("Although the doctrine applies both to questions actually decided as well as to those decided by necessary implication, it does not reach questions which might have been decided but were not.") (citations, internal quotation marks omitted); *see also Quern v. Jordan*, 440 U.S. 332, 348 (1979); *Biggins v. Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir. 1997); Wright and Miller, 18B Fed. Prac. & Proc. Juris. § 4478.6 (2d ed.) ("Focus on the mandate rule is desirable only if its requirements are met . . . so long as further proceedings are otherwise appropriate on remand there is no point in pretending that the trial court owes fealty to a nonexistent appellate ruling."). This makes complete sense because issues cannot be the law of the case if they were not decided by the appellate court. CSX's attempt to use the mandate rule to bar any and all motions to dismiss on remand, including arguments based on issues not before and not decided by the appellate court, is a gross misreading of the rule and would impermissibly expand its scope.[3]

---

[3]  At pages 5 to 6 of its Opposition, CSX discusses "exceptions" to the mandate rule and argues that the Defendants' arguments do not fit within any exception. This discussion is a red herring. These exceptions apply only if the rule is applicable in the first place. Here, the rule is not applicable so CSX's discussion of the exceptions to the mandate rule is of no import.

The Fourth Circuit's opinion in this case was narrow and does not preclude any of the arguments made in the motions to dismiss. The Fourth Circuit held (1) that application of the statute of limitations should not have been made at the motion to dismiss stage because it required further factual development, (2) "futility" caused by the statute of limitations did not preclude CSX from filing its proposed Second Amended Complaint, and (3) issues existed as to whether fraud was committed by way of representation of the necessary element of occupational exposure by filing Baylor's FELA action. *See CSX v. Gilkison*, 406 F. App'x 723 (4th Cir. 2010). Defendants are not raising at this stage of the proceeding a statute of limitations argument or an argument based on Mr. Baylor's occupational exposure. The Fourth Circuit did not rule on or discuss any of the issues raised in the current motions to dismiss: RICO causation, lack of a causal nexus or reliance for fraud claims due to a lack of damages flowing from any claimed reliance, pleading failures under Rule 9, failure to plead the commission of two predicate acts by each Defendant, RICO's pattern requirement, or the constitutionality of civil RICO as applied. Nor were any of these issues within the specific subject matter that was ruled upon by the Fourth Circuit. Certainly, none of these issues was "laid to rest" by the Fourth Circuit. *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007); *see also Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 958-59 (6th Cir. 1997) (mandate did not bar litigation of damages issues on remand). Accordingly, neither the law of the case doctrine nor the mandate rule precludes any of the arguments made in the motions to dismiss.

Similarly, the arguments in the motions to dismiss have not, in any manner, been waived by an alleged failure to previously raise them in this Court. First, as explained above, the arguments stem from the new allegations in the Third Amended Complaint and, therefore, as a matter of fact and law, could not have been waived since the Third Amended Complaint was just filed in

October 2011. Second, assuming *arguendo* that the same arguments could have been raised with regard to the allegations in the original Amended Complaint, when an amended complaint is filed, "the new complaint supersedes all previous complaints and controls the case from that point forward. . . . Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses . . . To hold to the contrary would, in essence, enable plaintiffs to change their theory of the case while simultaneously locking defendants into their original pleading." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999); *see also Digital Privacy, Inc. v. RSA Sec., Inc.*, 199 F. Supp. 2d 457, 459 n.2 (E.D. Va. 2002) ("When a plaintiff files an amended complaint that changes the scope of the case, the defendant is allowed to answer the amended complaint anew as though it were the original complaint."), *dismissed by agreement, Inc.*, 56 F. App'x 497 (Fed. Cir. 2003).[4] Clearly, the motions to dismiss are proper. The mandate rule does not allow CSX to avoid a decision on the merits of the motions.

B.  The Third Amended Complaint Fails to Allege Reliance and Damages Based on Reliance As Required for Fraud and Fails to Allege the Proximate Causation Required by RICO

It is clear law that in order to state a fraud claim, CSX must plead facts demonstrating reliance on an alleged fraudulent representation and damages caused by that reliance. *E.g.*, *Stafford v. Radford Comm. Hosp.*, 908 F. Supp. 1369, 1375 (W.D. Va. 1995) (fraud claim dismissed since

---

[4]  In footnote 2 of its Opposition, CSX cites *Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974) for the proposition that the filing of an amended pleading does not revive defenses previously not raised. This is an overstatement of the holding in *Rowley* and *Rowley* is inapposite for several reasons. First, *Rowley* concerned a waiver of a challenge to personal jurisdiction, which waiver would not be revived by a new complaint since the party had submitted to the court's jurisdiction. This case does not involve issues of personal jurisdiction. Second, *Rowley* was based on Rules 12(g) and 12(h), which expressly state that a subsequent motion to dismiss cannot raise a waived personal jurisdiction defense. Rules 12(g) and (h) do not concern motions to dismiss attacking a new amended complaint but rather successive motions to the same complaint and have no applicability to a non-jurisdictional challenge to an amended complaint. Further, even as to the same complaint, pursuant to Rule 12(h)(1), Rule 12(b)(6) motions, such as those raised here, are not waived by failure to raise them in an initial motion. Third, as discussed above, the instant motions involve arguments that could not have been previously raised given the new factual allegations in the Third Amended Complaint and *Rowley* is inapposite for this reason as well.

damages were not the result of reliance on fraudulent representation), *aff'd*, 120 F.3d 262 (4th Cir. 1997) (table). Similarly, in order to state a RICO claim, CSX must plead facts showing that its purported RICO injury was proximately caused by the claimed fraudulent conduct. *E.g.*, *Chisolm v. Transouth Fin.*, 95 F.3d 331, 338 (4th Cir. 1996). The question of whether RICO causation has been adequately pled is initially a question of law for the court. *Chisolm*, 95 F.3d at 338. And, whether these required elements have been properly pled must be examined in light of Rule 9's heightened pleading standard for fraud and the Fourth Circuit's admonition to not permit "ordinary business contract or fraud disputes to be transformed into federal RICO claims" and to not allow every case that alleges "multiple individual instances of fraud" to be transformed into "a cause of action under RICO." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (internal quotation marks omitted). CSX's arguments in its Opposition do not refute the plain fact that, based on the face of the Third Amended Complaint and exhibits, CSX has not pled and cannot plead these required elements since, because the claims at issue were never individually litigated, no damages can be linked to any claimed fraudulent representation. *See* discussion at Doc. 888 pp. 5-7, 13-18.

Given common law fraud's elements of reliance and damages resulting therefrom as well as RICO's proximate causation element, it is not enough for CSX to allege that the Peirce Firm filed mass suits on behalf of clients who became clients at what CSX claims are improper screenings and then allegedly utilized the purported procedural imbalances of the Mass Litigation Panel discovery system to CSX's detriment. Doing so is not fraud. Nor is it sufficient to simply plead that eleven claims in the mass suits were allegedly fraudulent or that CSX purportedly relied on the claims. *See, e.g.*, Doc. 906 at 7. Rather, in addition to the other elements of civil RICO and fraud, CSX must plead that specific FELA claims were fraudulent

9

and plead facts establishing that its alleged damages are causally linked to reliance on the fraudulent representations as to these specific claims. CSX has failed to do so.

CSX does not dispute and, given the plain language of the complaint and exhibits, cannot dispute that ten of the eleven claims at issue were not litigated individually and were dismissed pursuant to broader motions attacking the larger FELA actions.  This admission is dispositive because, absent such individual litigation, there is no causal link between any purported damages and any alleged fraud. *See* discussion at Doc. 888 pp. 5-7, 13-18.

In a futile attempt to avoid this result, CSX cites to Paragraphs 176 and 179 of the complaint, which merely allege in conclusory fashion that "CSXT suffered damages in the amount of money it spent to process, defend and/or settle the fabricated claims." *See* Doc. 906 at 8. As a matter of law, this boilerplate, conclusory language is insufficient under the pleading requirements of Rule 9 and *Iqbal*.[5] Moreover, this purported allegation of damages does not establish either proximate causation for RICO purposes or damages caused by reliance on any alleged representation for purposes of common law fraud. Suffering alleged damages is different than suffering alleged damages in reliance on, or proximately caused by, a specific fraudulent representation. And, even assuming *arguendo* that the above allegation did allege proximate causation, this conclusory allegation cannot supplant the actual facts as demonstrated by the complaint and exhibits, which establish that the claims at issue were not individually litigated.[6] *See* discussion at Doc. 888 pp. 5-7, 13-18.

---

[5] The impropriety of this boilerplate allegation is clear—ten of the claims were in fact not settled or individually defended.

[6] This is not a scenario where the standard of viewing factual allegations in the "light most favorable" to CSX has any bearing. As the Fourth Circuit has stated, "generosity is not fantasy. We must read the complaint as plaintiff writes it . . . ." *Bender v. Suburban Hosp. Inc.*, 159 F.3d 186, 192 (4th Cir. 1998); *see also Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) ("[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it."). Defendants are using CSX's own facts as pled in the complaint. CSX's arguments

Implicitly conceding the above, CSX then argues that it has pled damages linked to the alleged fraud because it suffered "annoyance and inconvenience" related to allegedly expending "***internal*** resources to 'process' the fraudulently filed" claims. Doc. 906 at 9 (emphasis added). These purported internal resources allegedly included "some individualized investigation and analysis as to each plaintiff in the complaints." *Id*. at 10, 22. This argument does not save CSX's claims. First, to allow CSX to file and pursue slanderous, costly RICO claims against Messrs. Peirce, Raimond and Coulter on the grounds that it has been injured in having to internally process claims is shameful and contrary to the Fourth Circuit's expressed policy of not permitting ordinary disputes to be transformed into RICO claims. *See Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (dismissing action because claims were "not sufficiently outside the heartland of fraud cases to warrant RICO treatment.").

Second, CSX's claimed "annoyance and inconvenience" and non-economic internal resource costs related to these purported "internal resource" damages is not a basis for avoiding dismissal. ***CSX is a corporate entity and a corporate entity's damages can only be economic in nature***. *See* 9 Fletcher Cyc. Corp. § 4255 ("In such torts as malicious prosecution, the damages are restricted to those entailed on the corporation's property."). The sole case CSX relies on for its claimed ability to continue this costly action in order to recover "annoyance and inconvenience" damages, *Persinger v. Peabody Coal Co.*, 976 F. Supp. 1038 (S.D. W. Va. 1997), had an individual plaintiff, not a corporation. CSX's claim of purported damages of "annoyance and inconvenience" and non-economic internal resource costs are not a basis for avoiding dismissal because those alleged damages, as a matter of law, are not recoverable by a corporate entity.

---

regarding the "most favorable" standard, such as those at page 10 of its Opposition, are therefore irrelevant.

Based on its own pleading, as to the ten allegedly fraudulent claims at issue that were not settled, CSX has failed to establish the requisite causal link between any alleged fraud and its damages, which link is required to support its civil RICO and fraud claims. *See* discussion at Doc. 888 pp. 5-7, 13-18. Nothing in CSX's Opposition changes that and the motions to dismiss should be granted.

The authority cited by CSX—including *Raymark v. Stemple*, No. 88-1014, 1990 WL 72588 (D. Kan. May 30, 1990); *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076 (S.D.N.Y. 1994); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002); *Castle v. Crouse*, No. Civ. A. 03-5252, 2004 WL 257389 (E.D. Pa. Feb. 11, 2004); *U.S. v. Eisen*, 974 F.2d 246 (2d Cir. 1992); and *U.S. v. Marbella*, 73 F.3d 1508 (9th Cir. 1996)—does not dictate a contrary result. All of these cases involved settlements that were based on the fraudulent representations or other damages incurred by direct reliance on the fraudulent representations; thus, the requisite causal link was established in these cases. It is not established here. CSX's allegations not only fail to establish the requisite causal link but demonstrate that it affirmatively does not exist. The authority CSX relies on, therefore, is inapposite.[7]

CSX's final argument on this point is that its RICO claims and fraud claims should be allowed to proceed based on the settlement of Mr. Collier's *cancer* case for $25,000. Doc. 906 at 22. This argument, likewise, is unavailing. As the Court is well aware from having presided over this litigation for nearly six years, this case is and always has been about alleged fraudulent *asbestosis* claims. The core allegations in the Third Amended Complaint confirm this. *See*

---

[7]  CSX cites *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001) for the proposition that civil RICO's injury requirement "refers to the fact of injury and not the amount [of damages]." Doc. 906 at 22. While this may be true, *Potomac* does not excuse a plaintiff from establishing that it has damages and that those damages were proximately caused by the defendant's RICO conduct.  In fact, *Potomac*, which involved a breach of contract to service motors in a particular fashion, had such a direct link because the damages were tied directly to the breach of contract.

Third.Am.Compl. ¶¶ 144 ("Based on materials obtained through discovery in this case, CSXT has identified numerous instances in which Harron first determined that a Peirce firm screening attendee did not exhibit signs of *asbestosis*, but then later, based on a second x-ray, determined that the individual exhibited signs of *asbestosis* despite the objectively unchanged condition of the individual's lungs.") (emphasis added); *see also id*. at ¶¶ 17, 32-36, 57-58, 61, 75-78, 145-46. These allegedly fraudulent asbestosis determinations are the basis for the fraud pled by CSX. Faced with dismissal, CSX should not be permitted to turn its complaint into a moving target by all of a sudden making this case about Mr. Collier's cancer. CSX staked out the ground on which it wanted to litigate; it cannot now change that ground to avoid dismissal.

*Moreover and importantly, unlike its allegations regarding asbestosis, CSX has not alleged that Mr. Collier did not have cancer.* The lack of such an allegation precludes fraud and RICO claims premised on a representation related to Mr. Collier having cancer.

Finally, even accepting CSX's argument, with the civil RICO case whittled down to simply alleged damages related to Mr. Collier's settlement, CSX's civil RICO claim is certainly "not sufficiently outside the heartland of fraud cases to warrant RICO treatment." *Al-Abood v. El-Shamari*, 217 F.3d at 238. In addition, a civil RICO case cannot be maintained solely on the basis of a single predicate act. The motions to dismiss should be granted.

C.  CSX Improperly Conflates the Requisites for Establishing a Criminal Mail Fraud With the Requisites for Establishing a Civil RICO Claim

In their memoranda in support of their respective motions to dismiss, the Defendants cited the Court to extensive case law *in civil RICO actions* holding that a civil RICO action cannot, as a matter of law, be predicated *only* on predicate acts related to rote litigation activity such as filing complaints. *E.g.*, Doc. 888 at 7-9.  In response to this argument, CSX fails to cite a single civil RICO case holding that a claim can be premised solely on predicate acts based on simple

litigation filings such as is pled by CSX in the complaint.  Rather, CSX cites the Court only to cases that involve criminal mail fraud prosecutions.  This authority is not persuasive.[8]

First, although mail fraud can be a RICO predicate, the criminal mail fraud statute and the civil RICO statute are, obviously, two different statutes governed by different elements. The differences are critical and highlight the flaws in CSX's argument. Importantly, a criminal mail fraud conviction can be obtained even if no victim was actually defrauded. *E.g.*, *U.S. v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987). That is not the case with civil RICO where a plaintiff must show an injury that is proximately caused by the alleged RICO fraud. 18 U.S.C. § 1964(c).

Furthermore, unlike criminal mail fraud, the prosecution of which is tempered by the dictates of prosecutorial discretion, civil RICO has no such protections and is subject to abuse by civil litigants seeking to gain tactical advantages in business disputes and litigation—hence, the Fourth Circuit's expressed policy of construing civil RICO narrowly. *E.g.*, *Flip Mortg.*, 841 F.2d at 538. Preventing civil RICO claims from being based solely on simple litigation-related activities is a means of tempering this potential for abuse and is a protection that does not have or need an analog in criminal mail fraud prosecutions. CSX's reliance on criminal mail fraud cases is, therefore, inapposite. Accordingly, the Court should follow the civil RICO authority cited by the Defendants and dismiss CSX's civil RICO claims because they are founded solely on predicate acts related to typical litigation activity. *E.g.*, *Warnock v. State Farm*, Civ. No. 5:08-cv-001, 2011 WL 2446580 at *4 (S.D. Miss. June 15, 2011) (dismissing RICO claim "[b]ecause the evidence demonstrates only the transmittal of allegedly false litigation materials").[9]

---

[8] While CSX disputes whether the mailings at issue were "routine or innocuous" (Doc. 906 at 14-15), CSX does not and cannot dispute that all of its predicate acts relate to typical litigation activity. Further, as to the routine and innocuous nature of the mailings, the Court need only examine the letters at issue (which were made part of the complaint), which include cover letters enclosing courtesy copies of pleadings, to see that they are routine and innocuous. *See* Third.Am.Compl. Exs. OOO through TTT.
[9] CSX's citation to *Clark v. Druckman*, 624 S.E.2d 864, 872 (W.Va. 2005) is inapposite. The issue here is

Second, CSX's authority cited on pages 11 and 12 of its Opposition is inapposite for the additional reason that—unlike CSX's allegations here—the conduct in the cited cases involved mail fraud activity that was not premised only on routine litigation filings but involved other mailings as well and, in many instances, the mailings themselves were *per se* fraudulent, *i.e.*, fraudulent on their face or having a direct link to the fraud. For example, *U.S. v. Murr*, 681 F.2d 246 (4th Cir. 1982), involved the filing of false affidavits in a Section 1983 case; no such false affidavit is alleged to have been filed here. *U.S. v. Pritt*, Nos. 99-4581, 99-4651, 2000 WL 1699833 (4th Cir. Nov. 14, 2000), involved a multitude of fraudulent mailings to various insurance companies, not just litigation filings. *U.S. v. Lebovitz*, 669 F.2d 894 (3d Cir. 1982), involved mailings directed to medical payment and liability insurance carriers, not court filings, that were used to obtain settlement proceeds. *Eisen*, 974 F.2d 246, involved, *inter alia*, mailings associated with the submission of false insurance claims to insurance companies both before and during trial, as well as perjury and witness bribery. *G-I Holdings, Inc.*, 238 F. Supp. 2d at 531, concerned false affidavits that were filed with the court or sent to the defendant; again, CSX has not pled the filing of any false affidavits with the Court here. *U.S. v. Perkal*, 530 F.2d 604 (4th Cir. 1976), involved the mailing of fraudulent medical bills to insurance companies to obtain settlements. And, *U.S. v. Pierce*, 409 F.3d 228 (4th Cir. 2005), involved the mailing of fraudulent documents related to bingo game receipts and did not involve litigation mailings at all.

Simply, CSX's **criminal mail fraud** authority does not contradict the wealth of **civil RICO** authority cited by the Defendants which holds that a civil RICO claim cannot be premised solely on litigation-related mailings. Based on that civil RICO authority, CSX's civil RICO claims, which are founded only on such litigation-related mailings, should be dismissed.

---

whether a civil RICO action can be predicated only on typical litigation activity, such as sending cover letters to the court enclosing pleadings. *Clark* was not a civil RICO action and did not discuss civil RICO or what conduct can or cannot serve as civil RICO predicates.

D.  CSX's Improper Group Pleading Requires Dismissal

In its Opposition, CSX does not dispute that, in the Third Amended Complaint, it consistently and almost exclusively refers to the three individual lawyers who it has sued as individuals collectively as the "Lawyer Defendants." CSX attempts to justify this improper group pleading by arguing that it has alleged that the Defendants acted in concert. Doc. 906 at 18. Such a "collective causation" theory, however, does not excuse noncompliance with Rule 9 and *Iqbal* and CSX's arguments actually highlight the improper nature of its group pleading.[10] Tellingly, with one exception, all of the Rule 9 authority cited by CSX in the relevant section of its brief (Doc. 906 at 17-20) was decided before the Supreme Court's decision in *Iqbal*.

The only post-*Iqbal* case cited by CSX, *Haley v. Corcoran*, 659 F.Supp.2d 714, 721 (D. Md. 2009) actually supports the Defendants' argument that CSX's group pleading is improper. The *Haley* court, in discussing Rule 9 post-*Iqbal* stated: "When a complaint alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff identify each defendant's participation in the alleged fraud. This principle extends to allegations of fraud on the basis of an agency relationship: '[C]onclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b).'" *Id*. (internal citations omitted). The *Haley* Court went on to grant dismissal under Rule 12(b)(6) because "[t]he complaint alleges no

---

[10]  CSX complains that the Defendants did not raise a similar group pleading challenge to the Amended Complaint. Doc. 906 at 16-17. This contention is of no legal import as the filing of the Third Amended Complaint allows Defendants to bring new motions under Rule 12(b)(6). *E.g.*, *Massey*, 196 F.3d at 735. At page 20 of its Opposition, CSX's cites to the Court's March 28, 2008 Order (Doc. 264) for the proposition that the Court has previously rejected the Rule 9 arguments made in the current motions to dismiss. The Court did not do so. The current Rule 9 arguments were not before the Court at that time; the only Rule 9 argument made previously was that CSX violated Rule 9 by failing to adequately plead that the challenged representations were false because they were simply disputing the opinion of an expert (Dr. Harron). *See* Doc. 231 at 10-12 and Doc. 237 at 6-10. CSX's contention that the current issues have previously been litigated and decided is incorrect and cannot forestall dismissal of the Third Amended Complaint. Further, the briefing on that issue and the Court's decision all predate *Iqbal*.

representations by Option One, but generally asserts fraudulent conduct by all the defendants. This undifferentiated assertion of fraud against multiple defendants is prohibited by Rule 9(b)." *Id*. at 724. CSX's complaint similarly should be dismissed because, given its extensive group pleading, it offers nothing more than the type of conclusory allegations rejected in *Haley*.

One example from CSX's Opposition puts the improper nature of its group pleading in perspective. On page 19, CSX writes: "The Third Amended Complaint properly alleges that the Lawyer Defendants collectively caused the filing of ***each of the 11*** fraudulent claims at issue . . ." (citing Third.Am.Comp. ¶165) (emphasis added). This is patently not credible on its face. Mr. Raimond had retired from the firm and Mr. Coulter had left the firm by the time five of the eleven claims at issue were filed. *Compare* Third.Am.Compl. ¶147 *with* Docs. 529 and 530. CSX's attempt to use group pleading to implicate the Defendants in these filings is improper and should be rejected. CSX's similar group allegation, which it ironically tries to use to justify its group pleading, that "the lawyer Defendants were ***at all times relevant herein*** partners, members or shareholders of, or otherwise employed by or associated with, [the Peirce Firm]" (Doc. 906 at 18 citing Third.Am.Compl. ¶13) (emphasis added), utterly fails to account for the individual circumstances that apply to the respective Defendants—Mr. Raimond retiring in December 2003 and Mr. Coulter leaving the firm in May 2005. Rule 9 requires that these individual circumstances be accounted for when suing individuals for fraud and RICO—CSX's group pleading clearly offends this fundamental principle.[11]

This is particularly true given that the "acting in concert" allegations on which CSX tries to justify its group pleading are conclusory in nature and not substantiated by any additionally pled

---

[11] *Tribune Co.*, 869 F. Supp. at 1091, relied on by CSX, is not to the contrary. There, although several unions were sued, the plaintiff identified particular acts by each particular union even if all of the unions participated in some of the acts. *Id*. This is not the same as simply pleading that the "lawyer Defendants" collectively committed all relevant acts as CSX does.

facts, which lack of proper factual pleading is particularly egregious in light of the fact that CSX has already taken extensive discovery including deposing Mr. Peirce (twice), Mr. Raimond, Mr. Coulter and Dr. Harron. *See, e.g.*, Doc. 906 at 18-19 (citing Third.Am.Compl. ¶¶ 13, 18 and 154). *Iqbal* and Rule 9 require more than such conclusory allegations, particularly when pleading fraud and civil RICO based on fraud. *Haley, supra.*

Additionally, in the civil RICO context, such group pleading is offensive to the statutory requirement that, in order to state a substantive civil RICO count against a person, that **individual** must be alleged to have committed at least two racketeering acts. *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997).[12] To allow conclusory group pleading based on a theory that several defendants were acting in concert—as CSX admits it is trying to do here—to satisfy such statutory requirement would conflate the requirements to state a claim against each individual for a substantive RICO offense (Count 1) with the requirements of a RICO conspiracy (Count 2). As a matter of law, for a given defendant to have committed a substantive civil RICO violation (Count 1), that defendant, *inter alia*, must personally have committed at least two racketeering acts. *Palmetto, supra.* On the other hand, as long as at least one conspirator has committed the requisite two racketeering acts, each conspiring defendant can be liable for RICO conspiracy (Count 2). *See Salinas v. U.S.*, 522 U.S. 52 (1997). What CSX is trying to do through its collective pleading and concert of action theory is to obfuscate its failure to plead two predicate acts by each of the three defendants as required for Count 1, as well as its

---

[12] At page 20 of its Opposition, CSX criticizes the Defendants' reliance on *Palmetto* and contends that each predicate act by each Defendant need not have caused injury to it. However, CSX does not dispute that each defendant must have committed at least two predicate acts to be liable for a substantive civil RICO offense. It is in support of this clear point of law—that each defendant must have committed at least two racketeering acts—that the Defendants cite to *Palmetto* and *Palmetto* clearly supports this proposition and is controlling Fourth Circuit law on this point. *Palmetto*, 117 F.3d at 148. CSX's attempt to distinguish *Palmetto* is, therefore, unpersuasive. Moreover, in a suit like this where only a single alleged victim is involved, to recover damages from such a proper predicate act, the act would need to have caused a RICO injury to CSX.

18

failure to plead two predicate acts by any particular defendant as required to make out a RICO conspiracy (Count 2). Accordingly, both Counts 1 and 2 should be dismissed.[13]

E.   CSX Has Alleged Only Sporadic Activity and, Therefore, Has Failed to Plead the Requisite
      Pattern Of Racketeering Activity

Like the question of RICO causation, whether a party has properly alleged a pattern of racketeering activity is initially a question of law for the court that must be examined on a case-by-case basis and assessed on the allegations in the complaint. *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987) (dismissal for failure to allege pattern); *Menasco, Inc. v. Wasserman*, 886 F.2d 681 (4th Cir. 1989) (12(b)(6) dismissal for failure to allege a pattern).

In answering this question of law, it should be kept in mind that "the heightened civil and criminal penalties of RICO are reserved for schemes whose scope and persistence set them above the routine . . . Congress chose the 'pattern requirement' of § 1962(a) as the mechanism by which 'ordinary claims of fraud best left to "the state common law of fraud"' are distinguished from those activities of such a 'criminal dimension and degree' as to warrant the extraordinary remedies of RICO." *HMK Corp. v. Walsey*, 828 F.2d 1071, 1074, 1077 (4th Cir. 1987); *see also Al-Abood*, 217 F.3d at 238 (upholding dismissal of the RICO claim, as a matter of law, because it was "not sufficiently outside the heartland of fraud cases to warrant RICO treatment."). Sporadic, isolated conduct does not constitute a RICO pattern. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989); *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985).

As discussed above, despite its attempt to cast as broad a net as possible and argue that "one hundred percent of the Lawyer Defendants' conduct related to the mass suits . . .was racketeering

---

[13] CSX's citation to *U.S. v. Wilson*, 506 F.2d 1252, 1257 (7th Cir. 1974) for the proposition that, in a criminal wire fraud case, co-conspirators may be liable for the acts of other conspirators is of no force in the civil RICO context where the statute expressly requires that each individual defendant must have committed at least two predicate acts in order to be liable. Further, in the civil context, unlike the criminal context, conspiracy is not a separate offense and proof of an underlying substantive tort is required in order for liability to attach. *E.g.*, *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 688 (E.D. Va. 2008).

activity" (Doc. 906 at 25), CSX's claims must be founded on (and, therefore, limited to) the eleven asbestosis claims the Third Amended Complaint alleges were fraudulent. *See supra* pp. 1-2. It cannot be disputed that these eleven claims amount to two-tenths of one percent (0.2%) of the asbestosis claims filed by the Peirce Firm against CSX that are involved in the FELA actions referenced in the complaint.   *See* Third.Am.Compl. ¶ 89 (alleging the filing of over 5,300 claims). If the Supreme Court's dictate that sporadic, isolated conduct does not create a "pattern of racketeering activity" under RICO has any meaning—and it must or else the Supreme Court would not have expressly excluded such from RICO's purview—then the alleged existence of fraud in 0.2% of the Peirce Firm's claims cannot amount to a RICO pattern. Accordingly, as a matter of law, the Court should dismiss CSX's civil RICO claims.

CSX's reliance on *U.S. v. Alkins*, 925 F.2d 541 (2d Cir. 1991), and the other general authority cited in the section of CSX's Opposition discussing RICO's pattern requirement, does not change this conclusion. *Alkins* was a criminal prosecution involving public employees who took bribes to falsify motor vehicle records, and the conduct was "repeated and widespread." *Id*. at 552. Given that the Court must assess whether the pattern requirement is met on a case-by-case basis and based on the facts as alleged in the specific case before it, *Alkins* and CSX's other authority—all of which are factually inapposite and none of which involved alleged fraud in only 0.2% of the conduct at issue—are not persuasive and do not contradict the common-sense conclusion that alleged fraud in 0.2% of the cases filed by the Peirce Firm does not constitute a pattern of racketeering activity.

Nor does CSX's Supplement (Doc. 908) filed on December 19, 2011, dictate a contrary result. In their moving memoranduma, the Defendants discussed the fact that this is a single-victim case and cited Fourth Circuit law indicating that the Fourth Circuit frowns on single-victim RICO

20

claims. In an apparent attempt to belatedly counter this argument, CSX's Supplement contends that CSX has alleged that "asbestos bankruptcy settlement trusts" were also victims of the alleged conduct. *See* Doc. 908. While the Supplement makes this argument, the allegations of the Third Amended Complaint—which are what is at issue—do not support it. In the Supplement, CSX cites to Paragraph 78 of the complaint, but this paragraph does not allege that the "trusts" were allegedly defrauded in any manner but only that fees from trust claims were allegedly used to help fund litigation against CSX. Moreover, CSX's contention is directly contrary to its own Opposition filed just three days prior, wherein, at page 27, CSX indicates that it is the only victim of the alleged conduct. *See* Doc. 906 at 27 ("Victims—CSXT"). CSX's last minute attempt to redraft its allegations by way of a Supplement that incorrectly states the allegations in the Third Amended Complaint and that contradicts its own Opposition is a tacit recognition that the allegations of the complaint are insufficient to establish a RICO pattern.

For all of the above reasons, the respective Motions to Dismiss filed by Defendants Peirce, Raimond and Coulter should be granted.

Dated:  December 23, 2011     s/ David J. Berardinelli
                                 Walter P. DeForest (WVSB #7388)
                                 David J. Berardinelli (WVSB #10479)
                                 DEFOREST KOSCELNIK YOKITIS SKINNER & BERARDINELLI
                                 3000 Koppers Building
                                 Pittsburgh, PA l5219 - (412) 227-3100
                                 *Attorneys for Robert N. Peirce, Jr., Louis A. Raimond and Mark T. Coulter*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of December 2011, true and correct copies of the foregoing document have been served via the Court's ECF electronic filing system upon the following counsel:

Marc E. Williams (WVSB #4062)
Robert L. Massie (WVSB #5743)
Nelson Mullins
949 Third Ave., Suite 200
Huntington, WV  25701
*Counsel for Plaintiff*

Samuel L. Tarry, Jr.
Mitchell K. Morris
McGuire Woods
One James Center
901 East Cary Street
Richmond, VA 23219-4030
*Counsel for Plaintiff*

Ron Barroso
5350 S. Staples, Suite 401
Corpus Christi, TX 78411
*Counsel for Defendant Harron*

Jerald E. Jones
West & Jones
PO Box 2348
Clarksburg, WV 26302-2348
*Counsel for Defendant Harron*

s/ David J. Berardinelli