IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

| | |
|---|---|
| **CSX TRANSPORTATION, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. 5:05-CV-202 |
| v. ) | |
| ) | Assigned to: |
| **ROBERT N. PEIRCE, JR.,** *et al.*, ) | The Hon. Frederick P. Stamp |
| ) | Referred to: |
| **Defendants.** ) | The Hon. James E. Seibert |

**CSX TRANSPORTATION, INC.'S OBJECTIONS TO PORTIONS OF MAGISTRATE JUDGE SEIBERT'S MARCH 27, 2012 ORDER REQURING CSXT TO PROVIDE INFORMATION AND DOCUMENTS CONTAINED IN CSXT'S OUTSIDE COUNSELS' FILES FROM 10,000 ASBESTOS-RELATED CLAIMS BROUGHT BY LAW FIRMS OTHER THAN THE PEIRCE FIRM WHICH ARE LOCATED AT 40 DIFFERENT LAW FIRMS**

Comes now Plaintiff, CSX Transportation, Inc. ("CSXT"), by and through its counsel, pursuant to Federal Rules of Civil Procedure 26 and 72 and files these *Objections to Portions of Magistrate Judge Seibert's March 27, 2012 Order Requiring CSXT to Provide Information and Documents Contained in CSXT's Outside Counsels' files from 10,000 Asbestos-Related Claims Brought by Law Firms Other than the Peirce Firm Which are Located at 40 Different Law Firms*.

**I.    INTRODUCTION**

On March 27, 2012, Magistrate Judge Seibert issued an order requiring CSXT to provide further information in response to certain of Defendant Coulter's first interrogatories and requests for production (the "March 27th Order" or the "Order"). (*See* Doc. 993). Among other things, the Order requires CSXT, **by April 26th**, to provide certain information and documents contained in CSXT's outside counsels' files from approximately **10,000 asbestos-related claims brought by law firms other than the Peirce Firm**. (*See id.* at 5, 7-10, 15-16.) These case files are in the possession of approximately 40 different law firms scattered across the eastern United States. (*See* Doc. 931, Ex. 3 ¶¶ 6-7; Hr'g Tr. 9:23-11:1 (Feb. 27, 2012) (hereinafter "Mot. Hr'g Tr.") (relevant portions attached as Exhibit 1).) The undisputed record evidence is that it will cost CSXT an estimated $1.5 million and take approximately 3,000 man

1

hours to make this information available to Coulter.  (*See* Doc. 993 at 4, Findings of Fact ¶ 4; Doc. 931, Ex. 3 ¶¶ 11-12; Mot. Hr'g Tr. 14:5-15:15.)

CSXT only objects to the portions of the March 27th Order that require CSXT to produce information and documents contained in its outside counsels' files from the 10,000 asbestos-related cases brought by law firms other than the Peirce Firm.  CSXT does not object to any other aspect of the Order and is working diligently to comply with all aspects of it pending a ruling on CSXT's motion for stay and/or these Objections.

**II.     SUMMARY OF ARGUMENT**

CSXT respectfully submits that the March 27th Order is both "clearly erroneous" and "contrary to law" to the extent it requires CSXT to provide information contained in its outside counsels' files from the 10,000 non-Peirce Firm cases.  *See* Fed. R. Civ. P. 72(a).  In particular, in denying CSXT's motion for protective order and overruling CSXT's burdensomeness objections, the Magistrate failed to conduct the "proportionality" analysis required by Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit."); s*ee also Tucker v. Am. Int'l Group, Inc.*, 2012 U.S. Dist. LEXIS 35374, *19-20 (D. Conn. Mar. 15, 2012) ("Under Rule 26(b)(2)(C), courts impose a proportionality test . . . to determine whether discovery, even if relevant, should be allowed to proceed.").  Instead, the Magistrate simply concluded that the information in question was "relevant" and ordered CSXT to respond because CSXT's "net income was over 3.1 billion dollars last year" and there was no "evidence that production would be impossible . . . or that it would adversely impact operational capabilities."  (*See* Doc. 993 at 9.)

The Magistrate's reduction of Rule 26(b)(2)(C)'s mandatory proportionality analysis into a simple "ability to pay" inquiry was a clear abuse of discretion.  It is well-settled in the Fourth Circuit and elsewhere that in determining whether "to set limits on discovery, the proper test is

2

not whether one's opponent has the ability to pay." *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 124 (M.D.N.C. 1989). Rather, courts must determine whether "the burden or expense of the proposed discovery **outweighs its likely benefit**." Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added). Here, the Magistrate's sole focus on CSXT's "ability to pay" without reference to or consideration of whether the cost of the discovery in question outweighs its potential benefit renders the Magistrate's conclusions both clearly erroneous and contrary to law. *See* Fed. R. Civ. P. 26(b)(2)(C). Indeed, a proper application of the proportionality factors set forth in Rule 26(b)(2)(C) clearly demonstrates that the burden and expense associated with discovery of information contained in CSXT's outside counsels' files from the 10,000 non-Peirce Firm case files far outweighs any possible benefit to Coulter. As such, CSXT respectfully submits that the relevant portions of the March 27th Order should be reversed.

## III.   BACKGROUND

CSXT's Third Amended Complaint alleges that Robert Peirce, Louis Raimond, Mark Coulter (collectively "the Lawyer Defendants") and Ray Harron, M.D. ("Harron") conspired to manufacture, file and prosecute fraudulent asbestos claims against CSXT. In particular, the Third Amended Complaint identifies 11 specific fraudulent claims ("the claims at issue") filed between 2002 and 2006[1] and pleads causes of action for civil RICO, RICO conspiracy, common law fraud and common law conspiracy based on those claims and related misconduct. Importantly, only one of the claims at issue, that of Morris Collier, was settled by CSXT and that claim involved allegations of asbestos-related bladder cancer in addition to asbestosis. (*See* 3d Am. Compl. ¶ 147.) The ten remaining claims at issue were dismissed at various times between 2006 and June 2010. (*See id.*)

Since written discovery recommenced in this case, CSXT has provided Defendants with documents and information collected from 1) its own internal files, 2) its outside defense

---

[1] The claims at issue filed in 2006 were dismissed later that year, re-filed in 2008, and then dismissed again in 2009. (*See* 3d Am. Compl. ¶¶ 128, 132, 134-35, 137, 147.)

3

counsels' files from the approximately 8,000 asbestos-related cases brought by the Peirce Firm against CSXT since 1993, and 3) its outside counsels' files from a document intensive arbitration between CSXT and its insurers over coverage for asbestos-related claims (hereinafter "the insurance arbitration"). (*See* Doc. 931 at 12-13.) To date, CSXT has produced approximately 120,000 pages of documents and recorded an additional 13,000 documents on its privilege log. CSXT has also provided Defendants with, among other information, a 317 page spreadsheet identifying every asbestos-related claim settled by CSXT between January 1, 1993 and July 1, 2007—over 13,000 in total.[2] (*See* Pl. CSXT's 1st Supp. Resps. to Coulter's 1st Interrog. re 3d Am. Compl., No. 2 Ex. 1.) For each of those 13,000 claims, the spreadsheet provides the date of filing, the jurisdiction, the claimant's counsel and the settlement amount. (*See id.*)

### IV. THE MAGISTRATE JUDGE'S ORDER AND CSXT'S OBJECTIONS

The relevant portions of the March 27th Order require CSXT to provide the following information:

1. For each of the approximately 13,000 asbestos-related claims settled by CSXT between January 1, 1993 and July 1, 2007, the name of the experts used in the claim and whether the case was "cancerous" or "non-cancerous" (Doc. 993 at 7-9, 14);[3]

2. For each B reader that CSXT used to interpret a chest x-ray submitted by the Peirce Firm on behalf of asbestos clients between January 1, 1993 to July 1, 2007, 1) the total number of x-rays that each doctor read for CSXT in asbestos cases brought by any law firm, and 2) the total number of such x-rays that each doctor read as "positive" (*id.* at 14-15);

3. All ILO forms related to the approximately 13,000 asbestos-related claims settled by CSXT from January 1, 1993 to the present (*id.* at 8-9, 16-17);

---

[2] Throughout these objections, CSXT refers to the 1) total number of asbestos-related cases brought against CSXT since 1993, and 2) the total number of asbestos-related cases that CSXT has settled since 1993. Those numbers are approximately as follows: 1) 18,000 asbestos-related claims brought since 1993 (8,000 by the Peirce Firm; 10,000 by law firms other than the Peirce Firm), and 2) 13,500 asbestos-related claims settled since 1993 (5,000 Peirce Firm cases; 8,500 non-Peirce Firm cases). (*See* Doc. 931, Ex. 3 ¶¶ 6-9); Mot. Hr'g Tr. 10:6-11:1.)

[3] The March 27th Order also requires CSXT to provide the plaintiff's counsel and settlement amount for each such claim, but, as noted above, CSXT has already provided that information. (*See supra* at 4.)

4. All documents related to or reflecting CSXT's awareness of the use of occupational illness screenings by law firms other than the Peirce Firm (*id.* at 15); and,

5. Documents relating to Defendant Harron that may be contained in CSXT's outside counsels' files from the 10,000 asbestos-related claims brought by law firms other than the Peirce Firm since 1993 (*id.* at 9-10).

With respect to numbers 1-3 above, the record is undisputed that the subject information and documents—to the extent they exist at all—reside solely in outside defense counsels' files for the claims in question. (*See* Doc. 931 Ex. 3 ¶¶ 3-5; Mot. Hr'g Tr. 8:9-12:3.) Importantly, as noted above, CSXT does **not object** to providing the subject information and documents to the extent they reside in outside counsels' files from the 8,000 asbestos-related claims brought by the Peirce Firm. Rather, CSXT's objections are limited to information and documents contained in its outside counsels' files from the 10,000 asbestos-related claims brought by law firms other than the Peirce Firm. Similarly, with respect to number 4 above, CSXT only objects to the extent responsive documents are contained in its outside counsels' files for the 10,000 non-Peirce Firm claims.

With respect to number 5 above, it is important to note that CSXT has already produced or recorded on its privilege log Harron-related documents gathered from 1) its own internal files, 2) its outside defense counsels' files from the approximately 8,000 asbestos-related cases brought by the Peirce Firm against CSXT since 1993, and 3) its outside counsels' files from the insurance arbitration. (*See* Doc. 931 at 12-13.) CSXT once again only objects to the extent responsive documents are contained in its outside counsels' files from the 10,000 non-Peirce Firm claims.

V. **STANDARD OF REVIEW**

Reversal of a magistrate's ruling concerning non-dispositive pretrial matters is required when the ruling is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake

5

has been committed." *Kartman v. Markle*, 2011 U.S. Dist. LEXIS 120695, *3-4 (N.D. W. Va. Oct. 18, 2011) (Stamp, J.) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)). Likewise, a ruling is "contrary to law" when "it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y 2000).

**VI.   ARGUMENT**

    *A.   Rule 26(b)(2)(C) requires courts to conduct a proportionality analysis to determine whether the burden or expense of discovery outweighs its likely benefit.*

Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure provides as follows:

> On motion or on its own, the court **must** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*Id.* (emphasis added). Simply put, Rule 26(b)(2)(C) "**requires** a court to consider proportionality when confronting discovery issues." *Bouchard v. Whetstone*, 2010 U.S. Dist. LEXIS 46776, *7 (D. Colo. Apr. 9, 2010) (emphasis added). In determining proportionality, that is, whether the burden or expense of the proposed discovery outweighs its likely benefit, courts must consider the following factors:

> (i) the unreasonably cumulative or duplicative effect of the discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the information by [other] discovery;" and (iii) "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

6

*In re Front Loading Washing Mach. Class Action Litig.*, 2010 U.S. Dist. LEXIS 77440, *4-5 (D.N.J. July 29, 2010) (quoting Fed. R. Civ. P. 26(b)(2)(C)).  "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry."  *Id.* at *5 (citations and quotations omitted); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357, 363 (E.D. Pa. 2004) ("This underlying principle of proportionality means that even in complex litigation, discovery does not require leaving no stone unturned.") (quoting Manual for Complex Litigation (Fourth) § 11.41 (2004)).  "Both the Supreme Court and the Federal Rules of Civil Procedure Advisory Committee have emphasized the importance of the 26(b)(2)(C) proportionality limit on fair and efficient operation of discovery rules."  *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 73 (D. Conn. 2010).

> B. *The Magistrate did not conduct a proportionality analysis with respect to the discovery of information contained in CSXT's outside counsels' files from the 10,000 non-Peirce Firm claims; instead, he focused solely on CSXT's ability to pay.*

CSXT's motion for protective order concerning Coulter's first requests for production expressly invoked Rule 26(b)(2)(3)'s proportionality limit with respect to the discovery of information contained in CSXT's outside counsels' files from the 10,000 claims brought by law firms other than the Peirce Firm.  (*See* Doc. 931 at 12-16.)  In particular, CSXT argued that the burden associated with locating Harron-related documents in its outside counsel' files from the 10,000 non-Peirce Firm cases far outweighs any potential benefit to Coulter, particularly in light of the volume of Harron-related documents CSXT has already produced or logged from its own files, its outside counsel's files from the 8,000 claims brought by the Peirce Firm, and its outside counsels' files from the insurance arbitration (which include documents related to both Peirce and non-Peirce cases).  (*See id.*)  CSXT incorporated these same proportionality arguments in response to those portions of Coulter's motion to compel seeking other information contained in CSXT's outside counsels' files from the 10,000 non-Peirce cases, such as the identity of the

7

experts utilized in those cases and the ILO forms they completed.  (*See* Doc. 945 at 10-12, 14-15.)

Although the Magistrate's March 27th Order purports to find that "[t]here is no unreasonable burden in ordering the requested discovery," (*see* Doc. 993 at 4 ¶10), the Magistrate clearly failed to conduct the requisite proportionality analysis with respect to the discovery of information contained in CSXT's outside counsels' files from the 10,000 non-Peirce Firm cases.  In fact, the Magistrate only addressed the issue of the 10,000 non-Peirce Firm case files in the context of Coulter's request for Harron-related documents.  On that point, although the Magistrate referenced the proportionality factors set forth in Rule 29(b)(2)(C), he did not apply or consider them.  Instead, the Magistrate simply concluded that the information in question was "relevant"[4] and ordered CSXT to respond because CSXT's "net income was over 3.1 billion dollars last year" and there was no "evidence that production would be impossible . . . or that it would adversely impact operational capabilities."  (*See* Doc. 993 at 9.)

The Magistrate's sole focus on CSXT's "ability to pay" without any corresponding analysis of whether "the burden or expense of the proposed discovery **outweighs its likely benefit**" was contrary to law and an abuse of discretion.  Fed. R. Civ. P. 26(b)(2)(C)(iii) (emphasis added).[5]  Indeed, as already stated, it is well-settled in the Fourth Circuit and elsewhere that in determining whether "to set limits on discovery, the proper test is not whether one's opponent has the ability to pay."  *Marker*, 125 F.R.D. at 124; *see also id.* at 125 (The fact

---

[4] The Magistrate's finding that the information in question is "relevant" is largely immaterial for purposes of Rule 26(b)(2)(C)'s proportionality analysis, which is specifically concerned with limiting discovery that is "otherwise allowed by these rules."  *See, e.g. Tucker*, 2012 U.S. Dist. LEXIS 35374, at \*19-20 (noting that Rule 26(b)(2)(C) "proportionality test" is used "to determine whether discovery, **even if relevant**, should be allowed to proceed") (emphasis added).  Indeed, if the information in question were not relevant, then it would be non-discoverable pursuant to Rule 26(b)(1) and there would be no need to consider Rule 26(b)(2)(C).  As will be discussed in section V(C) below, for purposes of Rule 26(b)(2)(C), the pertinent inquiry is not relevance *per se*, but rather the degree of relevance considered in light of the other factors set forth in the Rule.

[5] Even if this Court were to conclude that Magistrate Judge Seibert did somehow conduct a proportionality analysis, he still clearly erred in finding that the massive burden and expense associated with discovery of CSXT's outside counsels' files from the 10,000 non-Peirce Firm cases did not outweigh the potential benefit to Coulter.  (*See infra* at Sec. VI(C).)

that the party from whom the discovery is sought "is a large company . . . is not a decisive factor in resolving discovery disputes."); *Thermal Design, Inc. v. Guardian Bldg. Prods.*, 2011 U.S. Dist. LEXIS 50108, *5 (E.D. Wis. Apr. 20, 2011) (Discovery should not be permitted "simply because the party resisting discovery can afford to comply."); *Oracle Corp. v. SAP AG*, 2008 U.S. Dist. LEXIS 88319, *6-8 (N.D. Cal. July 3, 2008) (granting corporate party relief pursuant to Rule 26(b)(2)(C) and noting that "[m]any of the parties" in "major document-intensive cases in federal court . . . have large resources," but "if they have to expend many millions of dollars on discovery in each lawsuit that fits this profile, . . . businesses will be mired in exorbitantly costly litigation where the process of discovery becomes so onerous and prohibitively expensive that it no longer facilitates resolution on the merits as a means to an end, but dominates and derails the litigation process"); *Wood v. Capital One Servs., LLC*, 2011 U.S. Dist. LEXIS 61962, *21-38 (N.D.N.Y Apr. 15, 2011) (granting relief pursuant to Rule 26(b)(2)(C) even though the parties resisting discovery were "large corporations [with] resources available to finance the effort that would be required to meet plaintiff's sweeping discovery demands"); *Oracle Am., Inc. v. Google, Inc.*, 2011 U.S. Dist. LEXIS 94357 (N.D. Cal. Aug. 23, 2011) (affording relief to Google pursuant to Rule 26(b)(2)(C)'s proportionality analysis). It is likewise well-settled that a magistrate abuses his or her discretion where, as Magistrate Judge Seibert did here, he or she erroneously places undue weight on one proportionality factor to the exclusion of all others. *See, e.g., During v. City Univ. of N.Y.*, 2006 U.S. Dist. LEXIS 53684, *15-17 (S.D.N.Y. Aug. 1, 2006).

   C. When properly considered in light of the factors set forth in Rule 26(b)(2)C), the burden of providing discovery from CSXT's outside counsels' files from the 10,000 non-Peirce Firm cases far outweighs any potential benefit to Defendants.

  As already explained, the record is undisputed that the 10,000 non-Peirce Firm case files in question are located at 40 different law firms scattered across the eastern United States and that it will cost CSXT an estimated $1.5 million to make information and documents contained in those files available to Coulter. (*See, e.g.*, Doc. 931, Ex. 3.) This is an enormous burden, especially considering that CSXT has already spent a comparable sum to date

9

providing information and documents from its own files, its outside counsels' files from the 8,000 cases brought by the Peirce Firm, and its outside counsels' files from the insurance arbitration and is now obligated by the March 27th Order to provide additional information from those sources. When properly considered in light of the factors set forth in Rule 26(b)(2)C), it is clear that the burden of providing discovery from CSXT's outside counsels' files from the 10,000 claims brought by law firms other than the Peirce Firm far outweighs any potential benefit to Coulter.

        1.    <u>Harron-related documents.</u>

Importantly, CSXT has already produced Harron-related documents from its 1) its own internal files, 2) its outside counsels' files from the 8,000 asbestos-related cases brought by the Peirce Firm since 1993, and 3) its outside counsels' files from the insurance arbitration. To date, CSXT has produced over 6,700 documents in response to this request. Further, the overwhelming majority of the 13,000 documents identified on CSXT's privilege log relate to Harron as well.

The burden associated with discovery of Harron-related documents from CSXT's outside counsels' files from the 10,000 non-Peirce cases outweighs any benefit to Coulter for two key reasons. First and foremost, such discovery is unreasonably cumulative and duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). As stated above, CSXT has already produced thousands of Harron-related documents from multiple sources and identified many thousands more on its privilege log. Coulter's primary theory of relevance for such documents is that they may demonstrate that CSXT questioned the veracity of Harron's B reads. Even if Coulter is correct, that fact will be reflected in the thousands of Harron-related documents that CSXT has already produced. There has been no showing by Coulter or finding by the Magistrate that Harron-related documents contained in CSXT's outside counsels' files from the 10,000 non-Peirce Firm cases are so critically or materially different from the Harron-related documents that CSXT has already produced so as to justify the massive burden associated with providing that discovery.

In this regard, it is important to note that CSXT already *has* produced or logged numerous Harron-related documents from *non-Peirce Firm* cases. Indeed, correspondence (to and from outside counsel) and other documentation relating to such cases exists in and was produced from both CSXT's internal files and its outside counsels' files from the insurance arbitration. This fact only underscores the unreasonably cumulative and duplicative nature of discovery related to CSXT's outside counsels' files from the 10,000 non-Peirce Firm cases.

Second, to the extent Harron-related documents from cases brought by law firms other than the Peirce Firm are relevant at all, they are *substantially less relevant* than documents related to Peirce Firm cases, which have already been provided to Coulter. (*See* Doc. 931 at 13.) Indeed, CSXT's Third Amended Complaint alleges that Harron conspired to defraud CSXT with *the Lawyer Defendants* and not other law firms. Documents from non-Peirce Firm cases will shed no light on CSXT's knowledge of Harron's interactions with *the Lawyer Defendants*. *See, e.g.*, *Wood*, 2011 U.S. Dist. LEXIS 61962, at *10. (N.D.N.Y Apr. 15, 2011) ("The rule of proportionality serves to protect a party against having to produce voluminous documents of questionable relevance.").

Accordingly, because the discovery of Harron-related documents contained in CSXT's outside counsels' case files from the 10,000 non-Peirce Firm cases is unreasonably cumulative and duplicative and because such documents are only marginally relevant, the massive burden associated with such discovery clearly outweighs any possible benefit to Coulter. (*See, e.g.*, Doc. 931 at 12-16.) The portions of the March 27th Order permitting such discovery should, therefore, be reversed.

2. <u>ILO forms related to the 13,000 asbestos-related claims settled by CSXT since 1993.</u>

The March 27th Order also requires CSXT to produce all ILO forms relating to the 13,000 asbestos-related claims settled by CSXT since 1993. As noted above, CSXT does not

11

object to providing these documents insofar as they relate to the approximately 5,000 such cases that were brought by the Peirce Firm; CSXT only objects as to non-Peirce Firm cases.

Magistrate Judge Seibert's rationale for ordering the production of this information is as follows: If CSXT's own experts consistently agreed with Harron's B reads, that undercuts CSXT's allegations of fraud and, conversely, if CSXT's experts consistently disagreed with Harron's B reads, "then CSX may have been put on notice of potentially fraudulent conduct." (Doc. 993 at 16.) CSXT respectfully submits that ILO forms from the approximately 5,000 Peirce Firm cases in question—the overwhelming majority of which were based in whole or in part on Harron B reads—will be more than sufficient to demonstrate whether CSXT's own experts generally agreed or disagreed with Harron's x-ray interpretations. Discovery of thousands of additional ILOs from cases brought by other law firms is unreasonably cumulative and duplicative in light of the volume of comparable information that has or otherwise will be provided to Coulter.

Moreover, as noted above, CSXT's claims in this case allege that Harron conspired with the Lawyer Defendants and not other law firms. Therefore, whether or not CSXT's experts agreed with Harron B reads procured and submitted by other law firms is, at best, marginally relevant to the issues in this case. Indeed, Magistrate Judge Seibert's own findings of fact acknowledge that CSXT's "Third Amended Complaint alleges that the Peirce Law Firm acted differently from other law firms in asbestosis litigation." (Doc. 993 at 4 ¶ 2.)

Accordingly, because discovery of ILOs from the 10,000 non-Peirce Firm cases is unreasonably cumulative and duplicative and because such ILOs are, at best, marginally relevant, the massive burden associated with such discovery clearly outweighs any possible benefit to Coulter. (*See, e.g.*, Doc. 945 at 12, 14-15.) The portions of the March 27th Order permitting such discovery should, therefore, be reversed.

### 3. Positive read rates of CSXT's experts

As noted above, the March 27th Order also requires CSXT to provide certain information concerning each B reader that CSXT ever used to interpret a chest x-ray in an asbestos case settled with the Peirce Firm between January 1, 1993 and July 1, 2007. In particular, CSXT is obligated to provide 1) the total number of x-rays that each such doctor read for CSXT, and 2) the total number of such x-rays that each doctor read as "positive."[6] The Magistrate's rationale for allowing this discovery was largely the same as above, i.e., if CSXT's doctors had "positive" reads rates similar to Harron's, that tends to disprove the existence of fraud and, conversely, if they consistently disagreed with Harron's B reads that could prove that CSXT "may have been put on notice of potentially fraudulent conduct." (*See* Doc. 993 at 14-15). Importantly, because CSXT's RMS database does not routinely record the experts used by CSXT in any particular case, the only way to provide this information is to collect the case files from each of the approximately 18,000 claims brought against CSXT during the relevant time period. (*See* Doc. 931, Ex. 3.)

As with the requests discussed above, CSXT does not object to providing the subject information relating to the 8,000 cases brought by the Peirce Firm. In light of this, CSXT respectfully submits that discovery of its doctors' "read rates" from the 10,000 non-Peirce Firm cases is unreasonably cumulative and duplicative. Indeed, as above, information relating to the thousands of cases brought by the Peirce Firm is more than sufficient to provide Coulter with the evidence and insights he claims he needs. Neither he nor Magistrate Judge Seibert has offered any justification for why CSXT should be forced to incur the additional burden and expense associated with providing such information from the 10,000 non-Peirce Firm cases and, indeed, there is none. This is particularly true because, as already explained, assuming it

---

[6] Although CSXT is only required to provide this information for B readers that it used in cases brought by the Peirce Firm, it must provide the ***total*** number of x-rays that each of those B readers read at CSXT's request. Therefore, this request effectively covers both Peirce and non-Peirce cases.

13

is relevant at all, information related to cases brought by law firms other than the Peirce Firm is clearly less relevant than information related to Peirce Firm cases.

Accordingly, because discovery of CSXT's doctors' "read rates" from the 10,000 non-Peirce Firm cases is unreasonably cumulative and duplicative and because such information is, at best, marginally relevant, the massive burden associated with such discovery clearly outweighs any possible benefit to Coulter. (*See, e.g.*, Doc. 945 at 14-15.) The portions of the March 27th Order permitting such discovery should, therefore, be reversed.

        4.    <u>Information concerning experts used and medical conditions alleged in each of the 13,000 asbestos-related claims settled by CSXT since 1993.</u>

Coulter contends that he needs to know the experts used and medical conditions alleged in each of the 13,000 asbestos-related claims settled by CSXT since 1993 so that he can make certain "statistical comparisons" that he claims are relevant to his defense. (*See* Mot. Hr'g Tr. at 82:18-86:2.) In particular, he argues that he should be permitted to develop evidence that may show that CSXT settled cases involving Harron for less than it settled cases involving other doctors and that CSXT settled cases brought by the Peirce Firm for less than it settled cases brought by other law firms. (*See id.*) He asserts that such a showing would provide evidence that CSXT was on notice of fraud by the Defendants and is, therefore, relevant to his potential statute of limitations defense. (*See id.*)[7] It appears that the Magistrate permitted the requested discovery on this basis. (*See id.*) As with the other aspects of the March 27th Order discussed herein, CSXT only objects to providing the subject information to the extent it relates to the 10,000 non-Peirce Firm cases.

Courts frequently hold that the burden and expense associated with broad discovery of "other claims" outweighs the benefit to the requesting party, *see Marker*, 125 F.R.D. at 124-125;

---

[7] Coulter did not articulate this specific theory of relevance until the hearing on his motion to compel. (*See* Doc. 993 at 11-12 (generally arguing that "[t]his information is needed to, among other things, develop facts concerning CSX's patterns and practices in settling asbestosis cases, which facts . . . may be used as defenses to CSX's fraud claims, including defenses based on lack on injury causation and lack of reliance").)

14

*see also St. Paul Reinsurance Co. v. Comm. Fin. Corp.*, 197 F.R.D. 620, 644-645 (N.D. Iowa 2000), and that is plainly the case here. As an initial matter, the "statistical comparisons" that Coulter purportedly wishes to make are of dubious, if any, probative value. Coulter's former partner and co-defendant Robert Peirce has previously testified that there are "many, many factors" that affect the amount for which asbestos-related claims settle, including the jurisdiction where they are pending. (Peirce Dep. 70:9-71:18 (March 28, 2000) (relevant portions attached as Exhibit 2).) Thus, the mere fact that CSXT may have settled a claim involving Harron or the Peirce Firm for less money than some other claim involving a different doctor or law firm does not mean that CSXT settled the Harron/Peirce claim for less **because o**f Harron's or the Peirce Firm's involvement. By Mr. Peirce's own admission, the differing settlement amounts could be attributable to any number of factors. The highly attenuated and extremely marginal probative value of the comparisons Coulter wishes to make is clearly outweighed by the massive burden associated with compiling the required information. *See Marker* and *St. Paul, supra*.[8]

      Moreover, with respect to Harron versus non-Harron claims, Coulter will be able to make comparisons based on the information CSXT will be providing concerning the thousands of claims brought by the Peirce Firm. In fact, **that information is already in the Lawyer Defendants' possession, custody or control**. Obviously, they know or could determine based on their own files which of the claims they caused to be filed against CSXT did or did not involve Harron and the amount for which each of those claims settled. Thus, in addition to being of little to no probative value, discovery of such information as to the 10,000 non-Peirce Firm claims is also unreasonably cumulative and duplicative.

---

[8] Even if the Court concludes that the comparisons Coulter wishes to draw between Peirce Firm and non-Peirce Firm cases are somehow probative, information concerning non-Peirce Firm claims filed in West Virginia—which are the only claims that even potentially provide any sort of meaningful comparison—would be sufficient to enable Coulter to make those comparisons. Under no circumstance should CSXT be required to provide the subject information for all 10,000 non-Peirce Firm claims because information relating to all of those claims simply is not necessary to enable Coulter to develop the purported defense to which that information purportedly relates. *See* Fed. R. Civ. P. 26(b)(2)(C).

15

Accordingly, because the comparisons Coulter wishes to draw between Harron versus non-Harron and Peirce Firm versus non-Peirce Firm claims are of little to no probative value and because at least some of the subject information is cumulative and duplicative, the massive burden associated with such discovery clearly outweighs any possible benefit to Coulter.  (*See, e.g.*, Mot Hr'g Tr. at 89:23-90:21.)  The portions of Magistrate Judge Seibert's March 27th order permitting such discovery should, therefore, be reversed.

5. <u>Documents related to CSXT's knowledge of the use of screenings by law firms other than the Peirce Firm.</u>

The final category of information in question is documents related to or reflecting CSXT's awareness of the use of occupational illness screenings by law firms **other than the Peirce Firm**.  Importantly, CSXT has already produced documents related to its knowledge of the Peirce Firm's use of occupational illness screenings.  CSXT's production to date has also included some documents related to other firms' use of screenings and CSXT does not object to providing additional documents concerning other firms' use of screenings to the extent they reside in CSXT's own internal files or its outside counsels' files from the insurance arbitration.  As above, CSXT's objection is limited to documents contained in its outside counsels' files from the 10,000 non-Peirce Firm cases.

The burden and expense of such discovery outweighs its potential benefit to Coulter for two key reasons.  First, information concerning CSXT's knowledge of the use of screenings by law firms other than the Peirce Firm is, at best, marginally relevant.  Indeed, Magistrate Judge Seibert's own findings of fact acknowledge that CSXT's "Third Amended Complaint alleges that the Peirce Law Firm acted differently from other law firms in asbestosis litigation."  (Doc. 993 at 4 ¶ 2.)  Thus, the mere fact that CSXT may have known that other law firms used screenings of some sort in no manner suggests that CSXT was or could have been on notice that the Lawyer Defendants had devised and implemented a scheme to defraud using "***intentionally unreliable***

16

mass screenings." (3d Am. Compl. ¶ 19 (emphasis added); *see also* Mot. Hr'g Tr. 123:23-125:10.)

Second, discovery of such documents from CSXT's outside counsels' files from the 10,000 non-Peirce Firm cases is unreasonably cumulative and duplicative. As with Harron-related documents, CSXT already has or will produce documents relating to its knowledge of the use of screenings by law firms other than the Peirce Firm to the extent they are located in its own internal files or its outside counsels' files from the insurance arbitration.

Accordingly, because the discovery of documents relating to CSXT's knowledge of the use of screenings by law firms other than the Peirce Firm contained in CSXT's outside counsels' case files from the 10,000 non-Peirce Firm cases is unreasonably cumulative and duplicative and because such documents are only marginally relevant, the massive burden associated with such discovery clearly outweighs any possible benefit to Coulter. (*See, e.g.*, Doc. 931 at 12-16.) The portions of the March 27th Order permitting such discovery should, therefore, be reversed.

## VII.    CONCLUSION

Wherefore, for the foregoing reasons, CSXT respectfully requests that this Court reverse those portions of Magistrate Judge Seibert's March 27, 2012 Order requiring CSXT to provide information and documents contained in CSXT's outside counsels' files from the approximately 10,000 asbestos-related cases brought against CSXT since 1993 by law firms other than the Peirce Firm.

**CSX TRANSPORTATION, INC.**

By      /s/ Marc E. Williams
       Of Counsel

Marc E. Williams, Esquire
Robert L. Massie, Esquire
**Nelson Mullins Riley & Scarborough LLP**
949 Third Avenue, Suite 200
Huntington, WV 25701

17

        (304) 526-3501 (Telephone)
        (304) 526-3541 (Facsimile)

        Samuel L. Tarry, Jr., Esquire
        Mitchell K. Morris, Esquire
        **McGuireWoods LLP**
        One James Center
        901 E. Cary Street
        Richmond, VA 23219
        (804) 775-1000 (Telephone)
        (804) 775-1061 (Facsimile)
        **COUNSEL FOR THE PLAINTIFF**
        **CSX TRANSPORTATION, INC.**

**Dated: April 10, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

| | |
|---|---|
| **CSX TRANSPORTATION, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 5:05-CV-202 |
| v. | ) |
| | ) Assigned to: |
| **ROBERT N. PEIRCE, JR.,** *et al.*, | ) The Hon. Frederick P. Stamp |
| | ) |
| Defendants. | ) |

### **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he served the foregoing *CSX Transportation, Inc.'s Objections To Portions Of Magistrate Judge Seibert's March 27, Order Requiring CSXT To Provide Information And Documents Contained In CSXT's Outside Counsels' Files From 10,000 Asbestos-Related Claims Brought By Law Firms Other Than The Peirce Firm Which Are Located At 40 Different Law Firms* upon the following individuals via electronic filing with the Court's CM/ECF system, on the 10th day of April, 2012:

Ron Barroso, Esquire
5350 S. Staples
Suite 401
Corpus Christi, TX 78411

Walter P. DeForest, Esquire
David Berardinelli, Esquire
**DEFOREST KOSCELNIK**
**YOKITIS SKINNER & BERARDINELLI**
3000 Koppers Building
Pittsburgh, PA 15219

Jerald E. Jones, Esquire
**WEST** & **JONES**
P.O. Box 2348
Clarksburg, West Virginia 26302-2348

      /s/ Marc E. Williams
Counsel for CSX Transportation, Inc.