IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


CSX TRANSPORTATION, INC.,

       Plaintiff,

v.                                Civil Action No. 5:05CV202
                                             (STAMP)

ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation,
ROBERT PEIRCE, JR., LOUIS A. RAIMOND,
MARK T. COULTER and RAY HARRON, M.D.,

       Defendants.


**MEMORANDUM OPINION AND ORDER**
**DENYING LAWYER DEFENDANTS' MOTIONS TO DISMISS**

I.  Background[1]

The plaintiff, CSX Transportation, Inc. ("CSXT") commenced the above-styled civil action by filing a complaint in this Court on December 22, 2005. The plaintiff later filed an amended complaint on July 5, 2007. (ECF No. 208.) On May 2, 2008, after this Court granted the defendants' motion to dismiss various portions of the amended complaint, the plaintiff sought leave to file a second amended complaint. (ECF No. 278.) This Court denied the plaintiff's motion for leave to file a second amended complaint on the grounds that such amendment would be futile and would unduly prejudice the defendants by extending discovery when it is not

_____

[1]For the purpose of resolving the pending motion, this Court believes that the following abbreviated summary of this case is sufficient.

necessary.  (ECF No. 284.)  Thereafter, the case continued forward to trial and judgment on the plaintiff's May/Jayne fraud allegations and to summary judgment for the defendants on the plaintiff's remaining claims.

Following the entry of this Court's judgment in favor of the defendants regarding the May/Jayne fraud, the plaintiff appealed to the United States Court of Appeals for the Fourth Circuit.  In its judgment of December 30, 2010, the Fourth Circuit upheld the jury's verdict as to the May/Jayne allegations but vacated the dismissal of Counts 1 through 4 of the amended complaint, reversed the summary judgment as to the Baylor claims, and held that the plaintiff should have been permitted to file the second amended complaint.  (ECF No. 817.)  On February 2, 2011, the Fourth Circuit issued a mandate compelling further proceedings consistent with its opinion.  (ECF No. 821.)

Pursuant to this mandate, this Court held a status and scheduling conference on March 7, 2011.  At that conference, the parties discussed the plaintiff's proposal to file a third amended complaint that would reflect the changes in the case and offer a concise summary of the remaining claims.  On July 14, 2011, the plaintiff filed a motion for leave to file a third amended complaint (ECF No. 841), which this Court granted on October 18, 2011 (ECF No. 850).  The third amended complaint, filed on October 19, 2011 (ECF No. 853) names Robert N. Peirce, Jr., Louis A.

2

Raimond, Mark T. Coulter ("lawyer defendants") and Ray Harron, M.D. as defendants.  In short, the third amended complaint alleges that the defendants have orchestrated a scheme to inundate CSXT with thousands of asbestos cases without regard to their merit.  (Third Am. Compl. ¶ 1.)  CSXT alleges that the defendants' conduct violated the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and supports claims for common law fraud and conspiracy.  (Third Am. Compl. ¶ 3.)

On July 28, 2011, the lawyer defendants filed a motion for permission to file counterclaims and have the counterclaims deemed filed nunc pro tunc as of that date.  (ECF No. 842.)  On October 19, 2011, this Court issued a memorandum opinion and order granting the lawyer defendants' motion for permission to file counterclaims and have the counterclaims deemed filed nunc pro tunc as of July 28, 2011.  (ECF No. 851.)  On November 23, 2011, CSXT filed a motion to dismiss the lawyer defendants' counterclaims (ECF No. 885), which this Court denied on April 25, 2012 (ECF No. 1039).

On November 25, 2011, the lawyer defendants filed three separate motions to dismiss: (1) Robert N. Peirce's motion to dismiss the third amended complaint (ECF No. 887); (2) Louis A. Raimond's motion to dismiss the third amended complaint (ECF No. 889); and (3) Mark T. Coulter's motion to dismiss the third amended complaint (ECF No. 891).  CSXT filed a combined opposition to the lawyer defendants' motions to dismiss the third amended complaint

on December 16, 2011.  (ECF No. 906.)  CSXT then filed a supplement to its combined opposition.  (ECF No. 908.)  On December 23, 2011, the lawyer defendants filed a reply in support of their motions to dismiss the third amended complaint.  (ECF No. 911.)  The lawyer defendants' motions to dismiss the third amended complaint are currently pending before this Court.  For the reasons set forth below, this Court finds that the motions to dismiss must be denied.

## II.  Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true.  Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009).  However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."  Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments."  Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case.  5B Charles Alan Wright

& Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998).  The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact.  <u>Id.</u>  For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a).  <u>Id.</u> § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Nemet Chevrolet</u>, 591 F.3d at 256 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).  Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.

III.   <u>Discussion</u>

A.   <u>Motions to Dismiss</u>

   1.   <u>Peirce's Motion to Dismiss</u>

   The third amended complaint sues the lawyer defendants, as well as Dr. Harron, for alleged racketeering and common law fraud related to civil litigation in which CSXT was the defendant.   In his motion to dismiss the third amended complaint, Peirce argues that CSXT fails to properly plead sufficient facts supporting its charge that Peirce individually participated in the alleged racketeering and fraud, and also fails to plead the requisite causal nexus between the eleven allegedly fraudulent asbestos claims filed by the Peirce Firm and CSXT's claimed injury.[2]

   Peirce asserts five main arguments in support of his motion to dismiss: (1) based on the face of the third amended complaint, there is no causal nexus between the filing of the eleven allegedly fraudulent asbestosis claims at issue and any alleged injury to CSXT; (2) CSXT has failed to plead any proper RICO predicate acts; (3) CSXT has failed to plead with the specificity needed to state RICO and fraud claims; (4) the third amended complaint fails to make proper allegations of a pattern of racketeering activity; and (5) civil RICO's pattern requirement, as applied to this case and Peirce, is unconstitutionally vague.

---

[2]The third amended complaint describes eleven allegedly fraudulent personal injury claims that the lawyer defendants filed or caused to be filed.   (Third Am. Compl. ¶ 147.)

6

With regard to CSXT's common law claims (Counts III and IV), Peirce argues that CSXT has not pled that it relied on any allegedly false representation made by Peirce.   According to Peirce, ten of the eleven allegedly fraudulent claims at issue were never settled by CSXT, but were dismissed based on procedural grounds.   Peirce contends that the remaining claim (of Morris Collier) was settled as a cancer case.   Thus, according to Peirce, CSXT has not properly pled that it spent money in defense of these eleven allegedly fraudulent asbestosis claims that it would not have otherwise spent in litigating the overarching motions against the larger Federal Employers Liability Act ("FELA") complaints.[3] Peirce asserts that on the face of the complaint, the procedural issues applicable to the larger FELA cases -- not any allegedly fraudulent representation related to the eleven individual claimants -- are what caused CSXT to spend legal resources.   Thus, argues Peirce, because CSXT has failed to plead reliance, it has not stated a claim for fraud.

Turning to the civil RICO claims (Counts I and II), Peirce argues that the filing of pleadings and related letters cannot be predicate acts of mail or wire fraud that support RICO claims. Peirce contends that the purported predicate acts alleged by CSXT

---

[3]In his motion to dismiss, Peirce states that the FELA complaints described in the third amended complaint contained more than 5,300 asbestos-related claims, only eleven of which CSXT argues were fraudulent.

relate solely to routine litigation activity and are generally unrelated to the eleven allegedly fraudulent asbestosis claims. These predicate acts include the filing and service of complaints, the filing of a petition for certiorari to the United States Supreme Court, and the sending and receiving of routine correspondence -- all of which, according to Peirce, are insufficient to serve as RICO predicates.

Peirce next argues that Counts I through IV should be dismissed because CSXT fails to plead its claims with particularity under Rule 9(b) of the Federal Rules of Civil Procedure and thus has failed to state a claim under Rule 12(b)(6). CSXT has sued Peirce individually, yet Peirce asserts that the complaint fails to apprise him of any actions of his that are allegedly fraudulent. Instead, he argues, CSXT uses impermissible group pleading. By attributing fraudulent conduct to the lawyer defendants collectively, argues Peirce, CSXT's complaint fails to plead fraud with the requisite particularity required by Rule 9(b). Further, Peirce contends that as a result of its improper group pleading, CSXT's fails to allege a fundamental element of a RICO violation -- that each named individual committed at least two predicate acts that proximately caused an injury to the plaintiff. Peirce claims that CSXT identifies him as the sender of two letters, yet fails to plead any causal connection between the letters and the alleged

injury that it suffered.  Peirce highlights the fact that neither of these letters discussed any of the eleven claims at issue.

Peirce also argues that because CSXT did not spend money in defense of the eleven allegedly fraudulent asbestosis claims that it would not have otherwise spent, the third amended complaint must be dismissed because CSXT's pleading cannot establish the causal nexus required by RICO.  Peirce notes that the Fourth Circuit's policy is to not permit the transformation of ordinary business contract or fraud disputes into federal RICO claims.  Peirce further argues that it would be legal error to allow a RICO case to proceed where 99.8% of the activity of an alleged racketeering enterprise as not been alleged to be fraudulent.  CSXT's complaint, according to Peirce, only alleges that the lawyer defendants engaged in sporadic and isolated allegedly fraudulent activity rather than a pattern of racketeering activity by each individual defendant.  Peirce also contends that the complaint fails to plead the requisite continuity to establish a pattern of racketeering because CSXT alleges only that the lawyer defendants engaged in a single scheme resulting in the filing of eleven purportedly baseless asbestosis claims out of over 5,300 total claims in order to defraud a single victim, CSXT.

Lastly, Peirce asserts that the civil RICO counts of the third amended complaint must be dismissed because they are void for vagueness as applied to Peirce.  Specifically, Peirce asserts that

he did not have fair notice that by engaging in ministerial tasks on behalf of clients he could expose himself to a civil RICO claim.

    2.   <u>Raimond's Motion to Dismiss</u>

Raimond's motion to dismiss the third amended complaint is substantially similar to Peirce's motion to dismiss. Therefore, this Court's summary of his contentions highlights only a few key allegations. Raimond argues that there is a total absence of proper specific factual allegations that he, as an individual, personally knew that any of the eleven claims were fraudulent. Importantly, Raimond notes that he retired from the practice of law in 2003. Also, Raimond contends that CSXT fails to allege that he was involved with any of the purported predicate acts of mail or wire fraud that support CSXT's RICO claims. Like Peirce, Raimond also argues that the complaint fails to apprise him of what he individually did that is allegedly fraudulent, including any allegedly fraudulent representations that he made. According to Raimond, the complaint asserts only four specific allegations concerning him, and not one of these allegations refers to the eleven claimants at issue. With regard to the RICO claims, Raimond contends that the complaint does not identify him as the author or sender of any mailings that underlie CSXT's purported RICO predicate acts, nor does it attribute any of the alleged predicate acts to him individually. Accordingly, Raimond concludes that the third amended complaint must be dismissed.

3.   <u>Coulter's Motion to Dismiss</u>

Like Peirce and Raimond, Coulter also asserts the same five main arguments in support of his motion to dismiss the third amended complaint.  Coulter's motion notes that he left the Peirce Firm in May 2005, and he argues that CSXT fails to allege that he individually participated in the alleged racketeering and fraud.  According to Coulter, CSXT merely alleges that he filed four of the FELA complaints -- activities that relate solely to routine litigation activity.   Coulter avers that only one of these complaints relates to one of the clients on whose behalf an allegedly fraudulent asbestosis claim was filed.  Coulter further asserts that the complaint contains only five allegations concerning him, and they relate only to his having filed FELA complaints.  None of these references, argues Coulter, constitute properly pled predicate acts of mail or wire fraud.  Thus, Coulter contends that the third amended complaint must be dismissed.

B.   <u>CSXT's Combined Response</u>

In its combined response to the lawyer defendants' motions to dismiss, CSXT first argues that the majority of the lawyer defendants' arguments are barred by the Fourth Circuit's mandate.  Citing the mandate rule, CSXT contends that with the exception of their argument concerning the RICO pattern requirement, the lawyer defendants did not previously raise in this Court or on appeal any of the arguments or legal theories set forth in their currently

pending motions to dismiss.  As a result, CSXT states that those arguments and legal theories are barred.  According to CSXT, any contention that Count III and Count IV of the third amended complaint fail to state a claim for which relief has been granted was impliedly rejected by the Fourth Circuit's reversal of summary judgment on CSXT's Baylor claims, which are premised on the causes of action set forth in Count III and Count IV.  CSXT asserts that any and all of the arguments currently made by the lawyer defendants could have been, but were not, raised in their motion to dismiss the amended complaint, in their opposition to CSXT's proposed second amended complaint, in their motion for summary judgment on the Baylor-related claims, or on appeal.

CSXT next addresses the lawyer defendants' arguments, concluding that they are without merit.  First, CSXT argues that the third amended complaint sufficiently pleads reliance for purposes of the common law counts.  CSXT explains that the allegations set forth in the third amended complaint establish that it was damaged because it relied upon the lawyer defendants' false representations in that CSXT treated the fraudulently filed claims like any other and expended resources to process, defend, and/or settle them.  The lawyer defendants may dispute the scope of damages, but CSXT contends that this argument fails because it does not go to the legal sufficiency of CSXT's claims.

Quoting <u>United States v. Murr</u>, 681 F.2d 246 (4th Cir. 1982), CSXT next argues that the filing of pleadings and related letters can be predicate acts of mail and wire fraud, whether or not the pleadings and correspondence themselves were false or fraudulent. Further, CSXT asserts that each of the predicate acts identified in the third amended complaint was, at a minimum, incident to an essential part of the lawyer defendants' scheme. Also, CSXT states that the allegations contained in the third amended complaint are sufficient to support the inference that each of the lawyer defendants knew the mails were necessarily going to be used in furtherance of their fraudulent scheme.

Next, CSXT argues that the third amended complaint satisfies Rule 9(b). In countering the lawyer defendants' argument that "group pleading" is improper, CSXT argues that at this advanced stage of the litigation, the lawyer defendants cannot now complain about the use of the phrase "lawyer defendants" -- a phrase which was used in both the amended complaint and second amended complaint. CSXT also points out that the lawyer defendants have themselves used the phrase "Peirce Firm Defendants." The allegations in the third amended complaint, argues CSXT, are sufficient to permit the lawyer defendants -- individually and collectively -- to mount a defense. Moreover, the third amended complaint clearly sets forth the time, place, and content of each

false representation, as well as the identity of the person making the representation.

CSXT then avers that the third amended complaint properly alleges that CSXT was injured in its business or property by reason of the lawyer defendants' RICO violations.  To CSXT, the fact that ten of the eleven claims were dismissed on procedural grounds is irrelevant because CSXT's claimed injury is not limited to the filing of the motions selectively referenced by the lawyer defendants.  Rather, it includes any and all money and resources that CSXT was forced to spend in connection with processing, defending and/or settling the fraudulently filed claims.

CSX also counters that the third amended complaint adequately pleads that the lawyer defendants engaged in a pattern of racketeering.  CSXT's key assertion is that the fraudulent scheme and associated predicate acts of mail and wire fraud alleged in the third amended complaint encompass more than just the filing of the eleven allegedly fraudulent claims.  The third amended complaint describes a "concerted campaign" by the lawyer defendants to overwhelm CSXT with thousands of asbestos-related occupational illness claims in courts across West Virginia, which included all of the steps they took before and after filing to generate medical evidence in support of the fraudulent claims.  According to CSXT, the pattern of racketeering activity is proven by allegations that the mass suits themselves were predicate acts specifically designed

14

and intended to advance and conceal the allegedly fraudulent claims. Further, the third amended complaint alleges that these predicate acts were related -- over a six-year period, the lawyer defendants filed or caused to be filed five separate lawsuits in the same jurisdiction containing fraudulent claims against CSXT. According to CSXT, the filing of five separate lawsuits containing eleven fraudulent claims and the commission of approximately a dozen other acts of mail and wire fraud in furtherance of those claims is far from isolated or sporadic activity. Also, CSXT asserts that the facts pled in the third amended complaint demonstrate that the lawyer defendants' scheme was likely to continue and that the filing of fraudulent lawsuits had become a part of the Peirce Firm's regular business practice. Thus, CSXT argues that the third amended complaint sets out a pattern of racketeering activity that includes acts that are both related and continuous. Finally, CSXT argues that RICO's pattern requirement is not unconstitutionally vague as applied to the lawyer defendants.

C. Lawyer Defendants' Reply

In reply, the lawyer defendants first argue that the mandate rule does not bar their motion to dismiss because the third amended complaint changes the scope, time period, and factual basis for the allegations, asserting allegations beyond those considered by the Fourth Circuit. The lawyer defendants also reiterate that the

third amended complaint fails to allege reliance and damages based on reliance as required for fraud and fails to allege the proximate causation required by RICO.   The lawyer defendants then contend that CSXT improperly conflates the requisites for establishing criminal mail fraud with the requisites for establishing a civil RICO claim.   Finally, the lawyer defendants repeat their argument that the improper group pleading requires dismissal, and that CSXT has failed to plead the requisite pattern of racketeering activity.

D.   Mandate Rule

The mandate rule promotes judicial economy and finality by providing "'that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988)).  The mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993).  In sum,

> once the decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court . . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.

United States v. Lentz, 524 F.3d 501, 528 (4th Cir. 2008) (internal quotations omitted).   "Although the doctrine applies both to

16

questions actually decided as well as to those decided by necessary implication, it does not reach questions which might have been decided but were not." Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988).

This Court finds that the mandate rule is not applicable in this case. The operative complaint in this matter is the third amended complaint, filed on October 19, 2011. The Fourth Circuit issued its opinion on December 30, 2010, nearly ten months before the third amended complaint was filed. Before the filing of the third amended complaint, the only complaint which had been filed by CSXT and subjected to motions under Rule 12 was the amended complaint.[4] There are numerous and substantial differences between the amended complaint and the third amended complaint. For example, the third amended complaint sets forth eleven allegedly fraudulent claims (Third Am. Compl. ¶ 147), whereas only nine were listed in the amended complaint (Am. Compl. ¶ 71). The nine claims described in the amended complaint included six that had settled, but of the eleven claims in the third amended complaint, only one was settled. Also, the claims in the amended complaint stemmed from FELA actions filed as far back as 2000, whereas the claims in the third amended complaint concern FELA actions that date back only to 2003 and involve allegations related to litigating FELA

_____

[4]CSXT filed a motion for leave to file a second amended complaint (ECF No. 278), but that motion was denied by this Court (ECF No. 284).

complaints that occurred as recently as 2009 -- after Raimond and Coulter had left the Peirce Firm.  Further, the claims of Peterson, Wiley, and Baylor were active at the time of the amended complaint but, as pled in the third amended complaint, were subsequently dismissed pursuant to motions filed by CSXT.  The facts and timeliness in the third amended complaint, when compared to the amended complaint, give rise to the arguments raised in the lawyer defendants' motions to dismiss.  Because the motions to dismiss are premised on CSXT's new allegations in the third amended complaint, these are arguments that were not available in responding to the amended complaint and they were not decided by the Fourth Circuit.

Additionally, this Court finds that the Fourth Circuit's opinion in this case does not preclude the arguments made in the motions to dismiss, as its holdings were narrower than the issues now presented.  The Fourth Circuit held: (1) the district court erred in granting the Rule 12(b)(6) motion because the face of the complaint did not allege facts sufficiently clear to conclude that the statute of limitations on the RICO claims had run; (2) because the face of the complaint does not allege sufficient facts to conclusively determine when CSXT knew or should have known of the existence of the common law fraud, the district court erred by granting the defendants' Rule 12(b)(6) motion to dismiss Counts III and IV of the complaint; (3) the district court's finding of futility regarding the motion to amend the complaint to add

additional claims was erroneous and thereby an abuse of discretion; (4) the district court's award of summary judgment to the defendants in the Baylor case must be reversed because a reasonable jury could find CSXT relied to its detriment on the defendants' alleged fraud as the basis of the Baylor claim; and (5) the district court did not err in excluding evidence that the Peirce Firm had continued to represent May after the incident in various personal injury matters against third parties other than CSXT.  CSX Transp., Inc. v. Gilkison, 406 F. App'x 723 (4th Cir. 2010).

Significantly, the Fourth Circuit did not rule on or discuss the issues raised in the current motions to dismiss: RICO causation, lack of a causal nexus or reliance for fraud claims due to a lack of damages flowing from any claimed reliance, pleading failures under Rule 9, failure to plead the commission of two predicate acts by each defendant, RICO's pattern requirement,[5] or the constitutionality of civil RICO as applied.  Accordingly, the mandate rule does not preclude the arguments made in the pending motions to dismiss.

---

[5]With regard to RICO's pattern requirement, the Fourth Circuit's opinion briefly mentions the fact that "even if a claim or claims are found to be time-barred, that fact alone does not make the claim ineligible as a predicate act to establish a RICO pattern."  Gilkison, 406 F. App'x at 730 n.3.

E.    Common Law Fraud and Civil Conspiracy (Counts III and IV)

    1.    Reliance

Under West Virginia law, the essential elements of fraud are as follows:

> (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Poling v. Pre-Paid Legal Servs., Inc., 575 S.E.2d 199, 202 (W. Va. 2002) (quoting Horton v. Tyree, 139 S.E. 737, 738 (W. Va. 1927)). Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).   Contrary to the lawyer defendants' assertion, this Court finds that CSXT has properly alleged reliance on an alleged fraudulent representation and damages caused by that reliance.   Specifically, CSXT avers:

> Pursuant to the West Virginia Rules of Civil Procedure, Professional Conduct and other applicable law, by filing and prosecuting [the claims described in Paragraph 147], the lawyer Defendants represented to CSXT that there existed a colorable and good faith basis for the claims, when in fact they knew or recklessly disregarded that there existed no such basis and that their clients did not suffer from asbestosis.   Furthermore, the lawyer Defendants specifically intended CSXT to rely on their representations to settle the claims.
>
>     . . .
>
> [A]lthough CSXT disputed the subject claims, it reasonably relied on the lawyer Defendants' representations that the claims had some good faith basis

in fact and were brought in accordance with the West
Virginia Rules of Civil Procedure, Professional Conduct
and other applicable law.

. . .

[T]he lawyer Defendants' violations of § 1962(c) caused
CSXT to expend substantial money and resources to
process, defend and/or settle the deliberately fabricated
claims outlined in Paragraph 147 that should never have
been filed in the first place.

(Third Am. Compl. ¶¶ 157, 164-65, 173, 177.) As the Fourth Circuit

held when it reinstated CSXT's Baylor-related fraud claim:

"Obviously, CSX would have 'relied' on the representation [of

occupational exposure by Baylor] by filing the Baylor [asbestos]

claim that all elements of the case of action were met as CSX would

have had no reason to know of the alleged act of fraud." Gilkison,

406 F. App'x at 734. "Consequently, a reasonable jury could find

CSX relied to its detriment on the defendants' alleged fraud as the

basis of the Baylor claim." Id. Thus, any challenge to the legal

sufficiency of CSXT's alleged reliance on the false representations

made by or caused to be made by the lawyer defendants is without

merit.

2. Damages Due to Reliance

To the extent the lawyer defendants argue that CSXT failed to

plead that it was damaged due to its reliance upon the lawyer

defendants' false representations, this argument is also without

merit. The allegations set forth in the third amended complaint

establish that CSXT was damaged because it relied upon the lawyer

21

defendants' false representations in that CSXT treated the fraudulently filed claims like any other and expended resources to process, defend and/or settle them. See Tribune Co. v. Purcigliotti, 869 F. Supp. 1076, 1100 (S.D. N.Y. 1994) ("Plaintiffs contend that as a result of defendants' alleged fraud, they have incurred the significant medical and legal costs required to defend the claims in front of the Board. Without attempting to rule on the scope of plaintiffs' damages at this stage, expenses of this nature, which foreseeably and directly result from defendants' alleged violative conduct, constitute injury by reason of a RICO violation."). The lawyer defendants assert that any legal resources expended by CSXT were spent as a result of the larger FELA complaints, and that these costs cannot be directly attributed to the eleven allegedly fraudulent claims. However, this Court finds this argument to be unavailing at this stage, as CSXT has specifically alleged that damages resulted from its reliance on the lawyer defendants' false representations with regard to the allegedly fraudulently filed claims. For example, the third amended complaint alleges that CSXT paid attorney's fees, litigation costs, and internal processing costs upon being subjected to extensive motions practice in the fraudulently filed claims.[6] It is the fact of injury, not the amount of damages that

---

[6]CSXT also counts the $25,000.00 it paid to settle the claim of Morris Collier as damages suffered. The lawyer defendants dispute this claim, arguing that Mr. Collier's case was a cancer

is relevant.  See Persinger v. Peabody Coal Co., 976 F. Supp. 1038, 1040 (S.D. W. Va. 1997) ("Once the elements of fraud have been established, a plaintiff's measure of damages would be *any* injury incurred as a result of the defendant's fraudulent conduct.") (internal quotations omitted).  For these reasons, the lawyer defendants' arguments concerning reliance and damages fail.

CSXT also argues that at an absolute minimum, it experienced annoyance and inconvenience as a result of the lawyer defendants' fraudulent filing and prosecution of the claims at issue.  The lawyer defendants argue that non-economic internal resource costs are not a basis for avoiding dismissal because those alleged damages are not recoverable by a corporate entity.  But see Malley-Duff & Associates, Inc. v. Crown Life Ins. Co., 792 F.2d 341, 354-55 (3d Cir. 1986) (holding that Malley-Duff's allegations of great expenses, delays, and inconvenience in its prosecution of the lawsuit were a sufficient pleading of injury to business or property to give Malley-Duff RICO standing).  Because this Court finds that the third amended complaint has properly alleged that CSXT incurred damages as a result of the fraudulently filed claims, it sees no need to address, at this time, the question of whether CSXT can recover annoyance and inconvenience damages.

---

case, unrelated to asbestos.

F.    RICO Claims

    1.    Predicate Acts

    "To state a civil RICO claim, a plaintiff must allege that the defendants engaged in, or conspired to engage in, a 'pattern of racketeering activity.'"   US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010) (quoting 18 U.S.C. § 1962).   A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity.   18 U.S.C. § 1961(5); see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004).   In this case, the predicate acts alleged are instances of mail and wire fraud, which include the filing and service of mass lawsuits, as well as all of the actions taken by the lawyer defendants to generate medical evidence in support of the fraudulent claims.   (Third Am. Compl. ¶¶ 90, 94, 105, 112, 119, 125, 128-29, 134, 139, 159.)   While the lawyer defendants argue that the predicate acts alleged in the third amended complaint are limited to court filings and related letters, CSXT maintains that the predicate acts encompass much more than the filing of the eleven allegedly fraudulent claims.

    Some courts have held that the filing of a fraudulent lawsuit can be a predicate act of mail and wire fraud.   See St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 443 (5th Cir. 2000) ("Among the predicate acts alleged to form a pattern of racketeering activity were instances of conduct directly connected

to the filing of the state tort suit, including the filing of that suit."); Warnock v. State Farm Mut. Auto. Ins. Co., No. 5:08cv01, 2008 WL 4594129, at *7 (S.D. Miss. Oct. 14, 2008) (finding that because the plaintiff alleged more than the mere filing of false litigation documents, the plaintiff adequately pled a pattern of racketeering activity); State Farm Mut. Auto. Ins. Co. v. Makris, No. 01-5351, 2003 WL 924615, at *10 (E.D. Pa. Mar. 4, 2003) (holding that the filing of fraudulent lawsuits against State Farm's insureds to recover monetary damages from State Farm was an essential element of the scheme to defraud State Farm); but see Daddona v. Gaudio, 156 F. Supp. 2d 153, 163 (D. Conn. 2000) (rejecting the plaintiff's claims for mail and wire RICO fraud because plaintiff failed to claim that the underlying litigation was part of a larger scheme to deprive the plaintiff of his property).  This Court finds that the alleged mail and wire fraud violations in this case amount to more than mere claims for abuse of process or malicious prosecution.  The third amended complaint describes a more complex scheme by the lawyer defendants -- one that allegedly involved more than the filing and service of eleven fraudulent complaints.  Even in light the Fourth Circuit's expressed policy of construing civil RICO narrowly, this Court finds that CSXT's has alleged predicate acts that survive the motions to dismiss.  See Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988) (stating that the heightened penalties of

RICO are reserved for schemes whose scope and persistence set them above the routine).

The Fourth Circuit has held that the fraudulent filing of § 1983 lawsuits is an indictable offense under the federal mail fraud statute. Murr, 681 F.2d at 249. It follows that such conduct constitutes "racketeering activity" for purposes of 18 U.S.C. § 1962. See 18 U.S.C. § 1961(1)(B) (defining "racketeering activity" as "any act which is indictable under any of the following provisions of title 18, United States Code," including "section 1341 (relating to mail fraud)"). This is true whether or not the pleadings and correspondence themselves were false or fraudulent. Murr, 681 F.2d at 248-49 ("The use of the mails need not in and of itself be fraudulent to constitute an offense under the statute . . . . [T]he mailed material may be totally innocent, and yet it still may be found that a scheme to defraud exists."). Murr is not a RICO case, but it suggests that the filing of a fraudulent lawsuit can constitute racketeering activity. However, the RICO analysis does not end here.

Each of the predicate acts identified in the third amended complaint is alleged to have been "incident to an essential part of the [lawyer defendants'] scheme, or a step in [their] plot." United States v. Pierce, 409 F.3d 228, 232 (4th Cir. 2005) (quoting Schmuck v. United States, 489 U.S. 705, 711 (1989)). CSX asserts:

> [T]he lawyer Defendants gained access to potential
> clients through unlawful means, retained clients and

26

procured medical diagnoses for them through intentionally unreliable mass screenings, prosecuted clients' claims using dishonest, fraudulent, and deceptive tactics and, ultimately, fabricated and prosecuted asbestos claims with no basis in fact. Moreover, the lawyer Defendants deliberately filed the claims they manufactured in mass lawsuits in overburdened courts to deprive CSXT of access to meaningful discovery, which in turn concealed fraudulent claims and leveraged higher settlements based on the threat of mass trials.

(Third Am. Compl. ¶ 19.) According to the third amended complaint, the filing of fraudulent lawsuits, as well as the filing of motions and letters related to these lawsuits, was an integral part of the lawyer defendants' scheme to defraud CSX. (Third Am. Compl. ¶¶ 90, 94, 105, 112, 119, 125, 128-29, 134, 139, 159.) The lawyer defendants' characterization of these filings and mailings as "routine litigation activity" is contrary to CSXT's allegations, which this Court must accept "as true and construe[] . . . in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, 591 F.3d at 255.

Although the lawyer defendants contend that CSXT has failed to properly state claims against the individual defendants because it has not shown that each named individual committed at least two predicate acts that proximately caused injury to the plaintiff, this Court disagrees. The third amended complaint alleges that "[t]he lawyer Defendants, who were at all relevant times employed by or associated with the Peirce firm, directly conducted and participated in the business and affairs of the Peirce firm through a pattern of racketeering in violation of 18 U.S.C. § 1962(c)."

27

(Third Am. Compl. ¶ 155.)  "In furtherance of [their] scheme, the lawyer Defendants repeatedly used or caused their agents to use the mails and wires."  (Third Am. Compl. ¶ 158.)  Further, the third amended complaint alleges:

> [T]he lawyer Defendants agreed that one or all of them
> . . . would cause personal injury claims to be filed
> based on Harron's fraudulent diagnoses.  Additionally,
> they each agreed to assist in the prosecution of these
> claims through the transmission of misleading
> communications to clients, participation in settlement
> negotiations with CSXT, communications with the courts
> and other fraudulent means.

(Third Am. Compl. ¶ 170.)  This Court finds that the allegations contained in the third amended complaint are sufficient to support the inference that each of the lawyer defendants knew the mails were being used in furtherance of their fraudulent scheme.

    2.   Rule 9(b)

As stated above, Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The Fourth Circuit has interpreted this provision as requiring that a complaint identify the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). The primary purpose of Rule 9(b) is to ensure "that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of." Id.  In some instances,

28

courts have found that the use of group pleading (the lumping of defendants together) fails to meet the heightened standards set forth under Rule 9(b).

This Court finds that the third amended complaint meets the particularity requirements of Rule 9(b) and adequately sets forth the time, place, and content of each false representation, as well as the identity of the person making the representation, as required by Fourth Circuit precedent.  Specifically, the third amended complaint identifies the date when each fraudulent claim was filed and the court in which it was filed (Third Am. Compl. ¶¶ 105, 112, 125, 129, 134); identifies the person who signed the complaint and caused the complaint to be filed (Third Am. Compl. ¶¶ 105, 112, 125, 129, 134); identifies the circumstances, including the date, of the service of each complaint on CSXT (Third Am. Compl. ¶¶ 105, 112, 125, 129, 134); and attaches the relevant portions of each allegedly fraudulently filed complaint and the notices of service as exhibits (Third Am. Compl. Exs. MM, NN, OO, PP, TT, UU, VV, WW, YY, ZZ).  The third amended complaint provides similar detail for each additional predicate act of mail or wire fraud alleged.  (Third Am. Compl. ¶¶ 90, 94, 119, 133, 139, 159 and Exs. GG, HH, II, JJ, RR, XX, FFF, GGG, OOO-TTT.)

Because the theory of the case is that "the lawyer Defendants, collectively and in concert, embarked upon a calculated and deliberate strategy to participate in and conduct the affairs of

the Peirce firm through a pattern and practice of unlawful conduct" (Third Am. Compl. ¶ 18), it follows that the third amended complaint alleges that many of the actions were collectively taken or collectively caused to be taken by the lawyer defendants.  See Pludeman v. N. Leasing Sys., Inc., 890 N.E.2d 184, 188 (N.Y. 2008) (finding that the very nature of the scheme, as alleged, gives rise to the reasonable inference that the defendants knew of or were involved in the fraud).  It is not necessary for each individual defendant to have personally sent fraudulent mailings -- "it is enough if he knows that in the execution of the scheme letters are likely to be mailed, and if in fact they are mailed."  United States v. Perkal, 530 F.2d 604, 607 (4th Cir. 1976) (involving a scheme to defraud through the submission of fraudulent personal injury claims).  Moreover, the third amended complaint does, in fact, identify each defendant's participation in the alleged fraud. "Defendants Peirce and Raimond orchestrated and implemented the screening process . . . which they specifically intended to attract potential clients and manufacture diagnoses of asbestos-related diseases regardless of whether the subject individuals actually exhibited signs of those diseases.  In furtherance of this objective, they deliberately hired technicians and doctors." (Third Am. Compl. ¶ 168.)  Defendant Peirce is also alleged to have first hired James Corbitt and his company to conduct the screenings (Third Am. Compl. ¶ 39), and Peirce allegedly testified that he

selected Harron based on his willingness to read an unusually high number of x-rays at a time (Third. Am. Compl. ¶ 58). Coulter is alleged to have personally filed four of the underlying mass tort suits in accordance with the lawyer defendants' collective agreement to cause fraudulent suits to be filed. (Third Am. Compl. ¶¶ 90, 94, 105, 112.) Each of those suits is alleged to be a predicate act in support of the overall fraudulent scheme. (Third Am. Compl. ¶ 160.) Accordingly, this Court finds that the third amended complaint meets the particularity requirements of Rule 9(b) because it "specifically alleges the nature of each defendant's participation in the allegedly fraudulent scheme." In re Platinum and Palladium Commodities Litig., No. 10 Civ 3617, 2011 WL 4048780, at *11 (S.D. N.Y. Sept. 13, 2011) (dismissing plaintiffs' RICO claim for failure to adequately plead predicate acts). Unlike the plaintiffs in In re Platinum, who relied impermissibly on group pleading, CSXT identifies the individual defendants and differentiates between their conduct. Thus, the third amended complaint survives the motions to dismiss.[7]

3.   Pattern of Racketeering Activity

As explained above, a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which

---

[7]This Court also notes that the phrase "lawyer defendants" has been used to describe Peirce, Raimond, and Coulter throughout this litigation, yet this is the first time that they have argued that this phrase fails to provide them with adequate notice of their individual roles in the fraud.

31

occurred after the effective date of [the RICO statute] and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  To demonstrate a pattern of such activity, the plaintiff must show "continuity plus relationship," i.e., "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Awappa, LLC, 615 F.3d at 318 (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). The Fourth Circuit has observed that "there is no mechanical formula to assess whether the pattern requirement has been satisfied; it is a commonsensical, fact-specific inquiry." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 181-82 (4th Cir. 2002).

In addressing the "continuity plus relationship" test, the Supreme Court has found that for the predicate acts to be related, they must have "'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics and [not be] isolated events." H.J. Inc., 492 U.S. at 230.  The continuity aspect refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241.  The continuity requirement demonstrates Congress's desire to limit RICO's application to "ongoing lawful activities whose scope and persistence pose a

32

special threat to social well-being." <u>Al-Abood ex rel. Al-Abood v. El-Shamari</u>, 217 F.3d 225, 238 (4th Cir. 2000).

In this case, the predicate acts pled in the third amended complaint do have certain similarities.  The alleged participants are the lawyer defendants and Dr. Harron.  The alleged victim is CSXT.  The alleged purpose of the predicate acts was to defraud CSXT through the manufacturing, filing, and prosecution of fraudulent asbestos claims.  The methods of commission were also similar: the lawyer defendants included fraudulent claims in mass lawsuits filed in the same overburdened court system, and subsequently filed motions to compel mandatory mass mediation of the claims.  According to the third amended complaint, all of these actions were intended to deprive CSXT of access to discovery in individual cases in order to conceal the fraudulent claims and leverage high settlements.  (Third Am. Compl. ¶¶ 17-19.)  Further, CSXT alleges that each of the fraudulent claims was a product of the lawyer defendants' deliberately unreliable mass screenings and was based, in whole or in part, on an x-ray taken by the same radiologic technologist (Corbitt) and interpreted by the same doctor (Harron).

With regard to relatedness, this Court's analysis hinges upon whether the predicate acts are defined as only the eleven fraudulent asbestosis claims or whether the mass suits themselves are considered predicate acts.  As both parties acknowledge, the

33

eleven fraudulent claims represent a small percentage of the total number of claims included within the mass lawsuits discussed in the third amended complaint.  The lawyer defendants argue that this isolated conduct, a mere 0.2% of the asbestosis claims filed by the Peirce Firm against CSXT, does not create a pattern of racketeering activity.  But this Court finds that the predicate acts alleged in the third amended complaint arguably encompass more than just the eleven fraudulent claims.  CSXT asserts that the lawyer defendants "deliberately filed . . . mass lawsuits in overburdened courts to deprive CSXT of access to meaningful discovery, which in turn concealed fraudulent claims and leveraged higher settlements based on the threat of mass trials." (Third Am. Compl. ¶¶ 19, 89.)  The fact that not all of the asbestos lawsuits filed against CSXT were fraudulent does not necessarily rule out the argument that the mass lawsuits were filed as part of a grander plan to conceal the fraudulent claims.

The facts alleged in the third amended complaint also demonstrate that the lawyer defendants' predicate acts were related.  Over a six-year period, the lawyer defendants filed or caused to be filed five separate lawsuits in the same jurisdiction containing fraudulent claims against CSXT.  (Third Am. Compl. ¶¶ 105, 112, 125, 129, 134, 147, 160.)  Moreover, the third amended complaint asserts that the lawyer defendants committed numerous other acts of mail and wire fraud over a nearly ten-year period in

34

order to advance and conceal the fraudulent claims. (Third Am. Compl. ¶¶ 159-60.) While the eleven fraudulent claims may have been a relatively small percentage of the total number of claims included in the mass lawsuits, the third amended complaint defines the predicate acts as the mass lawsuits themselves and the commission of other acts of mail and wire fraud in furtherance of those claims. Thus, the allegations in the third amended complaint meet the relatedness requirement of pleading a pattern of racketeering activity.

In addition to being related, the facts in the amended complaint demonstrate that the predicate acts satisfy the continuity requirement. The Supreme Court has explained that "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." Id. at 242. If the RICO action is brought "before continuity can be established in this way . . . liability depends on whether the *threat* of continuity is demonstrated." Id. In their motions to dismiss, the lawyer defendants assert that CSXT can demonstrate neither open-ended nor closed-ended continuity. CSXT counters that it has demonstrated both open-ended and closed-

ended continuity. This Court finds that at this point, the allegations of the third amended complaint are sufficient to show either closed- or open-ended continuity.

The third amended complaint alleges that "the predicate acts were continuous in that they occurred on a regular basis." (Third Am. Compl. ¶ 162.) CSXT also sets forth facts indicating that the lawyer defendants continued to prosecute the fraudulent claims even after CSXT filed its original amended complaint in this case. (Third Am. Compl. ¶¶ 133-39.) Further, the third amended complaint alleges that Dr. Harron has refused to answer questions regarding his diagnostic practices when deposed in connection with an asbestos-related case previously pending in this Court and has been found to have engaged in ongoing fraud on the courts by the New York State Board of Professional Medical Conduct. (Third Am. Compl. ¶¶ 71-73.) The calculated and deliberate strategy of the lawyer defendants to participate in and conduct the affairs of the Peirce Firm through a pattern and practice of unlawful conduct (Third Am. Compl. ¶ 18), as described in the third amended complaint, indicates that the filing of fraudulent lawsuits was a part of the Peirce Firm's regular business practice. Taken together, these facts, if proven, establish a threat of continued racketeering conduct and therefore, open-ended continuity.

The third amended complaint also alleges that beginning in the late 1990s, the lawyer defendants participated in a scheme to

defraud CSXT by fabricating and prosecuting asbestos claims in mass lawsuits in overburdened courts.  (Third Am. Compl. ¶ 19.)  CSXT argues that this scheme victimized the claimants and the West Virginia courts, in addition to CSXT.  According to CSXT, these facts support a finding of closed-ended continuity.  This Court agrees that it is contrary to Fourth Circuit policy to permit ordinary disputes to be transformed into RICO claims.  See Al-Abood, 217 F.3d at 238 ("We conclude that this case is not sufficiently outside the heartland of fraud cases to warrant RICO treatment.").  However, in this case, the third amended complaint sufficiently sets out a pattern of racketeering activity that includes acts that are both related and continuous and that exceed the scope of unlawful activity found in customary fraud cases.

4.   Proximate Cause of Injury

To recover civil RICO damages, a plaintiff must also allege that he was injured "by reason of" the pattern of racketeering activity.  18 U.S.C. § 1964(c).  To meet this burden with respect to mail and wire fraud, a plaintiff must "plausibly allege both that [it] detrimentally relied in some way on the fraudulent mailing . . . and that the mailing was a proximate cause of the alleged injury to [its] business or property."  Chisholm v. TranSouth Fin. Corp., 95 F.3d 331, 337 (4th Cir. 1996).  Here, CSXT argues that it was injured in its "business or property by reason of" the lawyer defendants' RICO violations because it was forced

37

"to expend substantial money and resources to process, defend and/or settle the deliberately fabricated claims outlined in Paragraph 147 that should never have been filed in the first place." (Third Am. Compl. ¶¶ 165, 176.) The third amended complaint describes a direct relationship between the lawyer defendants' filing and prosecution of fraudulent claims and CSXT's need to expend resources in response to those claims. Construing the facts in the light most favorable to CSXT, this Court concludes that CSXT has properly alleged that it expended resources in connection with the fraudulent claims. Importantly, the Fourth Circuit has held that the "best reading of § 1964(c)'s injury to business or property requirement is that it refers to the fact of injury and not the amount." Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc., 262 F.3d 260, 265 (4th Cir. 2001). Therefore, the fact that some of the eleven allegedly fraudulent claims were dismissed on procedural grounds as part of motions attacking the larger FELA complaints, thus perhaps requiring the expenditure of fewer resources, does not imply a lack of causal nexus between CSXT's injuries and the fraudulent asbestos claims.

    5.  Vagueness Challenge

    The final challenge presented in the lawyer defendants' motions to dismiss is that RICO's pattern requirement is, as applied to the facts of this case, unconstitutionally vague. However, this Court disagrees. Based upon the Fourth Circuit's

rejection of similar challenges, this Court finds that RICO's pattern requirement is not unconstitutionally vague as applied to the lawyer defendants. See <u>United States v. Bennett</u>, 984 F.2d 597, 606 (4th Cir. 1993) (rejecting a vagueness challenge to RICO's pattern of racketeering requirement and citing decisions of sister circuits who have rejected vagueness challenges); <u>see also</u> <u>United States v. Gross</u>, 199 Fed. App'x 219, 235 n.4 (4th Cir. 2006). While it may be argued that RICO is unconstitutionally vague in some contexts, in this case the statute provided the lawyer defendants adequate notice that their alleged fraudulent scheme fell within those acts contemplated by RICO and would subject them to RICO liability.

## IV.  <u>Conclusion</u>

For the reasons set forth above, Robert N. Peirce's motion to dismiss the third amended complaint (ECF No. 887) is DENIED, Louis A. Raimond's motion to dismiss the third amended complaint (ECF No. 889) is DENIED, and Mark T. Coulter's motion to dismiss the third amended complaint (ECF No. 891) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:      May 3, 2012


                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE