```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

CSX TRANSPORTATION, INC.,

       Plaintiff,

v.                                      Civil Action No. 5:05CV202
                                                      (STAMP)
ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation,
ROBERT PEIRCE, JR., LOUIS A. RAIMOND,
MARK T. COULTER and RAY HARRON, M.D.,

       Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR
SEPARATE TRIALS OF THE CLAIMS IN THE
THIRD AMENDED COMPLAINT AND THE COUNTERCLAIMS**

I.   Background[1]

On October 19, 2011, the plaintiff in the above-styled civil action filed a third amended complaint against Robert N. Peirce, Jr., Louis A. Raimond, Mark T. Coulter (collectively, the "lawyer defendants"), and Ray Harron, M.D. The third amended complaint alleges that the lawyer defendants prosecuted fabricated asbestos claims against CSX Transportation, Inc. ("CSXT"), including a claim filed on behalf of Earl Baylor ("Baylor"), and thereby violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and the common law of West Virginia.

---

[1] For the purpose of resolving the pending motion, this Court believes that the following abbreviated summary of this case is sufficient.

Also on October 19, 2011, the lawyer defendants filed counterclaims against CSXT, alleging that, in light of a release that Baylor executed in connection with a prior claim, CSXT committed fraud (1) when it alleged in its amended complaint[2] that it had sustained damages in defending the Baylor asbestos claim; and (2) when it did not immediately produce the release in response to a discovery request in this case, instead of waiting until it obtained a disclosure authorization from Baylor.[3]

Earlier this year, this Court denied the lawyer defendants' motion to dismiss the third amended complaint (ECF No. 1050), and also denied CSXT's motion to dismiss the counterclaims (ECF No. 1039). CSXT's claims in the third amended complaint and the lawyer defendants' counterclaims are scheduled to be tried jointly on December 11, 2012.

On June 13, 2012, CSXT filed a motion for separate trials of the claims in the third amended complaint and the counterclaims. Citing Rule 42(b) of the Federal Rules of Civil Procedure, CSXT argues that in this case, the criteria identified in the rule --

---

[2]The amended complaint was filed on July 5, 2007. (ECF No. 208.) Later, the plaintiff sought leave to file a second amended complaint. This Court denied the plaintiff's motion to file a second amended complaint -- a decision was eventually reversed by the United States Court of Appeals for the Fourth Circuit.

[3]Defendant Ray A. Harron also filed a separate counterclaim against CSXT. (ECF No. 875.) Harron later requested that his counterclaim be dismissed. On January 30, 2012, this Court entered an order granting Harron's motion to voluntarily dismiss his counterclaim without prejudice. (ECF No. 928.)

convenience, avoidance of prejudice, or expediting and economizing -- have been met, and therefore, the claims set forth in the third amended complaint should be tried separately from those set forth in the lawyer defendants' counterclaims.  CSXT also argues that its attorneys in the trial of its own claims are likely to be witnesses in the trial of the lawyer defendants' counterclaims, and would thus be disqualified from trying CSXT's affirmative claims under Rule 3.7 of the West Virginia Rules of Professional Conduct.

The defendants filed a response in opposition to the motion for separate trials, in which they argue that bifurcation of the trial is unnecessary.  The lawyer defendants further request that this Court enter an order finding that Rule 3.7 is not implicated here and/or that the exceptions to Rule 3.7 apply in this case. Next, CSXT filed a reply in support of its motion for separate trials, reiterating its argument that separate trials of the claims and counterclaims would solve a number of problems that would result from a single trial, including: (1) the prospect that the parties' lawyers will be witnesses in the trial of the counterclaims; (2) the severe prejudice from allowing the plaintiff's claims to be portrayed as fraudulent before the jury that decides them; (3) the possibility that a joint trial would result in unnecessary litigation, in that the verdict on the claims could obviate the need for a trial on the counterclaims; and (4) the potential for juror confusion.

The defendants then filed a supplement to their response in opposition to the motion for separate trials, in which they clarify a comment regarding Mr. Duncan Getchell, who CSXT indicated is involved in preparing discovery responses and producing documents in response to the discovery served on CSXT. CSXT also filed a supplement in support of its motion for separate trials, apprising this Court of the fact that since the filing of CSXT's reply, the defendants have noticed the depositions of three of the four lawyers for CSXT on its claims, including lead trial counsel, all of whom have been representing CSXT from the time the claims were filed. The motion for separate trials is currently pending before this Court, and for the reasons set forth below, this Court finds that it must be denied.

## II. Applicable Law

### A. Bifurcation of the Proceedings

Rule 42 of the Federal Rules of Civil Procedure provides, in pertinent part:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b). It is well established that Rule 42(b) affords the district court broad discretion "to order separate trials where such an order will further convenience, avoid prejudice, or promote efficiency." Amato v. City of Saratoga

4

Springs, N.Y., 170 F.3d 311, 316 (2d Cir. 1999); Bowie v. Sorrell, 209 F.2d 49, 51 (4th Cir. 1954) ("[T]he granting of separate trials is within the sound discretion of the trial judge."). "Therefore, bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." Amato, 170 F.3d at 316 (internal citations omitted). "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (3d ed. 2008). However, "[t]he piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course." Id.

B.   Lawyer as Witness

Rule 3.7 of the West Virginia Rules of Professional Conduct ("Rule 3.7") states:

> (a)  A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
>> (1)  the testimony relates to an uncontested issue;
>>
>> (2)  the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3)  disqualification of the lawyer would work substantial hardship on the client.

> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

W. Va. R. Prof'l Conduct 3.7. According to Rule 3.7, "it is unethical for a lawyer representing a client to appear as a witness on behalf of the client except under very limited conditions." Syl. pt. 1, Smithson v. United States Fid. & Guar. Co., 411 S.E.2d 850 (W. Va. 1991). Further, "'[w]hen counsel for a party to a cause finds that he is required to be a material witness for his client he should immediately so advise his client and retire as counsel in the case.'" Syl. pt. 3, Garlow v. Zakaib, 413 S.E.3d 112 (W. Va. 1991) (quoting Syl. pt. 3, Smithson)). The rationale for Rule 3.7 is explained in the commentary following the section: "Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client." Musick v. Musick, 453 S.E.2d 361, 367 (W. Va. 1994).

### III. Discussion

A. Rule 3.7

CSXT's motion for separate trials centers around its argument that a bifurcated trial of the claims and counterclaims is necessary in order to avoid the potential disqualification of attorneys under Rule 3.7. CSXT argues that because the lawyer defendants filed their fraud claims against CSXT as counterclaims in this case rather than as a separate lawsuit, CSXT's attorneys

will likely be needed as witnesses in the trial of the lawyer defendants' fraud claims in the same case in which they are representing CSXT on its own claims. According to CSXT, this scenario would violate Rule 3.7, which advises against proceeding with a trial where the lawyer for a party is called as a witness and cross-examined by the opposing party's counsel. CSXT represents that the witnesses with the most intimate knowledge of the claims asserted, which concern the commencement and subsequent conduct of CSXT's lawsuit, are the lawyers who prepared and filed the amended complaint and responded to the lawyer defendants' discovery requests. These lawyers (from McGuire Woods LLP) began representing CSXT in this case when the amended complaint was filed nearly five years ago and continue to represent CSXT on the claims in its third amended complaint today. Thus, CSXT contends that its lawyers are likely to be witnesses in the trial of the lawyer defendants' counterclaims, describing to the jury CSXT's decision-making process in filing the amended complaint and responding to the lawyer defendants' discovery requests, as well as explaining to the jury how the Baylor release figured into that process.[4]

CSXT argues that trying the claims in its third amended complaint together with the lawyer defendants' counterclaims would impose upon CSXT and its lawyers three equally unacceptable

---

[4] With this probability in mind, CSXT states that it has retained separate counsel, Mayer Brown LLP, to represent it on the counterclaims.

alternatives: (1) CSXT's lawyers could serve as attorneys in the single trial but not as witnesses; (2) CSXT's lawyers could serve as witnesses in the single trial but not as attorneys; and (3) CSXT's lawyers could serve as both attorneys and witnesses, risking violation of Rule 3.7.  The only way out of this dilemma, claims CSXT, is for this Court to hold separate trials of the claims in the third amended complaint and the lawyer defendants' counterclaims.

In further support of its argument for separate trials, CSXT asserts that the lawyer defendants' attorneys are also likely to be witnesses in the trial of the counterclaims.  CSXT expects that the lawyer defendants' attorneys may be called to testify as to two general issues raised by the counterclaims: reliance and damages, which are also essential elements of the lawyer defendants' claims of fraud.  Second, CSXT predicts that the lawyer defendants' attorneys are likely to be called as witnesses with respect to two specific issues raised by the counterclaims: (1) whether, between the time that CSXT filed its amended complaint and the time that it responded to the discovery request at issue in the counterclaims, the lawyer defendants learned or should have learned of the prior Baylor case and resulting release; and (2) whether the lawyer defendants' claims are barred by their failure to meet and confer concerning the alleged deficiencies in CSXT's Rule 26 disclosures, its responses to document requests, and/or its privilege logs.  In

addition, CSXT argues that the lawyer defendants' attorneys are likely to be called to testify about some of the underlying historical facts relevant to the counterclaims.

In response, the defendants first make clear that they have informed CSXT that they have no intention of seeking to disqualify CSXT's counsel under Rule 3.7. They further allege that CSXT has previously agreed that Rule 3.7 is not implicated in this case. Significantly, the defendants state that they intend to prove their counterclaims at trial without the testimony of their current defense counsel or CSXT's counsel. The defendants state that they plan to establish the elements of their claims and damages through their own testimony, submission of documentary evidence, admissions, stipulations regarding undisputed facts, possibly expert testimony, and possibly the testimony of former counsel Robert Lockhart.

According to the defendants, the testimony of the lawyer defendants' attorneys will not be needed because the lawyer defendants themselves or Mr. Lockhart will be available to testify as to each of the issues described by CSXT. The defendants also contend that the lawyer defendants and/or Mr. Lockhart can adequately describe the historical facts of this litigation. In the view of the defendants, mere speculation on the part of CSXT as to whether the defendants' current defense counsel may testify at trial is insufficient to justify bifurcation of the trial.

As the moving party, CSXT has the burden of proving that bifurcation is appropriate. Roberts v. Consolidation Coal Co., 539 S.E.2d 478, 498-99 (W. Va. 2000). With regard to the lawyer defendants' attorneys, CSXT has described various issues that it suspects these attorneys are "likely to be called as witnesses" to address. Mot. for Separate Trials at 13-15. However, CSXT's bare assertion that it would be prejudiced by certain testimony of witnesses who <u>might</u> be called to testify is an inadequate basis for bifurcation. Montgomery v. Am. Family Ins. Co., No. 3:09-cv-00545, 2010 WL 1936085, at *2 (N.D. Ind. May 11, 2010) (citing Williamson v. Progressive N. Ins. Co., No. 1:07-cv-263, 2007 WL 2176561, at *2 (S.D. Ind. July 26, 2007) (holding that mere speculation "is an inadequate basis upon which the Court should grant a separate trial")). Even the "realistic prospect" that attorney-witness issues might arise during trial is not a certainty, and this Court finds that any such issues would be better addressed in motions in limine. Pl.'s Reply at 3. As CSXT correctly states, at this time, no motions for disqualification have been filed. Further, because only limited discovery has taken place with regard to the counterclaims, it is not clear who, if any, of CSX's counsel could be potential witnesses. Defs.' Resp. at n.5. At this stage of the litigation, this Court cannot be certain whether any of the parties' attorneys will face potential disqualification because the testifying witnesses have not yet been identified.

The defendants go on to argue that even if defense counsel trying the case were required to testify, the exceptions to Rule 3.7 would apply because there is no potential testimony involving a contested issue of fact,[5] and any testimony relating to the nature and value of legal services rendered is not prohibited by Rule 3.7.  <u>See</u> W. Va. R. of Prof'l Conduct 3.7(a).  Further, the defendants argue that disqualification of any member of the two lawyer defense team from DeForest Koscelnik, who will serve as trial counsel and who have represented the defendants since November 2006, "would work a substantial hardship" on the defendants.

This Court need not address, at this time, whether attorneys for either party face disqualification.  Rather, this Court focuses on Rule 3.7, and finds that neither the rule nor the policies underlying it justify separate trials in this case.  As the defendants have explained, the testimony of their own defense counsel will not be needed to prove their claims.  Although CSXT claims that the testimony of the lawyer defendants' attorneys will be needed to show that the lawyer defendants reasonably relied on CSXT's assertions in the amended complaint, CSXT cannot force

---

[5]The defendants argue that the facts relating to the two main issues presented in the counterclaims cannot be disputed. According to the defendants, whether the existence of the Baylor release was disclosed on CSXT's privilege log will be established by the privilege log itself.  The defendants further assert that there should be no dispute that they were required to defend against the amended complaint.

defense counsel into testifying. This Court relies upon the defendants' representation that testimony from their defense counsel will not be required in the prosecution of the counterclaims.

In their response, the defendants next address CSXT's defense of the counterclaims, arguing that CSXT has failed to establish in its motion for separate trials that non-lawyer witnesses are not available to provide whatever testimony may be needed. Pointing to CSXT's privilege objections to discovery, the defendants argue that CSXT does not intend to and cannot use counsel's testimony in defending the counterclaims since it has opposed discovery on that topic. The defendants also contend that CSXT has six active and able trial lawyers, and there has been no showing that CSXT could not present its case even if any of those lawyers disqualified themselves.

CSXT cites multiple cases in support of its contention that allowing its attorneys to be witnesses in the trial of the lawyer defendants' counterclaims would result in prejudice. However, as the defendants noted, most of these cases involve patent and antitrust litigation, and can be distinguished from the present case. For example, in Coolsavings.com Inc. v. E-Centives, Inc., No. 98 C 4924, 2000 WL 1262929 (N.D. Ill. Sept. 1, 2000), the court held that a separate trial of the inequitable conduct defense after the jury trial on the patent infringement claim was appropriate.

12

Id. at *7.  Patent and antitrust litigation typically involves unique issues that lend themselves to bifurcated trials, including fraud before the patent office and anti-competitive allegations related to patent misuse that require testimony from counsel.  See Crystal Import Corp. v. Avid Identification Sys., Inc., Civil No. 05-2527, 2007 WL 424537 (D. Minn. Feb. 2, 2007) ("Courts often sever such antitrust claims under Rule 42(b) and stay them pending the resolution of the issues of patent validity and infringement, reasoning that resolution of the patent claims could likely preclude the need to address the counterclaims that the patentee has engaged in mere 'sham' litigation."); Johns Hopkins Univ. v. Cellpro, 160 F.R.D. 30, 33 (D. Del. 1995) ("Historically, courts have found it worthwhile to hold separate trials on liability and damages issues in patent cases.").  Similarly, in State of Illinois v. Borg, Inc., 564 F. Supp. 102 (N.D. Ill. 1983), the court held that a separate trial of the fraudulent concealment issue and the claims alleging violations of the Sherman Act would achieve the purposes of Rule 42(b).  Id. at 105-06.  Although courts routinely separate trials for patent and antitrust issues, those issues are not implicated here.

This Court's decision in Ferrell v. Brooks, No. 5:05CV115, 2006 WL 1867267 (N.D. W. Va. June 30, 2006), cited by the plaintiff in support of its argument that separate trials are warranted when the resolution of one claim is potentially dispositive of the

13

other, is also distinguishable from this case.  In Ferrell, the decision to bifurcate the trial was based on a joint motion of the parties in an insurance and bad faith related matter -- claims that also lend themselves to bifurcation.  See Brantley v. Safeco Ins. Co. of Am., No. 1:11-CV-00054-R, 2011 WL 6012554 (W.D. Ky. Dec. 1, 2011) ("The bifurcation of claims for coverage under an insurance agreement and claims of bad faith on the part of the insurance provider is an oft discussed topic by district courts.  These cases lend themselves to bifurcation under Rule 42(b) because if the plaintiff cannot prevail on the coverage issue, the claim for bad faith necessarily fails.").

    CSXT also cites Winnett v. Caterpillar Inc., Nos. 3:06-CV-00235, 3:06-CV-01113, 2010 WL 424914 (M.D. Tenn. Jan. 28, 2010), in support of its argument that a separate trial would avoid potential problems under Rule 3.7.  In Winnett, the court granted a motion to sever third-party claims and contingent counterclaims pursuant to Rule 42(b).  In reaching this decision, the court discussed the fact that if all claims proceeded to trial, substantial evidence would be introduced in connection with certain claims that would have no bearing on other claims.  Id. at *2-*3.  Thus, the jury would hear vast amounts of evidence that would not be relevant to the claims on which the jury would have to render a verdict.  Id. at *2.  Fortunately, this Court is not faced with the same challenges presented in Winnett.

Unlike the patent, antitrust, and insurance coverage cases cited by CSXT, this case is not suited to bifurcation because the lawyer defendants' counterclaims do not hinge solely upon the success of CSXT's claims. Also, the facts and legal issues presented in the third amended complaint and the counterclaims are inextricably intertwined -- all of the claims relate to allegedly fraudulent conduct in the Federal Employers Liability Act ("FELA") litigation involving Baylor and the past history of CSXT and the defendants with regard to FELA action. See 2 James Wm. Moore, et al., Moore's Manual: Federal Practice ¶ 20.03[4][c] (3d ed. 2012) ("Bifurcation is improper where the issues are so closely interwoven that the plaintiff would have to present the same evidence twice in separate trials."). As the defendants state, much of the background information that will be presented with regard to the history of the FELA litigation and the interactions between CSXT and the defendants during the prosecution and defense of CSXT's affirmative claims is highly relevant to and will need to be presented to give context to the counterclaims. Moreover, this Court finds that if it were to order separate trials, it would risk the possibility of an appeal staying the progress of the second trial. In the view of this Court, CSXT's purported concerns about Rule 3.7 are not a legitimate basis for altering the normal course of events, which is to have a single trial.

B.  <u>Rule 42(b)</u>

CSXT's secondary arguments in support of bifurcation under Rule 42(b) are also without merit. CSXT claims that a single trial would result in prejudice to CSXT because it would allow the jury deciding its claims to hear evidence purporting to show that a portion of those same claims were fraudulently filed and litigated. According to CSXT, a jury cannot reasonably be expected to decide its claims fairly and impartially when it is simultaneously told that CSXT has engaged in wrongdoing in filing and litigating those claims. This Court has confidence, however, that the jurors will be able to follow this Court's instructions and serve as impartial factfinders, even in a complicated case such as this one. See <u>CSX Transp., Inc. v. Hensley</u>, 556 U.S. 838, 841 (2009) ("Jurors routinely serve as impartial factfinders in cases that involve sensitive, even life-and-death matters. In those cases, as in all cases, juries are presumed to follow the court's instructions."). As all of the claims are based on fraud, a single trial will not require confusing or conflicting instructions. Even with "multiple layers" of fraud claims, certainly, any concerns about potential prejudice or confusion could be cured by proper jury instructions. Pl.'s Reply at 13.

As explained above, the lawyer defendants' counterclaims relate directly to the subject of CSXT's claims. Simply put, CSXT alleges that it was misled and forced to expend substantial sums of

16

money on Baylor's claim. The defendants assert the known existence of the Baylor release by CSXT as both an affirmative defense to CSXT's fraud claims and as a basis for their counterclaims. In fact, the defendants have specifically alleged as part of their affirmative defenses that "Plaintiff was not defrauded," that "Plaintiff's claims fail for lack of reasonable reliance," and "Plaintiff's claims are barred by the doctrine of release." Lawyer Defs.' Answer to Third Am. Compl. at 15, 17. The overlap between the claims in the third amended complaint, the counterclaims, and the defenses to those claims, is a factor that balances against ordering separate trials. See In re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1182 (3d Cir. 1993) ("According to the Supreme Court, bifurcated trials are permitted only if the separate issues are so distinct that a trial of one without the other may be had without injustice.") (citing Gasoline Prods. Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931)).

CSXT also argues that bifurcation will expedite and economize this action because a verdict in CSXT's favor on its claims will preclude the defendants from winning a trial on the counterclaims. CSXT explains that the third amended complaint alleges that the lawyer defendants falsely represented that a number of asbestos claims, including Baylor's, had a good-faith basis in fact; that CSXT relied on those misrepresentations; and that CSXT sustained damages as a result. One of the lawyer defendants' defenses to the

17

Baylor fraud claim is that the Baylor release was executed in connection with Baylor's prior suit, which precludes a finding of reliance or damages on the part of CSXT. The lawyer defendants allege in the counterclaims that in light of the release, CSXT's allegations in the amended complaint concerning Baylor's asbestos claim are false. Thus, CSXT argues that if the jury finds in its favor on the Baylor claims, the defendants cannot prevail on the counterclaims. This Court disagrees. Even assuming that the jury finds in favor of CSXT on the Baylor claim, the jury could conclude that CSXT was damaged but that its allegations in the third amended complaint and its other improper conduct alleged in the counterclaims were, nonetheless, fraudulent.[6] Moreover, a jury might conclude that CSXT is entitled to recover regarding the assertion of certain of the underlying claims, but not Baylor's. Therefore, a verdict in CSXT's favor does not preclude a verdict in favor of the defendants.

Although CSXT asserts that two separate trials would not result in increasing expense, this Court finds that a bifurcated trial in this matter would substantially increase costs by requiring the parties to re-try issues and re-present facts.

---

[6]Among other allegations, the lawyer defendants' counterclaims assert that CSXT falsely alleged that it was forced by the defendants' alleged conduct to expend <u>substantial</u> money and resources to defend the Baylor claim. CSXT has argued that its having incurred <u>any</u> damage can support its RICO and fraud claims. Thus, an issue exists regarding the extent of the damages incurred by CSXT in defending the Baylor claim.

Duplication of pretrial pleadings, testimony, and evidence would almost certainly add up to increased costs for both the parties and this Court. Bifurcation would also delay the ultimate resolution of this case, the procedural history of which extends back over five years. For these reasons, the motion for separate trials must be denied.

### IV. Conclusion

For the reasons set forth above, the plaintiff's motion for separate trials of the claims in the third amended complaint and the counterclaims (ECF No. 1095) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    August 10, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE