IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CSX TRANSPORTATION, INC.,

    Plaintiff,

v.     Civil Action No. 5:05CV202
                                        (STAMP)
ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation,
ROBERT PEIRCE, JR., LOUIS A. RAIMOND,
MARK T. COULTER and RAY HARRON, M.D.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
CONFIRMING PRONOUNCED RULINGS OF THIS COURT
RELATING TO DEFENDANT RAY HARRON, M.D.'S MOTIONS IN LIMINE**[1]

Pending before this Court are certain motions in limine filed by plaintiff, CSX Transportation, Inc. ("CSX"), and the defendants, Robert N. Peirce, Jr., Louis A. Raimond, and Ray Harron, M.D. ("Harron"), relative to the jury trial that is scheduled in this civil action. This Court has reviewed these separate motions and makes the following findings concerning defendant Harron's motions in limine:

1. <u>Motion in Limine to Preclude Statistical Evidence Relating to the Rate of Asbestosis Among Railroad Employees and to Dr. Harron's Purported Positive Read Rate (ECF No. 1383)</u> -- DENIED.

---

[1] This memorandum opinion and order, while filed after the jury trial, which was completed on December 20, 2012, consists of rulings made prior to trial at a hearing conducted on December 5, 2012. These rulings may have been altered or modified during the trial.

By this motion, defendant Harron seeks to preclude CSX from offering evidence from its expert, Dr. Anil Vachani, regarding what the actual rate of asbestosis and/or the actual rate of x-rays consistent with asbestosis is among railroad workers. The motion also seeks to preclude CSX from offering evidence of the rate at which defendant Harron read x-rays of Peirce firm clients as consistent with or positive for asbestosis. Defendant Harron claims that such evidence will be used to support an argument that because defendant Harron read "too many" x-rays as consistent with asbestosis, his specific B read of Mr. Baylor's x-ray was done fraudulently. Defendant Harron argues that the statistics cited by Dr. Vachani are not relevant as there is nothing to show that the populations of railroad workers involved in those studies are significantly similar to the population of Peirce firm clients for whom defendant performed B reads. Further, defendant Harron states that the evidence is not relevant because even if CSX could prove that Dr. Harron's positive B read rate was higher than the actual rate for a particular population, such evidence would not prove anything about the single B read he did for Mr. Baylor that is at issue in this case. In addition to the argument that the evidence is irrelevant, defendant Harron also states that the statistical evidence should be excluded because it is often given too much weight by a jury and should be barred by Rule 403 as it is therefore too prejudicial. Further, defendant Harron states that it should be inadmissible under Rule 403 because it is confusing

and thus prejudicial as there is no evidence that Dr. Harron knew either what the rate was of his positive reads or what the proper positive read rate was. Defendant Harron also claims that this evidence should be excluded under Rule 404(b) as it is being used to show prior bad acts. He argues that CSX's argument that it demonstrates fraudulent intent is insufficient to admit such evidence under Rule 404(b). Lastly, defendant Harron states that even if his positive read rate from the Peirce firm is admissible, the Peirce firm's admission should not be admitted at trial against him as such admissions are inadmissible hearsay when they are offered against a party other than the party that made the admission.

CSX responds by stating that defendant Harron's positive read rate for the Peirce firm is the most compelling proof that the reads were fraudulent. Such a read rate, CSX states, is also highly probative of the alleged conspiracy between the defendants. Further, CSX argues that defendant Harron's read rate compared with that of the true prevalence of x-ray findings consistent with asbestosis in railroad workers is relevant, as it makes it more likely than not that Harron's positive findings were fraudulent.

The percentage of positive reads may be evidence of fraud based upon CSX's expert, particularly as to any conspiracy between defendant Harron and defendants Peirce and Raimond since there would appear to be evidence of defendants Peirce and Raimond's knowledge of Harron's positive read rate. The fact that such

scientific data is contrary to other evidence to be presented by defendants does not make the data inadmissible if under Rule 703, it is shown to be based on facts and data upon which experts in a particular field would reasonably rely upon.

2. <u>Motion in Limine to Preclude CSX From Introducing Evidence of Dr. Harron's Fifth Amendment Right Against Self-Incrimination in Other Proceedings (ECF No. 1384)</u> -- DEFERRED.

Defendant Harron claims that CSX seeks to introduce into evidence his assertion of his Fifth Amendment right in other proceedings and to seek adverse inferences from those assertions. Defendant Harron argues that such evidence is inadmissible based on available case law. CSX responds by quoting case law that states, "a fact-finder is entitled to draw adverse inferences from a defendant's invocation of the privilege against self-incrimination." <u>Eplus Tech. Inc. v. Aboud</u>, 313 F.3d 166, 179 (4th Cir. 2002). CSX states that the reliance defendant Harron places on his cited case law is misplaced, as this is a distinguishable situation.

Because a further investigation of the case law involved in this dispute is necessary, this motion is deferred.

3. <u>Motion in Limine to Preclude CSX From Introducing Evidence Against Dr. Harron of Alleged Bad Conduct by Co-Defendants (ECF No. 1385)</u> -- DENIED.

Defendant Harron argues that CSX intends to introduce evidence with no connection to defendant Harron. Specifically, defendant

4

Harron lists the following five categories he believes should not be admitted against him: (1) any evidence related to U.S. X-Ray or John Corbitt; (2) evidence of alleged bribes or payments to union officials paid by the Peirce firm; (3) evidence relating to the Peirce firm's work in making claims to bankruptcy trusts; (4) evidence relating to the Peirce firm's contact with Mr. Baylor or its representation of him in other matters; and (5) testimony relating to legal ethics and the professionalism of the Peirce firm.  Defendant Harron claims that such evidence creates a risk of confusion or unfair prejudice against him and that, at a minimum, this Court should issue a limiting instruction.

CSX responds by stating that evidence tying a defendant to a conspiracy involving his co-defendants is admissible, even if prejudicial, in order to prove the defendant's role in the overall conspiracy.  Further, CSX states that a defendant, like defendant Harron, can be regarded as a co-conspirator even if he is willfully blind to the operation of the conspiracy.  For these reasons, the evidence involved in this motion is admissible against defendant Harron.

Such evidence of conduct by defendants Peirce and Raimond may be relevant as to the issue of a conspiracy.  This Court will consider, if offered, a limiting or cautionary instruction under Federal Rule of Evidence 105 either to be given at trial or as part of the jury charge.  Counsel may prepare such an instruction for the Court.

4.  <u>Motion in Limine to Preclude CSX From Introducing Evidence or Arguing to the Jury Regarding the Court's Opinion in the Matter In Re Silica Products Litigation (ECF No. 1386)</u> -- GRANTED.

Defendant Harron states that CSX seeks to introduce an opinion issued by District Judge Janis Jack in the matter <u>In re Silica Products Litigation</u>, 398 F. Supp. 2d 563 (S.D. Tex. 2005). Defendant Harron argues that this opinion should be excluded because: (1) it is inadmissible hearsay; (2) it is irrelevant; (3) it constitutes improper character evidence; (4) it is prejudicial; (5) it would be confusing to the jury; and (6) it would be a waste of both this Court's and the jury's time.

CSX responds by stating that Judge Jack's opinion in the silicosis case is the single most important fact in this litigation and pervades every aspect of it. CSX contends that the opinion is not inadmissible hearsay as it is not being offered to prove the truth of the matter asserted, but rather for the triggering effect it had on both parties' actions during the time period leading up to this case. Further, CSX states that the opinion should not be barred under Federal Rule of Evidence 404 because it is not being used to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character, but instead it is being used to show the role it played in triggering the actions of both CSX and the lawyer defendants. Finally, CSX argues that Dr. Harron may be cross-examined regarding

Judge Jack's findings as it was his own testimony on which her findings were based.

The published opinion of Judge Jack in <u>In re Silica Products Liability Litig.</u>, is not relevant in this civil action except for certain limited purposes. After all, the case Judge Jack decided, among other things, did not involve the lawyer defendants and their cases with Dr. Harron; the case did not involve asbestos litigation and did not involve the civil conspiracy asserted in this civil action. Admitting Judge Jack's lengthy opinion would also be barred under Rule 403 as raising the danger of unfair prejudice to the lawyer defendants and confusion of the jury. CSX asserts that Judge Jack's opinion "triggered" CSX to bring this civil action and while this may be a factor in deciding the statute of limitations raised by one of the summary judgment motions, it is less relevant in the substantive aspects of this civil action. <u>Except</u>, that CSX may inquire as of a proper witness whether the opinion is <u>generally critical</u> of Dr. Harron and was a reason for the lawyer defendants to stop using Dr. Harron as a B reader. This can be accomplished by a short reference to the opinion and without delving further into its contents. There is no reason because of lack of relevancy and exclusion under Rule 403, to examine Dr. Harron on Judge Jack's specific and detailed findings except to ask him whether the opinion was generally critical of his B readings. The opinion of Judge Jack is also hearsay and even if it is not offered for the truth of the matter asserted, as CSX argues, it is not relevant.

5. <u>Motion in Limine to Preclude CSX from Introducing Evidence of or Relating to B Reads of X-Rays Other Than Dr. Harron's B Read of Earl Baylor's X-Rays (ECF No. 1387)</u> -- DENIED.

By this motion, defendant Harron argues that CSX should be precluded from introducing other B reads done by defendant Harron besides those of Mr. Baylor. In support of this argument, defendant Harron states that such evidence is: (1) irrelevant; (2) constitutes improper character evidence; (3) prejudicial; (4) would be confusing to the jury; and (5) would be a waste of both this Court's and the jury's time. First, he asserts that evidence that he read different x-rays in an improper way has nothing do with Mr. Baylor's asbestosis claim and it is therefore irrelevant. Second, defendant Harron argues that the evidence amounts to nothing more than evidence supporting the inference that if he acted fraudulently in an unrelated matter, he likely conspired to commit fraud regarding Mr. Baylor's claim and such evidence is improper character evidence. Third, defendant Harron states that the evidence should be precluded under Rule 403 because introduction of such evidence will require lengthy examination regarding defendant's conduct in those instances. He argues that such testimony is probative of almost nothing, and is likely to confuse the jury.

CSX responds by stating that defendant Harron's positive read rate for the Peirce firm is the most compelling proof that the reads were fraudulent. Such a read rate, CSX states, is also

highly probative of the conspiracy between the defendants. CSX asserts that in order to demonstrate defendant Harron's read rate it is necessary to introduce B reads in addition to those of the claimants at issue. Therefore, it argues that any contention that those B reads are irrelevant or inadmissible is meritless.

This Court finds that such evidence is relevant and other B reads may be introduced for the jury to consider. Such evidence is not barred under Rule 403 and it could be admissible under Rule 404(b) to show, among other things, lack of mistake or intent. As with any other Rule 404(b) evidence admitted at trial, this Court will consider giving, if offered, a limiting or cautionary instruction.

6. <u>Motion in Limine to Preclude CSX from Introducing Evidence or Arguing to the Jury Regarding State Disciplinary Actions Against Dr. Harron (ECF No. 1389)</u> -- GRANTED.

Defendant Harron argues that CSX should be precluded from offering evidence of any disciplinary actions taken against Dr. Harron as none of the actions involved defendant Harron's B reads of Earl Baylor's x-rays, any work defendant Harron did for the Peirce firm, or his work connected to asbestosis claims. Therefore, defendant Harron argues that such evidence should be precluded because it: (1) is irrelevant; (2) constitutes improper character evidence; (3) is prejudicial; (4) would be confusing to the jury; and (5) would be a waste of both this Court's and the jury's time.

CSX responds by stating that the fact that multiple state medical boards have determined that defendant Harron's standard methodology was medically inappropriate is probative of his intent when generating medical evidence for the lawyer defendants. Further, CSX states that even if this evidence is Rule 404(b) evidence, it may still be introduced to show intent, motive, knowledge, and the like.

This Court finds that such evidence is not relevant. This evidence involves findings other states made that are not necessarily involved in this civil action. Even if it was relevant in some way, it is not admissible under Rule 403, as it raises problems of unfair prejudice and confusion. Admitting this evidence would lead to additional testimony relating to those tribunals. Additionally, in two states, it appears Dr. Harron voluntarily gave up credentials. In Texas, it was based on an agreed order. In any event, the evidence has nothing to do with the matters here involving Baylor, nor does it deal with defendants Peirce or Raimond.

7. <u>Motion in Limine to Preclude CSX From Introducing Evidence or Argument Regarding his Income From the Pierce Firm (ECF No. 1391)</u> -- DENIED.

By this motion, defendant Harron seeks to prevent CSX from introducing evidence regarding the amount of income he received from the Peirce firm. Defendant Harron argues that such evidence is not relevant and it is prejudicial as he charged the same price

10

for each x-ray irrespective of whether it was read negative or positive for asbestosis. CSX responds by stating that such payments are proof of the existence of the conspiracy as they were the primary method of communication between Harron and the lawyer defendants. Therefore, CSX states that such evidence is relevant and admissible.

This Court finds that such payments are relevant under case law to show evidence of a conspiracy and the length and breadth of any conspiracy.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED: January 7, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE