IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CSX TRANSPORTATION, INC.,

        Plaintiff,

v.                                    Civil Action No. 5:05CV202
                                                   (STAMP)

ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation,
ROBERT PEIRCE, JR., LOUIS A. RAIMOND,
MARK T. COULTER and RAY HARRON, M.D.,

        Defendants.

**MEMORANDUM OPINION AND ORDER
CONFIRMING THE PRONOUNCED RULINGS OF THIS COURT
RELATING TO LAWYER DEFENDANTS' MOTIONS IN LIMINE**[1]

        Pending before this Court are certain motions in limine filed by plaintiff, CSX Transportation, Inc. ("CSX"), and the defendants, Robert N. Peirce, Jr., Louis A. Raimond, and Ray Harron, M.D., relative to the jury trial that is scheduled in this civil action. This Court has reviewed these separate motions and makes the following findings concerning motions in limine of the lawyer defendants, Robert N. Peirce, Jr. and Louis A. Raimond:

---

[1]This memorandum opinion and order, while filed after the jury trial, which was completed on December 20, 2012, consists of rulings made prior to trial at a hearing conducted on December 5, 2012. These rulings may have been altered or modified during the trial.

1.  <u>Motion in Limine No. 1 Seeking to Preclude CSX From Presenting</u>
<u>Evidence or Argument That Any Claims, Other Than the Eleven Claims</u>
<u>at Issue Were Allegedly Fraudulent (ECF No. 1375)</u> -- GRANTED.

By this motion, the lawyer defendants seek to preclude CSX
from presenting evidence or argument that any claim which the
Peirce firm brought against CSX, other than the eleven claims at
issue, was fraudulent or the product of fraud.  In support of this
motion, the lawyer defendants cite Federal Rules of Evidence 401,
402, 403 and 404.  The lawyer defendants argue that such evidence
is irrelevant, it would only confuse and prejudice the jury, and it
constitutes impermissible propensity evidence.  CSX responds by
stating that while it does not have any intention of offering any
medical evidence specifically related to any claimant other than
the eleven at issue, it does intend to prove that all of the claims
brought by the lawyer defendants, including the eleven at issue,
were the result of a system of fraud designed and implemented by
all defendants.  CSX argues that it intends to examine the system
in detail, as this is proof of its case.

Plaintiff has made binding judicial admissions including the
following:

> So at the end of the day, when you look at the scope of
> our substantive claims, we're talking about these eleven
> specific claims.  I think the parties call them the
> eleven claims at issue.  As a matter of Rule 9(b) at this
> point those are the only claims from which we can attempt
> to prove fraud and from which we can attempt to prove
> damages.  ECF No. 960 *68-69.

> I think Rule 9(b) prohibits us from sitting there trying
> to prove fraud other than the eleven claims.  And, in
> fact, Judge Stamp already ruled that when he dismissed
> the prior John Doe complaint that led to the first
> amended complaint and now so we're not going to be
> getting up there, putting on -- calling an expert to
> interpret an ILO form related to somebody other than the
> eleven claimants at issue.  So we're not going to be
> putting on direct medical evidence trying to prove frauds
> other than the eleven claimants at issue because Rule
> 9(b) prohibits us from doing that.  <u>Id.</u> *80.

CSX's responses, in light of these admissions, are simply contrary to those representations which it never sought to modify, amend or withdraw.

In fact, CSX now saying that while it has "no intention of offering any medical evidence specifically related to any Peirce claimant other than the eleven at issue" and then saying that it intends "to prove that all claims brought by the Lawyer defendants -- including the eleven at issue -- were the result of a <u>system of fraud</u> designed and implemented by the Lawyer defendants and Dr. Harron" is contradictory, to say the least.

If CSX wished to assert that it could still attempt to present other claims as part of a <u>system of fraud</u>, it certainly could have done so given the opportunities provided during the pretrial phases of this civil action.

2.  <u>Motion in Limine No. 2 Seeking to Preclude CSX From Submitting Evidence or Arguing to the Jury Regarding Payments Made by the Defendants to a Union Official That CSX Characterizes as Alleged Bribes (ECF No. 1376)</u> -- WITHDRAWN.

The lawyer defendants withdrew this motion as a result of an agreement reached between the parties that CSX will not introduce such evidence or argument. <u>See</u> ECF Nos. 1410 and 1418.

3. <u>Motion in Limine No. 3 Seeking to Preclude CSX From Offering Evidence and Argument Concerning Matters Pertaining to Non-Party Witness James Corbitt (ECF No. 1377)</u> -- GRANTED IN PART.

By this motion, the lawyer defendants seek to preclude CSX from offering evidence and argument concerning matters pertaining to non-party witness James Corbitt. Specifically, the lawyer defendants seek to preclude evidence pertaining the background of Mr. Corbitt, who is an x-ray technologist whose company the lawyer defendants used to take chest x-rays of potential clients. Such information includes Mr. Corbitt's prior criminal convictions and alleged failure to follow state laws concerning licensure and related invocation by Mr. Corbitt of the Fifth Amendment. In support of this argument, the lawyer defendants state that such evidence is irrelevant and prejudicial. Thus, they believe such evidence is excludable under both Rule 402 and Rule 403.

CSX responds by stating Mr. Corbitt's past conviction for Medicare/Medicaid fraud is relevant given the lawyer defendants knew Mr. Corbitt was ordered to "cease and desist" from taking x-rays in Texas. CSX claims it is also relevant to demonstrate the lawyer defendants' willful blindness to the operation of their screening program. Further, CSX argues that evidence related to

4

Mr. Corbitt's application for licensure in Ohio and other instances where Mr. Corbitt was not authorized to take x-rays in states where screenings were held is highly probative to show that the lawyer defendants conducted no investigation into the medical foundation of their clients' claims. Finally, CSX claims that Mr. Corbitt's invocation of his Fifth Amendment right is admissible in civil litigation and should be admissible in this case, as although he was not formally the lawyer defendants' employee, he conducted screenings on their behalf in 26 different states for over a decade.

As to all matters except the Fifth Amendment assertion which will be deferred, this Court finds that the evidence sought to be excluded is not relevant and would unfairly prejudice the lawyer defendants under Rule 403.

4. <u>Motion in Limine No. 4 Seeking to Preclude CSX From Offering Evidence Related to Dr. Harron That Does not Involve his Work for the Peirce Firm or Which Occurred after the Peirce Firm Stopped Using Him as an Expert in 2005 and/or to Sever the Trial of the Lawyer Defendants and Dr. Harron (ECF No. 1378)</u> -- GRANTED IN PART/DENIED IN PART.

By this motion, the lawyer defendants seek to preclude CSX from offering evidence related to Dr. Harron that does not involve his work for the Peirce firm or which occurred after the Peirce firm stopped using him as an expert in 2005. Further, if such

evidence is not precluded or even if it is, the lawyer defendants seek to sever the trial of the lawyer defendants and Dr. Harron. In support of this argument, the lawyer defendants state that such evidence is first irrelevant and should be excluded under Rule 402 as evidence related to matters concerning Dr. Harron that have nothing to do with his work for the lawyer defendants will not tend to make any element of CSX's case more or less likely. Additionally, the lawyer defendants state that the evidence should be excluded under Rule 403 because of its potential to inflame and prejudice the jury against the lawyer defendants and because it would result in a series of "mini-trials." The lawyer defendants state that such possible mini-trials include among others, one regarding the nature of silicosis and Dr. Harron's work in interpreting x-rays in connection with that disease, the medical licensing proceedings and how they differed from this case, and an explanation of why Dr. Harron did or did not exercise his Constitutional rights at a given point in time. Next, the lawyer defendants argue that CSX's proposed evidence in this instance is improper character evidence that will cast aspersions on the lawyer defendants via Dr. Harron's conduct. Therefore, the lawyer defendants argue that such evidence should be excluded under Rule 404. Finally, regarding this evidence, the lawyer defendants argue that Judge Jack's opinion from the silicosis case and the medical licensing board findings are inadmissible hearsay and could

improperly influence the jury because the opinion comes from a judge and governmental authorities.

CSX responds by stating that this motion is moot, as it does not intend to introduce evidence of Dr. Harron's work for lawyers other than the lawyer defendants except for certain instances and as may arise in cross-examination. The first category of evidence is Dr. Harron's positive read rates for the lawyer defendants and evidence of non-Baylor B reads. CSX argues that such evidence is probative of the conspiracy between Dr. Harron and the lawyer defendants and is not irrelevant. Further, CSX asserts that even if such evidence constitutes evidence of "other acts" within the meaning of Rule 404(b), such rule provides that such evidence is admissible to prove "motive," "intent," and "absence of mistake." The second category of evidence CSX plans to admit is evidence concerning the actual prevalence of asbestosis in railroad workers, compared to Dr. Harron's positive read rate. CSX argues that such evidence is relevant to show that it is more likely than not that Dr. Harron's reads were fraudulent and to show that the lawyer defendants were on notice that Dr. Harron's findings were grossly contrary to published scientific literature. The third category of evidence that CSX intends to introduce are payments by the lawyer defendants to Dr. Harron. CSX asserts that such evidence is proof of the existence of the conspiracy between the defendants and is therefore relevant and admissible. The fourth category of evidence

that CSX intends to introduce is evidence regarding Dr. Harron's revocation or surrender of his medical licences.  CSX contends that such evidence is probative of Dr. Harron's intent when generating medical evidence for the lawyer defendants.  The final category of evidence that CSX intends to introduce is evidence of Dr. Harron's assertion of his Fifth Amendment privilege against self-incrimination.  CSX argues that such evidence is admissible in civil actions and the prior case where such right was invoked was not unrelated to the current case.

Dr. Harron's positive reads of others in addition to the claimants at issue, made for the lawyer defendants, are relevant particularly as to the conspiracy claim and not excludable under the balancing test under Rule 403.  Such evidence could also be included under Rule 404(b) as being relevant, reliable and necessary to show, among other things, intent or absence of mistake.  Payments to Harron by lawyer defendants would also be relevant.  Dr. Harron's invocation of the Fifth Amendment in other proceedings is not relevant and proceedings before any medical licensing board, if they do not involve Dr. Harron's work for lawyer defendants, are not relevant, excludable under Rule 403, and not admissible under Rule 404(b).  The alternative request for separate trials is DENIED.

5.   <u>Motion in Limine No. 5 to Preclude CSX From Submitting Evidence or Arguing to the Jury Regarding Collateral Matters</u>

<u>Related to the Texas Silicosis Litigation Before Judge Jack and/or</u> <u>to Sever the Trial of Dr. Harron (ECF No. 1379)</u> -- GRANTED IN PART/DENIED IN PART.

By this motion, the lawyer defendants seek to preclude CSX from submitting evidence or argument related to the proceedings held before Judge Jack. In the alternative, the lawyer defendants request that this Court sever Dr. Harron from this case and initially try just a case with the lawyer defendants. In support of this argument, the lawyer defendants make four arguments. First, they argue that evidence of Dr. Harron's conduct in silicosis cases not involving the lawyer defendants is factually inapposite and irrelevant to whether a fraud was perpetrated by the lawyer defendants against CSX. The lawyer defendants argue that this irrelevance cannot be overcome merely by allegations of conspiracy thrown into the mix, when the alleged conspiracy had nothing to do with the unrelated silicosis matter. Second, the lawyer defendants contend that Judge Jack's opinion from the silicosis case is inadmissible hearsay and would improperly influence the jury because the opinion comes from a judge. Third, the lawyer defendants assert that this Court should exclude the evidence under Rule 403, including a prohibition against using it on cross-examination, because of its potential to inflame and prejudice the jury against the lawyer defendants, and because it would result in a series of "mini-trials." Fourth, the lawyer

defendants argue that CSX's proposed evidence is quintessential improper character evidence that will cast aspersions on the defendants via Dr. Harron's conduct, and therefore, should also be excluded under Rule 404.

CSX responds by stating that Judge Jack's opinion in the silicosis case is the single most important fact in this litigation and pervades every aspect of it. CSX contends that the opinion is not inadmissible hearsay as it is not being offered to prove the truth of the matter asserted, but rather for the triggering effect it had on both parties' actions during the time period leading up to this case. Further, CSX states that the opinion should not be barred under Rule 404 because it is not being used to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character, but instead it is being used to show the role it played in triggering the actions of both CSX and the lawyer defendants. Finally, CSX argues that Dr. Harron may be cross-examined regarding Judge Jack's findings as it was his own testimony on which her findings were based.

The published opinion of Judge Janis Graham Jack in <u>In re Silica Products Liability Litig.</u>, 398 F. Supp. 2d 563 (S.D. Tex. 2005), is not relevant in this civil action except for certain limited purposes. After all, the case Judge Jack decided, among other things, did not involve the lawyer defendants and their cases with Dr. Harron; the case did not involve asbestos litigation and

did not involve the civil conspiracy asserted in this civil action. Admitting Judge Jack's lengthy opinion would also be barred under Rule 403 as raising the danger of unfair prejudice to the lawyer defendants and confusion of the jury. CSX asserts that Judge Jack's opinion "triggered" CSX to bring this civil action and while this may be a factor in deciding the statute of limitations raised by one of the summary judgment motions, it is less relevant in the substantive aspects of this civil action, <u>except</u> that CSX may inquire as of a proper witness whether the opinion is <u>generally critical</u> of Dr. Harron and was a reason for the lawyer defendants to stop using Dr. Harron as a B reader. This can be accomplished by a short reference to the opinion and without delving farther into the contents thereof. There is no reason because of lack of relevancy and exclusion under Rule 403, to examine Dr. Harron on Judge Jack's specific and detailed findings except to ask him whether the opinion was generally critical of his B readings. The opinion of Judge Jack is also hearsay and even if it is not offered for the truth of the matter asserted, as CSX argues, it is not relevant. Based upon the above rulings, the alternative request for a separate trial is DENIED.

6.    <u>Motion in Limine No. 6 to Preclude CSX From Offering Evidence Related to the Peirce Firm's Practice Concerning Third-Party Asbestos Bankruptcy Trusts (ECF No. 1380)</u> -- DEFERRED.

By this motion, the lawyer defendants seek to preclude CSX from offering evidence related to the Peirce firm's practice with regard to administrative claims made on behalf of clients with bankruptcy trusts established by asbestos manufacturers, commonly referred to as "third-party trusts." The lawyer defendants make three arguments against admission of this evidence. First, the lawyer defendants assert that this evidence is irrelevant. Specifically, the lawyer defendants state that such evidence has nothing to do with whether there was a good faith basis to file the Federal Employer's Liability Act ("FELA") actions against CSX. Further, they argue that the use of this information is also improper as this Court has previously ruled in this case that information regarding claims made against third parties is irrelevant and inadmissible. Second, the lawyer defendants state that such evidence constitutes inadmissible "other act" evidence under Rule 404. Specifically, the lawyer defendants state that CSX's attempt at the introduction of evidence related to doctors who did not produce reports used against CSX in the eleven claims at issue and whose reports will not be relied on in this litigation, is an improper attempt to utilize collateral "other act" evidence to potentially demonstrate propensity. Third, the lawyer defendants state that this evidence should be excluded under Rule 403 based on its potentially prejudicial nature and the confusion and waste of time that will result from having a side-

trial on issues related to the Peirce firm's third-party trust practice.

The Court is unable to find any response by CSX to this motion in limine. Giving CSX the benefit of the doubt, a ruling is deferred and CSX may identify for the Court (and for opposing counsel) the page or pages in which a response is made in CSX's "Combined Response to Defendants' Motions in Limine." Otherwise, this motion in limine will then be granted as unopposed.

7.  <u>Motion in Limine No. 7 to Limit CSX's Damage Claims and Evidence to Alleged Damages Specifically Related to the Eleven Claims at Issue (ECF No. 1381)</u> -- DENIED as to Racketeer Influenced and Corrupt Organizations Act ("RICO") claims only, subject to further rulings.

By this motion, the lawyer defendants seek to have this Court limit CSX's damages claims and evidence in this action to only those legal bills that can be specifically related to the alleged fraud concerning the eleven claims at issue. Further, the lawyer defendants seek to preclude CSX from arguing about or trying to prove any damages from costs that it would have incurred in litigating the underlying mass actions, regardless of the presence of the eleven claims at issue. The lawyer defendants argue that if the costs would have been incurred by CSX regardless of the presence of the eleven claims, then the presence of the allegedly fraudulent claims cannot be said to have caused CSX's defense

13

costs.  The lawyer defendants contend that in the absence of any specific fraud allegations for particular claims, the lawyer defendants had no duty to CSX, and CSX therefore cannot bootstrap its defense costs for the mass actions as a whole onto the damages it seeks for the eleven claims at issue.

In response, CSX states that regardless of whether or not the legal bills specifically mention the claimants at issue, all of the billing entries CSX has identified in support of its damages claim relate to the defense of the claims at issue.  CSX argues that damages only need "some direct relation between the injury asserted and the injurious conduct alleged."  Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992).  CSX states that the damages it has identified are the attorneys' fees that it was forced to spend to defend and obtain the dismissal of the claims at issue.

The lawyer defendants are correct that CSX has by its admissions limited its claims for fraud but as asserted by CSX, it may have left open the opportunity to assert claims under RICO and damages that might possibly arise from proof of predicate acts.

8.  <u>Motion in Limine No. 8 Seeking to Exclude Testimony of Plaintiff CSX's Expert Witness Professor Lester Brickman (ECF No. 1392)</u> -- DEFERRED.

By this motion, the lawyer defendants seek to preclude one of CSX's expert witnesses, Professor Lester Brickman, from testifying on behalf of CSX at trial.  In support of this motion, the lawyer

defendants make four specific arguments as to why this evidence should be excluded. First, the lawyer defendants argue that Professor Brickman's testimony amounts to an impermissible closing argument delivered from the witness stand, which is generally not permitted, because such summary arguments are not proper expert testimony in that they do not aid the jury as required by Rule 702. Second, the testimony should be excluded under Rules 702 and 403 because of its potential to unfairly prejudice and confuse the jury. The lawyer defendants argue that Professor Brickman has no direct knowledge of any alleged fraud by the lawyer defendants with respect to the eleven claims, but simply theorizes that the firm has filed fraudulent claims based on flawed methods and hearsay. The lawyer defendants contend that a jury will be fully capable of determining whether or not fraud occurred based on the trial evidence, and Professor Brickman's testimony is unnecessary. Third, the lawyer defendants argue that the evidence should be excluded because "it is axiomatic that no expert witness may provide a legal opinion or conclusion that the defendants' actions constituted fraud." ECF. No. 1392 *13 (citing Rahemtulla v. Hassam, No. 05-0198, 2008 WL 2247195, at *2 (M.D. Pa. May 30, 2008) (other citations omitted). Fourth, the lawyer defendants assert that Professor Brickman's testimony should be excluded under Rule 404(b). In support of this contention, the lawyer defendants state that it should be excluded under this rule because Professor

Brickman's opinion is based upon the impermissible, and irrelevant fallacy that a determination of whether the eleven claims at issue were or were not fraudulent depends upon whether Dr. Harron was generally good at reading x-rays. The lawyer defendants further argue, that even if Professor Brickman is allowed to testify, this Court should exclude any testimony on medical/epidemiology subjects. The lawyer defendants make this argument because they contend that Professor Brickman does not possess expertise in such matters. Therefore, they state that such testimony would unfairly prejudice defendants and confuse a jury.

CSX responds to the lawyer defendants' arguments by stating that the fact that Professor Brickman is not an expert in occupational health, epidemiology, statistics, or any scientific discipline is immaterial because he is qualified as an expert in the areas for which he is being offered. Specifically, CSX argues those areas are the history of asbestos litigation, asbestos claim practices, and the entrepreneurial model of asbestos claim generation.

CSX seems to offer Professor Brickman on the "history, structure, and inner workings of plaintiff's lawyers who use the entrepreneurial model" and CSX's response essentially now limits his testimony to that specific topic. CSX urges this Court to follow the asserted principle that there is a liberal policy of admissibility. It is asserted that Professor Brickman will testify

on the history of asbestosis litigation, asbestosis claim practices and the entrepreneurial model of asbestosis claim litigation. At the time of the hearing on the motions in limine, this Court stated that it doubted that this is a topic that will aid the jury, which can listen to the evidence and draw its own conclusion as to the propriety or lack thereof of the lawyer defendants' practice as it relates to this particular civil action as it is now structured, but deferred ruling at that time.[2]

9.  <u>Motion in Limine No. 9 to Limit the Expert Testimony of Dr. John E. Parker (ECF No. 1393)</u> -- GRANTED IN PART.

By this motion in limine, the lawyer defendants seek to have this Court limit the testimony of Dr. John E. Parker. Although the lawyer defendants do not challenge the admissibility of Dr. Parker's testimony concerning his B reading study or his testimony about the x-rays of the eleven claimants at issue, they do challenge five specific aspects of testimony as not being appropriate expert testimony based on his report and qualifications or being otherwise inadmissible. First, the lawyer defendants state that any testimony by Dr. Parker as to the purported prevalence of asbestosis in railroad workers should be excluded. The lawyer defendants argue that such testimony should be excluded because Dr. Parker does not possess a background in epidemiology or

---

[2]At trial, CSX elected not to call Professor Brickman as a witness.

statistics that would permit him to provide this testimony.  Also, the lawyer defendants contend that Dr. Parker failed to discuss this information in his report in detail or provide any basis for his statements and therefore the lawyer defendants were unable to properly cross-examine Dr. Parker at his deposition.  Further, the lawyer defendants claim that allowing Dr. Parker to cite the actual studies that discuss purported prevalence rates or information from them on the stand would violate Rule 703 as Dr. Parker would be reading inadmissible hearsay into the record because he is not an epidemiologist or statistician.  Second, the lawyer defendants state that Dr. Parker should be prohibited from testifying that Dr. Harron or Dr. Breyer is a "fraud" or "dishonest" or that the lawyer defendants committed "fraud."  They argue that the word "fraud" is not mentioned in his report nor would it be appropriate, because the determination of whether fraud was committed in this case is for the jury to decide.  Third, the lawyer defendants argue that Dr. Parker should be precluded from testifying about the proceedings before Judge Jack and any role he played in those proceedings.  The lawyer defendants state that any opinions or expert testimony should be based on the facts and evidence admitted in this case, not some case in a different court, involving different facts.  Further, they state that such evidence is inadmissible under Federal Rule of Civil Procedure 26(a)(2) because it is not mentioned in Dr. Parker's report.  Fourth, the lawyer

defendants state that Dr. Parker should be precluded from discussing 25,000 ILO forms. The lawyer defendants claim that such testimony is inadmissible under Federal Rule of Civil Procedure 26(a)(2) because it was not discussed in his report, and further it is excludable under Federal Rules of Evidence 401, 402, 403 and 404. Fifth, the lawyer defendants assert that Dr. Parker should be precluded from offering testimony about medical records. They claim that such testimony is irrelevant, the records speak for themselves, and such testimony has no connection to the subject matter of Dr. Parker's opinion.

CSX responds by stating first that Dr. Parker should be permitted to discuss the prevalence of asbestosis among railroad workers as he is qualified to do so and such opinions were properly disclosed in his expert report. Next, CSX states that Dr. Parker should be permitted to testify that Dr. Harron and Dr. Breyer dishonestly performed B reads for the lawyer defendants. CSX states that it does not intend to elicit an opinion that the doctors committed legal "fraud," but instead only an opinion regarding dishonesty. CSX then contends that Dr. Parker should be permitted to testify about Dr. Harron's and Dr. Breyer's overall positive rates for the lawyer defendants based on the B reads produced by the lawyer defendants in this case. CSX asserts that such evidence is immensely probative and not barred by Federal Rule of Evidence 404(b) because it is offered to prove state of mind.

Further, CSX argues that Dr. Parker should be permitted to testify about medical records because such records are classically and almost exclusively the domain of expert witness testimony. Finally, CSX asserts that this Court should permit CSX to lay a foundation with Dr. Parker to demonstrate that admitting his testimony regarding his experience leading up to Judge Jack's opinion would assist the jury and is not prejudicial.

Dr. Parker should be permitted to testify as to the prevalence of asbestos among railroad workers if Dr. Parker relies upon in his studies and practices. Dr. Parker may testify as to his opinion as to Dr. Harron's and Dr. Breyer's overall positive rates for the lawyer defendants and he should be allowed to testify as to medical records as long as he is not merely adopting the opinions of other health care practitioners related to those records. For the reasons set forth in this Court's ruling on other motions, Dr. Parker shall not testify as to his opinion in the case decided by Judge Jack although by way of his qualification, he may assert that he was admitted as an expert witness in that case. He shall not testify as to the details of those opinions until further support is provided to this Court.

10. <u>Motion in Limine No. 10 to Preclude Testimony and Evidence Regarding the Purported Expected Prevalence of Asbestosis in Railroaders (ECF No. 1394)</u> -- DENIED.

By this motion, the lawyer defendants seek this Court to preclude CSX from offering any testimony or evidence regarding the purported expected prevalence of asbestosis in railroad workers. The lawyer defendants state that such preclusion would also pertain to Dr. Anil Vachani's testimony on this issue because his opinion is without proper statistical or scientific basis. Specifically, the lawyer defendants state that such testimony should be precluded under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Federal Rules of Evidence 702, 703, and 802. The lawyer defendants claim that as a matter of statistical science, Dr. Vachani's testimony is incorrect and improper and as such, it should be excluded. Further, they state that such evidence is irrelevant, prejudicial and hearsay. The lawyer defendants state that the evidence is irrelevant because it cannot be evidence of alleged fraudulent intent, knowledge of falsity or guilty knowledge because of the defendants as no record evidence indicates the lawyer defendants were aware of the prevalence. They also argue it is irrelevant because it does not relate to the claimants at issue and cannot properly be applied to them. The lawyer defendants assert that it is unduly prejudicial because it would be confusing and misleading to the jury and result in an undue waste of time. The lawyer defendants claim that Dr. Vachani's testimony would be hearsay because he lacks expertise and knowledge in the area and therefore, he is just simply doing the equivalent of reading the

articles to the jury under the guise of expert testimony.  This Court was unable to locate a response to this particular motion in limine in CSX's "Combined Response to Defendants' Motions in Limine."

This motion as it applies to Dr. Anil Vachani must be denied because Dr. Vachani's opinions may be helpful to the jury under Federal Rule of Evidence 702 even though it may be disputed by defendants' experts including Professor Joseph B. Kadane.  Dr. Vachani's testimony may, of course, be the subject of cross-examination by CSX's counsel.  Dr. Vachani is otherwise qualified to testify under Rule 702.

11. <u>Motion in Limine No. 11 to Preclude the Testimony of CSX's Expert Dr. Anil Vachani, Including Testimony Regarding What is an Appropriate Clinical Evaluation of a Patient for Asbestosis (ECF No. 1395)</u> -- GRANTED IN PART AND DENIED IN PART.

By this motion, the lawyer defendants seek this Court to exclude all testimony from Dr. Anil Vachani.  In support of this motion, the lawyer defendants state that the question for the jury is not what a doctor would have done with a patient in a clinical setting had one of the eleven clients at issue walked into his or her office but rather the question is -- was it proper or fraudulent for the lawyer defendants to file and prosecute the FELA asbestos claims at issue based on the medical evidence and other relied upon evidence?  Due to this, the lawyer defendants argue

that Dr. Vachani's testimony should be excluded because it does not address this issue or any other relevant issue in this litigation. As such, the lawyer defendants state that its admission can only serve to confuse the jury and needlessly waste the jury's and this Court's time.

CSX responds by stating that Dr. Vachani should be allowed to contrast the defendants' conduct with legitimate medical practice. CSX states that his testimony will help the jury understand how and why the methods used by the defendants differed from good faith medical practice and provided no meaningful basis for the lawyer defendants or anyone else to honestly believe any of the eleven claimants at issue has asbestosis.

This Court grants this motion as unopposed on the issues addressed by Motion in Limine No. 11. Otherwise, this Court has addressed the other issues discussed in Motion in Limine No. 10, which this Court denied.

12. <u>Motion in Limine No. 12 Seeking to Exclude Testimony of Plaintiff CSX's Expert Witness David D. Johnson, III, Esq. Concerning Ethical Standards and Alleged Violations (ECF No. 1396)</u> -- DENIED AS MOOT.

By this motion, the lawyer defendants seek to have this Court exclude testimony of CSX's expert, David D. Johnson, III, Esq. concerning ethical standards and alleged violations of such ethical standards. The lawyer defendants state that Mr. Johnson's proposed

testimony on ethical standards and violations is irrelevant, improper, and will confuse the jury. The lawyer defendants thereafter state a number of reasons this is so. Specifically, the lawyer defendants state that a violation of West Virginia's Rule 11, the Code of Professional Responsibility, or the general duty of candor to a court is a subject for the Court or the Office of Disciplinary Counsel, not a jury.

CSX responds by stating that Mr. Johnson's testimony should be admitted, as his opinions are imminently relevant to the issues in this case. CSX argues that the heart of CSX's claim is that the lawyer defendants filed claims knowing that there was no good faith basis for them, and the jury cannot make that determination without understanding what constitutes a "good faith basis." Further, CSX contends that the testimony should not be excluded because it will confuse the jury about the standard of liability. CSX states that with the proper instruction from this Court, the risk of confusion is slight. Finally, CSX states that if the lawyer defendants' view of admissibility were correct, it would eliminate any possible basis for the testimony of their own expert, Mr. McDermott, on the counterclaims.

At the pretrial conference, CSX's counsel did not indicate they would call Mr. Johnson. Even if CSX desired to call him, his testimony dealing with ethical responsibilities of lawyer defendants Peirce and Raimond would not be relevant to the issue of

fraud and would not be relevant as to "good faith." Even if relevant, it would raise Rule 403 issues.[3]

13. <u>Motion in Limine No. 13 Seeking to Preclude CSX From Submitting Evidence or Recovering Damages Related to Conduct Occurring After July 5, 2007, Including Judge Recht's Case Management Order</u> (ECF No. 1397) -- GRANTED IN PART AND DEFERRED IN PART.

By this motion, the lawyer defendants seek to have this Court exclude evidence and argument concerning events and conduct after July 5, 2007, once CSX filed its first amended complaint and to preclude CSX from seeking damages related to those events and conduct. The lawyer defendants state that such evidence is irrelevant and unfairly prejudicial and should therefore be excluded under Federal Rules of Evidence 401, 402, and 403. The lawyer defendants claim that by July 5, 2007, CSX could no longer claim that it was being misled or defrauded by any actions of the defendants. Therefore, they argue that any evidence post-dating that date should not go to the jury because it is irrelevant to CSX's claims to being misled by the initial filings and would lead to juror confusion. Further, the lawyer defendants assert that CSX cannot recover damages that post-date July 7, 2008. The lawyer defendants argue that CSX can no longer claim to have suffered injury "by reason of" the alleged RICO violations once it

---

[3]Mr. Johnson was not called as a witness at trial.

25

admittedly became aware of the alleged underlying predicate acts and could not be said to have justifiably relied on the allegedly fraudulent representations of the lawyer defendants.

CSX responds by stating that such evidence should not be excluded as it is essential to provide the jury with a full and complete understanding of the defendants' fraud and CSX's damages. CSX states that the lawyer defendants cannot be permitted to create the false impression that the claims went away upon the filing of CSX's first amended complaint because the lawyer defendants continued to prosecute them after that date. CSX claims that all of the costs accrued by it during the three-year period between the filing of the first amended complaint and the dismissal of the last remaining fraudulent claim stemmed from the lawyer defendants' predicate acts of filing the mass suits at issue. Further, regardless if CSX's accrual of damages stopped at the time it filed its first amended complaint, CSX argues that it is "common sense" that conduct occurring after the initial misrepresentation can be relevant in a fraud case.

This Court grants this motion as to RICO claims and defers this motion as to counterclaim fraud claims pending consideration at trial.

14. <u>Motion in Limine No. 14 to Preclude CSX From Offering Evidence Related to a November 19, 2009 Order by Judge Recht or Other Judicial Findings (ECF No. 1398)</u> -- GRANTED.

By this motion, the lawyer defendants seek to preclude CSX from offering evidence related to a November 19, 2009 order by Judge Recht or other judicial findings. Specifically, they request that this Court preclude CSX from offering certain language from this order that was included in CSX's third amended complaint and other factual findings by Judge Recht. The lawyer defendants argue that such findings are hearsay and prejudicial. CSX seems to respond generally to this specific motion on pages 20 through 21 of its "Combined Response to Defendants' Motions in Limine." CSX states that the full procedural history of the claims at issue is essential to provide the jury with a full and complete understanding of the defendants' fraud and CSX's damages.

Judge Recht's order is hearsay and not relevant and even if relevant, it would encounter problems under Rule 403.

15. <u>Motion in Limine No. 15 to Preclude CSX From Arguing to the Jury that Reports for Third-Party Asbestos Trusts by Dr. Robert Cohen Were Issued Without his Authorization and From Admitting Other Evidence Related to Dr. Cohen (ECF No. 1399)</u> -- GRANTED IN PART/DENIED IN PART.

By this motion, the lawyer defendants seek to preclude CSX from arguing that third-party asbestos trusts by Dr. Cohen were issued without his authorization and from admitting other evidence related to Dr. Robert Cohen. The lawyer defendants believe that CSX will seek to introduce evidence related to the lawyer

defendants' practice with regard to administrative claims made on behalf of clients with bankruptcy trusts established by asbestos manufacturers, commonly referred to as third-party trusts, including information about Dr. Cohen. The lawyer defendants incorporate their arguments from their Motion in Limine No. 6 dealing with the inadmissibility of third-party evidence as a whole. Further, the lawyer defendants state that the arguments that CSX has indicated it intends to make regarding Dr. Cohen have no support in the record, and should be precluded as improper and prejudicial. CSX argues that the issue of whether Dr. Cohen authorized the creation of certain medical reports bearing his signature is for the jury to decide.

The third amended complaint goes to <u>claimants in issue</u> and Dr. Cohen is not alleged to be a part of <u>any alleged conspiracy</u> to the extent that reports for four of eleven claimants at issue exist, <u>they may be relevant</u>. CSX simply says the issue of whether certain medical reports bore his signature without his authorization is a "jury issue" and that the internal memo regarding Dr. Cohen goes to intent (whether lawyer defendants were seeking bona fide opinions) and would be a topic for cross-examination for reasons stated in Motion in Limine No. 16 -- not relevant, not admissible under Rule 403 or Rule 404(b) -- does not focus on claims in issue. At best, the memo is attributable to the Peirce Law Firm not Peirce and Raimond, two members of the firm.

16. <u>Motion in Limine No. 16 to Preclude CSX From Offering Into Evidence an Internal Peirce Firm Memorandum that Discusses Expert Witnesses not Used in FELA Asbestos Cases Found at Bates Nos. 692491 to 692505 (ECF No. 1400)</u> -- GRANTED.

By this motion, the lawyer defendants seek to preclude CSX from offering evidence of an internal Peirce firm memorandum that discusses expert witnesses used by the Peirce firm for various types of non-FELA asbestos cases. The lawyer defendants make four specific arguments as to why this memorandum should not come in: (1) the documents was not authored by or even known by the lawyer defendants, and therefore is irrelevant against them as individuals; (2) Dr. Cohen was not typically involved in the Peirce firm's FELA asbestos practice and none of his reports were provided to CSX as part of the prosecution of the eleven claimants at issue the memo is irrelevant; (3) the evidence constitutes "other act" evidence that should be excluded under Rule 404(b); and (4) the evidence will result in a prejudicial, time consuming, and confusing mini-trial about Dr. Cohen.

CSX responds concerning the memorandum by stating, that the internal memorandum related to Dr. Cohen is relevant and admissible because it goes to the issue of the lawyer defendants' intent as to whether they were seeking bona fide opinions concerning the claimants' medical condition.

The evidence is not relevant.  It is speculative as what the memo means.  CSX says it goes to intent but this is speculative.  The evidence is further barred by Rule 403's balancing test.  The evidence does not come in as Rule 404(b) evidence as it is not relevant, reliable, or necessary.

17.  <u>Motion in Limine No. 17 to Preclude CSX From Offering Evidence</u> <u>That it Offered During Depositions to Pay to Have the Claimants at</u> <u>Issue Undergo a CT Scan of the Chest (ECF No. 1401)</u> -- WITHDRAWN.

The lawyer defendants withdrew this motion as a result of an agreement reached between the parties that CSX will not introduce such evidence or argument.  <u>See</u> ECF Nos. 1416 and 1417.

18.  <u>Motion in Limine No. 18 to Exclude Evidence and Argument</u> <u>Regarding the Alleged Lack of Proper Client Contact Between the</u> <u>Pierce Firm and Its Clients (ECF No. 1402)</u> -- GRANTED.

By this motion, the lawyer defendants seek to preclude CSX from introducing evidence regarding the amount or form of contact that the Peirce firm had with its clients.  The lawyer defendants argue first that such evidence is irrelevant as the purported lack of contact does not mean that the claim filed was fraudulent, nor does it lead to the inference that claim was fraudulent.  Second, the lawyer defendants state that regardless, this evidence is highly prejudicial and should be excluded under Federal Rule of Evidence 403, as it may make the lawyer defendants look like poor lawyers who do not treat their clients properly or communicate

sufficiently with them.  Further, they assert that the evidence is also likely to confuse the issues, mislead the jury, cause undue delay, and waste time on issues unrelated to whether FELA claims against CSX were fraudulent.

CSX responds by arguing that such evidence is highly probative regarding the lawyer defendants' intent in prosecuting their claims.  Specifically, it argues that is probative of whether the lawyer defendants were genuinely attempting to vindicate the rights of injured persons or rather attempting to enrich themselves as quickly and with little effort as possible based on fabricated medical evidence.

This Court grants this motion unless the letters mentioned by CSX in response can somehow be attributable to the claimants in issue.  Otherwise, this evidence is not relevant and prohibited under Rule 403 and Rule 404(b)

19. <u>Motion in Limine No. 19 Seeking to Exclude Evidence and Argument Regarding the Dismissal of Certain FELA Claims in 2010, Including Evidence or Argument that the Peirce Firm did not Obtain Client Consent Before Dismissing the Claims and Evidence or Argument Related to Judge Recht's Case Management Order (ECF No. 1403)</u> -- GRANTED.

By this motion, the lawyer defendants seek to preclude the introduction of evidence and argument regarding the dismissal of certain FELA claims in 2010, including evidence or argument that

the Peirce firm did not obtain client consent before dismissing the claims and evidence or argument related to Judge Recht's case management order. The lawyer defendants claim that such argument is contrary to written record evidence. First, the lawyer defendants claim that the evidence is irrelevant as just because a claim was dismissed does not mean the claim was fraudulent. Second, the evidence is highly prejudicial as a jury may find against the lawyer defendants because they were allegedly poor lawyers rather than because fraud was committed.

CSX does not seem to respond directly to this motion although in footnote 55 at page 20 it says it is speaking to Motion in Limine No. 19. In any event, such evidence is not relevant to the fraud claim relating to the claimants in issue, whether or not consent was obtained. Mere dismissal of any claim in issue does not mean, without more, that the claim was fraudulent. Also, there is no direct tie in of defendants Peirce and Raimond.

20. <u>Motion in Limine No. 20 Seeking to Preclude CSX form Submitting Evidence Related to Mr. Earl Baylor's or Mr. Herman Lincoln's Asbestos Questionnaires That Were Never Submitted to CSX (ECF No. 1404)</u> -- DEFERRED.

By this motion, the lawyer defendants seek to preclude CSX from offering evidence related to Mr. Baylor's or Mr. Lincoln's asbestos questionnaires because these were never reviewed by the lawyer defendants and were never provided to CSX as part of the

claims. As such, the lawyer defendants argue that they are irrelevant. Further, the lawyer defendants argue that the evidence should be excluded under Rule 403 because of its potential to inflame and prejudice the jury against the lawyer defendants due to evidence of an employee of the Peirce firm allegedly doctoring the questionnaires. CSX responds by stating that the United States Court of Appeals for the Fourth Circuit has already held that evidence indicating the lawyer defendants falsified the "claimed exposures" on their clients questionnaires is relevant and creates a triable issue of fact. Therefore, CSX states that by this holding, the Fourth Circuit rejected the lawyer defendants' arguments that the falsified questionnaires are not relevant because they were not provided to CSX as part of the case against CSX and there is no evidence that the lawyer defendants ever saw the questionnaires prior to discovery in this case. A ruling on this motion is deferred.

21. <u>Motion in Limine No. 21 to Preclude CSX From Offering Evidence and Argument Concerning the Current or Post-FELA Filing Medical Conditions of the Individuals on Whose Behalf the Eleven FELA Claims Were Filed (ECF No. 1405)</u> -- GRANTED IN PART/DENIED IN PART.

The lawyer defendants seek to preclude CSX from offering medical evidence regarding the eleven claimants that post-dates the filing of the FELA claims. The lawyer defendants state that the Peirce firm did not have such evidence at the time of filing the

FELA claims or while prosecuting such claims. The lawyer defendants argue that such evidence is irrelevant as it does not go to a fact that is of consequence in this action and CSX has previously admitted that such evidence is irrelevant to its fraud claims. Further, the lawyer defendants state that such evidence would confuse the issues, mislead the jury, and unfairly prejudice the lawyer defendants under Federal Rule of Evidence 403. CSX responds by stating that such evidence is probative of whether the lawyer defendants had a good faith basis to file suit alleging that the claimants had an asbestos-related disease.

CSX should be allowed to show medical evidence including any CT scan report possessed by Peirce and Raimond at the time of the particular FELA cases for the <u>particular claimant in issue</u> were filed, such as the Baylor CT scan received in December 2003. Argument that later medical evidence obtained after the filing in a particular FELA case is <u>not</u> relevant to show <u>fraud</u> or bad faith at a later date or that Peirce and Raimond should have had that particular evidence available when the suit was filed. Even if relevant, it does not pass muster under Rule 403. CSX seems to have admitted as much, at least as to Baylor, in the response to an early motion cited by Peirce and Raimond in their memo to this motion.

22.   Motion in Limine No. 22 Seeking to Exclude Evidence and Argument Related to Non-B Read X-Ray Reports (ECF No. 1406) -- DENIED.

The lawyer defendants seeks to exclude the introduction into evidence of any x-ray reading reports not performed by a National Institute for Occupational Safety and Health ("NIOSH") certified B reader.    The lawyer defendants argue that the reports are irrelevant as they are do not involve the same x-rays that were read by Dr. Harron and Dr. Breyer who were both certified B readers.  The lawyer defendants also argue that such evidence would lead to confusion because a jury may not be able to draw the proper distinction between B reads and non-B reads and the weight that should be given to the former compared to the latter.  CSX responds by arguing that at most, the fact that a particular radiological interpretation is not a B read goes to the weight to be afforded to that evidence by the jury, not to its admissibility.

This is a subject that is best left for cross-examination, particularly as to medical witnesses and it is not, if relevant, barred by Rule 403.  Perhaps B readers are better qualified than other specialists and the results of their readings more probative than other readers, but that is a topic for resolution by the jury after hearing the evidence on this subject.  The jury may well be able to make the proper distinction between the findings of a B reader and a non-B reader and not just believe that one x-ray

report by one physician or other health specialist is just the same.

23.  Motion in Limine No. 23 Seeking to Exclude Evidence, Including Expert Testimony, of the November 2003 CT Report of Earl Baylor (ECF No. 1407) -- DEFERRED.

By this motion, the lawyer defendants seek to exclude evidence of a November 2003 CT report of Earl Baylor. The lawyer defendants argue first that, because of a lack of any evidence showing that the lawyer defendants were aware of the CT report, what the report stated is irrelevant to the claims of fraud against these two individuals because the CT report's presence in the Peirce firm's file does not show any awareness or intent on the defendants' part to defraud CSX. Further, the lawyer defendants argue that such evidence would only distract the jury from making its determination on liability based on what the lawyer defendants knew by infusing negligence concepts into the action.

CSX responds by stating that the CT report is relevant as it demonstrates: (1) that Baylor did not have asbestosis; (2) that Peirce knew or should have known that Baylor did not have asbestosis well before he filed Baylor's claim against CSX; and (3) Peirce's policy of disregarding and suppressing unfavorable medical evidence.

Assuming Peirce and Raimond did not know about the Baylor 2003 report, the Court wants to consider further whether knowledge of

36

the filing of the report in the law firm file could or should be imputed to Peirce and Raimond or either of them, particularly in light of the higher standard of proof -- clear and convincing evidence -- and the need to prove fraud by specific intent. The Court will leave the matter open for now.

24. <u>Motion in Limine No. 24 to Exclude CSX From Contending that the November 2003 CT Report of Mr. Earl Baylor was in the Peirce Firm's CSX or Railroad File for Mr. Baylor (ECF No. 1408)</u> -- DEFERRED.

This motion is similar the lawyer defendants' Motion in Limine No. 23. By this motion, the lawyer defendants seek to preclude CSX from contending that the November 2003 CT report of Mr. Earl Baylor was in the Peirce firm's CSX or railroad file for Mr. Baylor. The lawyer defendants argue that the report was not entered in Mr. Baylor's CSX file when it was received in 2003. It was not until 2007 that the report was placed in such file. Further, the lawyer defendants state that the lawyer defendants were not aware of the CT report until after CSX filed this lawsuit. Based on this, the lawyer defendants state that allowing CSX to argue that the CT report was in the Peirce firm's file related to the litigation would be contrary to the evidence and therefore, improper and could mislead and confuse the jury.

CSX states that as to the specific location of the CT scan report, CSX only intends to argue that the report was entered into

Baylor's electronic file in the Peirce firm's practice manager database by at least 2005. Further, CSX states that insofar as the Peirce firm's electronic case files are concerned, medical information is shared between a client's files.

This motion is deferred for essentially the same reason the Court has deferred ruling on Motion in Limine No. 23. Although without more evidence it is hard to see how the report, in and of itself, is evidence of a policy by Peirce and Raimond of "disregarding and suppressing unfavorable medical evidence" as asserted by CSX in its response. Of course, it may or may not demonstrate that Baylor did not have asbestosis.

25. <u>Motion in Limine No. 25 Seeking to Preclude CSX From Presenting Evidence or Argument Regarding Certain Statements Made by Mr. Baylor's Prior Counsel Related to his 2001 Claim that did not Involve Mr. Peirce, Mr. Raimond, or the Peirce Firm (ECF No. 1409)</u> -- DEFERRED.

By this motion, the lawyer defendants seeks to preclude CSX from offering evidence or argument regarding statements made by Mr. Baylor's prior counsel related to Mr. Baylor's 2001 claim, which did not involve the lawyer defendants. Specifically, they wish to preclude the statement from Mr. Baylor's counsel that Mr. Baylor should accept CSX's $7,500.00 award because the medical evidence indicated that Mr. Baylor did not have asbestos- or silica-related dust disease and if he did not accept the offer, his counsel would

need to withdraw as his counsel felt that continuing the case would be sanctionable. First, the lawyer defendants argue that such evidence is irrelevant, as it was not evidence that the lawyer defendants relied on and whether the lawyer defendants committed fraud should not be based on evidence not relied upon. Second, the lawyer defendants state that the evidence should be excluded under Rule 403. First, they argue that it should be excluded under Rule 403 because there is a risk that the jury could improperly conflate the statements in 2001 and 2002 based on the evidence available to Mr. Baylor's then counsel with the conduct of the lawyer defendants taken pursuant to different evidence at a difference time. Second, the lawyer defendants state that it should be excluded under Rule 403 because it will result in the needless waste of valuable time putting on evidence to distinguish between the situation faced by Mr. Baylor's lawyer in 2001 and 2002 and the information relied on by the lawyer defendants in 2006.

CSX responds by stating that such evidence is relevant to the lawyer defendants' counterclaims in two ways. First, CSX states that the statements about the lack of evidence to support Mr. Baylor's 2002 claim place Mr. Baylor's 2006 claim filed by the Peirce firm within the category of cases that the Peirce firm would not dismiss. Second, CSX argues that the testimony is relevant to rebut the lawyer defendants' theory that the mere existence of the prior settlement establishes that the Baylor claim did have a valid

39

basis.  Further, CSX states that the evidence is also relevant to CSX's claims.  CSX argues that the fact that Mr. Baylor was informed in 2002 that a doctor had ruled out the possibility that he had asbestosis is evidence that the lawyer defendants' claim on Baylor's behalf was fraudulently asserted.

Evidence might be admissible regarding Peirce and Raimond's counterclaim as asserted by CSX in its response.  Such evidence is less likely to be relevant on CSX's claims of fraud but the Court needs to defer that matter as well pending evidence at trial.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    January 7, 2013


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE