```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

CSX TRANSPORTATION, INC.,

       Plaintiff,

v.                                       Civil Action No. 5:05CV202
                                                      (STAMP)

ROBERT V. GILKISON,
PEIRCE, RAIMOND & COULTER, P.C.,
a Pennsylvania professional corporation
a/k/a ROBERT PEIRCE & ASSOCIATES, P.C.,
a Pennsylvania professional corporation,
ROBERT PEIRCE, JR., LOUIS A. RAIMOND,
MARK T. COULTER and RAY HARRON, M.D.,

       Defendants.

**MEMORANDUM OPINION AND ORDER
CONFIRMING THE PRONOUNCED ORDER OF THIS COURT
DENYING LAWYER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON ALL COUNTS OF THE THIRD AMENDED COMPLAINT**[1]

I.   Background

This is one of three motions for summary judgment before this Court.[2] On September 25, 2012, the lawyer defendants, Robert Peirce, Jr. ("Peirce") and Louis A. Raimond ("Raimond"), filed this particular motion for summary judgment on all counts of the third amended complaint of plaintiff, CSX Transportation, Inc. ("CSX").

---

[1] On December 7, 2012, a letter was issued to the parties indicating the tentative ruling of this Court regarding the lawyer defendants' motion for summary judgment on all counts of the third amended complaint (ECF No. 1494). At that time, this Court denied such motion. This order sets forth the ruling in more detail.

[2] For a brief procedural history of this case, please see this Court's memorandum opinion and order denying lawyer defendants' motion for summary judgment related to CSX's Earl Baylor allegations and claims (ECF No. 1436).

Within this motion, the lawyer defendants make the following four arguments regarding why this Court should grant summary judgment in the lawyer defendants' favor on all counts of the third amended complaint: (1) CSX's claims are barred by the statute of limitations; (2) CSX cannot prove the requisite reasonable reliance required to establish fraud because CSX had prior knowledge of the key aspects of the Peirce firm's practice that CSX alleges amounts to fraud; (3) summary judgment should be entered under the Noerr-Pennington Doctrine; and (4) because Federal Employer's Liability Act ("FELA") complaints contained valid medical monitoring allegations, CSX cannot establish fraud-based damages.

CSX then responded to the lawyer defendants' motion for summary judgment by making the following arguments: (1) the lawyer defendants have failed to conclusively establish as a matter of law that any of CSX's claims are time-barred; (2) summary judgment is inappropriate based on any alleged lack of reasonable reliance; (3) even assuming the lawyer defendants may invoke the Noerr-Pennington Doctrine, a jury issue exists as to whether the sham exception applies; and (4) the lawyer defendants' damages argument is without merit. The lawyer defendants filed a reply to CSX's response that put forth further argument in support of their initial contentions.

## II. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

2

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718-19 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v.

3

Smith, 597 F.2d 406, 414 (4th Cir. 1979)(stating that summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Because the claims at issue in this particular motion for summary judgment involve fraud, a higher standard of proof applies. Under West Virginia law, "[a]llegations of fraud, when denied by proper pleading, must be established by clear and convincing proof." Calhoun County Bank v. Ellison, 54 S.E.2d 182, syl. pt. 5

4

(W. Va. 1949). See also Tri-State Asphalt v. McDonough Co., 391 S.E.2d 907, 912 (W. Va. 1990) (same); Elk Refining Co. v. Daniel, 199 F.2d 479, 482 (4th Cir. 1952) ("The burden of proving fraud is unquestionably heavy . . . and it is also well established that one cannot rely blindly upon a representation without suitable investigation and reasonable basis."). Mere allegations in the pleadings are not sufficient to survive a motion for summary judgment. Celotex, 477 U.S. at 322. As the Supreme Court noted in Anderson, 477 U.S. at 252, "the inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Therefore, if the lawyer defendants show the absence of any genuine issue of material fact, this Court must determine whether CSX has "brought forth sufficient facts to meet the 'clear and convincing' standard of proof required to support an allegation of fraud." Schleicher v. TA Operating Corp., No. 5:06CV133, 2008 WL 111338 (N.D. W. Va. Jan. 9, 2008), aff'd, 319 F. App'x 303 (4th Cir. 2009).

III.  Discussion

A.  Statute of Limitations[3]

The lawyer defendants first argue that almost all of CSX's claims against them are time-barred as a result of the applicable statutes of limitations.

1.  Counts 1 and 2: Civil Racketeer Influenced and Corrupt Organizations Act ("RICO")

A four-year statute of limitations applies to private civil RICO claims. Potomac Elec. Power Co. v. Electric Motor and Supply, Inc., 262 F.3d 260, 266 (4th 2001) (citing Klehr v. A.O. Smith Corp., 521 U.S. 179, 183 (1997), and Rotella v. Wood, 528 U.S. 549, 555 (2000)). The limitations period "runs from the date when the plaintiff discovered, or should have discovered, the injury." Id. The relevant date in this action is the date that CSX filed its amended complaint, wherein it alleged civil RICO claims against the individual lawyer defendants Peirce and Raimond, which is July 5, 2007. ECF No. 207. Thus, to prove a statute of limitations defense, the lawyer defendants must show that CSX "discovered, or should have discovered, the injury" on or after July 5, 2003 -- four years before CSX filed the amended complaint. Such an inquiry is "extremely fact-specific." Matthews v. Kidder, Peabody & Co., Inc., 260 F.3d 239, 250 (3d Cir. 2001) (discussing the RICO statute

---

[3]At trial, the parties expressly waived the statute of limitations argument, and therefore this issue was not presented to the jury.

6

of limitations) (citing <u>Davis v. Grusemeyer</u>, 996 F.2d 617, 623 n.10 (3d Cir. 1993) ("[T]he applicability of the statute of limitations usually implicates factual questions as to when plaintiff discovered or should have discovered the elements of the cause of action; accordingly, 'defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.'") (quoting <u>Van Buskirk v. Carey Canadian Mines, Ltd.</u>, 760 F.2d 481, 498 (3d Cir. 1985))).

The lawyer defendants claim the factual record illustrates that CSX had knowledge of its alleged injury based on the RICO statute prior to July 5, 2003.  The lawyer defendants specifically cite various contentions which they believe the record establishes.  The lawyer defendants state that based on the record, CSX:

> (1) had access to the x-rays and ILO forms of Peirce Firm clients and, on occasion had its own B-readers review the x-rays, (2) was aware of Dr. Harron's reading practices, believed his reads were inaccurate and was suspicious of his conduct, (3) had the ability to judge the quality of Mr. Corbitt's x-rays, (4) was aware of the Peirce Firm screening process, including that employees were attending multiple screenings, (5) did not trust Mr. Peirce and (6) was aware of the Peirce Firm's claimed improper coaching of clients on issues such as smoking history and asbestos exposure.

ECF No. 1329 *20.  The lawyer defendants claim that as a result of CSX having such information, all of its RICO and RICO conspiracy claims are time barred.

CSX takes issue with the contentions put forth by the lawyer defendants.  First, CSX states that there are factual disputes as

to whether it had access to the x-rays and other medical information of the claimants at issue as alleged by the lawyer defendants. For instance, CSX claims that the mediation order, cited by the lawyer defendants as evidence that CSX had access to the x-rays, does not support such a contention because it did not apply to lawsuits like that of the earliest claim at issue, that of claimant Collier. Second, CSX states that there are factual disputes regarding CSX's alleged knowledge of Dr. Harron. CSX states that all of the evidence cited by the lawyer defendants for the contention that CSX knew of Dr. Harron's reading practice involves other lawsuits filed at other times involving other plaintiffs, not the claimants herein involved. Moreover, CSX states that CSX's belief that Dr. Harron's B-reads were inaccurate and its assumption that it could gather contrary medical evidence does not establish that CSX knew or should have known that the B-reads were fraudulent. CSX asserts that at no time before Judge Jack's 2005 opinion in the matter <u>In re Silica Prods. Liab. Litig.</u>, 398 F. Supp. 2d 563 (S.D. Tex. 2005), could it have known that Dr. Harron was manufacturing B-reads for money. Third, CSX states that the lawyer defendants' other factual contentions are disputed or immaterial. CSX states that it is disputed whether CSX knew or should have know that the screeenings were being taken illegally and classified fraudulently. Further, CSX states that one employee's personal feelings of distrust cannot establish as a

matter of law that CSX knew or should have known that every lawsuit lacked a good faith basis in fact. As to the lawyer defendants' last contention, CSX states that there is no evidence that it knew of the letters that the lawyer defendants assert establish CSX's knowledge of the alleged coaching of the claimants.

Based on the record, this Court agrees with CSX, that factual disputes do remain as to whether CSX "discovered, or should have discovered, the injury" on or after June 5, 2003. This Court need not address the parties' arguments concerning whether or not the separate accrual rule applies[4] to the RICO statute of limitations in this case, as there are factual disputes regarding whether or not CSX knew or should have known of the injury before July 5, 2003. Such disputes must be resolved by the jury.

2.   Common Law Claim of Fraud and Civil Conspiracy

CSX's common law fraud and civil conspiracy claims are governed by the two-year "catch-all" statute of limitations found in West Virginia Code § 55-2-12.[5]  See Alpine Property Owners

---

[4] If a Court applies to the rule of separate accrual, the "plaintiff may recover for any injury caused by defendants' RICO violation if plaintiff discovered or should have discovered that injury within four years of the commencement of this action." Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1105 (2d Cir. 1988). The Fourth Circuit has not expressly adopted this rule. See Potomac, 262 F.3d 2603.

[5] West Virginia Code § 55-2-12 provides:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have

Assoc. Inc. v. Mountaintop Development Co., 365 S.E.2d 57, 66 (W. Va. 1987). Rather than the applicable cut-off date being July 5, 2003, as it is with CSX's RICO claims, it is instead July 5, 2005 for CSX's common law claims based on the applicable two-year statute of limitations. Like the RICO statute, West Virginia applies the injury discovery rule to the instant state claims, wherein the statute accrues when the plaintiff "knew or should have known by the exercise of reasonable diligence of the nature of their claims." Stemple v. Dobson, 400 S.E.2d 561, 564 (W. Va. 1990). Further, determining whether the plaintiff "knew or should have known" is "a question of fact to be answered by the jury." Id. at 565.

The lawyer defendants assert that the same contentions, as outlined above in Section III.A.1., also support the argument that CSX "knew or should have known by the exercise of reasonable diligence of the nature of their claims." However, the lawyer defendants do state that certain common law claims concerning four of the eleven claimants are not barred by the two-year statute of

---

accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

W. Va. Code § 55-2-12.

limitations. The Peirce firm filed these four claimants' claims at a later time than they filed the other seven claimants' claims.

CSX argues that at least five sets of its common law claims are indisputably timely. CSX states that as to the six remaining claims, the lawyer defendants have failed to conclusively establish that those claims are time-barred as there are multiple factual disputes as indicated in their argument above. As it argued above, CSX contends that it could not have known of its injuries until it became aware of the opinion by Judge Jack regarding Dr. Harron, which occurred after the applicable cutoff date of July 5, 2005.

This Court agrees with CSX, in that there are factual disputes as to whether or not CSX "knew or should have known by the exercise of reasonable diligence of the nature of their claims." Therefore, these factual disputes must be left for the jury to determine.

B.  Reasonable Reliance

The lawyer defendants next argue that CSX cannot prove the requisite RICO causation or justifiable reliance required for the claims involved.

1.  Counts 1 and 2: Civil RICO

Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008), eliminated the requirement that a plaintiff prove reliance in order to prove a violation of RICO predicated on mail fraud. Biggs v. Eaglewood Mortg., LLC., 353 F. App'x 864 (2009). As the United States Court of Appeals for the Fourth Circuit stated in Biggs,

11

> [T]hough common law fraud required a showing of reliance, 'nothing on the face of the relevant statutory provisions imposes such a requirement.' Instead, using the mail in furtherance of a scheme to defraud is a predicate act of racketeering under RICO, even if there is no reliance on the misrepresentation. Id. If the defendant has engaged in a pattern of such behavior, he will be liable under RICO, without anyone actually relying on a fraudulent misrepresentation.

Id. (citing Bridge, 553 U.S. at 648).

The lawyer defendants argue that in order to prove its fraud-based RICO claims, CSX must establish justifiable reasonable reliance. They state that based on the record, CSX had prior knowledge of the key aspects of the Peirce firm's practice and therefore they cannot prove reliance. CSX counters by arguing that based on the holding in Bridge, no such showing of reliance is required. The lawyer defendants, however, claim that CSX overstates the holding in Bridge, and assert that "whether couched in terms of reliance or as part of RICO's causation requirement whereby an injury must be 'by reason of' the RICO conduct, the same rationale applies." Such rationale, they argue, is that an injury cannot be caused by reason of a scheme if the party is aware of the alleged scheme.

This Court agrees with CSX, in that no such showing of reliance is necessary based on the holdings in Bridge. Even so, as stated above in regards to the statute of limitations arguments, there are disputes of fact involved here concerning the factual contentions that the lawyer defendants are relying on. Therefore,

such disputes are for the jury to decide and are not appropriate for this Court to determine on summary judgment.

    2.   <u>Common Law Claim of Fraud and Civil Conspiracy</u>

The essential elements of a claim of fraud under West Virginia law includes the element "that the plaintiff relied upon [the act] and it was justified under the circumstances in relying upon it." <u>Kidd v. Mull</u>, 595 S.E.2d 308, 313 (citations omitted). Therefore, a party must show that it justifiably relied on the alleged fraudulent act committed by the plaintiff. "[R]eliance can be justifiable even where it is unreasonable and negligent, and strains the credulity of a reasonable person." <u>In re Giovanni</u>, 324 B.R. 586 (E.D. Va. 2005) (internal quotations and citations omitted). The only requirement the justifiable reliance standard imposes is "the requirement that [the plaintiff] not 'blindly rel[y] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." <u>Id.</u> (citing <u>Restatement (Second) of Torts</u> § 541 cmt. a (1976)).

The lawyer defendants argue that based on the record, CSX was aware of key aspects of the Peirce firm practice on which it based its fraud claims and therefore cannot prove reasonable reliance. These key aspects are the same contentions that the lawyer defendants argued established knowledge of the alleged fraud for purposes of their statute of limitations argument.

CSX responds by first stating that the correct standard is justifiable reliance. Second, CSX states that there is a strong presumption that litigants are entitled to assume that their adversaries are complying with the Federal Rules of Civil Procedure and not filing fraudulent claims. Third, CSX states that whether or not reliance was justifiable is ordinarily a question of fact to be determined by the trier of fact and in this instance, a trier of fact could reasonably conclude that CSX was justified in relying on the alleged misrepresentations.

As previously stated, this Court agrees that there are factual disputes concerning the contentions that the lawyer defendants rely upon to establish that CSX did not justifiably rely on the alleged misrepresentations. Therefore, the jury must be presented with this issue for determination.

C.  <u>Noerr-Pennington Doctrine</u>

The <u>Noerr-Pennington</u> doctrine "grants First Amendment immunity to those who engage in petitioning activity." <u>IGEN Intern., Inc. v. Roche Diagnostics GmBH</u>, 335 F.3d 303, 310 (4th Cir. 2003) (citations omitted). "This includes the pursuit of litigation." <u>Id.</u> The doctrine, however, does not protect those who file "sham" lawsuits. <u>Prof'l Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.</u>, 508 U.S. 49, 51 (1993). Litigation is a "sham" if the underlying lawsuit was (1) objectively baseless and (2) subjectively intended to abuse process. <u>Id.</u> at 60-61. A lawsuit


is objectively baseless if "no reasonable litigant could realistically expect success on the merits." Id. at 60.

The lawyer defendants argue that based on the record, the Noerr-Pennington doctrine precludes CSX's claims because its claims seek to hold the lawyer defendants liable based on the Peirce firm's filing of lawsuits on behalf of its clients. The lawyer defendants also argue that because CSX cannot establish fraud based on the record, it cannot carry its burden of demonstrating the inapplicability of the doctrine based on the sham litigation exception.

CSX, however, states that the Noerr-Pennington doctrine does not apply in this case. It argues that lawyers who wish to seek refuge in their clients' Noerr-Pennington immunity should be required to show that the disputed conduct was undertaken in the lawyer's capacity as a bona fide agent of the client. CSX contends that the lawyer defendants cannot show this as, among other things, the lawyer defendant's clients were not aware of their claims against CSX nor were they consulted about them. Further, even if the doctrine does apply to the lawyer defendants, CSX asserts that the sham exception applies as there is evidence to show that the claims were objectively baseless, and subjectively intended to abuse litigation process.

This Court finds that evidence does exist that creates a factual dispute as to whether the claims filed on behalf of the

claimants by the Peirce firm were objectively baseless and subjectively intended to abuse the litigation process. Such factual disputes must be presented to the jury for its decision and therefore, this Court cannot grant summary judgment on the basis of the lawyer defendants' Noerr-Pennington argument.

D. Fraud-Based Damages

The final argument the lawyer defendants assert concerns CSX's request for fraud-based damages. "A claim for medical monitoring seeks to recover the anticipated costs of long-term diagnostic testing necessary to detect latent diseases that may develop as a result of tortious exposure to toxic substances." Bower v. Westinghouse Elec. Corp, 522 S.E.2d 424, 429 (W. Va. 1999). Under West Virginia law, plaintiffs that assert such a claim are not required "to prove present physical harm" nor are they required "to demonstrate the probable likelihood that a serious disease will result from the exposure." Id. at 431. "[A] cause of action exists under West Virginia law for the recovery of medical monitoring costs, where it can be proven that such expenses are necessary and reasonably certain to be incurred as a proximate result of a defendant's tortious conduct." Id. at 431.

The lawyer defendants argue that because the complaints contained valid medical monitoring allegations, which do not require any evidence of the actual disease or injury, but are premised simply upon exposure, CSX cannot establish fraud-based

damages. They claim that because the claims for medical monitoring damages can stand independently, any action CSX took to dismiss the FELA actions would have been taken regardless of any fraud.

CSX argues that the complaints contain no claim for medical monitoring damages in the absence of any actual physical injury. Instead, CSX asserts that the complaints do contain allegations that the claimants suffer from an occupationally-related lung disease caused by CSX. CSX also indicates that conflicting deposition testimony exists regarding whether the lawyer defendants did include medical monitoring claims in their complaints. Further, CSX states that other witnesses have said it was necessary to have a positive ILO in order to have a good faith basis to file the claims, and files were not even opened until a B-read was obtained. In light of this evidence, CSX argues that a jury could conclude that the lawyer defendants did not believe that the complaints filed on behalf of the claimants included a stand alone claim for medical monitoring. Moreover, CSX states that there is no record evidence that the lawyer defendants ever pursued a medical monitoring claim for damages against CSX. Therefore, CSX assets that a jury could conclude the lawyer defendants were actually prosecuting claims for asbestosis or other existing diseases and CSX's damages were caused by that conduct.

This Court finds that based on the evidence presented to this Court, factual disputes remain as to whether medical monitoring

claims were in fact made on behalf of the eleven claimants involved. Therefore, such issue must be presented to a jury for its determination. This Court cannot grant summary judgment on the issue of fraud-based damages as a result.

## IV. Conclusion

For the above stated reasons, the lawyer defendants' motion for summary judgment on all counts of CSX Transportation, Inc.'s third amended complaint (ECF No. 1329) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    January 14, 2013

                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE