IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


CSX TRANSPORTATION, INC.,

          Plaintiff,

v.                                    Civil Action No. 5:05CV202
                                                        (STAMP)
ROBERT N. PEIRCE, JR.,
LOUIS A. RAIMOND,
and RAY HARRON, M.D.,

          Defendants.


**MEMORANDUM OPINION AND ORDER**
**DENYING LAWYER DEFENDANTS' MOTION FOR JUDGMENT AS A**
**MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL**

I.  Background

On December 20, 2012, a jury rendered a verdict in favor of

the plaintiff, CSX Transportation, Inc. ("CSX"), finding that the

above-named defendants' conduct violated the federal Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1961, et seq.  Further, the jury found that Robert N. Peirce, Jr.

and Louis A. Raimond (collectively the "lawyer defendants") were

liable to CSX for fraud, and had participated in a conspiracy to

commit fraud with defendant Ray A. Harron, M.D. ("Harron").  The

jury, however, did not find that CSX was liable for fraud based on

its representations made during this litigation, as was alleged in

the defendants' counterclaims.  The jury awarded CSX $429,240.47 in

relation to the RICO violations, but did not award CSX any monetary

relief in relation to the fraud claims.  This Court then entered a

judgment in favor of CSX as to these verdicts and ordered that CSX

also recover any post-judgment interest in accordance with 28 U.S.C. § 1961.

Thereafter, the parties filed various post-judgment motions. At issue is the lawyer defendants' motion for judgment as a matter of law or in the alternative for a new trial.  In this motion, the lawyer defendants argue that: (1) the jury's verdict is not supported by substantial admissible evidence or, in the alternative, is against the weight of the evidence and is a miscarriage of justice; (2) judgment must be entered for the defendants under the Noerr-Pennington doctrine; or, in the alternative, (3) the jury verdict must be remitted from $429,240.47 to $95,368.98.  CSX timely responded in opposition to the lawyer defendants' motion arguing that: (1) judgment as a matter of law is not warranted; (2) there is no basis for the grant of a new trial; (3) the jury permissibly rejected the lawyer defendants' Noerr-Pennington defense; and (4) remittitur is inappropriate.  The lawyer defendants then filed a timely reply.

For the reasons set forth below, this Court denies the lawyer defendants' motion for judgment as a matter of law.

## II.  Applicable Law

### A.  Renewed motion for judgment as a matter of law

Federal Rule of Civil Procedure 50(b) provides:

> [i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), . . . . the movant may file a renewed motion for judgment as a matter of law . . . .  In ruling on the renewed motion, the court may:

> (1) allow judgment on the verdict, if the jury returned
> a verdict; (2) order a new trial; or (3) direct the entry
> of judgment as a matter of law.

Fed. R. Civ. P. 50(b).  Generally, a judgment as a matter of law is appropriate "when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment."  United States ex rel. DRC, Inc. v. Custer Battles, LLC, 562 F.3d 295, 305 (4th Cir. 2009) (citations omitted).  The movant is entitled to judgment pursuant to Rule 50(b) "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof."  Wheatley v. Wicomico County, Md., 390 F.3d 328, 332 (4th Cir. 2006) (citing Singer v. Dungan, 45 F.3d 823, 826-27 (4th Cir. 1995)).  This Court reviews "the evidence in the light most favorable to the nonmoving party" in making this determination.  Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 490 (4th Cir. 2005).

B.    Motion for new trial

When determining whether to grant a new trial under Federal Rule of Civil Procedure 59(a), this Court is "permitted to weigh the evidence and consider the credibility of witnesses."  Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (citation omitted).  This Court, however, may only grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a

miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996).

III. Discussion

A.   Motion for judgment as a matter of law based on insufficient evidence

The lawyer defendants in their motion begin by arguing that CSX obtained a verdict in its favor not by providing actual evidence that could support such a verdict, but instead obtained the verdict based on the jurors' passion and prejudice. Thus, the lawyer defendants are initially seeming to claim that CSX failed to establish the elements of the RICO, fraud, and conspiracy claims. This Court notes, however, that the lawyer defendants do not explain exactly which elements CSX did not support with proper evidence.

As indicated above, judgment as a matter of law should be granted when "there can be but one conclusion as to the verdict that reasonable jurors could have reached." Wheatley, 660 F.2d at 1027 (citing Nationwide Mut. Ins. Co. v. McLaughlin, 429 F.2d 1317 (4th Cir. 1970)). This Court notes that the jury was presented with a great deal of evidence during the two-week long trial that supported the jury's findings on the RICO, fraud, and conspiracy claims. Thus, this Court cannot find that the jury only rendered

4

a verdict in CSX's favor as a result of passion and prejudice, as suggested by the lawyer defendants.

B.   Motion for new trial

The lawyer defendants next argue that certain evidence presented by CSX requires that this Court grant the lawyer defendants a new trial because the verdict is against the clear weight of the evidence or allowing the verdict to stand will result in a miscarriage of justice.   This Court will now review these contentions in turn.

1.   James Corbitt's testimony

The lawyer defendants first argue that by allowing argument and testimony concerning James Corbitt's failure to obtain regulatory approvals and the lack of prescriptions for the x-rays taken by Mr. Corbitt prejudiced the lawyer defendants and "cast a pall over the entire trial."   The lawyer defendants argue that this evidence should have been precluded as irrelevant and unfairly prejudicial, as the lawyer defendants argue that this was the Court's original ruling in its order on the lawyer defendants' motion in limine regarding Mr. Corbitt.[1]   CSX responds to such

---

[1]This Court notes that this was not the Court's ruling as to Motion in Limine No. 3, which involved Mr. Corbitt's testimony. CSX's counsel specifically asked this Court during the conference that took place before trial regarding the motions in limine whether this Court's ruling on Motion in Limine No. 3 included evidence that Mr. Corbitt was not authorized or had a prescription to take the x-rays of the eleven claimants at issue.   In response, this Court answered, "No.   I think that might be admissible."   ECF No. 1588 Ex. 1 *3.

argument by stating that the evidence of Mr. Corbitt's noncompliance with the applicable law was relevant because the evidence demonstrated that the lawyer defendants' screenings and the lawsuits they generated did not "conform to the standards of moral uprightness, fundamental honesty, and fair play" for purposes of the federal mail fraud statute. ECF No. 1588 (citing <u>United States v. Mandel</u>, 591 F.2d 1347, 1360-61 (4th Cir. 1979)).

In order to prove a RICO violation, a party must prove that the lawyer defendants engaged in a form of racketeering activity, which can include mail fraud. <u>See</u> 18 U.S.C. § 1961, <u>et seq.</u> This Court agrees with CSX in that such evidence of Mr. Corbitt's conduct was relevant to proving violations of the federal mail fraud statute. One of the elements that must be shown to prove a violation of the mail fraud statute is that the defendants engaged in a scheme to defraud. <u>United States v. Brewer</u>, 528 F.2d 492, 494 (4th Cir. 1975). As indicated by CSX, a scheme to defraud is one that is "contrary to public policy and conflicts with accepted standards of moral uprightness, fundamental honesty, fair play, and right dealing." <u>Mandel</u>, 591 F.2d at 1361. The lawyer defendants' association with Mr. Corbitt, who engaged in questionable conduct by not complying with regulations and laws, is relevant in proving that the lawyer defendants engaged in such a scheme. Thus, the introduction of such evidence does not entitle the lawyer defendants to a new trial.

6

2.   <u>Lawyer Defendants' Motion in Limine No. 1</u>

The lawyer defendants next argue that CSX's repeated violations of this Court's order on the lawyer defendants' Motion in Limine No. 1, which precluded CSX from presenting evidence or argument that any claims other than the eleven claims at issue were fraudulent, planted the seed for the jury to conclude that thousands of other claims filed by the Peirce firm were fraudulent. The lawyer defendants argue that an instruction to disregard such evidence was insufficient and could not cure the prejudice that resulted from the violations.   CSX argues in response that despite the lawyer defendants' allegations, CSX did not violate this Court's order regarding defendants' Motion in Limine No. 1.

"In order for a violation of an order granting an in limine motion to serve as a basis for a new trial, the order must be specific in its prohibition and the violation must be clear." <u>Pullman v. Land O'Lakes, Inc.</u>, 262 F.3d 759, 762 (4th Cir. 2001) (citing <u>Mouton v. Tug Ironworker</u>, 811 F.2d 946, 948 (5th Cir. 1987)).   Not only must the violation be clear and the order be specific, the violation must also have either prejudiced the parties or denied the parties a fair trial.   <u>Id.</u> (citing <u>Blevins v. Cessna Aircraft Co.</u>, 728 F.2d 1576, 1579 (10th Cir. 1984)).   This Court has reviewed the record in relation to the various violations alleged by the lawyer defendants, and finds that the alleged violations do not constitute grounds for a new trial.

7

This Court does believe that its order on the lawyer defendants' Motion in Limine No. 1 was clear, in that CSX was precluded from presenting evidence or argument that any claims other than the eleven claims at issue were fraudulent and some of the alleged violations did in fact violate this order. Specifically, this Court finds that those violations involving CSX's expert witness John E. Parker M.D., in which he discussed 16,000 other cases where Dr. Harron read B-reads for the lawyer defendants, were in fact violations of this Court's order. This Court recognized these violations at trial when it sustained the lawyer defendants' objections and directed the jury to disregard the comments made by Dr. Parker. This Court, however, does not believe that these few violations across the course of a two-week trial denied the lawyer defendants a fair trial. Further, directly after Dr. Parker made the complained of comments, this Court directed the jury to disregard what was said. See Mouton, 811 F.2d at 948 (finding that the district court did not abuse its discretion by denying a mistrial for a direct violation of a motion in limine when prompt instruction to disregard was given).

As to the other remaining alleged violations, this Court does not find that such violations are as clear as the lawyer defendants allege. Further, this Court does not find that the complained of comments over the course of a two-week trial denied the lawyer

defendants a fair trial.  Thus, this Court declines to grant the lawyer defendants a new trial on the basis of these violations.

3.   <u>CSX's reference that the Peirce Firm was accused of fraud in 2005</u>

The lawyer defendants next argue that CSX's reference to the "original lawsuit in 2005," which the parties had previously agreed to exclude evidence of, was so prejudicial as to entitle the lawyer defendants to a new trial.  CSX, however, argues that such a fleeting reference did not result in any prejudice to the defendants.  Additionally, CSX states that any prejudice that may have resulted was cured through this Court's instruction to the jury to disregard the comment.  This Court agrees with CSX that if any prejudice did result from this one comment, it was cured through this Court's curative instruction.  <u>United States v. Hall</u>, 989 F.2d 711, 717 (4th Cir. 1993) ("The normal presumption is that the jury will follow a curative instruction.") (citing <u>Greer v. Miller</u>, 484 U.S. 757, 766 n.8 (1987)).

4.   <u>Judge Janis Jack's opinion</u>

The lawyer defendants next argue that CSX's various references to Judge Janis Jack's opinion in another case in a federal district court in Texas violated this Court's order granting in part and denying in part the lawyer defendants' Motion in Limine No. 5, which sought to preclude evidence or argument to the jury regarding the Texas silicosis litigation before Judge Jack, and/or to sever the trial of Dr. Harron in this Court.  In this Court's order on

9

the lawyer defendants' Motion in Limine No. 5, it stated that CSX "may inquire as of a proper witness whether the opinion is generally critical of Dr. Harron and was a reason for the lawyer defendants to stop using Dr. Harron as a B reader." ECF No. 1557 *11. This Court stated that this could be accomplished by a short reference to the opinion without delving further into the contents of such opinion. Id. Other than for that purpose, this Court found that Judge Jack's opinion was not relevant and would be barred under Federal Rule of Evidence 403. Id. at *10-11. CSX asserts that the references to Judge Jack's opinion complained of by the lawyer defendants did not violate this Court's order and, further, in many instances the lawyer defendants did not object to the references and therefore waived their right to assert that they are improper now.

First, this Court notes that the United States Court of Appeals for the Fourth Circuit has held that "motions in limine will 'preserve issues that they raise without any need for renewed objections at trial, just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it.'" United States v. Wilson, 118 F.3d 228, 238 (4th Cir. 1997) (quoting United States v. Williams, 81 F.3d 1321, 1325 (4th Cir. 1996)). This Court, however, finds that after reviewing the record in relation to each of the complained of references that CSX did not violate this Court's order on the lawyer defendants' Motion in

Limine No. 5.   The references were brief and dealt with Dr. Harron's credibility, as was allowed under this Court's ruling. Further, the references did not delve into the contents of the opinion itself.   For these reasons, this Court declines to grant the lawyer defendants a new trial based on these references.

     5.   <u>Testimony related to ethical issues</u>

     The next category of testimony that the lawyer defendants believe was prejudicial and entitles them to a new trial is testimony and argument that was admitted about whether the lawyer defendants were "practicing law" by conducting screenings.   The lawyer defendants argue that such argument about the unlicensed practice of law, which is an ethical issue, was prejudicial and confusing to the jury and further precluded by this Court's ruling on the lawyer defendants' Motion in Limine No. 12.   The lawyer defendants' Motion in Limine No. 12 dealt with the possible testimony of an expert witness for CSX.   The lawyer defendants sought to preclude this expert from testifying concerning the ethical standards for lawyers and alleged violations of such standards.   This Court denied this motion as moot because CSX stated that it did not intend to call this particular witness to testify.   In doing so, however, this Court stated that the expert's "testimony dealing with ethical responsibilities of lawyer defendants Peirce and Raimond would not be relevant to the issue of

11

fraud and would not be relevant as to 'good faith.'  Even if relevant, it would raise Rule 403 issues."  ECF No. 1557 *24-25.

CSX argues in response that the motion in limine did not preclude the argument or testimony admitted that dealt with the "practice of law" as the order specifically referred to CSX's expert witness who did not testify.  Because the motion in limine did not preclude other argument or testimony from other witnesses or the lawyers, and the lawyer defendants did not object to such argument and testimony at trial, CSX argues that the lawyer defendants have waived their right to contest the arguments and testimony at this stage.

This Court agrees.  As the Fourth Circuit has clearly stated, a new trial should not be granted "where the moving party has failed to timely object to the alleged impropriety giving rise to the motion." Dennis v. General Elec. Corp., 762 F.2d 365, 367 (4th Cir. 1985).  While motions in limine do "preserve issues that they raise without any need for renewed objections at trial," they only do so as long as "the movant has clearly identified the ruling sought and the trial court has ruled upon it." Williams, 81 F.3d at 1325.  The lawyer defendants did not clearly identify the ruling they sought in their Motion in Limine No. 12.  The motion in limine only dealt with the testimony of a particular possible expert witness, and did not deal with the issue in general.  After reviewing the record in relation to the complained of instances,

12

this Court finds that the lawyer defendants failed to object to such argument and testimony during the trial.  Because the motion in limine did not preserve this issue and no objection was made during the trial, this Court cannot grant the lawyer defendants a new trial based on such testimony and argument.

      6.   <u>Testimony concerning the doctor-patient relationship and the practice of medicine</u>

The lawyer defendants next argue that the argument and testimony concerning defendant Harron's lack of a doctor-patient relationship with those he performed B-reads for and the argument and testimony about whether he was practicing medicine was improper and inflamed the prejudice of the jury, so much so that it requires this Court to grant a new trial.  In opposition, CSX argues that there was no error in admitting this evidence.  Whether or not this evidence was prejudicial, this Court finds after reviewing the record that the lawyer defendants did not object to the argument or testimony that they now cite was improper on this subject. Therefore, based on the same authority cited above, this Court must deny the lawyer defendants a new trial based on this complained of testimony and argument.  <u>See</u> <u>Dennis</u>, 762 F.2d at 367 ("A motion for a new trial should not be granted, therefore, where the moving party has failed to timely object to the alleged impropriety giving rise to the motion.").

7.   <u>Evidence and argument that "no diagnosis" was made</u>

The lawyer defendants next contend that CSX's questioning and argument related to whether a B-reading was a diagnosis of asbestosis and whether a formal diagnosis of asbestosis was ever obtained before filing suit confused the jury and prejudiced the lawyer defendants.  Again, after a review of the complained of testimony and argument, this Court finds that the lawyer defendants failed to make proper objections during trial to such testimony and argument.  As such, this Court must deny the lawyer defendants' request for a new trial based on this argument and testimony.

8.   <u>New theories of fraud</u>

The lawyer defendants next argue that CSX improperly introduced new theories of fraud at trial, and such introduction prejudiced the lawyer defendants and requires that this Court grant the lawyer defendants a new trial.  The lawyer defendants contend that CSX's theory of fraud according to their complaint, amended complaints, and answers to interrogatories had consistently been that the claims were fraudulent because no factual basis existed to believe that the claimants had an asbestos-related disease.  The lawyer defendants argue that CSX, over the lawyer defendants' objection, posited a new theory of fraud at trial based on inaccurate boilerplate damage-related allegations in the underlying Federal Employers Liability Act ("FELA") complaints.  In response, CSX asserts that it did not change its theory of liability during

14

the trial.  CSX argues that it has always made clear that its theory of fraud was based on the lawyer defendants' misrepresentation that the claims at issue had a good faith basis in fact.  CSX states that by pointing out what in those claims was false or has no basis in fact is not "an entirely new theory of fraud," but instead is how one proves the alleged fraud to the jury.

This Court agrees with CSX.  CSX asserted in its various complaints that the lawyer defendants devised and implemented a scheme to defraud by bringing baseless claims.  As this Court originally stated when this issue was brought to its attention during the trial, the complained of allegations are allegations of injury or damages, which were in the lawyer defendants' complaints in the underlying cases, as they were asbestosis cases.  These allegations are, thus, part of the "baseless claims" allegedly brought by the lawyer defendants.  Therefore, discussing the damage and injury allegations at trial is not raising a new theory of liability, but instead was a way for CSX to prove that the claims brought by the lawyer defendants were fraudulent.  As such, the lawyer defendants are not entitled to a new trial, as they were not prejudiced by a new theory of liability being introduced.

9.   Introduction of evidence concerning Doctors Cheponis, Cassoff, and Cohen

The lawyer defendants take issue with this Court allowing the introduction of evidence related to examinations conducted by

Doctors George B. Cheponis, Richard Cassof, and Robert A. Cohen as part of the Peirce Firm's practice against third-party asbestos trusts. The lawyer defendants argue that there were no repots from any of those doctors concerning the eleven claimants at issue that were used in cases against CSX or provided to CSX. The lawyer defendants argue that the testimony and evidence related to these exams presented misleading and confusing issues to the jury, because the exams were conducted for use with third-party asbestos manufacturers' trusts and were limited to issues relevant to the trusts' claims process. In response, CSX states that the medical reports concerned several of the claimants at issue and were contained in the lawyer defendants' own files at the time they filed suit. As a result, CSX states that this information was relevant and admissible to the issues of whether the lawyer defendants conducted a reasonable inquiry into the facts alleged in the underlying complaints, whether the allegations in the underlying complaints had good faith evidentiary support, whether the lawyer defendants knew or should have known that the claims at issue lacked evidentiary support, and whether the lawyer defendants acted with fraudulent intent.

This Court agrees with CSX's argument. This information was relevant to all of the above stated issues. Whether this information was used in cases against CSX or provided to CSX in relation to those cases is not of critical importance. The fact

16

that the evidence was in the lawyer defendants' own files at the time they filed those suits is what is important and what makes such evidence relevant.  "All relevant evidence is 'prejudicial' in the sense that it may prejudice the party against whom it is admitted."  Mullen v. Princess Anne Volunteer Fire Co., Inc., 853 F.2d 1130, 1134 (4th Cir. 1988).  Only evidence that is unfairly prejudicial or rather evidence that "will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it" is evidence which must be excluded under Federal Rule of Evidence 403.  Id.  As stated above, this evidence is relevant and further it is not unfairly prejudicial. Accordingly, this Court must decline to grant the lawyer defendants a new trial based upon the admission of such evidence.

      10.   <u>Evidence related to the expected prevalence rate of asbestosis in railroad workers</u>

      The lawyer defendants next argue that this Court erred in allowing CSX's expert witness, John E. Parker, M.D., to testify about the purported prevalence of asbestosis in railroad workers. Further, the lawyer defendants take issue with this Court not holding a <u>Daubert</u> hearing on the issue, as was requested by the lawyer defendants.  The lawyer defendants claim that because they were not aware of these studies, and no evidence was presented to show otherwise, the evidence should have been excluded.  CSX, however, in response argues that the evidence was relevant to the threshold issue of whether defendant Harron's B-reads were truthful

17

and medically accurate.  Further, CSX argues that to the extent the jury concluded that the lawyer defendants were aware of the overall prevalence rate, the evidence was relevant to the existence of a conspiracy between the lawyer defendants and defendant Harron, and was also relevant to the lawyer defendants' knowledge that the claims at issue lacked a good faith basis in fact.  CSX also states that this Court was not required to hold a Daubert hearing as to Dr. Parker as CSX presented Dr. Parker's substantial credentials that demonstrated his expertise in the area.

This Court finds that it was not in error when it allowed Dr. Parker to testify as to the prevalence rate of asbestosis in railroad workers.  The prevalence rate was relevant to whether defendant Harron's B-reads were accurate and truthful, regardless of whether any evidence showing that the lawyer defendants were aware of the prevalence rate was admitted.  Further, this Court finds that it was not in error by not holding a Daubert hearing as to this issue.  The Fourth Circuit has found that a Daubert hearing is not required in every case to test the reliability of the testimony.  See United States v. Beasley, 495 F.3d 142, 150 (4th Cir. 2007) (finding a that the district court need not hold a Daubert hearing after being presented with the experts substantial credentials and training).  This Court determined prior to CSX admitting such evidence through Dr. Parker that such evidence was admissible under Daubert.  This Court found the evidence to be

18

relevant, and again finds it relevant for the above stated reasons. Further, CSX presented this Court with a great amount of information concerning Dr. Parker's credentials and thus his reliability.  Thus, a hearing regarding whether to admit such evidence was unnecessary.

11.  <u>Alleged improper jury instructions</u>

The lawyer defendants next assert that two jury instructions were improper and prejudicial, entitling the lawyer defendants to a new trial.  First, the lawyer defendants argue that the following instruction regarding mail fraud was improper and caused the jury to return a verdict based on their dislike for the Peirce Firm's asbestos practice:  "The crime of mail fraud is broad in scope and its fraudulent aspect is measured by a non-technical standard, condemning conduct which fails to conform to standards of moral uprightness, fundamental honesty, and fair play."  ECF No. 1550 *10.  CSX argues that this instruction was not improper, as it was accurate as to the law, and the lawyer defendants could not have been prejudiced by such an accurate reporting.

Initially, this Court notes that the instruction is in accordance with the Fourth Circuit's definition of a scheme to defraud.  As stated above, one of the elements that must be shown to prove a violation of the mail fraud statute is that the defendants engaged in a scheme to defraud.  <u>United States v. Brewer</u>, 528 F.2d 492, 494 (4th Cir. 1975).  The Fourth Circuit has

19

defined a scheme to defraud as one that is "contrary to public policy and conflicts with accepted standards of moral uprightness, fundamental honesty, fair play, and right dealing." United States v. Mandel, 591 F.2d 1347, 1360-61 (4th Cir. 1979). Thus, this Court provided an instruction to the jury in accordance with such definition.

Moreover, the Supreme Court and the Fourth Circuit have both stated that jury instructions are not be judged in isolation, but must be viewed in the context of the overall charge. Bauberger v. Haynes, 631 F.3d 100, 107 (4th Cir. 2011) (citing Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)). While this Court provided an instruction in accordance with this definition, it also provided exactly what the jury must determine in order to find that the defendants committed mail fraud. These elements were read to the jury as follows:

> FIRST: Defendant Peirce and/or Raimond willfully and knowingly participated in a scheme to defraud CSX;
>
> SECOND: Defendant Peirce and/or Raimond did so with an intent to defraud; and
>
> THIRD: Defendant Peirce and/or Raimond either mailed something or caused it to be mailed in furtherance of their scheme. To "cause" the mails to be used is to do an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen, even if the actual use of the mails was accomplished by someone other than Peirce and/or Raimond,

ECF No. 1550 *11. Further, this Court also described "scheme" or "artifice" more particularly by stating that such terms "include

20

any plan or course of action intended to deceive others, and to obtain, by false or fraudulent pretenses, representations, or promises, money or property from persons so deceived." Id. at *13. As such, this Court does not find that its instructions as a whole invited the jury to find mail fraud if they were morally or ethically offended by the Peirce Firm's practices.  Thus, because the term was described in accordance with a definition used by the Fourth Circuit and because taken as a whole the instructions were not prejudicial, this Court does not find that any such instruction was improper or constitutes grounds for granting the lawyer defendants a new trial.

The lawyer defendants also take issue with the following instruction, which accompanied the jury instructions regarding CSX's claim that the lawyer defendants committed common law fraud:

> Under West Virginia law, when an attorney files a lawsuit in a West Virginia state court, he or she is certifying that he or she has conducted a reasonable inquiry into the facts alleged in that complaint, and that the allegations and other factual contentions in the complaint have evidentiary support.

ECF No. 1550 *23.  The lawyer defendants argue that this instruction invited the jury to find liability, not based on fraud but because the lawyer defendants failed to take certain actions, such as calling clients.  CSX, in response, argues that this instruction was an accurate recitation of the governing legal principle, and its presentation to the jury did not prejudice the defendants.  CSX argues further that the misrepresentations on

21

which CSX's fraud claims were based were the lawyer defendants' certifications made upon filing the claims at issue.  Thus, CSX states that it was proper and necessary to instruct the jury as to those certifications.

This Court again notes that jury instructions must be taken as a whole, and no single instruction should be judged in isolation. In providing this instruction to the jury, this Court also provided the exact elements needed to make a finding that the lawyer defendants committed fraud.  ECF No. 1550 at *22-23.  As such, this Court finds that as a whole the instructions were not prejudicial nor did they allow for a finding of liability for a reason other than one based upon the elements provided.  Further, this Court agrees with CSX insomuch as CSX argues that CSX's fraud claims were based on the certifications made upon filing the claims at issues, and therefore it was proper to instruct the jury as to those certifications.  Accordingly, this Court finds that the lawyer defendants are not entitled to a new trial as a result of this Court providing such an instruction to the jury.

C.  Motion for judgment as a matter of law based on the Noerr-Pennington doctrine

The lawyer defendants argue that judgment as a matter of law should be granted based on the application of the Noerr-Pennington doctrine.  The Noerr-Pennington doctrine "grants First Amendment immunity to those who engage in petitioning activity."  IGEN Intern., Inc. v. Roche Diagnostics GmBH, 335 F.3d 303, 310 (4th

Cir. 2003) (citations omitted).  "This includes the pursuit of litigation."  Id.  The doctrine, however, is subject to the "sham" exception.  Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 51 (1993).  A "sham" lawsuit is one that was (1) objectively baseless and (2) subjectively intended to abuse process.  Id. at 60-61.  A lawsuit is objectively baseless if "no reasonable litigant could realistically expect success on the merits."  Id. at 60.  The existence of probable cause to institute a suit precludes finding that the litigation is a sham.  Id. at 62. Only once a court determines whether a suit is objectively baseless may the court then examine the litigant's subjective motivation. Id. at 60.[2]

The lawyer defendants argue that they are entitled to Noerr-Pennington immunity and the sham exception does not apply because the evidence at trial established that all of the eleven claims were filed in good faith based on FELA standards.  The lawyer defendants argue that a finding to the contrary would potentially expose every lawyer to a fraud claim who relies on an expert's opinion in pursuing a case on behalf of a client if his opponent

---

[2]Some circuits have recognized a fraud exception to the Noerr-Pennington doctrine.  See Mercatus Group, LLC v. Lake Forest Hosp., 641 F.3d 834, 842 (7th Cir. 2011); Kottle v. Northwest Kidney Centers, 146 F.3d 1056, 1060-62 (9th Cir. 1998).  The Fourth Circuit, however, has declined to decide whether such exception still exists.  Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 402 (4th Cir. 2001).  This Court need not address such exception though, as it ultimately finds that the sham exception applies.

can convince a jury that the expert is a liberal expert or if the opponent dislikes the way by which the evidence in support of the claim was discovered.  CSX in opposition argues that the lawyer defendants are ignoring the fact that the evidence at trial established, and the jury concluded, that the claimants' purported occupational exposures and positive B-reads were fraudulently manufactured.  As such, CSX states that the lawyer defendants cannot use fraudulently manufactured evidence to provide a basis for what would otherwise be petitioning activity, and then seek to have that activity protected by the Noerr-Pennington doctrine.  CSX argues that not only were the lawsuits objectively baseless, but they were also subjectively intended to abuse the litigation process.  CSX states that litigation, which is initiated as a means to extract settlements from the opposing party, constitutes such an abuse.

Assuming without deciding that the Noerr-Pennington doctrine is even applicable in this case, this Court finds that CSX produced sufficient evidence to establish the sham exception's two prong test.  First, this Court finds that CSX produced sufficient evidence to show that the underlying lawsuits were objectively baseless.  The jury found that the lawyer defendants acted fraudulently in filing the lawsuits, and based on the record, CSX produced sufficient evidence to allow the jury to make such a finding.  One cannot be said to have "acted with objective

24

reasonableness when the reasonableness depends on a belief in the success of a fraudulent scheme." In re Morrison, No. 08-03269, 2009 WL 1856064 at *7 (Bankr. S.D. Tex. June 26, 2009).  As the court in Morrison stated, "[i]f a party has rigged the process, it may have an objectively reasonable belief that the rigging of the process will lead to a successful outcome.  But the belief stems from the rigging, not the merits of the petition." Id.  Further, this Court agrees with CSX, insomuch as it asserts that it produced sufficient evidence to prove that the lawyer defendants filed the underlying lawsuits as a way to extract settlements from the plaintiff.  This Court finds that such an intent is clearly an abuse of process, and thus satisfies the sham exception's second prong.  Therefore, this Court finds that it cannot grant the lawyer defendants' motion for judgment as a matter of law based on the application of the Noerr-Pennington doctrine.

D.   Remittitur

     Lastly, the lawyer defendants argue that even if they are not entitled to a new trial or judgment as a matter of law, the jury verdict must still be remitted from $429,240.47 to $95,368.98.  A remittitur is a process "by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award." Atlas Food, 99 F.3d at 93.  The review of jury determinations of factual matters "such as . . . the amount of compensatory damages will be reviewed by determining whether the

jury's verdict is against the weight of the evidence or based on evidence which is false." Id. This requires comparing the factual record and the verdict to determine compatibility. Cline, 144 F.3d at 305.

The lawyer defendants seem to argue that the jury's verdict is against the weight of the evidence.  Specifically, they state that this Court's order on the lawyer defendants' Motion in Limine No. 13 precluded CSX from recovering damages that post-date July 5, 2007.  The motion in limine relied upon by the lawyer defendants, which this Court granted in part, sought to have this Court exclude evidence and argument concerning events and conduct after July 5, 2007, once CSX filed its first amended complaint and to preclude CSX from seeking damages related to those events and conduct.  The lawyer defendants argue that based on the exhibits submitted at trial, CSX's damages that predate July 5, 2007 amount to $95,368.98.  Therefore, the lawyer defendants argue that based on this Court's order, the award should be reduced to this amount.

CSX, in response argues that the lawyer defendants' argument for a remittitur fails for three reasons.  First, CSX argues that the lawyer defendants waived any argument based on the Court's pretrial in limine ruling by entering into a damages stipulation at trial that included post-July 5, 2007 damages.  The following is the stipulation CSX is referring to, which this Court read to the jury during the trial:

> The parties stipulate that the amount of reasonable and
> necessary fees and expenses incurred by CSX in the
> defense of the asbestos claims asserted by Morris,
> Collier, Miledge Hill, James Peterson, Lewis Schabow,
> Aubrey Shelton, Donald Wiley, Earl Baylor, Archie
> Wilkins, Nelson Andrews, Herman Lincoln and Hubert
> Harrison was $429,240.47.  This figure represents the
> amounts spent by CSX for the defense of the complaints in
> which these eleven claims were asserted.

ECF No. 1516.  Second, CSX argues that the lawyer defendants are precluded from obtaining a remittitur based on the above stipulation as a result of judicial estoppel.  Third, CSX argues that regardless of its first two arguments in opposition, the lawyer defendants' argument for a remittitur plainly fails on the merits, as there can be no claim that the jury's award was against the weight of the evidence when defendant Peirce himself admitted that CSX expended $429,240.47 in the defense of the eleven underlying claims at issue.

This Court finds that the jury's award of $429,240.47 was not against the weight of the evidence.  As CSX indicates, the jury was presented with a stipulation stating that the plaintiff spent that certain amount of money in the defense of the eleven underlying claims, and this amount was then agreed to and thus, reinforced by one of the defendants while testifying.  See ECF No. 1616 *212-213.  This Court in unaware of any evidence in the factual record presented to the jury that would allow the jurors, based on the stipulation, to limit such damages to those damages incurred prior to July 5, 2007.  Notably, the lawyer defendants did not request

27

any special interrogatories to be included on the jury verdict forms which would separate those damages post-dating July 5, 2007. This Court cannot now question the jury regarding the dates that CSX incurred the damages awarded.  Thus, because CSX presented sufficient evidence to the jury to allow the jury to determine that the damages CSX incurred in defending the underlying eleven claims totaled $429,240.47, and this Court cannot now question what dates the jury believed these damages were incurred on, this Court cannot grant the lawyer defendants a remittitur, as the award is not against the weight of the evidence.

## IV.  Conclusion

For the reasons stated above, the lawyer defendants' motion for judgment as a matter of law or, in the alternative, motion for a new trial (ECF No. 1563) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    September 25, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE

28